**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEREK KHANNA, individually and derivatively**<br>**on behalf of Shimbly Corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** _21-cv-5752_ |
| | ) | |
| **KATELYNN BANKS, and** | ) | **JURY TRIAL DEMANDED** |
| **MARYAM HUSSEIN,** | ) | |
| | ) | |
| **Defendants, and** | ) | |
| | ) | |
| **SHIMBLY CORPORATION, a Delaware** | ) | |
| **corporation** | ) | |
| | ) | |
| **Nominal Defendant.** | ) | |
| | ) | |

## VERIFIED COMPLAINT

Plaintiff Derek Khanna ("Plaintiff" or "Khanna"), by and through his undersigned counsel, hereby files his Verified Complaint, individually and derivatively on behalf of Nominal Defendant Shimbly Corporation ("Shimbly"), against Defendants Katelynn ("Katy") Banks and Maryam Hussein (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is a shareholder individual and derivative action brought by a Shimbly minority shareholder to recover substantial damages caused by Defendant Banks, who hatched and perpetrated a scheme to damage Plaintiff, destroy the company, and keep its assets for a follow-on entity to be 100% controlled by Banks alone, and to do so through fraudulent means, breaches of fiduciary duties to Plaintiff and Shimbly, defamation, wrongful discharge, and other misconduct as alleged below.

2. When Plaintiff tried to stop and expose Banks's scheme through whistleblower reports which highlighted her fraudulent misconduct and fiduciary breaches aimed at decimating the company, Banks threatened Plaintiff, repeatedly cancelled Plaintiff's scheduled meetings of the Board of Directors, and eventually discharged him to silence him, in direct breach of her contractual and fiduciary duties, and without any attempt to even try to follow required corporate procedures. In firing Plaintiff, indeed, Plaintiff's whistleblower report was cited as a key factor.

3. Banks then destroyed the company. She converted its assets and leveraged the carcass of Shimbly to engage in unlawful retribution against Plaintiff and profit through stealing Shimbly's proprietary technology and trade secrets. Taking effective control of Shimbly as CEO, Banks decimated the company for her own competitive interests, defaulted the company by failing to satisfy Delaware and Illinois corporate requirements and pay corporate debts, destroyed Shimbly's value with her misconduct and recklessness, and misappropriated Shimbly's trade secrets to fuel her scheme to fill the competitive void left by Shimbly's demise.

4. Banks's actions purposefully destroyed a successful technology startup, on the verge of break-out success, causing substantial monetary and irreparable harm to Plaintiff, the company, and its shareholders.

5. Accordingly, Plaintiff brings this action in order to recover his substantial damages caused by Defendants' misconduct, including millions of dollars lost because Banks (aided by Defendant Hussein) destroyed the value of his Shimbly shares and paid him nothing, as well as significant additional damages caused by Defendants to Plaintiff individually and to Shimbly. Plaintiff also seeks appropriate injunctive and equitable relief to prevent Banks from profiting as a result of her fraudulent scheme and campaign of misconduct against Plaintiff and Shimbly.

## PARTIES, JURISDICTION AND VENUE

6.      Plaintiff Khanna is a citizen and domiciliary of the State of Massachusetts.  Plaintiff was a Shimbly shareholder at the time of the wrongdoing alleged herein.

7.      Defendant Katelynn ("Katy") Banks ("Banks") is a citizen and domiciliary of the State of Illinois.

8.      Defendant Maryam Hussein ("Hussein") is a citizen and domiciliary of the country of Scotland.

9.      Nominal Defendant Shimbly Corporation is a corporation incorporated under the laws of the State of Delaware, with its corporate headquarters and principal place of business in the State of Illinois.

10.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  There is complete diversity between the parties, and the matter in controversy far exceeds the jurisdictional minimum of $75,000.00.

11.     This Court has venue over this action pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and Defendants are subject to personal jurisdiction in this District at the time this action has been commenced.

12.     Pursuant to 735 ILCS 5/2-209(a), this Court has personal jurisdiction over Defendants, who either reside in this State and/or have transacted business and entered into contracts substantially connected with this State, including the key shareholder and director agreements which are governed by Illinois law.  This action also is based on facts that occurred within this State, such that Defendants has engaged in contacts that are sufficient to subject them to personal jurisdiction in this State under governing law.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**Khanna Developed The Concept That Became Shimbly, And Agreed To Team With Banks To Incorporate The Company And Build It As Fiduciaries To Each Other.**

13.    Beginning in July 2020, Khanna and Banks were working on a new company concept. Plaintiff, as a former McKinsey & Company consultant and an entrepreneur, conceptualized the new company's technology and functionality, assessed the markets and competitive landscape, and developed core aspects of the proprietary functionality for what would (later) become Shimbly.

14.    Plaintiff also operationalized many concepts, making preliminary wireframes to start the design process, building Shimbly's business model, developing application-programming interfaces ("APIs") (which process data between applications and servers), and selecting and negotiating with corporate partners and vendors.

15.    In November, 2019, Plaintiff and Banks entered into a verbal agreement under which they formalized their status as co-founders of Shimbly, with an agreed-upon salary of $180,000.00 for each of them in the first year, and $220,000.00 in the second year. This verbal agreement was memorialized in written documents, including Shimbly budgets.

16.    In or around January 2020, Plaintiff insisted that Shimbly needed a technical co-founder as Chief Technology Officer, and Banks discovered Theophile ("Theo") Khayat, who was selected to join the team, as the third co-founder, to manage the technical side.

17.    Plaintiff was the only full-time employee of Shimbly for most of Shimbly's existence, and handled most day-to-day management of the company and its business operations.

**January 2020 to June 2020: Khanna, Banks, and Khayat enter into the Shimbly Agreements.**

**The Initial Founders Agreement**

18.     Shimbly was incorporated on January 21, 2020. Plaintiff, Banks, and Khayat became Directors of Shimbly; Banks was listed as Corporate President; and Plaintiff was listed as Corporate Treasurer.

19.     After concurrent negotiations in January 2020, Plaintiff, Banks, and Khayat agreed to the particulars of a contract on equity distribution and other aspects of the company's formation. After Banks submitted the contract for review by multiple counsel, on or around April 23, 2020, Plaintiff, Banks, and Khayat entered into the "Shimbly Founders' Collaboration Agreement" (the "Agreement"), a true and correct copy of which is attached hereto as Exhibit A.

20.     The Agreement provided that Plaintiff, Banks, and Khayat were considered "Founders" of Shimbly, and agreed to collaborate "with the purpose of developing a Business Concept," which was defined as follows: "*Shimbly Incorporated is a Delaware Corporation that is building a platform for enabling users to find the right home, to invest and manage their property and to sell their home and for agents to collaborate with users in this process*." (Agreement, Exh. A, at p. 1) (emphasis in original).

21.     The Agreement further provided that the "Founders own the Business Concept pursuant to this Founders' Collaboration Agreement. Founders will transfer the Business Concept to [] Shimbly Incorporated that was formed by the Founders in January, 2020… Each Founder will grant and assign to the Company his or her right, title, and interest in and to the Business Concept, including all ideas (however formed or unformed) and labor and work product performed by the Founder that relates to the Business Concept for the full term of such rights." (*Id.* at §§ 1.1, 1.2.)

5

22.     Shimbly had been operating as a functional entity (minus a formal name and incorporation) before this time.  Substantial work was done by Plaintiff, in particular, from July 2019 to January 2020 regarding how Shimbly would operate, what specific website pages would be developed, what specific APIs would be utilized, and how the development work would progress.  By the time the parties signed the Agreement, they knew that Shimbly's "Business Concept" included these ideas, APIs, code, roadmaps, pitch decks and other materials.

23.     The Agreement also included a confidentiality provision to protect Shimbly's trade secrets and other proprietary information.  As set forth therein:  "Certain proprietary concepts of the business remain confidential.  The Founders will use reasonable efforts to keep this information private.  Founders may disclose the Business Concept on an as-needed basis for internal work, partnerships and raising money from investors (or getting feedback to facilitate those goals) while making reasonable efforts to limit disclosure of proprietary aspects of the business."  (*Id.* at § 5.)

24.     The Agreement defined the "Ownership" of Shimbly shares as follows: Banks received a 38% ownership interest; Plaintiff received a 38% ownership interest; and Khayat received a 24% ownership interest.  (*Id.* at p. 1, § 4.1.)

25.     Each Founder (Plaintiff, Banks, and Khayat) also agreed to "grant and assign to the Company his or her right, title, and interest in and to the Business Concept, including all ideas (however formed or unformed) and labor and work product that results from any task or work performed by the Founder that relates to the Business Concept for the full term of such rights." (*Id.* at § 1.2.)

26.     Furthermore, each Founder agreed to restrict transfers of ownership interests and the Business Concept as follows: "Any future agreement that requires an ownership interest in the

Business Concept to be transferred to a third party must be agreed upon by each Founder." (*Id.* at § 1.3.)

27.     The Agreement also provided each Founder with a "Right of First Refusal" as follows.  Prior to any permitted transfer, "interest holders (Founders specifically) must be given an opportunity to buy shares for sale.  If the interest holders do not buy the percentage interest within 45 days, seller may sell (assuming agreement in 1.3,) but on terms no more favorable than those offered to the other interest holders (must go back to the other interest holders if need to lower price)." (*Id.* at § 1.4.)  In addition, "[i]n the event that transferring ownership is allowed by the Founders (1.3 and 1.4)[,] Selling owner offers to sell the percentage interest at the same rate as bona fide third party offer.  Selling owner must disclose information on bona fide third party offer (including who purchaser is)." (*Id.* at § 1.5.)

28.     The Agreement also assigned Shimbly roles and responsibilities as follows:  Banks was Chief Executive Officer ("CEO"); Plaintiff was Chief Operations Officer ("COO"), Chief Strategy Officer ("CSO"), Manager of the Board of Directors, and General Counsel ("GC") ("as the organization expands"); and Khayat was Chief Technology Officer ("CTO").  (*Id.* at § 3.1.) Banks, Plaintiff, and Khayat each were Directors in the company.  (*Id.*)

29.     As CEO, Banks agreed and promised to satisfy the following responsibilities: "Role includes providing strategic vision on the future of the company, acting as chief visionary, setting aesthetics and feel of platform and ensuring the company achieves company goals and deadlines." (*Id.* at § 3.2(a).)

30.     As is typical in a new technology business, the Agreement also defined the vesting of each Founder's percentage interest.  Banks's 38% interest "will vest pursuant to a four (4) year vesting schedule beginning March, 2019, which will vest 1/48th per month in exchange for

continuous and consecutive service to the Business Concept (including part-time work." (*Id.* at §
4.2(i).) Khanna's 38% interest "will vest pursuant to a four (4) year vesting schedule beginning
July, 2019, which will vest 1/48th per month in exchange for continuous and consecutive service
to the Business Concept (including part-time work)." (*Id.*)

31.     The Agreement also gave the Founders specified rights in the event of a substantive
dispute regarding Shimbly.  "In the event of a substantial dispute among the members, defined as
a dispute that has a large impact on the company, all Founders[] are guaranteed the right to present
their perspective and documentation to all Founders and Directors.  A majority vote of shares shall
decide differing opinions on future direction." (*Id.* at § 6.2)

32.     The Agreement included specific provisions governing the expenditure and
reimbursement of "working capital," which was defined "as money provided by shareholders to
fund operations, preceding seed and Series-A investment." (*Id.* at § 7.1.)  The Founders may be
reimbursed for such "working capital," but only "in the form of either a convertible note for non-
voting shares or loan at 20% interest rate (per annum) to be decided by shareholder vote." (*Id.* at
§ 7.2.)  In order to qualify as "working capital," "funds provided must be for clear, direct,
attributable and reasonable expenses for Shimbly, consistent with Shimbly's development
priorities and roadmap.  Shared expenses do not qualify.  Expenses must be clearly documented."
(*Id.*)  In addition, the Founders agreed that any "[e]xpenses over $1000 from Working Capital shall
require shareholder disclosure and approval." (*Id.* at § 7.5.)

33.     The Agreement also included key representations and warranties that required each
Founder to protect Shimbly's intellectual property and proprietary information, to act as fiduciaries
for shareholders, and to avoid potential conflicts of interest.  To wit: "Each Founder represents and
warrants that no third party can claim any rights to any intellectual property or other proprietary

right possessed by that Founder as it relates to the Business Concept." (*Id.* at § 9.2.) In addition, "[e]ach Founder represents and warrants that they will act as fiduciary agents for shareholders and avoid potential conflicts of interest." (*Id.* at § 9.4.)

**The Revised Founders' Agreement**

34.     In June 2020, the Founders unanimously agreed that Khayat would depart the company. To facilitate that transition, on or around June 14, 2020, the Founders entered into the Revised Founders' Agreement (the "Revised Agreement"), a true and correct copy of which is attached hereto as Exhibit B.

35.     The Founders entered into the revised Agreement "to reflect new team roles and responsibilities[,] new team members, a revised equity distribution and more precise clarification on potential confusion in previous agreements." (Revised Agreement, Exh. B, at p. 1.) The Revised Agreement was "designed to supersede" the Agreement where the two contracts were "in conflict." (*Id.* at § 5.1.)

36.     As for "New Roles and Responsibilities," the Revised Agreement clarified that Plaintiff and Banks were Co-Founders, and also made clear that Khayat was "no longer regularly active" in the company. (*Id.* at § 3.2.)

37.     The Revised Agreement set forth a new share allocation and ownership structure as follows. Striking the prior percentage shares, the Revised Agreement provided for a "formal share-structure arrangement with new shares created today. That formal share structure is divided into 240,000 common stock shares." (*Id.* at § 3.2.) The 240,000 shares were allocated as follows: Banks received 91,200 shares of common stock; Plaintiff also received 91,200 shares of common stock; Khayat received 3,600 shares of common stock; 34,800 shares of common stock were

assigned to an employee "pool" for future employees who would join Shimbly; and an additional 19,200 shares were reserved for an "initial investment" to be determined. (*Id.* at § 3.3.)

38.     Vesting of those shares, moreover, was similar to the prior vesting conditions. Banks's shares "will best pursuant to a four (4) year vesting schedule beginning March, 2019, which will vest 1/48th per month – subject to a one year cliff – in exchange for continuous and consecutive service to the Business Concept (including part-time work)." (*Id.* at § 3.2(i) [sic].) The "one-year cliff" meant that "individuals will not get any shares vested until the first anniversary of vesting start date. At the one year anniversary, individuals have 25% of shares vested. After that, vesting occurs monthly." (*Id.* at n.5.)

39.     Plaintiff's shares also vested pursuant to the same schedule as Banks's shares, although Plaintiff's vesting started in July 2019. (*Id.* at § 3.2(ii) [sic].) Khayat's 3,600 shares were deemed "fully vested," given his "substantial contribution to Shimbly" and his departure from Shimbly as an active employee. (*Id.* at § 3.2(iii) [sic].)

40.     The Revised Agreement defined the shareholders' voting rights as follows: "Voting rights for each common-share shareholder, in the case of voting shares, shall be in accordance with the above schedule, not including vesting clause or performance clause." (*Id.*)

41.     The Revised Agreement also included strict restrictions on the sale of corporate assets. As stated therein, "[s]ale of the Company to an interested third party will take place if the sale is authorized by each Founder and majority of shareholders and otherwise conforms to all applicable state and federal laws." (*Id.* at § 3.4.)

**July 2020 to November 2020: Banks Embarks Upon Her Scheme to Terminate Plaintiff, Steal Plaintiff's Shares, Destroy Shimbly, and Steal its Trade Secrets for Her Personal Interests and Profit.**

42.     Between July 2020 and November 2020, Banks hatched and executed a scheme to destroy Shimbly and steal its trade secrets and other intellectual property.  Banks concocted this scheme in order to use Shimbly's property (including the "Business Concept" defined by the Agreement as alleged above) to launch and support her own company to compete in the same marketplace and fill the gap left by the demise of Shimbly.

43.     Banks perpetrated her scheme through multiple independent instances of misconduct.  Banks engaged in accounting fraud to make herself the largest debt-holder in the company by knowingly entering false, non-reimbursable expenses.  Banks then engaged in securities fraud by misleading investors with those records.  In addition, Banks orchestrated a self-directed scenario under which Shimbly artificially ran out of money, fueled by Banks's failure to undertake even basic fundraising efforts, such that Shimbly defaulted on its legal and payment obligations.

44.     At the same time, Banks was derelict in her duties as CEO, failing and refusing to do anything to develop Shimbly's business, including refusing to engage in any efforts to bring Shimbly's product to market – despite Plaintiff's multiple attempts to get Banks to satisfy her fiduciary duties and launch the product.

45.     When Plaintiff complained about Banks's inaction and unlawful conduct, Banks threatened, extorted, and then discharged Plaintiff to silence him, and used false and defamatory statements (including those by Defendant Hussein) to justify this wrongful discharge.

46.     Banks then disappeared entirely as a functioning Shimbly officer and employee – refusing any shareholder outreach, and failing to respond to official inquiries or even hold a

shareholder or Board meeting. Turning against Shimbly, within days of Plaintiff's termination, Banks copied Shimbly's Business Concept and other trade secrets on tangible electronic and hard-copy files, which she transferred to Pivot RE (a company that Banks controlled) and her other entities, and used those trade secrets to fuel another business to compete in the same marketplace on which Shimbly was supposed to be focused.

47. Banks even attempted to (and, on information and belief, actually did) make improper and unauthorized agreements to transfer Shimbly to third parties for no consideration whatsoever, while keeping Shimbly's Business Concept and trade secrets for herself.

48. Each and all of the above-alleged misconduct by Banks – individually and in combination – constituted a gross breach of her contractual and fiduciary duties. Banks's focus has been the antithesis of a CEO, as she focused on destroying the once-promising company, flouting her contractual and fiduciary responsibilities in the process, all for her own personal profit and benefit.

49. Banks now operates as CEO and partner of multiple competing entities after misappropriating and Shimbly's Business Concept and trade secrets (including its partnerships, product-roadmap, and technologies) – *all while still refusing to resign as Shimbly CEO*.

50. These stages and misconduct are alleged further below.

*July 2020 to August 2020: Banks Engaged in Accounting Fraud and Enlisted Defendant Hussein and Khayat to Help Her Terminate Plaintiff.*

51. On or around July 19, 2020, Banks entered a false liability into Shimbly's accounting records in order to fraudulently become Shimbly's largest debtholder. Specifically, Banks, concocted a budgetary line item under which she manufactured a false debt to herself consisting of $85,000.00 in purported expenses that clearly did not qualify as "working capital" under the Agreement.

52.     The $85,000.00 line item was fraudulent and otherwise improper in multiple independent respects.  First, Banks did not incur that debt at all; her family's brokerage did. Second, she falsely represented that the expenditure was for a database for Shimbly, but it was actually a database developed by her own brokerage company, owned and operated by Banks's family from several years before.  Third, Section 7.3 of the Agreement barred Banks from seeking any reimbursement for this purported expense, which did not qualify as "working capital" because it was not "for clear, direct, attributable and reasonable expenses for Shimbly, consistent with Shimbly's development priorities and roadmap." Fourth, Banks failed to seek and secure "shareholder disclosure and approval" for this purported expense, as required by Section 7.5 of the Agreement.  This fraudulent expense violated numerous other provisions of the Agreement, including Banks's total failure to provide any supporting documentation.

53.     The bigger problem with the improper expense, which Plaintiff did not know at the time, is that it was part and parcel of Banks's stratagem to use Shimbly as her personal piggybank and raw material for her own companies and competitive interests that were directly adverse to Shimbly and its shareholders.

54.     On or around August 19, 2020, Plaintiff objected to Banks's fraudulent and improper accounting records, including through specific notations on the accounting records citing the provisions of the Agreement that prohibited the expense.  Banks, however, ignored Plaintiff's objections and failed to fix the accounting records, despite the absence of any shareholder review and approval of her actions.

55.     On or around September 15, 2020, Plaintiff again objected through notations on the accounting records. Nevertheless, in or around September, 2020, Banks secretly provided these false and fraudulent accounting records to third-party investors, including Pamela Cary and

Richard Cary (the "Carys") (to whom Banks eventually would try to give Shimbly for no consideration whatsoever, as alleged further below). Banks knew that she was misleading these investors through her false accounting records, at substantial risk to Shimbly, Plaintiff, and the investors, but Banks did so in any event.

56.     In or around October, 2020, Banks made additional unauthorized and improper payments of Shimbly funds, to the detriment of Shimbly and its shareholders. Banks paid corporate funds, for example, to Khayat, who did not deliver goods or services commensurate with his payment, as Banks herself admitted at the time. Although this payment was improper under the Agreement, Banks made the improper payment to Khayat in order to curry favor with him and position to secure his consent to terminate Plaintiff improperly.

57.     On information and belief, Banks also improperly paid Shimbly funds to enlist Defendant Hussein's help in terminating Plaintiff. Banks falsely represented that she paid funds to Hussein for "severance," but (like Banks's other payments) this payment violated the Agreement in multiple respects, including the absence of any justification for the payment. Banks made and concealed this improper payment, on information and belief, in order to curry favor with Hussein and secure her commitment to provide a false and defamatory report used by Banks to terminate Plaintiff wrongfully, as alleged further below.

### August 2020 to September 2020: Banks Concealed and Accelerated Shimbly's Financial Decline to Bolster Her Scheme to Give Away the Company and Steal its Trade Secrets.

58.     As CEO, Banks deliberately orchestrated Shimbly's dire financial state, about which she knew, facilitated and concealed from the other shareholders. Banks's concealment caused Shimbly's financial problems to escalate and its financial condition to deteriorate. Making matters immeasurably worse, Banks effectively disappeared as a functioning Shimbly officer and

employee, and failed and refused to respond to persistent attempts by Plaintiff to get Banks involved in the company.

59.     Rather than disclose and address Shimbly's deteriorating financial condition, Banks took the opposite tact, and focused her actions and inactions on destroying the company. Banks did not want to save Shimbly. To the contrary, Banks wanted to – and did – destroy Shimbly in order to advance her own scheme and self-interests to the detriment and harm of Shimbly and its shareholders, including Plaintiff.

60.     As Shimbly was weeks away from forced insolvency (about which only Banks knew), Banks cancelled all meetings, refused to respond to Plaintiff's phone calls, and effectively disappeared. For example, from late September 2020 through early October 2020, Banks failed and refused to attend at least seven (7) critically important meetings and working sessions. Banks also cancelled all senior staff meetings. Banks's stratagem was to isolate any other persons from detecting or discovering her scheme of misrepresentations and misappropriations. Plaintiff beseeched Banks to re-appear and focus on developing Shimbly and its proprietary Business Concept, and to explain what was happening, but Plaintiff's efforts fell on Banks's deaf ears.

61.     Banks had multiple opportunities and avenues to finalize and launch Shimbly. However, Banks deliberately failed and refused to explore those or any other measures that likely would have improved Shimbly's performance and prospects, instead repeatedly canceling scheduled Board and shareholder meetings. As CEO, Banks also could and should have undertaken measures to reduce Shimbly's expenses and put Shimbly on a path to financial health, but again Banks failed and refused to do so because improving Shimbly's financial health would have been antithetical to her scheme to sell Shimbly for nothing and steal its trade secrets.

*October 2020: Plaintiff Tries to Save Shimbly, But Banks Remained Intransigent and Insistent on Driving the Company Into the Ground.*

62.     Because of Plaintiff's intensified efforts, Shimbly had ample opportunities to launch and succeed in the marketplace.  However, Banks's contrary efforts were too much to overcome, given her role as CEO and her surreptitious scheme to harm the company and benefit herself.

63.     Specifically, as of October 8, 2020, Shimbly should have enjoyed break-out success, despite Banks's efforts to the contrary.  Shimbly had substantial investment interest, and its technology platform was nearing completion.  Initial feedback from over a dozen beta testers was extremely positive, indicating that consumers viewed Shimbly as a viable competitor with, or better than, Zillow (then an $8B+ company).

64.     This was, after all, not a new business or market, but a vibrant and competitive market, led by the giant Zillow, with tried and true market models, known potential unit economics, and vast opportunities for other competitors with creative and better ideas, like Shimbly.  Over 100 consumer-facing pages, designed by a team of over a dozen designers and advisors, were completed and coded.  APIs and vendors were selected and terms agreed upon, with most integrated into the platform.

65.     This progress was encouraging to Plaintiff, who was largely unaware of Banks's scheme to steal the company.  Plaintiff was aware that time was of the essence, given the limited window of opportunity in a competitive property-tech marketplace during the home-sale explosion of 2020-2021.

66.     Despite these positive developments and signs, Banks seized control of Shimbly and deliberately refused to proceed with steps that were critical to Shimbly's launch.  In October and November 2020, for example, Plaintiff developed a list of action items that were necessary for

16

launch, all of which could have been done by Banks and Plaintiff, but Banks refused to even meet to discuss the action items, develop a launch strategy, or explore further fundraising. Banks's refusal was intentional and part of her scheme to seize Shimbly, steal its Business Concept, discharge Plaintiff to silence him, sell Shimbly for nothing (or close thereto), and steal Shimbly's trade secrets and opportunities for her own competitive enterprise.

67. There were multiple independent ways that Banks refused to act on Shimbly's and its shareholders' behalf, leading to Shimbly's doom that was the centerpiece of Plaintiff's scheme. For example, Banks refused to send Shimbly platform's wireframes to multiple potential users for testing; Banks never contacted the persons who had tested the platform; Banks never contacted numerous potential venture capitalists for investment; Banks failed to respond to those venture capitalists who did express interest in investing; Banks never consulted with technology advisors who had valuable information that could have helped Shimbly; Banks refused to contact or consult with technology consultants referred to her by Plaintiff; and Banks never responded to Plaintiff's multiple other entreaties to discuss and develop ways to save the company. Each and all of these measures would have helped Shimbly and its shareholders to bring the product to market, but Banks pursued none of them.

**June 2020 Through November 2020: Khanna Serves The Shimbly Board And Senior Management With Whistleblower Complaints, Which Banks Ignores And Buries.**

68. Startled by Banks's misconduct and unlawful behavior, Plaintiff made multiple whistleblower complaints to Shimbly's management, its senior directors, and other key stakeholders. Plaintiff's complaints provided serious allegations of gross misconduct by Banks, including allegations of malfeasance, tortious and criminal acts, as well as multiple breaches of her fiduciary duties. Banks ignored them, obstructed any investigation, and instead threatened Plaintiff that he would be discharged if he pursued his complaints.

69. After it was clear that Banks would not schedule a board meeting to discuss Plaintiff's complaints, on October 26, 2021, Plaintiff sent a formal whistleblower notice to Khayat, Banks, and Shimbly's investors, alleging accounting fraud among other serious matters, and demanding a board meeting to present his evidence in a transparent process. A few hours later, Banks directly warned that Plaintiff would be "judge[d]" for writing this whistleblower notice.

70. On October 27, 2020, the day after Plaintiff's whistleblower notice, Banks stated that, due to his whistleblower notice, she could not work with him anymore, and that she was giving Plaintiff three days to resign, or she would discharge him. Banks also disclosed to Plaintiff that Banks received and relied on a report prepared by Defendant Hussein, which (as alleged further below) included false and defamatory statements that Plaintiff had engaged in "mismanagement" and "sabotage" towards Shimbly, which was a defamatory attempt to project Banks's improprieties on Plaintiff and justify her plan to silence Plaintiff by discharging him. On October 27, 2020, Banks also forwarded the report to Khayat, with full knowledge of its falsity.

71. Banks also deprived Plaintiff of access to critical Shimbly information and property – within a week of Plaintiff's October 26th whistleblower report – and removed Plaintiff's access to Shimbly's bank account, despite the fact that Plaintiff was Shimbly's Co-Founder, Chief Operating Officer and Corporate Treasurer, with responsibility for managing operations across the company, as set forth in the Agreement and Revised Agreement. (Exh. A, at p. 2; Exh. B at p. 1.)

72. Banks made no attempt to address these matters in any meaningful way whatsoever – instead, Banks stated that she was simply refusing to respond. Banks never held any investigation, refused the board meeting requests, and cancelled scheduled board meetings. In fact, on the few occasions when Banks referenced Plaintiff's serious whistleblower allegations,

Banks simply stated that she refused to address them, and that she would undertake retribution against Plaintiff if he pursued them.

### October 2020 To November 2020: Working In Cahoots With Banks, Hussein Submits A False And Defamatory Report That Banks Used As A Pretext To Terminate Khanna.

73.     In or around October 2020, Banks embarked on the next phase of her scheme – to secure a report of false allegations against Plaintiff as a pretext for discharging Plaintiff.

74.     On information and belief, Banks enlisted the help of Defendant Hussein to prepare and submit the false report.

75.     Hussein's report included multiple false and defamatory factual misrepresentations about Plaintiff and his business conduct and practices.  For example, Hussein's report falsely accused Plaintiff of engaging in "sabotage" against Shimbly, which was patently false.  Hussein's report also falsely stated that Plaintiff's "design and functionality contributions cheapen[] the brand that Katy envisioned," and that Plaintiff engaged in "mismanagement," which supposedly "cost me my income source that I relied on."

76.     These statements are defamatory *per se*, in that they falsely impugn Plaintiff's business practices and character.  They also caused Plaintiff to suffer substantial actual damages, including harm that was impending from Banks, who used the report as purported justification for discharging Plaintiff, which Banks actually undertook in order to silence Plaintiff.

77.     On or around October 27, 2020, Banks re-published the defamatory report to Khayat.  Banks forwarded this email to Khayat with the false and defamatory statement that: "Here are a few 'real examples' of how the actions are negatively effecting the culture and organization [sic]."  Banks re-published Hussein's defamatory statements, along with Banks's own defamatory statement, for the improper purpose of creating a pretext on which to terminate Plaintiff, which was central to Banks's scheme to sell Shimbly for nothing and steal its trade secrets.

78. Plaintiff responded to Hussein's false and defamatory report, and Banks's defamatory email, line-by-line with Banks, making clear that the false statements had no factual basis. Banks was unable to justify the statements as factually accurate under scrutiny. Nevertheless, Banks ignored Plaintiff's response, again as part of her scheme to use the defamatory statements to terminate Plaintiff.

79. Banks's publication of the Hussein report as a basis for Plaintiff's termination was clearly malicious, intended to harm Plaintiff and further Banks's scheme to misappropriate Shimbly, its Business Concept, and its other trade secrets and proprietary information.

80. On or around November 9, 2020, Plaintiff also responded to Hussein's and Banks's defamatory statements in a PowerPoint Presentation. Like Plaintiff's prior reports, Plaintiff's whistleblower presentation informed the Board and investors about the multiple instances of misconduct by Banks, and how her misconduct was threatening the very survival of Shimbly.

81. Within 16 hours of a scheduled meeting to review this presentation with investors, Banks unilaterally terminated Khanna without any contractual or legal authority to do so. Banks provided no justification for this termination. Nor was there any legitimate justification.

82. Banks's termination of Plaintiff was wrongful and unlawful on multiple independent grounds. First, the termination was part of Banks's improper and unlawful scheme to destroy Shimbly, seize Shimbly's trade secrets, and compete against Shimbly in the marketplace. Second, Banks's termination was a direct and unlawful response to Plaintiff's whistleblower's complaints on matters of public policy (such as accounting fraud), which is exactly what the law forbids. Third, the Agreement required Banks to submit a "substantial dispute" like this one to all Founders for resolution, but Plaintiff was entirely excluded from any meeting or indeed any discussion about his prospective termination. Fourth, Banks's wrongful

termination also violated the Agreement because the issue of a separation agreement (or lack thereof) is directly subject to a binding-mediation process, which was ignored by Banks. Fifth, Banks utterly failed to follow any contractually and statutorily required corporate procedures – nary a formal shareholder meeting or official vote – in terminating Plaintiff, depriving Plaintiff of any voice or forum to expose the wrongfulness of his discharge and Banks's other improprieties.

**November 2020 to Present: Banks Destroys Shimbly's Value and its Shareholders' Interests, and Steals its Trade Secrets to Compete Against Shimbly in the Marketplace.**

83. Since Plaintiff's wrongful termination in November 2020, Banks only escalated her extended campaign to destroy Shimbly's remaining value, to the devastating injury of its shareholders (including Plaintiff), and convert Shimbly's trade secrets and assets for Plaintiff's personal gain.

84. Banks engaged in the following measures, among others, as part of this unlawful campaign. Banks manipulated Shimbly's accounting records to make the company appear worthless, to justify her plan to destroy the company and steal its property. Banks transferred Shimbly's trade secrets and intellectual property to a company called "Pivot RE," which only she controlled. Banks launched her new company with the same assets and personnel that were part of Shimbly, and with Shimbly's trade secrets, including Shimbly's Business Concept, wireframes, work product, business relationships and APIs, strategies, business plan, and prospects.

85. Banks's misconduct has been brazen. Although Banks was under contractual and fiduciary duties to promote Shimbly and its proprietary Business Concept, Banks eventually pivoted to promoting substantial portions of the Business Concept as part of her own family's brokerage business and other entities which, in substantial respects, would compete with Shimbly.

86. As of September 30, 2020, Banks was revising a proposed deal with her family brokerage to give Shimbly shares to her family. In or around spring 2021, Banks's family

brokerage began publicly using Shimbly's Business Concept, trade secrets and other proprietary information on the brokerage's website, findallchicagohomes.com. This direct lifting of core-Shimbly features was in direct competition with Shimbly and the "Business Concept" that Banks was supposed to maintain and preserve for Shimbly's (not her) benefit.

87.    Because of Banks, Shimbly defaulted under its legal obligations in Illinois and Delaware, and its IRS obligations. Shimbly's registered agent expired in Delaware, and Banks failed to pay Shimbly's corporate taxes, conduct legally required sexual-harassment training, and/or file tax forms with the IRS for Shimbly personnel. Plaintiff informed Banks and Shimbly of these failures and their consequences multiple times – in writing – yet Banks still refused to rectify the matter or respond. Banks even refused to accept certified mail delivered to Shimbly headquarters. Again, Banks purposefully ran Shimbly into the ground to attempt to dissolve the company.

88.    As a Shimbly shareholder, Plaintiff served Banks, Khayat, the Carys, and Shimbly with formal requests for corporate documentation, on four (4) separate occasions, pursuant to Section 220 of the Delaware General Corporation Law. Plaintiff's requests sought important records clearly within the ambit of Section 220, including records reflecting Banks's termination of Plaintiff (any resolution or documentation of a written consent or meeting) and attempts to transfer/convey the company to the Carys for no consideration whatsoever. Plaintiff requested additional relevant materials, such as accounting documents reflecting Banks's fraud and current business-strategy materials. On each such occasion, however, Plaintiff, Shimbly, and the other recipients ignored and failed to respond to Plaintiff's requests. Their intransigence, on information and belief, was part of Banks's attempts to conceal her scheme to destroy Shimbly and misappropriate its Business Concept and other assets and proprietary information.

89.     Plaintiff's correspondence also formally requested the opportunity to purchase Shimbly shares for the same price offered by Banks to the Carys (essentially zero). Plaintiff also requested Banks's resignation from Shimbly (or her stepping down as CEO to another role), so that Plaintiff could try to develop the company and maximize its value, which Banks defiantly refused to do. Again, however, Banks ignored and refused to respond to Plaintiff's requests, as part of her plan to destroy and steal from Shimbly.

90.     On March 30, 2021, Banks posted as follows: "through a series of life changing events I feel I've finally finished my research phase and am qualified to scale something beautiful. ☙ I appreciate your continued support as I move some of my energy into producing education for the general market of how to grow long term wealth with real estate 🏠 a basic need for all. . . I'm excited to be able to help on a bigger level, starting with real estate 🧱. . . I finish this next stage of the company."

91.     Yet on May 27, 2021, Banks announced that Shimbly had no value whatsoever. In an email on that date, Bank falsely stated as follows: "Given the organization's lack of activity and funds, Shimbly has no way to move forward." Banks, however, artificially caused the "lack of activity and funds" about which she now purported to complain, and it was grossly false to state that "Shimbly has no way to move forward," which was a self-fulfilling prophecy caused by Banks's misconduct. Banks, in sum, had completed her destruction of Shimbly and misappropriation of its trade secrets for her new entities.

**Khanna Suffered Severe And Special Damages Caused By Defendants' Misconduct.**

92.     Plaintiff has suffered substantial damages caused by Defendants' misconduct as alleged above. Plaintiff's injuries are separate and distinct from those caused by Defendants to Shimbly, including without limitation harm to Plaintiff's contractual and voting rights, Plaintiff's

23

lost compensation, and the total loss of millions of dollars of value in Plaintiff's shares of Shimbly stock while the company's other main shareholder – Banks – suffered no such losses because of her misappropriation of Shimbly's trade secrets and other proprietary information.

93.     Plaintiff also suffered special and distinct harm caused by Banks's accounting fraud, which benefitted her solely and directly at the expense of Plaintiff's contractual and shareholder rights and interests, and by her wrongful termination of Plaintiff, which caused Plaintiff to suffer substantial and distinct losses in compensation, shareholder rights, and other direct and consequential damages.  In addition, Plaintiff has suffered substantial and irreparable harm to his reputation because of Banks's and Hussein's false and defamatory statements, which have impugned Plaintiff's business practices and devastated Plaintiff's standing as a lawyer and entrepreneur in the marketplace.

<u>**COUNT I (AGAINST BANKS)**</u>
<u>**BREACHES OF FIDUCIARY DUTIES**</u>

94.     Plaintiff re-alleges and incorporates by reference paragraphs 1-93 as though fully set forth herein.

95.     As CEO and shareholder of Shimbly, Banks was, at all times relevant hereto, a fiduciary of Plaintiff.  As such, Banks owed the highest duty of good faith, fair dealing, and loyalty to Plaintiff, Shimbly, its shareholders, and its other officers and directors.

96.     Banks breached her fiduciary duties to Plaintiff, including her duty of loyalty, by, *inter alia*: (a) engaging in accounting fraud, securities fraud, Sarbanes Oxley violations, obstruction of justice, and profiting from her falsified financial records; (b) failing and refusing to undertake any actions whatsoever to help Shimbly and develop its business, effectively disappearing and refusing to respond to multiple attempts by Plaintiff to get her involved in the company; (c) purposefully bankrupting Shimbly; (d) conspiring with Defendant Hussein and

others to concoct fabricated charges and false statements about Plaintiff in order to justify his wrongful termination and execute Banks's scheme to steal the company; (e) developing and executing a plan to steal Shimbly's trade secrets and other proprietary information for Banks's personal gain; (f) starting and managing a business with Shimbly's Business Concept, trade secrets, relationships and other proprietary information, in the same marketplace in which Shimbly competed; (g) engaging in an attempt to (and, on information and belief, an actual transaction to) transfer Shimbly shares for no consideration whatsoever; (h) driving down the value of Plaintiff's Shimbly stock to nothing, while profiting from her stock through her fraudulent scheme and other misconduct; (i) refusing to convene (and obstructing the convening of) meetings of the Shimbly Board of Directors or shareholders, in clear violation of her fiduciary duties and Delaware law, for improper purposes including stopping the investigation or disclosure of her impropriety and criminal behavior; (j) refusing any disclosure on the status of the company to Shimbly's Board of Directors, and usurping their authority to run the company; (k) presenting knowingly materially false information and withholding materially false information to the Shimbly board for purposes of soliciting votes; (l) creating and refusing to fix Shimbly's falsified accounting records; (m) defaulting Shimbly under Delaware Law, Illinois law and with federal tax law by refusing to pay taxes, file forms, conduct required training, or have a registered agent; (n) making no efforts whatsoever to enhance Shimbly shareholder value and impeding Plaintiff's efforts to do so; (o) repetitively denying Plaintiff access to Shimbly accounting documents to hide her improprieties; (p) engaging in retribution against Plaintiff as a whistleblower; and (q) using Shimbly resources to procure and publish defamatory statements.

97. Plaintiff has breached her fiduciary duties in multiple additional respects through her wrongful and retaliatory mistreatment and discharge of Plaintiff. For example, Banks breached

her fiduciary duties to Plaintiff, including her duty of loyalty, by, *inter alia*: (a) effectively terminating Plaintiff through excluding him from accessing Shimbly information and resources while Plaintiff was still an employee; (b) threatening Plaintiff and issuing a three-day ultimatum to resign because Plaintiff was exposing Banks's improprieties in whistleblower notices; (c) terminating Plaintiff because of the whistleblower notices and as part of her campaign to steal the company; (d) attempting to justify Plaintiff's discharge with false material information; (e) failing and refusing to engage in mandatory and necessary corporate processes in connection with Plaintiff's discharge, including her total failure to engage in a valid, proper or legally authorized board and/or shareholder meetings or seek proper written consent as required by Delaware Law; (f) refusing to allow Plaintiff to attend meetings at which Plaintiff's termination was discussed and improperly agreed without any vote (let alone a vote of the majority of shareholders or Directors); (g) effectively removing Plaintiff as a Director by excluding him from any future Board of Directors meetings, cancelling his scheduled Board of Directors meetings, denying four Section 220 letter requests and providing zero disclosure about the company; and (h) voting as a self-interested party without disclosure.

98.     Each and all of the above-alleged improprieties constituted a breach of Banks's fiduciary duties to Plaintiff.

99.     As a direct and proximate cause of Banks's breaches of fiduciary duties, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Banks's breaches of fiduciary duties; (b) injunctive and equitable relief to preclude Banks from profiting over her misappropriations of Shimbly's

trade secrets and other proprietary information; (c) exemplary and/or punitive damages as a result of Banks's willful and malicious misconduct; (d) Plaintiff's attorney fees; (e) interest and costs; and (f) any such further relief that this Court deems just and appropriate. Plaintiff also seeks appropriate injunctive and equitable relief to stop Banks from continuing to engage in misconduct, to protect and preserve the status quo pending the adjudication of this action, and to remedy the harm and damages caused by Banks to Plaintiff and Shimbly.

**COUNT II (AGAINST HUSSEIN)**
**AIDING AND ABETTING BANKS'S BREACHES OF FIDUCIARY DUTIES**

100. Plaintiff re-alleges and incorporates by reference paragraphs 1-99 as though fully set forth herein.

101. Hussein aided and abetted Banks's breaches of fiduciary duties to Plaintiff, in that Hussein performed wrongful acts that assisted (or substantially assisted) Banks's breaches, including without limitation Hussein's preparation of false and defamatory reports and statements used by Banks (with the actual knowledge and involvement of Hussein) to justify Banks's wrongful discharge of Plaintiff and execute Banks's scheme to steal Shimbly's trade secrets and other proprietary information for Banks's personal gain.

102. As a direct and proximate cause of Hussein's aiding and abetting Banks's breaches of fiduciary duties, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendants Hussein, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Hussein's aiding and abetting Banks's breaches of fiduciary duties; (b) exemplary and/or punitive damages as a result of Hussein's substantial assistance to Banks's willful and malicious misconduct; (c) Plaintiff's attorney fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

## COUNT III (AGAINST BANKS)
## FRAUDULENT CONCEALMENT

103.    Plaintiff re-alleges and incorporates by reference paragraphs 1-93 as though fully set forth herein.

104.    Banks intentionally concealed material information regarding her fraudulent scheme to terminate Plaintiff, destroy Shimbly's value, steal Shimbly's trade secrets and other proprietary information, and use those trade secrets and information to create and manage her own company operating in Shimbly's targeted marketplace.  Banks had a duty to disclose that information because, *inter alia*, Banks was in a fiduciary relationship with Plaintiff.  Banks, however, concealed that information in order to induce Plaintiff's false belief that she was acting in the best interests of Shimbly and its shareholders, including Plaintiff.

105.    By concealing those materials facts, Banks intended to – and did – induce Plaintiff to use substantial efforts to develop and build Shimbly's business, including without limitation Shimbly's Business Concept, trade secrets and other proprietary information, which Banks then stole for her own personal gain and self-interest.  Plaintiff could not have discovered Plaintiff's concealed scheme through reasonable inquiry or inspection, and was prevented from making such an inquiry or inspection because of Banks's concealment and other misconduct.

106.    In addition, the concealed information was such that Plaintiff would have acted differently if he would have been aware of it.  For example, if Plaintiff knew Banks's concealed information, Plaintiff would have refrained from expending substantial efforts to develop Shimbly's Business Concept, trade secrets and proprietary information that, unbeknownst to him, Banks was planning to – and did – steal.

107.    As a direct and proximate cause of Banks's breaches of fiduciary duties, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Banks's fraud; (b) exemplary and/or punitive damages as a result of Banks's willful and malicious misconduct; (c) Plaintiff's attorney fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

**COUNT IV (AGAINST HUSSEIN)**
**AIDING AND ABETTING BANKS'S FRAUDULENT CONCEALMENT**

108.    Plaintiff re-alleges and incorporates by reference paragraphs 1-93, 103-107 as though fully set forth herein.

109.    Hussein aided and abetted Banks's fraudulent concealment, in that she performed wrongful acts that assisted (or substantially assisted) Banks's fraud, including without limitation her preparation of false and defamatory reports and statements used by Banks (with the actual knowledge and involvement of Hussein) to justify her wrongful termination of Plaintiff and execute Banks's scheme to steal Shimbly's trade secrets and other proprietary information for Banks's personal gain.

110.    As a direct and proximate cause of Hussein's aiding and abetting Banks's fraudulent concealment, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Hussein, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Hussein's aiding and abetting Banks's breaches of fiduciary duties; (b) exemplary and/or punitive damages as a result of Hussein's substantial assistance to Banks's willful and malicious misconduct; (c) Plaintiff's attorney fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

## COUNT V (AGAINST BANKS)
## BREACHES OF CONTRACT: THE SHIMBLY AGREEMENTS

111.　Plaintiff re-alleges and incorporates by reference paragraphs 1-93 as though fully set forth herein.

112.　The Agreement, Revised Agreement, and Banks's and Plaintiff's verbal salary agreement are valid and enforceable contracts.

113.　Banks materially breached the Agreement and Revised Agreement by, *inter alia*, (a) depriving Shimbly of ownership of the Business Concept, failing to assign the Business Concept to Shimbly, and stealing the Business Concept from Shimbly and its shareholders, in violation of Sections 1.1 and 1.2 of the Agreement; (b) breaching her duty to secure consent from each Founder prior to transferring interests in the Business Concept to a third party, in violation of Section 1.3 of the Agreement; (c) breaching her duty to provide Plaintiff with the right of first offer in connection with Banks's attempted (and, on information and belief, actual) transfers of Shimbly's shares, in violation of Section 1.4 of the Agreement; (d) breaching her duty to provide Plaintiff with the right of first refusal in connection with Banks's offer to give away Shimbly's stock to third parties, in violation of Section 1.5 of the Agreement; (e) breaching her duty to perform her role and responsibilities as Shimbly's CEO, in violation of Sections 3.1 and 3.2 of the Agreement; (f) breaching her duty to submit disputes over the failure to agree on a separation agreement for Plaintiff to binding confidential mediation, in violation of Section 6.1 of the Agreement; (g) breaching her duty to guarantee Plaintiff the right to present his perspective and documentation to all Founders and Directors in connection with substantial disputes among the members, in violation of Section 6.2 of the Agreement; (h) breaching her representation and warranty that she was not party to any other agreement, company, or entity that would restrict her ability to perform her obligations under the Agreement, in violation of Section 9.1 of the

Agreement; (i) breaching her representation and warranty that no third party can claim any rights to any intellectual property or other proprietary right possessed by Banks as related to the Business Concept, in violation of Section 9.2 of the Agreement; (j) breaching her representation and warranty that she will act as fiduciary agents for shareholders and avoid conflicts of interest, in violation of Section 9.4 of the Agreement; (k) breaching her duty to seek and secure authorization of each Founder and a majority of the shareholders, and to comply with applicable state and federal laws, in connection with any attempted or actual sale of Shimbly to an interested third party, in violation of Section 3.4 of the Revised Agreement; (l) breaching her duty to seek and secure 50%+ vote of all Shimbly shareholders before entering into any major contract, in violation of Section 4.2 of the Agreement; and (m) breaching her duty to seek and secure 60%+ vote of shareholders before any actual or attempted dilution event, in violation of Section 4.3 of the Revised Agreement.

114.    Banks also breached her verbal agreement with Plaintiff under which they agreed to be partners and co-founders of Shimbly, with an agreed-upon salary of $180,000.00 for each of them in the first year, and $220,000.00 in the second year.  Banks breached that verbal agreement (which was memorialized in written documents) by, *inter alia*, seizing control of Shimbly and refusing to pay any salary to Plaintiff – let alone the salary promised in the parties' verbal agreement.

115.    Plaintiff satisfied all of his material duties, and performed all of his material obligations, under the Agreement, the Revised Agreement, and the parties' verbal agreement.

116.    As a direct and proximate cause of Banks's material breaches of contract, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's

direct and consequential damages caused by Banks's breaches of contract; (b) exemplary and/or punitive damages as a result of Banks's willful and malicious misconduct; (c) Plaintiff's attorney fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

**COUNT VI: (AGAINST BANKS)**
**WRONGFUL AND RETALIATORY DISCHARGE**

117. Plaintiff re-alleges and incorporates by reference paragraphs 1-93 as though fully set forth herein.

118. Banks terminated Plaintiff in retaliation for his activities, including without limitation his whistleblower complaints regarding Banks's misconduct, and for other unlawful reasons, in violation of clear mandates of public policy, including public policy prohibiting fraudulent conduct by shareholders and officers, and protecting whistleblowers who attempt to expose such fraudulent conduct to protect the company and its shareholders.

119. For example, Banks terminated Plaintiff because Plaintiff had informed Shimbly's Board of Directors, shareholders, and investors that Banks: (a) breached her fiduciary duties of loyalty to Plaintiff and Shimbly in multiple independent respects, including her decisions to benefit her family and her own self-interest at the expense of Shimbly and its shareholders, her failure to act in Shimbly's interests, and her erratic and inexplicable failure to make any business decisions in Shimbly's and its shareholders' interests; (b) falsified Shimbly's accounting records to pay herself back with Shimbly money; (c) illegally recorded telephone calls; (d) violated labor laws with regard to at least one Shimbly employee, (e) misused and misappropriated Shimbly property and resources; and (f) lied to investors in pursuing obtaining securities with false information on employee numbers and launch dates. Each and all of these improper termination grounds – individually and in combination – constitute a separate and independent violation of public policy.

120.   There was a direct causal relationship between Plaintiff's activities and whistleblower complaints, on the one hand, and Banks's termination of Plaintiff, on the other.

121.   Banks's discharge of Plaintiff also was wrongful because Plaintiff failed and refused to satisfy mandatory corporate processes in connection with terminating Plaintiff, including without limitation Banks's total failure to: (a) submit her attempted discharge for binding confidential mediation in violation of Section 6.1 of the Agreement, and/or (b) follow requisite corporate processes mandated under Delaware and other governing law, such as holding a shareholder meeting, a board meeting, and allowing shareholders and/or directors (including Plaintiff) to vote on her proposed termination of Plaintiff.

122.   As a direct and proximate cause of Banks's wrongful and retaliatory discharge of Plaintiff, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Banks's wrongful and retaliatory discharge; (b) exemplary and/or punitive damages as a result of Banks's willful and malicious misconduct; (c) Plaintiff's attorney fees; (e) interest and costs; and (f) any such further relief that this Court deems just and appropriate.

## <u>COUNT VII: (AGAINST BANKS)</u><br><u>VIOLATIONS OF THE ILLINOIS TRADE SECRETS ACT</u>

123.   Plaintiff re-alleges and incorporates by reference paragraphs 1-93 as though fully set forth herein.

124.   Banks acquired and used Shimbly's trade secrets, including Shimbly's Business Concept, proprietary strategies, products, services, processes, ideas, customer lists and information, and other confidential and proprietary information relating to Shimbly's business.

This information constitutes a "Trade Secret," individually and collectively, under the Illinois Trade Secrets Act, in that the information derives economic value from not being generally known to (or ascertainably by proper means by) other persons who can obtain economic value from its disclosure, and the information was the subject of reasonable efforts under the circumstances to maintain its secrecy.

125.    Banks used improper means to acquire knowledge of Plaintiffs' Trade Secrets, including without limitation by engaging in theft.

126.    When Banks acquired knowledge of Shimbly's Trade Secrets, Banks knew or had reason to know that she: (a) acquired the Trade Secrets by improper means; (b) acquired the Trade Secrets under circumstances giving rise to a duty to maintain their secrecy or limit their use; and/or (c) derived the Trade Secrets from or through persons who owed a duty to Shimbly and Plaintiff to maintain its secrecy or limit its use.

127.    Banks has engaged in actual and threatened misappropriation of Shimbly's Trade Secrets.

128.    Banks's above-alleged misappropriations have caused Plaintiff to suffer monetary and non-monetary harm.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Banks's misappropriations of Shimbly's Trade Secrets; (b) exemplary and/or punitive damages consisting of twice Plaintiff's actual damages as a result of Banks's willful and malicious misconduct; (c) Plaintiff's attorney fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.  Plaintiff also seeks appropriate injunctive and equitable relief to stop Banks from continuing to engage in misconduct,

to protect and preserve the status quo pending the adjudication of this action, and to remedy the harm and damages caused by Banks to Plaintiff and Shimbly.

### COUNT VIII: (AGAINST BANKS)
### CONVERSION

129.     Plaintiff re-alleges and incorporates by reference paragraphs 1-93 as though fully set forth herein.

130.     Banks converted and used Shimbly's tangible property that contained Shimbly's protected Business Concept and other trade secrets, including electronic and hard-copy records that memorialize and include Shimbly's Business Concept, its databases and APIs, all of which included proprietary strategies, products, services, processes, ideas, customer lists and information, and other confidential and proprietary information relating to Shimbly's business (collectively, "Shimbly's Property").

131.     Banks used improper means to acquire Shimbly's Property.

132.     Banks's above-alleged conversion have caused Plaintiff to suffer monetary and non-monetary harm.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Banks's misappropriations of Shimbly's Trade Secrets; (b) exemplary and/or punitive damages as a result of Banks's willful and malicious misconduct; (c) Plaintiff's attorney fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

## COUNT IX (AGAINST BANKS)
## OBSTRUCTION OF JUSTICE IN VIOLATION OF THE ILLINOIS
## WHISTLEBLOWER ACT

133.    Plaintiff re-alleges and incorporates by reference paragraphs 1-93 as though fully set forth herein.

134.    In October, 2020 Banks was aware of Plaintiff's plans to confront her with serious evidence of impropriety including accounting fraud, securities fraud and an ongoing Sarbanes Oxley violation to the Board of Directors, with a specific proffered resolution to refer the matter to the SEC.

135.    Banks violated the Illinois Whistleblower Act by retaliating against and terminating Plaintiff for his reports to Shimbly's Board of Directors and investors regarding Banks's violations of state and federal laws.  For example, Banks unlawfully retaliated against and terminated Plaintiff for alleging that Banks: (a) falsified Shimbly's accounting books to pay herself back with Shimbly money in violation of her criminal and civil legal obligations, (b) was engaged in a campaign to steal the company from shareholders, (c) illegally recorded telephone calls; (d) violated labor laws in connection with another employee, (e) committed securities fraud by pursuing obtaining securities with false information on employee numbers; (f) engaged in securities fraud by misleading investors on launch dates; and (g) engaged in numerous breaches of her fiduciary duties to Plaintiff and Shimbly.

136.    As a direct and proximate cause of Banks's violations of the Illinois Whistleblower Act, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Banks's unlawful retaliatory discharge; (b) exemplary

and/or punitive damages as a result of Banks's unlawful misconduct; (c) Plaintiff's attorney fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

## COUNT X (AGAINST BANKS)
## DEFAMATION

137. Plaintiff re-alleges and incorporates by reference paragraphs 1-93 as though fully set forth herein.

138. Banks intentionally made false statements about Plaintiff, including without limitation Banks's publication of defamatory content in the Hussein report, which falsely stated that: (a) "Derek was sabotaging the company"; b) "Derek's design and functionality contributions cheapens the brand that Katy envisioned, which I then wanted to translate into the website. Functions like "hunter mode" and the "funnel" cheapen the brand, these functions are used in dating apps;" and (c) Plaintiff engaged in "mismanagement."

139. Banks made additional false and defamatory statements about Plaintiff to third parties, including Shimbly's investors. For example, Banks falsely told Khayat and the Carys, during conversations in early November 2020 in Chicago, that Khanna was "improperly making payments" on behalf of Shimbly, and that Plaintiff was responsible for "financial mismanagement" of Shimbly. On information and belief, Banks also falsely told Khayat and the Carys that Plaintiff misled her on his legal background and legal education, and that Plaintiff improperly budgeted Shimbly spending and caused Shimbly harm through mismanagement.

140. Banks knew that her statements about Plaintiff were false and defamatory.

141. Banks's false statements are defamatory *per se*, in that they imputed that: (a) Plaintiff was unable to perform or lacks integrity in performing his employment and professional duties, and (b) Plaintiff lacked ability in his profession. Banks's false and defamatory statements also prejudiced Plaintiff in his profession.

142.     Banks's statements were malicious and reckless, and were part of her plan to steal Plaintiff's shares, harm an active whistleblower, and steal the company.

143.     As a direct and proximate cause of Banks's false and defamatory statements, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Banks's defamation; (b) exemplary and/or punitive damages as a result of Banks's willful defamation; (c) Plaintiff's attorney fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

## COUNT XI (AGAINST HUSSEIN)
## DEFAMATION

144.     Plaintiff re-alleges and incorporates by reference paragraphs 1-93, 137-143 as though fully set forth herein.

145.     Hussein made false statements about Plaintiff, including without limitation defamatory content in reports submitted to Banks, and then Shimbly's Board of Directors and investors, which falsely stated that: (a) ""Derek was sabotaging the company;" (b) "Derek's design and functionality contributions cheapens the brand that Katy envisioned;" and (c) Plaintiff engaged in "mismanagement."

146.     Hussein knew that her statements about Plaintiff were false and defamatory.

147.     Hussein's statements were malicious and reckless, and were intended to (and did) assist Banks in her unlawful scheme to steal Plaintiff's shares, harm an active whistleblower, and steal the company.

148.     Hussein's false statements are defamatory *per se*, in that they imputed that: (a) Plaintiff was unable to perform or lacks integrity in performing his employment and professional

duties, and (b) Plaintiff lacked ability in his profession. Their false and defamatory statements also prejudiced Plaintiff in his profession.

149. As a direct and proximate cause of Hussein's false and defamatory statements, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendants Hussein, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Hussein's defamation; (b) exemplary and/or punitive damages as a result of Hussein's willful defamation; (c) Plaintiff's attorney fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

## COUNT XII (AGAINST BANKS)
## FALSE LIGHT

150. Plaintiff re-alleges and incorporates by reference paragraphs 1-93, 137-149 as though fully set forth herein.

151. Banks's false statements placed Plaintiff in a false light before the public, in a manner that would be highly offensive to a reasonable person.

152. Banks acted with actual malice, with knowledge that her statements were false and/or with reckless disregard for whether her statements were true.

153. As a direct and proximate cause of Banks's false statements, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Banks's defamation; (b) exemplary and/or punitive damages as a result of Banks's willful defamation; (c) Plaintiff's attorney fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

## COUNT XIII (AGAINST HUSSEIN)
## FALSE LIGHT

154.     Plaintiff re-alleges and incorporates by reference paragraphs 1-93, 137-153 as though fully set forth herein.

155.     Hussein's false statements placed Plaintiff in a false light before the public, in a manner that would be highly offensive to a reasonable person.

156.     Hussein acted with actual malice, with knowledge that her statements were false and/or with reckless disregard for whether her statements were true.

157.     As a direct and proximate cause of Hussein's false statements, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Hussein, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Hussein's defamation; (b) exemplary and/or punitive damages as a result of Hussein's willful defamation; (c) Plaintiff's attorney fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

## COUNT XIV (AGAINST BANKS)
## GROSS NEGLIGENCE

158.     Plaintiff re-alleges and incorporates by reference paragraphs 1-93 as though fully set forth herein.

159.     Banks owed a duty of care to Plaintiff to act reasonably in the conduct of the business of Shimbly.  Banks's duty arose from, *inter alia*, the parties' relationship as fiduciaries, officers, employees, and shareholders of Shimbly.

160.     Banks breached her duty to Plaintiff by, *inter alia*: (a) engaging in accounting fraud and profiting from her falsified financial records; (b) conspiring with Hussein to concoct fabricated

charges and false statements about Plaintiff in order to justify his wrongful termination and execute Banks's scheme to steal the company; (c) developing and executing a plan to steal Shimbly's trade secrets and other proprietary information for Banks's personal gain; (d) starting and managing a business with Shimbly's trade secrets and other proprietary information, in the same marketplace in which Shimbly competed; and (d) driving down the value of Plaintiff's Shimbly stock to nothing, while profiting from her stock through her fraudulent scheme and other misconduct.

161.    Banks's breaches of her duty of care constituted gross negligence, in that Banks's misconduct was willful and wanton, and exhibited a reckless indifference to or a deliberate disregard of Plaintiff's rights beyond the bounds of reason.

162.    As a direct and proximate cause of Banks's negligence, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Banks's breaches of fiduciary duties; (b) injunctive and equitable relief to preclude Banks from profiting over her misappropriations of Shimbly's trade secrets and other proprietary information; (c) exemplary and/or punitive damages as a result of Banks's willful and malicious misconduct; (d) Plaintiff's attorney fees; (e) interest and costs; and (f) any such further relief that this Court deems just and appropriate.

### COUNT XV (AGAINST BANKS)
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

163.    Plaintiff re-alleges and incorporates by reference paragraphs 1-93 as though fully set forth herein.

164.    Banks's conduct was extreme and outrageous, and Banks knew that there was a high probability that her conduct would cause severe emotional distress to Plaintiff.

165.    Banks actions were from a position of power to steal the company from Plaintiff.

166.    Banks's conduct in fact caused severe emotional distress to Plaintiff.

167.    As a direct and proximate cause of Banks's negligence, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Banks's breaches of fiduciary duties; (b) injunctive and equitable relief to preclude Banks from profiting over her misappropriations of Shimbly's trade secrets and other proprietary information; (c) exemplary and/or punitive damages as a result of Banks's willful and malicious misconduct; (d) Plaintiff's attorney fees; (e) interest and costs; and (f) any such further relief that this Court deems just and appropriate.

## COUNT XVI (AGAINST ALL DEFENDANTS)
## SHIMBLY DERIVATIVE CLAIMS

168.    Plaintiff re-alleges and incorporates by reference paragraphs 1-102, 117-132 as though fully set forth herein.

169.    Plaintiff's Counts I, II, VI, VII, and VIII also are filed on behalf of Shimbly, as derivative claims, in that Shimbly suffered damages caused by Defendants' above-alleged misconduct. For example, Plaintiff's misconduct alleged in Counts I, II, VI, VII and VIII caused Shimbly to suffer damages consisting of its destruction as a viable company, the loss of all value of its stock, lost profits in an existing and competitive marketplace, and additional direct and consequential damages.

170.    Plaintiff did not make any demand on Shimbly and/or Banks to institute this action because such a demand would have been a futile, wasteful, and useless act. As Shimbly's CEO

accused of serious wrongdoing, and having seized control over Shimbly, Banks's interests were (and are) directly adverse to bringing an action on behalf of Shimbly against herself.

171.    As a direct and proximate cause of Defendants' misconduct, Shimbly suffered injuries for which Plaintiff seeks monetary damages, including compensatory, exemplary and punitive damages, as set forth in the ad damnum clauses for Counts I, II, VI, VII, and VIII, which are incorporated by reference as though fully set forth herein.  This is not a collusive action to confer jurisdiction that the Court would otherwise lack.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor on behalf of Shimbly, and award Shimbly damages including, without limitation: (a) Shimbly's direct and consequential damages caused by Defendants' misconduct; (b) injunctive and equitable relief to preclude Banks from profiting over her misappropriations of Shimbly's trade secrets and other proprietary information; (c) exemplary and/or punitive damages as a result of Defendants' willful and malicious misconduct; (d) Plaintiff's attorney fees; (e) interest and costs; and (f) any such further relief that this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby requests and demands a trial by jury on all factual issues that are triable by a fact-finder.

## RESERVATION OF RIGHTS

Plaintiff has filed a charge with the Illinois Department of Human Rights ("IDHR") as a result of Defendant Banks's sexual harassment and discrimination of Plaintiff.  Accordingly, Plaintiff has refrained from asserting those allegations and claims in this Complaint, and respectfully reserves and preserves his right to assert those allegations and claims herein based on IDHR's disposition of Plaintiff's charge.

Respectfully submitted,

*/s/ Hillard M. Sterling*
HILLARD M. STERLING

Dated: October 26, 2021
HILLARD M. STERLING
ARDC No. 6232655
CLAUSEN MILLER P.C.
10 South LaSalle Street, Ste. 1600
Chicago, Illinois 60603-1098
(312) 606-7747; hsterling@clausen.com
**ATTORNEY FOR PLAINTIFF**

44

## RULE 23.1 VERIFICATION

I, Derek Khanna, am the named Plaintiff in this action.  I am a shareholder of Shimbly Corporation, and have been at all times through the relevant period alleged in this Verified Complaint.  I have reviewed the allegations in this Verified Complaint, and state that the matters stated therein about which I have personal knowledge are true, and that the other matters stated therein are true and accurate to the best of my knowledge, information, and belief.  Having reviewed a copy of this Verified Complaint, I hereby approve and authorize its filing.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on the 27th day of October 2021.


_____
Derek Khanna