EXHIBIT A-1

```
 1                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3   DEREK KHANNA, Individually      )  Docket No. 21 C 05752
     and derivatively on behalf of   )
 4   Shimbly Corporation,            )
                                     )
 5                   Plaintiff,      )  Chicago, Illinois
                                     )  February 3, 2023
 6            v.                     )  10:02 a.m.
                                     )
 7   KATELYNN BANKS, et al.,         )
                                     )
 8                   Defendants.     )

 9
              TRANSCRIPT OF PROCEEDINGS - Motion Hearing
10            BEFORE THE HONORABLE VIRGINIA M. KENDALL

11
     APPEARANCES:   (Via Videoconference)
12

13   For the Plaintiff:      ROETZEL & ANDRESS by
                             MR. HILLARD M. STERLING
14                           30 North LaSalle Street, Suite 2800
                             Chicago, IL  60602
15

16   For the Defendants:     FRIEDMAN & FEIGER LLP by
                             MR. KYLE AUSTIN COKER
17                           17304 Preston Road, Suite 300
                             Dallas, TX  75252
18

19

20

21

22   Court Reporter:         GAYLE A. McGUIGAN, CSR, RMR, CRR
                             Official Court Reporter
23                           219 S. Dearborn Street, Room 2504
                             Chicago, IL 60604
24                           312.435.6047
                             gayle_mcguigan@ilnd.uscourts.gov
25
```

1          (Proceedings heard via videoconference.)

2               THE CLERK:  21 C 5752, Khanna versus Banks.

3               Please introduce yourself, starting with plaintiff's

4     counsel.

5               MR. STERLING:  Yes.  Good morning, your Honor.  This

6     is Hillard Sterling.  I represent plaintiff, Derek Khanna.

7               THE COURT:  Good morning, Mr. Sterling.

8               MR. COKER:  Good morning, Judge.  Kyle Coker

9     representing the defendants, Shimbly and Katie Banks.

10              THE COURT:  Okay.  Good morning.

11              Now, I inherited this from my colleague, Judge

12    Feinerman.

13              Can someone fill me in, please, on this rule to show

14    cause and maybe some past history that might help me get up to

15    speed?

16              MR. STERLING:  Thanks for the opportunity.

17              Yes.  The motion for rule to show cause and for

18    sanctions under Rule 37(b)(2) is based upon what we argue are

19    multiple violations of an order entered by the Court on

20    November 9th.

21              The order required defendants to produce documents by

22    December 5th.  And it incorporated by reference the entirety of

23    the documents, the five categories of documents that we were

24    seeking in our motion to compel.

25              Unfortunately, from our perspective, after December

1    5th -- first of all, that date came and went.  And then we

2    received a small production that was grossly incomplete, with

3    major gaps.  So I sent a letter to Mr. Coker on December 21st,

4    which laid out, in strong detail, five categories, all of the

5    documents that we did not see in the supplemental production

6    and, again, that were missing from the initial production.

7        Then -- I've had multiple meet-and-confers with

8    Mr. Coker over that time frame and thereafter.  And that led to

9    a commitment to produce documents and try to fill these gaps so

10   we could avoid motion practice -- or try to avoid motion

11   practice.

12       Unfortunately, though, we received a supplemental

13   production on January 23rd that shared very little.  It was a

14   very small production.  They omitted the vast majority of

15   documents we were seeking.

16       And, your Honor, I think it's important to note, and

17   you'll see in the motion, that these are not documents that are

18   difficult to find.  These are -- these are documents that were

19   generated during the course of approximately a year's work on a

20   technology start-up company that was going to be a major player

21   in the E-real estate area, competing with companies like

22   Zillow.  And there was a ton of development work that was done.

23   Derek, my -- Derek Khanna, my client, and Katelynn Banks were

24   the main drivers of the company, but there were many employees,

25   independent contractors, there was testing going on, beta work,

1    so there are these vast platforms, technology platforms, email

2    platforms that were created and used extensively by the

3    parties.  There were Google documents and calendars.  These are

4    examples of the five categories of documents that we're

5    referencing here, your Honor.  Calendars.  Financial documents

6    were the fourth category.  And then documents, the fifth one

7    that was missing and was not found anywhere in the January 23rd

8    production, were documents that had to do with defendant Banks'

9    lone defense in this case, which is unclean hands.

10            There are no other -- there are no counterclaims.

11    There are no other allegations by Defendant Banks.  And he

12    asserted an unclean hands defense essentially based upon two

13    factual themes.

14            One is that she argued that Shimbly wasn't a real

15    company, it wasn't functioning, despite all the work that

16    happened to get it to, really, the 11th hour and 59th minute of

17    release.  It was -- the company was just about ready to launch

18    in late 2020.

19            So that is one thing, that she's saying that Shimbly

20    wasn't really functional and it wasn't a real company, which we

21    dispute strongly.

22            The second has to do with some allegations against my

23    client involving the alleged unauthorized practice of law, that

24    he misrepresented his law status, his law degree.  So we wanted

25    documents that we know exist, that Mr. Condon (phonetic) knows

1  existed because he saw them.

2      Defendant Banks, for example, submitted multiple

3  recommendation letters to multiple academic institutions on

4  behalf of Mr. Khanna, which contradict and defeat many of the

5  allegations.

6      We used several Trello messages that were in our

7  possession at the initial phase of the Rule 30(b)(6) deposition

8  of Shimbly, which started on August 25th.  And we gained these

9  documents because we had them.  And they weren't anywhere in

10  the production.

11      So we have -- we set out, your Honor, in great detail

12  many categories of documents that we know exist that -- because

13  we've seen them or they're in the production or they were

14  tremendous development platforms with wealth -- a wealth of

15  documentation and information showing the development status of

16  Shimbly, yet they're not in there.

17      So we had no choice, your Honor, but to get the Court

18  involved and file this motion to try to remedy the harm that

19  has been caused already.

20      This case now -- we filed this case, your Honor, back

21  in October 2021.  We filed discovery -- we served our discovery

22  requests in April 2022.  And here we are, stuck at the starting

23  line, because we just haven't gotten information that we know

24  is out there.

25      I know Mr. Coker has been trying to work with his

1    client.  He's the second lawyer in this case.  He came

2    relatively late on.  But we, quite frankly, don't believe that

3    Defendant Banks has been taking the discovery process

4    seriously.  And we really do need stringent relief from the

5    Court, relief that will address the harm and compel them to

6    actually comply with the November 9th order.

7            That's what our motion is all about, your Honor.  And

8    we appreciate your help with this.

9            THE COURT:  Okay.  Mr. Coker, what's going on with you

10   and your client?  Are you able to get these documents from your

11   clients?  Because, clearly, there's a tremendous pile of

12   information that has not been turned over.

13           MR. COKER:  Well, first, your Honor, I think that part

14   of the issue is, like you, I inherited this case as well

15   further along the way, and that was only -- I think it was back

16   in November we came in.

17           The issue that we ran into before that was prior

18   counsel had not been responding to Mr. Sterling and had not --

19   and basically blew the deadline to object to their discovery

20   requests.  And so it was simply we came in, and it was "produce

21   everything."  And so, of course, when I came in, I've been

22   going through, trying to understand what has gone on and what's

23   going on in this case.  And as I understand more about what

24   Mr. Sterling is requesting and what his client says exists,

25   I've been able to go back and get more.

1          And the first kind of part of the production, there

2     were -- because Mr. Sterling and I are regularly speaking about

3     these issues, we produced it.  And it was simply let me know if

4     your clients need something else, because I'm kind of playing

5     catch-up, running around trying to get everything together on

6     my end, and I need to know if something is not there.  The

7     intention is to produce everything.

8          And when he came back and gave -- he sent his letter

9     on December 21st.  It was right before Christmas.  We got back.

10    We conferred about those issues.  I went back to my client, and

11    I said, "Okay, let's go do, from top to bottom" -- because

12    we -- I haven't even gotten the file from the prior attorney,

13    which is a problem in this case, too, but -- I don't even know

14    what was produced already.  But I said:  Let's go through and

15    search through all of these different categories again and find

16    every single thing that we possibly can that could be

17    responsive.  And for the categories, because we're -- we're

18    trying to build these categories that are very broad.  For the

19    categories, if there's anything you don't understand or there's

20    a question that you have, outline out what you sent me and

21    outline out why there's a problem or, you know, what's going on

22    with the other portions.

23         And so I actually provided -- you know, took that

24    summary my client sent me.  I've gone over it with Mr. Sterling

25    and sent that to him.  And what I proposed was that our clients

1    actually get on a call with both of us, and his client

2    expresses to my client -- because they know more about this

3    company than Mr. Sterling or I ever would -- what exactly it is

4    or -- that he is referring to that hasn't come in.

5            Because, for instance, on the (inaudible) side of the

6    equation, where you've got this, you know, design architecture

7    and parts that involve the development of, you know, their --

8    what they were building is their kind of online product.  Those

9    portions -- my client is not a developer, and she's trying to

10   give him everything, but I don't even think that we've had

11   access to some of those things.  And some of the things that

12   we've been requesting, we can't just go download all of the

13   data.  We've been trying to provide them the access information

14   to actually get into those accounts.  And so that's -- that's

15   kind of Part 1 to the issue.

16           Part 2 is there is -- we've had to go through and dig

17   out through several other business and personal accounts to

18   look for different things in this, and we've done that.  But

19   what we've discovered is prior to, I believe, even the

20   defendant -- or the plaintiff in this case leaving the company,

21   that prior employees' emails and Slack files were -- I think

22   Slack accounts as well, were not being paid after they left.

23   And so we went in to, say, Google and tried to get access to

24   those.  And even after paying for the accounts to be, you know,

25   restarted at this point, two years after they've been turned

1    off or haven't been paid and those emails were discontinued

2    with the company, it wasn't providing us any of the history of

3    those accounts.  And so we are working right now to try to get

4    Google and Slack to turn over the things that we just don't

5    have access to right now.

6            And Mr. Sterling and I -- I understand why he felt the

7    need to file this motion.  We actually spoke about that before

8    this hearing this morning.  And it's partly because we keep

9    running up to the end of the fact discovery deadline, and we're

10   having to go through and just -- we both want to get everything

11   out in the open and on the table and -- so we can move on and

12   finish up depositions.  And right now it looks like that

13   Mr. Sterling wants to send out more third-party subpoenas.  I

14   think we're going to have to send out a couple if we don't get

15   a response back from some of these providers.

16           But since -- I can say since I came on board, there's

17   been no intention to withhold anything.  I think Mr. Sterling

18   would confirm that on my end.  And I can tell you that my

19   client has been responsive to me on anything that I've asked

20   her for.  And we've actually been trying to speed up the

21   process, been trying to file those documents away and organize

22   them so that if you need to go through by category, so that

23   Mr. Sterling can tell you -- tell me what else it is, you know,

24   whether it's, you know, some type of third-party architecture

25   platform that we need to go pull data off of or what have you,

1    so that I can get him everything.

2           Your Honor, I was -- I'm hesitant to move forward with

3    this motion -- or this hearing without objecting because I'm

4    actually in Dallas and we've been iced in all week.  And so the

5    afternoon that Mr. Sterling filed his motion, our office has

6    been shut down.  We haven't been able to drive anywhere.  And

7    leading up to that, the week before, we moved offices.  And so

8    I've been having all kinds of issues with my network.  In fact,

9    my network and all of my accounts are down this morning, for

10   some reason.

11          And so that's kind of what I've been dealing with

12   because, frankly, we're not as adept at dealing with ice and

13   snow as you all up there.

14          So I haven't -- I can tell you, your Honor, I would

15   love to respond to some of the portions of Mr. Sterling's

16   motion.  And I think that, from what Mr. Sterling and I

17   discussed prior to this, I think it would be helpful if we just

18   went ahead and put a briefing schedule in place, because I

19   think by the time we get to -- if this Court would do that, I

20   think by the time we get through the motion, we would

21   drastically narrow down the issues.  And the only concern is we

22   may need help on the -- extending some of the discovery

23   deadlines to give us time to get some of the subpoenas in and

24   take a couple of depositions right after, finish up Ms. Banks'

25   corporate deposition, do her individual deposition, and

1    Mr. Khanna's deposition.  And then I think, at that point, we

2    will be -- we will be caught up and everybody will be moving at

3    the same speed.

4           And so that's -- and I think that there will still be

5    some disputes at the end of it as far as Mr. Khanna saying you

6    have this and we don't.  And I think we may have to come back

7    and address some of those issues.  But it's not the full list

8    of, you know, all of these different categories.  And it hasn't

9    been due to anybody trying to withhold anything.  It's just we

10   got an order that said "produce everything."  And they're very

11   broad requests.  And we're having to go in and pull from a lot

12   of different accounts for all of the different employees and

13   try to track down how to get into a lot of them along the way.

14          So it's -- I don't know if Mr. Sterling would argue

15   with saying -- with what I'm going to say, which is that we

16   have been working together since I've come on board.  I've been

17   responsive to him.  I think that we have a very productive

18   relationship on getting these things through.  And the pressure

19   right now that I know that Mr. Sterling is feeling is that all

20   of that is great, but if we run up into the end of the

21   discovery deadline, he's in a bad position.

22          THE COURT:  What is the discovery deadline?

23          MR. STERLING:  March 31st, your Honor.

24          THE COURT:  Okay.  Well, with the new attorney, who is

25   trying to work with you and is in an ice storm, I'm going to

1    enter and continue the motion to compel for four weeks.  So you

2    work together with trying to give him what he's requesting.

3              I'll have a status hearing with you in four weeks.  At

4    that status hearing, you can tell me what's left.  If there are

5    still items that are left, we will have you respond to that in

6    your written response, and I'll deal with it.

7              I'll move out your fact discovery to the end of May,

8    so May 31st, if that's a court date, Lynn.

9              And if you do get into a situation where you're going

10   to need a little more hand-holding, then I'm probably going to

11   send you to the magistrate judge because I have a really full

12   trial schedule.  I just happened to take off today to do

13   virtual hearings and get some other writing caught up because

14   the -- it's just hard to do trials every day of the week and

15   not get the rest of your work done.  So you might get a

16   referral.  But let's see how you do on your own without that

17   first.

18             So four weeks to work on that list and whittle it

19   down.  And then if there's anything left, I'll give you the

20   dispositive -- not dispositive, the briefing schedule on the

21   motion.  Okay?

22             Lynn, can you give me some dates?

23             THE CLERK:  Your Honor, March 3rd is actually a day

24   that you are not sitting, so it would have to be March 10th,

25   which is a Friday.

1    THE COURT:  Yes, that's fine.

2    THE CLERK:  And then end of fact discovery would be

3 May 31st.  It is a day.

4    THE COURT:  Perfect.

5    All right, everyone.  Good luck with that.

6    MR. STERLING:  Thank you, your Honor.

7    May I add one point?  And I don't want to take more of

8 the Court's time.  I appreciate that you've been very receptive

9 to all -- both of our points.

10    I just want to make one thing clear.  It's not -- I

11 didn't mention it before, but it's in the motion, and this is

12 our biggest concern, is that we're -- we do have evidence that

13 documents have been spoliated.  There's specific -- there are

14 massive accounts that have been --

15    THE COURT:  I saw that in the motion.

16    MR. STERLING:  Okay.  I have a feeling, at the end of

17 the day, we certainly will be before you on those issues

18 because -- unless they somehow find those documents, but we've

19 received specific confirmation that multiple categories have

20 been destroyed.

21    THE COURT:  Okay.  All right.  Well --

22    MR. COKER:  Your Honor, you heard it from me, too.  I

23 mean, I'm sitting in front of you saying that these accounts

24 are the ones that we're having -- these other employees that

25 left the company are the ones that we're having trouble getting

1    access to.  There is no deleting of evidence.  And I went and

2    told Mr. Sterling the exact same thing about that a couple

3    weeks ago when I uncovered -- that was part of the reason we

4    were having trouble tracking those down.  But there has not

5    been any go out and just delete documents or something.  It's

6    literally -- there's certain accounts, like with Slack, that,

7    if it's direct messages between users, it doesn't matter if you

8    own the group Slack account --

9              THE COURT:  Yes, I'm not going to get into that today.

10   That's not my purpose today.  My purpose today is to give you a

11   little bit of breathing room based upon the continuity of

12   counsel in this case and your own work situation, which is out

13   of your control, and let you respond as much as possible to

14   narrow the issues, and we'll go from there.

15             So I'll see you in a month, okay?

16             And good luck.  And try hard to clean it up before I

17   have to handle it a motion, okay?

18             All right.  Thanks, folks.  Have a good day.

19             MR. STERLING:  Thank you, your Honor.  Enjoy your

20   weekend.

21             THE COURT:  You, too.

22             MR. STERLING:  Thanks.

23             THE CLERK:  Court is adjourned.

24             And our WebEx hearings have concluded.  You can please

25   log off.

1       (Proceedings concluded at 10:22 a.m.)

2                   C E R T I F I C A T E

3       I certify that the foregoing is a correct transcript, to

4   the extent possible, of the record of proceedings in the

5   above-entitled matter, given the limitations of conducting

6   proceedings via videoconference.

7

8
    /s/ GAYLE A. McGUIGAN                        February 9, 2023
9   Gayle A. McGuigan, CSR, RMR, CRR                  Date
    Official Court Reporter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



**ROETZEL**
ROETZEL & ANDRESS, A LEGAL PROFESSIONAL ASSOCIATION

EXHIBIT A-2

30 N. LaSalle Street, Suite 2800
Chicago, IL 60602
Direct Dial 312.962.8082
PHONE 312.580.1200 FAX 312.580.1201
hsterling@ralaw.com

WWW.RALAW.COM

February 9, 2023

**VIA EMAIL ONLY**

Kyle A. Coker, Esq.
Friedman & Feiger, L.L.P
5301 Spring Valley Road, Ste. 200
Dallas, TX 75254
kyle@fflawoffice.com

Re: *Derek Khanna v. Katelynn Banks et al., Case No. 21-cv-5752 (N.D. Ill.): Issues to Address Prior to Next Hearing on Sanctions Motion*

Dear Kyle:

This letter follows-up our discussions before and with Judge Kendall at the hearing on February 3, 2023. I appreciate that the parties have committed to work together and attempt to resolve/narrow issues before the hearing on March 10, 2023. To further our efforts, I am writing to list specific issues that we need to address, and attempt to resolve, for each of the document categories discussed in the sanctions motion.

Please review the below list with your client, and respond to the inquiries with specific information. I hope and expect that this process will help to focus, and ideally narrow, the issues that the Court needs to resolve in connection with the pending motion. Once we receive your specific responses, let's discuss the prospect of holding a meet-and-confer discussion including our respective clients, as we discussed, to attempt to make additional progress before the March 10th hearing.

**I. Email and Text Accounts**

**Shimbly Email Accounts:** As discussed in Plaintiff's motion, Defendants' productions include some emails from only one Shimbly email account – Katy@shimbly.com – and no documents from the others compelled by the Court on November 9, 2022. Specifically, Defendants' production omits any emails from Derek@shimbly.com, Theo@shimbly.com, Eirik@shimbly.com, Emily@shimbly.com, Athena@shimbly.com, Alex@shimbly.com, Bronte@shimbly.com, and Thomas@shimbly.com. The emails that were produced from Katy@Shimbly.com, moreover, are incomplete, in that Defendants' production omits multiple emails that Plaintiff received from that account (and produced in this case).

Practical Advice. Real Solutions.
That's the Roetzel way.

ralaw.com

Kyle A. Coker, Esq.
February 9, 2023
Page 2

In addition, as discussed in the motion, we are aware of eight email notifications that the "deletion" of the compelled accounts "was successful." Accordingly, we are concerned that the prior email accounts were spoliated.

Defendants also produced no emails from any other email accounts used during the course of the parties' work in connection with Shimbly (other than messages to Plaintiff), including emails from Katy@cindybanks.com and Defendant Banks's Gmail accounts. We also are aware of another email account created by Defendant Banks -- Shimblysaver@gmail.com – yet we received no emails from that account. Plaintiff has produced over 400 emails from accounts used by Defendant Banks, including Katy@cindybanks.com and her Gmail account, but Defendants did not produce those emails, which indicates that there must be many other emails that were not searched for and produced.

In your email of January 20, 2023, referencing the Shimbly.com email accounts, you state that "the Company discontinued paying for the other accounts right after the respective Company members left the Company, stemming back from when Derek worked there," and that "[n]othing has been deleted, but after attempting to reinstate the accounts, they did not have the prior emails available. We are attempting to request from the email provider, and may have to issue a joint subpoena with you to get access, as we've discussed."

We need to understand how, when, and when "the Company discontinued paying for the other accounts," and why "after attempting to reinstate the accounts, they did not have the prior emails available." Your statement that "nothing has been deleted" is encouraging, but how can that be true if the email provider "did not have the prior emails available"? Also unclear is why your client does not have access to the accounts, or why we need a subpoena, given your client's ability to download and produce these emails (if they indeed exist)

If email accounts have been deleted, please let us know when, why, by whom that occurred, and what efforts were made to preserve them. We also did not receive the several Trello messages that were used as exhibits in the initial phase of Shimbly's Rule 30(b)(6) deposition, which raises concerns that Defendants have significant numbers of Trello messages and similar materials that were never accessed or reviewed for production.

**Text Accounts:** Defendants produced almost no texts during the entire timeframe of discovery in this case, except for a limited number of texts with certain persons in January 2022. That small production, moreover, omitted any texts with persons who were heavily involved in Shimbly and in ongoing communications with Defendant Banks. We know that there must be substantial additional responsive texts from mobile devices used by Defendant Banks, including texts with Eirik Somerville, designers, members of the Cindy Banks Team, Shimbly advisors, and others. Has your client searched her mobile devices for relevant texts? If so, how were those searches undertaken? Have any texts been deleted and when? Similarly, we have received no communications that we know occurred between Defendant Banks and others on additional platforms including Instagram Direct Messages, all of which are clearly relevant and responsive.

Kyle A. Coker, Esq.
February 9, 2023
Page 3

**Slack Messages:** We know that Defendants produced 13% of Slack messages which were sent in public channels to which Plaintiff had access, but Defendants omitted 87% of private Slack channels and messages to which Plaintiff did not. The production from Slack, which was a primary Shimbly-related communications tool, is missing approximately 17,829 messages. Also, Defendants did not produce any private Slack channels (of which dozens are known), any single individual or group messages, or any accounts used by the multiple Shimbly consultants. Not only did Defendants produce only 13% of the Slack messages, but Defendants produced none of the documents or materials in Slack. In fact, Defendants' overall production of 5 MB constitutes less than 1% pf the responsive data in Slack.

Your January 20th email states that "we redownloaded the entire export file" for the Slack accounts, but based on the above, we know that substantial Slack accounts have not been downloaded and produced. As with the Shimbly email accounts, you state that you are attempting "to get access to the direct accounts we referred to," and that "[w]e may have to issue a subpoena for these," but we do not understand how or why your client cannot access these accounts to which she has had access during the entire duration of her work on Shimbly (and presumably thereafter). Does your client really lack access, and why has that changed? It does not seem correct that she had access and now does not, and again (like the Shimbly emails) it is unclear how or why a subpoena would be necessary to access and download these accounts.

Please let us know if the Slack accounts still exist. If they do, please let us know why they have not been produced in their entirety, given the fact that everything in the account is relevant and responsive (and was compelled to be produced). If they do not exist, were these accounts deleted? If so, by whom, when, and why?

## II.    Design, Development, and Testing Documents

Defendants produced only a small fraction of Shimbly design, development, and testing documents. Defendant Banks's entire supplemental production consisted of 2GB, but even one MongoDB file is 29.15GB. The missing Slack account (which includes these design and development documents) is 3GB; Jira has at least 10 members; the AWS platform has significant code and additional information; Figma and Adobe XD have wireframes and additional responsive information; and Defendant Banks has access to additional platforms – including cindybanks.atlassian.net – which contain responsive documents (including a new "Team" named Shimbly to which she invited herself in 2021). (*Id.*)

Defendants' 1/23 supplemental production included only three files with design/development links (most of which do no not work) and no actual designs. There are no other design, development, and testing documents required by the 11/9 Order: no MongoDB code, no Slack 3G files, no AWS code, no Chimle.com materials, no Shimbly.com Squarespace materials, no Adobe XD code, no wireframes and code with developers including Messrs. Somerville and Bronte, no prospective patent work, no Wrike documents, no Azure documents,

Kyle A. Coker, Esq.
February 9, 2023
Page 4

no Lucid Chart files, no documents from Github (despite Plaintiff's receipt of a Github invitation from Khayat to Defendant Banks in November 2022), and no code whatsoever. Adding to our concerns of spoliation, Chimblee.com was taken off-line permanently on November 25, 2022.

Your January 20th email proposes to give Plaintiff access to certain of these development platforms, which we welcome. However, your email also states that your client lacks access to several others, or "needs direction on how to access whatever is being requested," which we do not understand given your client's ability to access these accounts throughout the work on Shimbly. As for the accounts to which your client has access, please ask your client for the information that we need to gain such access. As for the others, please let us know why your client does not have access and why her prior access is no longer available. Your email also states that your client does not understand what we want to access in these development platforms, and the short answer is everything, given the fact that they were compelled to be produced by the Court because these development platforms are directly relevant to multiple issues in this case, including those raised by your client regarding the extent to which Shimbly was a viable entity with proprietary development work and trade secrets.

There is a related and very pressing issue to address involving the Wrike accounts. We are aware that the Wrike accounts were deleted on August 26, 2022, and my client has received information that those accounts are being permanently deleted as soon as February 26, 2023, or perhaps sooner, unless action is taken to bring the account current. Your January 20th email states that "we no longer have access" to Wrike, and "may need to subpoena the data." As mentioned above, we do not understand why your client lost access to Wrike (and other accounts), so please explain. In any event, these accounts are of critical importance (and were compelled by the Court), so we request your client to undertake any and all actions that are necessary to preserve them, and to confirm preservation within the next several days, certainly by February 13, 2023. Even better, of course, would be your client's production of those accounts within that timeframe (or, alternatively, your client's assistance in securing my client's access thereto).

The bottom line is that these development platforms and documents should be accessible by your client, and they should be produced in their entirety. Please send us complete information with which to access these accounts. If your client does not have access, please explain why, and let us know the status of your client's communications with these platform providers to secure such access. If any of these accounts were deleted, please let us know when, by whom, and why.

## III.    Shimbly Documents and Calendars

Defendants should have produced all documents and calendars used during the course of the work on Shimbly, including Google Docs, Google Calendar, Lucid charts, and any other document or calendar platforms that include relevant and responsive information. However, aside from two screenshots, Defendant Banks has not produced her calendar or even a singly Shimbly document from those platforms. We know that there are numerous additional responsive documents, particularly since Defendant Banks kept at least one Shimbly-focused running

Kyle A. Coker, Esq.
February 9, 2023
Page 5

calendar (of which Plaintiff produced several screenshots), and likely others that included Shimbly-related entries and information. Also, every Shimbly G Suite account has documents and calendars stored therein.

These documents undoubtedly exist (or used to exist) on eleven Shimbly accounts, and Plaintiff produced copies of those items to which he had access. Adding additional concerns of spoliation, we are aware of notification to Defendant Banks, on June 23, 2021, that her "deletion [of these Google accounts] was successful."

Where are these additional documents, and why have they not been produced? As with the other document categories, these documents are invariably relevant and responsive, and they were compelled by the 11/9 Order in any event. Did Defendant Banks delete these documents, as indicated by the email notification pertaining to the Google accounts, which includes substantial compelled documents, and which should have been preserved? Were any of these documents deleted, and if so, by whom, when, and why were they deleted?

**IV.**     **Financial Documents**

Defendants have not produced all financial documents related to Shimbly, including QuickBooks, budgets, financial models, Shimbly account information, and TranferWise payment information, as ordered by the Court. Defendants' production included nothing from QuickBooks (other than a one-page .pdf summary, proving those documents exist), budgets, financial models, Shimbly account information, and TranferWise payment information.

These documents should be easy to access and produce, and they should have been produced in their entirety, as required by the 11/9 Order. We know that the QuickBooks data existed as of January 30, 2022, when your client produced a one-page .pdf summary therefrom. Why have these compelled financial documents not been produced to date? Are any missing? If so, why? And, as with the other documents, if any were deleted, by whom, when, and why?

**IV.**     **Documents Related to "Unclean Hands"**

The 11/9 Order required Defendants to produce specific documents related to Defendant Banks's unclean-hands defense, *i.e.*: (1) emails and texts reflecting the creation and execution of the Founders Agreements (several of which were used as exhibits in the Rule 30(b)(6) deposition, but were not produced by Defendant Banks), (2) MBA recommendation letters submitted by Defendant Banks to Harvard, Wharton, Stanford, and Dartmouth in early 2020, reflecting her knowledge of Plaintiff's bar status and Plaintiff's law degree, (3) additional documents (including communications) reflecting Defendant Banks's knowledge of Plaintiff's law degree and status of his bar license, and Plaintiff's disclosure thereof, including his communications to Defendant Banks regarding his inability to give legal advice and Defendant Banks's need to secure independent counsel, and (4) any other documents bearing on Defendant Banks's 'unclean hands' defense, her sole defense in this action.

Kyle A. Coker, Esq.
February 9, 2023
Page 6


Defendants produced none of these documents, even the several Trello messages used in initial phase of Defendant Shimbly's Rule 30(b)(6) deposition. There is no cognizable reason for Defendants' failures to do so, which raises the inference that these documents have been deleted. Please let us know why Defendants have not produced these documents, and if they were deleted, we need to know the specifics in order to determine the extent to which there was spoliation – by whom were they deleted, when were they deleted, and why were they deleted?

We look forward to and appreciate your prompt responses to the above issues and inquiries, so that the parties have a fair opportunity to address and potentially resolve at least some of the issues raised by the pending motion.


Regards,

Hillard M. Sterling

EXHIBIT A-3

| | |
|---|---|
| **From:** | |
| **Sent:** | Tuesday, February 28, 2023 9:28 AM |
| **To:** | kyle@fflawoffice.com |
| **Subject:** | RE: RE: Khanna/Banks: Subpoenas |

Good morning Kyle, I'm writing because I haven't heard back in response to my 2/9 letter. We are almost one month since the 2/3 hearing, and quickly approaching the 3/10 status hearing, with no real progress on addressing the issues raised in the pending sanctions motion. That was the purpose of my 2/9 letter – to list the issues and tee up a discussion, ideally involving our clients. However, we are running out of time to make meaningful progress before the hearing.

Quite frankly, you appear to have gone radio silent after the 2/3 hearing, just after your 2/6 email referencing a "disparity" between our discussions before and my statements at the 2/3 hearing. I don't agree with that, and I believe that there's a true and stark disparity between our discussions before the 2/3 hearing, when you appeared focused on trying to resolve the many discovery issues, and your lack of responsiveness after the hearing, which is decreasing if not eliminating our opportunity to resolve those issues.

You also haven't responded to my emails involving the CBT and Somerville subpoenas. With CBT and Somerville also failing to respond, I have no choice but to file motions for contempt. I also haven't received anything after our discussions about the subpoena served on your firm.

Please reply with specifics in response to my 2/9 letter as soon as you're able, and let's try to make some progress before we get closer to the 3/10 hearing.

Thanks.

Hillard Sterling
Shareholder

30 N. LaSalle St.
Suite 2800
Chicago, IL 60602
Direct Phone No.: 312.962.8082
Telephone: 312.580.1200
Facsimile: 312.580.1201
Email: HSterling@ralaw.com
www.ralaw.com
Roetzel & Andress, A Legal Professional Association

*Both Hillard Sterling and Roetzel & Andress intend that this message be used exclusively by the addressee(s). This message may contain information that is privileged, confidential and exempt from disclosure under applicable law. Unauthorized disclosure or use of this information is strictly prohibited. If you have received this communication in error, please permanently dispose of the original message and notify Hillard Sterling immediately at 312.962.8082 EX.358082. Thank you.*

EXHIBIT A-4

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| **SHIMBLY CORPORATION,** | ) | |
| a Delaware Corporation, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. 2021-L-000211 |
| | ) | |
| **v.** | ) | Hon. Margaret A. Brennan |
| | ) | |
| **DEREK KHANNA,** | ) | |
| | ) | |
| *Defendant.* | ) | |

<u>**PLAINTIFF'S RESPONSE TO DEFENDANT'S COMBINED MOTION TO DISMISS**</u>

Plaintiff, Shimbly Corporation files this Response to Defendant's Combined Motion to Dismiss in the above-styled and numbered cause, respectfully requests this Court to deny Plaintiff's Combined Motion to Dismiss, and in support thereof, shows the Court as follows:

## I.       INTRODUCTION

Defendant's Combined Motion to Dismiss consistently fails to clearly articulate grounds to dismiss under the separate 735 ILCS 5/2-615 and 735 ILCS 5/2-619 motion to dismiss standards. Illinois law is clear that the two motions to dismiss must be segregated and considered separately if both are filed together in a combined motion pursuant to 735 ILCS 5/619.1.

Under a 735 ILCS 5/2-615 (hereinafter "Section 2-615") analysis, the Court only tests whether the legal sufficiency of the complaint as to whether the allegations, when construed in the light most favorable to the plaintiff, and taking all well-pleaded facts and all reasonable inferences that may be drawn from those facts as true, are sufficient to establish a cause of action upon which relief may be granted. The Complaint facts are to be construed as a whole, and so long as the Court finds that any sufficient facts are pled in the Complaint to support contested elements of the claim,

the Court must not dismiss Plaintiff's complaint.

Meanwhile under a 735 ILCS 5/2-619 (hereinafter "Section 2-619") the legal sufficiency of the complaint is admitted, and Defendant may affirmative matters to avoid or defeat the claim. If grounds for dismissal are not apparent on the face of the complaint, the moving party must file an affidavit along with its 2-619 motion to demonstrate the basis or bases for dismissal. Defendant failed to attach any supporting affidavit, and thus is precluded from contesting the pled facts under this analysis.

Defendant's attempts to confuse the standards of review in its Combined Motion to Dismiss, the reality is that Defendant has repeatedly failed to establish proper grounds for the Court to grant its Motion in whole or part. As such, Plaintiff respectfully requests that Defendant's Motion be denied.

## II.     LEGAL STANDARD

### A.     A Combined Section 2-615 Motion and Section 2-619 Motion Must Carefully Segment Arguments, by Statute, for a Reason.

Section 2-619.1 allows a party to file a motion under any combination of Sections 2-615, 2-619, and 2-1005 (summary judgments) as a single motion. 735 ILCS 5/619.1. However, a combined motion must be presented in parts, and each part must specify the section of the Code of Civil Procedure under which it is brought. *Id*. Motions that are not properly identified may be denied if the error prejudices the nonmovant. *Ill. Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484 (1994). In essence, identification of which arguments are which in a combined motion, also amounts to segmentation according to Section 2-619.1. ("Each part shall be ***limited to*** and shall specify that it is made under ***one*** of Sections 2-615, 2-619, or 2-1005") (emphasis added); *See Reynolds v. Jimmy John's Enterprises, LLC*, 988 N.E.2d 984, 370 Ill.Dec. 628 (holding that motions under §2-619.1 must comply with the statute).

**B.**   **In Evaluating a Section 2-615 Motion, the Court Should Accept as True All Well-Pled Allegations, Liberally Construe Those Allegations, and Draw All Reasonable Inferences in the Plaintiff's Favor, <u>Not the Other Way Around</u>.**

A Section 2-615 motion to dismiss is not a fact-based motion; it only tests whether the legal sufficiency of the complaint and asks whether the allegations, "when construed in the light most favorable to the plaintiff, and taking all well-pleaded facts and all reasonable inferences that may be drawn from those facts as true, are sufficient to establish a cause of action upon which relief may be granted." *Napleton v. Village of Hinsdale*, 891 N.E.2d 839, 845 (Ill. 2008); *Bjork v. O'Meara*, 2013 IL 114044, ¶ 21, 986 N.E.2d 626, 630. As the Illinois Supreme Court explained in *Marshall v. Burger King*, "[A] cause of action should not be dismissed pursuant to Section 2- 615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006).

A Section 2-615 motion argues that plaintiff cannot prove any set of facts, under any circumstances, that would entitle him or her to relief. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006).

 Contrary to Defendant's representation in its Motion that "[a] Court must dismiss a complaint that fails to satisfy Illinois' fact-pleading requirement," Section 2-615(d) expressly permits the Court to allow for or require amendment of its pleadings. Alternatively, Courts may enter a dismissal with prejudice "where the party's actions show a deliberate, contumacious or unwarranted disregard of the court's authority." *Cronin v. Kottke Associates, LLC.*, 2012 IL App (1st) 111632, ¶ 45, 975 N.E.2d 680, 692 (quoting *Shimanovsky v. Gen. Motors Corp.*, 692 N.E.2d 286, 291 (Ill. 1998)). Reliance on matters outside the pleadings is a basis for reversal even if those matters would sustain a motion for summary judgment. *Cain v. American National Bank & Trust*

*Co. of Chicago*, 26 Ill.App.3d 574, 325 N.E.2d 799 (1st Dist. 1975).

## C.     A Section 2-619 Motion Unsupported by Affidavit Fails When the Basis of Arguments Rely on Contesting Plaintiff's Properly Pled Facts.

A Section 2-619 motion to dismiss asks the court to look outside the four corners of the complaint and consider defenses that completely defeat a cause of action. 735 ILCS 5/2-619. In other words, a Section 2-619 motion "admits the legal sufficiency of the complaint but asserts affirmative matter to avoid or defeat the claim." *Lamar Whiteco Outdoor Corp. v. City of W. Chi.*, 355 Ill. App. 3d 352, 359 (2d Dist. 2005); *City of Springfield v. West Koke Mill Dev. Corp.*, 728 N.E.2d 781, 787 (Ill. App. Ct. 2000). If grounds for dismissal are not apparent on the face of the complaint, the moving party must file an affidavit along with its Section 2-619 motion to demonstrate the basis or bases for dismissal. 735 ILCS 5/2-619. The movant carries the burden of proof and the concomitant burden of going forward on a Section 2-619(a) motion to dismiss. 4 RICHARD A. MICHAEL, ILLINOIS PRACTICE SERIES § 41:8, at 481 (2d ed. 2011).

Lastly, the Illinois Supreme Court has described an affirmative matter as "some kind of defense 'other than a negation of the essential allegations of the plaintiff's cause of action'" *Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 278 (Ill. 2003) (quoting *Kedzie & 103rd Currency Exch., Inc. v. Hodge*, 619 N.E.2d 732, 735 (Ill. 1993).

## III.     RESPONSE TO DEFENDANT'S SECTION 2-615 MOTION

In Defendant's Combined Motion to Dismiss, Defendant split its combined motion into subsection III(A), identified as Defendant's Section 2-615 motion, and III(B), identified as Defendant's Section 2-619(a)(9) motion. Defendant's arguments in its subsection III(A) of its Motion are limited to Section 2-615 analysis. Under Section 2-615, dismissing the Complaint for deficiencies in pleading is drastic; dismissal is proper only when no set of facts would sustain complaint. *Powell*

*v. Village of Mt. Zion*, App. 4 Dist.1980, 43 Ill.Dec. 525, 88 Ill.App.3d 406, 410 N.E.2d 525.

###### A. Defendant's Section 2-615 Fiduciary Duty Challenge Based on Standing, Relies on Irrelevant "What-If's."

Factual defenses are not available under Section 2-615; the court may consider only the allegations of the Complaint and may not consider supporting affidavits offered by the movant. *Baughman v. Martindale-Hubbell, Inc.*, App. 4 Dist.1984, 84 Ill.Dec. 622, 129 Ill.App.3d 506, 472 N.E.2d 582, appeal denied. Defendant alleges that since it was organized under Delaware law, that Plaintiff should have labeled the breach of fiduciary claim as if it were brought in Delaware, that Plaintiff was required to send a demand which the Complaint does not mention (and isn't an element of Plaintiff cause of action), and the far-fetched idea that a Cook County Court needs to make sure that Plaintiff is current on its Delaware franchise tax before filing suit in Illinois. However, "what if's" relating to another jurisdiction's procedural rules, that of which the proper remedy isn't even alleged by Defendant to be similar to Section 2-615 amendment or dismissal of the suit, is not properly argued at this juncture, if ever. A Section 2-615 motion is to argue that a plaintiff cannot prove any set of facts, under any circumstances, that would entitle him or her to relief. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006).

Lastly, there is no requirement that Plaintiff show that it is in good standing in the State of Delaware in order to bring suit in Illinois. Such information is public record and readily available; out of an abundance of caution, Plaintiff respectfully requests that this Court take judicial notice of Plaintiff's current standing in its state of incorporation and Title 8 of the Delaware Code governing Corporations.

###### B. Defendant Argues That Plaintiff Pled Insufficient Facts to Support its Breach of Fiduciary Claim, While Conveniently Omitting That Plaintiff Properly Incorporated by Reference its Entire Factual Introduction.

In evaluating sufficiency of a Complaint the entire Complaint must be construed as whole rather than separately considering its individual portions. *Gravitt v. Jennings*, App. 1 Dist.1979, 34 Ill.Dec. 720, 79 Ill.App.3d 286, 398 N.E.2d 395. Defendant's arguments as to the specificity of Plaintiff's breach of fiduciary duty claims, completely ignore the fact that Plaintiff properly incorporated by reference its detailed introductory section as allowed by Ill. Sup. Ct. R. 134, instead of needlessly restating the same facts six times over in its Complaint.

Defendant's motion argues that Plaintiff did not sufficiently detail what Defendant did to violate his fiduciary duties and what duties were owed. Whether a duty is owed is a question of law. *Keef v. Widuch*, App. 1 Dist.2001, 254 Ill.Dec. 580, 321 Ill.App.3d 571, 747 N.E.2d 992, appeal denied 258 Ill.Dec. 95, 195 Ill.2d 579, 755 N.E.2d 478. Plaintiff stated in the properly incorporated paragraph 6 of its Complaint that Defendant failed to incorporate, organize the entity, issue shares, advise Plaintiff of the requirements for corporate standing, advise on shareholder meetings, board of director meetings, ensure minutes were maintained, prepare and disseminate corporate bylaws, and establish a proper document retention policy.

Defendant further argues that Plaintiff did not argue what conflict of interest that Defendant failed to disclose and that Plaintiff failed to articulate how Defendant "furthered his own interests." However, Plaintiff clearly stated in Section 19(b) of its Complaint that Defendant failed to disclose the clear conflict by acting as counsel for plaintiff, himself, and for other shareholders in their individual capacities, that in Section 11 that Defendant, as corporate counsel, attempted unilaterally self-deal to himself a substantial amount of stock, and in Section 19(d) that Defendant misappropriate corporate assets; the exact amount and extent of Defendant's misappropriation of assets can more accurately and properly calculated after Plaintiff has conducted discovery. Under these facts, in Plaintiff's Complaint, it does not seem equitable to allow Defendant to play hide the ball as to the

extent of his misappropriation that discovery will shed light on by filing a motion to dismiss.

In deciding a motion to dismiss based on the pleadings, the trial court is to consider only those facts apparent from the face of the complaint, matters of which the trial court may take judicial notice, and any judicial admissions contained in the record. *Bruss v. Przybylo*, App. 2 Dist.2008, 324 Ill.Dec. 387, 385 Ill.App.3d 399, 895 N.E.2d 1102. Out of an abundance of caution, Plaintiff would ask that this Court take judicial notice of the Illinois Rules of Professional Conduct, the Delaware Rules of Professional Conduct, and the Title 8 of the Delaware Code as it relates to self-dealing and conflicts of interest.

### C. Defendant Fraudulently Holding Himself Out as a Yale Law Graduate to Get a Job With Plaintiff is Still Fraud, Even Thought Defendant's Real Law Degree Was Listed on a Online Blogs as Cited by Defendant.

It is safe to assume that Company executives get their position at least primarily based on qualifications, are given such positions by agent with power or by board vote. It is also highly unlikely that a Yale Law degree does not go a long way in attaining such positions. Defendant argues that Plaintiff didn't plead who he made fraudulent statements to, that it was ok that he lied about graduating from Yale law school, because it may have been possible to find online profiles that did not reflect as much, and that it couldn't have contributed to Defendant being given equity in the company and brought in as General Counsel based on Defendant's falsely represented background and experience. The facts are straightforward and consistent throughout the Complaint: Defendant in this case represented to Plaintiff that he was a Yale Law graduate, that Plaintiff brought him in as General Counsel, Plaintiff offered stock as compensation, and that Plaintiff relied on Defendant's fraudulent background to make that decision.

Under a Section 2-615 analysis the Court should make all reasonable inferences from and construe the Complaint in the light most favorable to the Plaintiff. The only facts to be considered in

ruling on a motion to dismiss are those set forth in the complaint under attack. *Karen Stavins Enterprises, Inc. v. Community College Dist.* No. 508, App. 1 Dist.2015, 394 Ill.Dec. 724, 36 N.E.3d 1015. The only reasonable inference that can be made based on these facts is that Defendant made such fraudulent representations to an agent or the board of Plaintiff capable of giving him a position, not an unrelated party, and that its reasonable that someone alleged to have committed all of the acts in the Complaint, which are presumed to be true in this analysis, could also be convincing enough for Plaintiff not to double-check his credentials. The argument in Defendant's Motion purporting to justify Defendant committing fraud just because there is a contradictory public record is laughable.

Furthermore, Defendant further omitted from its motion how Plaintiff's Complaint articulated Defendant's fraudulent statements made outside of the aforementioned Yale Law representations, including Defendant's capacity for management and project design, and capabilities to engage in the practice of corporate law. Plaintiff extensively listed in its Complaint how it was left in shambles because Defendant did not know how to practice corporate law and complied with very few, if any, of the corporate formality requirements that he had represented were within his knowledge base – being a Yale Law graduate with capability to practice corporate law. This was not only material in inducing Plaintiff to give to him a job with, shares in, and the trust of Plaintiff, but it was central to the role he was given.

### D.    Plaintiff's Fraud in the Inducement and Negligent Misrepresentation Claims May be Properly Brought in the Same Suit.

Plaintiff incorporates its arguments contained in Subsection (C) of this response. A claim should not be dismissed on a motion with respect to pleadings unless no set of facts can be proved which would entitle the plaintiff to recover. *Napleton v. Village of Hinsdale*, 2008, 322 Ill.Dec. 548, 229 Ill.2d 296, 891 N.E.2d 839. While Plaintiff's claims may have overlapping supporting facts,

Defendants have failed to argue that a negligent representation claim and fraud in the inducement claim may not be brought in the same action and that they are not separate claims under Illinois law. Should the Court find that Plaintiff need to amend to state such cause of action in the alternative, Plaintiff respectfully requests this Court to allow Plaintiff time to amend.

### E. Plaintiff's Complaint Clearly Describes a Professional Negligence Claim.

Defendant chose to only address a few of Plaintiff's asserted professional negligence supporting facts in its Motion. Not mentioned in said Motion were the factual allegation in the Complaint that detail the list of failures by Defendant to perform in his role as Defendant's General Counsel.

Plaintiff asserted in its Complaint that Defendant was appointed to such position, that Defendant breached his duty of care by not performing most of, if not all of the job organizing and managing Plaintiff in compliance with Delaware law, and that Plaintiff suffered damages due to this breach in a specifically stated sum.    Plaintiff would again ask that this Court take judicial notice of the Delaware and Illinois Professional Rules of Conduct, as well as Title 8 of the Delaware Code relating to duties owed, requirements for establishing and maintaining a corporation under Delaware law, as well as the establishment of an attorney-client relationship. Defendant cannot put on evidence under a Section 2-615 Motion to contest such facts alleged; the face of the Complaint controls.

### IV. RESPONSE TO DEFENDANT'S SECTION 2-619(a)(9) MOTION

In Defendant's Combined Motion to Dismiss, Defendant split its combined motion into subsection III(B), identified as Defendant's Section 2-619(a)(9) motion, and the previously argued subsection III(A) related solely to its Section 2-615 motion. As a combined motion to dismiss must be presented in parts, and each part must specify the section of the Code of Civil Procedure under which it is brought under 735 ILCS § 5/619.1, Defendant's arguments in its subsection III(B) of its

Motion are limited to Section 2-619 analysis, by statute.

        **A.**     **While Defendant (Without Supporting Affidavit) Takes Issues With <u>One</u> Supporting Fact Relating to Plaintiff's Fraud, Inducement, and Misrepresentation Claims, Defendant Makes No Mention of the Various Other Properly Pled Supporting Facts.**

      If grounds for dismissal are not apparent on the face of the complaint, the moving party must file an affidavit along with its 2-619 motion to demonstrate the basis or bases for dismissal. 735 ILCS § 5/2-619. Defendant failed to include any such evidence to contest Plaintiff's asserted facts. In a Section 2-619 motion, Defendant cannot make quasi-Section 2-615 arguments relating to the sufficiency of the amount of facts pled; Defendant must take such facts not contested by affidavits included with its Section 2-619 motion and show the Court as a matter of law why Defendant has an affirmative defense. Again, Illinois Supreme Court has described an affirmative matter as "some kind of defense 'other than a negation of the essential allegations of the plaintiff's cause of action'" *Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 278 (Ill. 2003) (quoting *Kedzie & 103rd Currency Exch., Inc. v. Hodge*, 619 N.E.2d 732, 735 (Ill. 1993).

      The movant for a motion to dismiss cannot merely rely upon evidence offered to refute well-pleaded facts, since well-pleaded facts must be taken as true for the purposes of a motion to dismiss alleging that the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim. *Feldheim v. Sims*, App. 1 Dist.2001, 260 Ill.Dec. 44, 326 Ill.App.3d 302, 760 N.E.2d 123, on subsequent appeal Ill.Dec. 342, 344 Ill.App.3d 135, 800 N.E.2d 410, rehearing denied, appeal denied. Furthermore, with respect to a motion for involuntary dismissal that raises an "affirmative matter avoiding the legal effect of or defeating the claim," the "affirmative matter" must be something more than evidence offered to refute a material fact alleged in the complaint. *Provenzale v. Forister*, App. 2 Dist.2001, 252 Ill.Dec. 808. If it cannot be determined with

reasonable certainty that the alleged defense exists, the motion to dismiss based on certain defects or defenses should not be granted. *Saxon Mortg., Inc. v. United Financial Mortg. Corp.*, App. 1 Dist.2000, 245 Ill.Dec. 455, 312 Ill.App.3d 1098, 728 N.E.2d 537. An affirmative matter presented in affidavits submitted by defendant in support of motion to dismiss must be more than just evidence that refutes well-pleaded fact in complaint. *Griffin v. Universal Cas. Co.*, App. 1 Dist.1995, 211 Ill.Dec. 232, 274 Ill.App.3d 1056, 654 N.E.2d 694.

Defendant did not provide evidence that he ever corrected his false Yale Law degree representations. Plaintiff did not assert that Defendant became General Counsel of Plaintiff prior to Plaintiff being formed, as this would be nonsensical. Instead, Plaintiff asserted Defendant's first time making the false Yale Law degree representations, and that Defendants assertions about his competence to assess and apply corporate law, his experience, and other misrepresentations made to third-parties and Plaintiff regarding the number of shares issued, were intentionally used by Defendant to be appointed General Counsel, be issued shares, and to further attempt to issue himself more shares and wrongfully take Plaintiff's assets; these misrepresentations would have necessarily had to take place after Plaintiff's formation.

**B.      Defendant's Negligent Misrepresentation Argument Relies on Fact Issues Which Remain Uncontested Before the Court Especially in Light of Defendant's Failure to Include <u>Any</u> Supporting Affidavit.**

Defendant cannot assert, without supporting affidavits, outside facts that would contest facts pled in Plaintiff's Complaint under a Section 2-619 analysis. In this case, Defendant asserts that Plaintiff is not a signatory to the agreement for which Plaintiff seeks recission. Joinder problems are not grounds for dismissing entire action or striking complaint; proper remedy for misjoinder or failure to join a necessary party is to dismiss as to the improper party or to order missing party added. *Horwath v. Parker*, App. 1 Dist.1979, 28 Ill.Dec. 90, 72 Ill.App.3d 128, 390 N.E.2d 72. Defendant

has not asserted that Plaintiff was not formed or operated based on the initial agreement, and has not asserted that the initial signatories did not perform on the agreement after Plaintiff was formed as agents of Plaintiff. Frankly, the only evidence before the Court on this matter is that there was a Founder's Agreement and which Plaintiff ultimately granted Defendant shares and a position with Plaintiff.

Further, Defendant arguing that one of multiple requests for relief that may or may not overlap, or that may or may not be awarded together, does not provide that as a matter of law, Plaintiff cannot claim other damages or one or the other of the alleged damages. Plaintiff requested several different types of relief by which it may be entitled, and although Defendant may move to strike portions of the pleadings, such is not available prior to answering in a motion to dismiss.

Even if the Court determined that necessary parties must be joined to the present suit, Defendant has not shown that why as a matter of law that Defendant should prevail on Plaintiff's claims as pled in the Complaint. Defendant's relief sought on this issue would be that the Court order additional parties joined, upon motion, prior to the case proceeding.

**C.     Plaintiff Agrees With Defendant's Assertion That Punitive Damages are Not Proper at this Juncture of the Suit, and Respectfully Requests this Court to Allow Plaintiff to Amend its Complaint.**

Punitive damages may be awarded in common law fraud cases. *Fed'l Deposit Insurance Corp. v. W.R. Grace & Co.*, 877 F. 2d 614 (7h Cir. 1989). However, Plaintiff agrees with Defendant that such a claim is not proper until the case proceeds, and Plaintiff files a motion for leave to amend the complaint to include a prayer for relief seeking punitive damages. Plaintiff would argue however, that the jury may award punitive damages to punish the defendant and discourage the defendant (or others) from similar conduct if the jury finds a defendant's conduct to be: (1) fraudulent, intentional, or willful and wanton; and (2) proximately cause the injury or damage to Plaintiff; and (3) if the jury believes

that justice and the public good require it.

As such, Plaintiff would respectfully request the Court to allow Plaintiff to amend its Complaint to omit the current claim for punitive damages, to allow Plaintiff to revisit this issue in a motion for leave to amend Plaintiff's Complaint when appropriate.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter an order denying Defendant's Combined Motion to Dismiss and grant any other relief deemed just and proper. Alternatively, should the Court find that Defendant's Combined Motion to Dismiss be granted in whole or part, Plaintiff respectfully requests this Court to allow Plaintiff to amend its pleadings, and grant any other relief deemed just and proper.

Date:    April 7, 2021                                         Respectfully Submitted,

                                                               */s/ Todd E. Wallace*
                                                               **Todd E. Wallace**
                                                               ARDC No.: 6279489
                                                               Wallace Law Group, LLC
                                                               Email: todd@twallacelaw.com
                                                               302 E. State Street
                                                               Geneva, IL 60134
                                                               Telephone: (630) 405-7333
                                                               Facsimile: (630) 232-3901
                                                               **Kyle A. Coker**
                                                               *pro hac vice* (pending)
                                                               Texas Bar No.: 24115353
                                                               Email: kcoker@farmerlawgroup.com
                                                               400 S. Zang Blvd., Suite 350
                                                               Dallas, Texas 75208
                                                               Telephone: (214) 948-8333
                                                               Facsimile: (214) 915-8853

                                                               **ATTORNEYS FOR PLAINTIFF**

**6-Person Jury**

EXHIBIT A-5

FILED
1/7/2021 3:34 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
11748607

STATE OF ILLINOIS    )
                       ) ss.
COUNTY OF COOK    )

## IN THE CIRCUIT COURT OF COOK COUNTY,
## COUNTY DEPARTMENT, LAW DIVISION

SHIMBLY CORPORATION, a    )
Delaware corporation,    )
                         )
     *Plaintiff,*          )
                         )    **2021L000211**
    v.                 )    No. _____
                         )
DEREK KHANNA,         )
                         )
    *Defendant.*       )

## COMPLAINT AT LAW

NOW COMES Plaintiff SHIMBLY CORPORATION, a Delaware corporation, by and through its attorneys, FRIEDMAN & FEIGER, LLP, and for its Complaint against Defendant, DEREK KHANNA, an individual, states as follows:

### COMMENCEMENT

1. Plaintiff Shimbly Corporation ("Shimbly" and/or the "Corporation") brings this action against Defendant Derek Khanna, an individual, and alleges breaches of fiduciary duty arising out of his actions in the forming, governance, and management of the affairs of Shimbly.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over the defendant and the subject matter of this action because defendant transacted business within the State and directed communications, directives, and instructions to individuals or entities within the State that proximately resulted in the damages complained of herein.

3. Venue is proper pursuant to 735 ILCS 5/2-201(2) as the complained of transactions, or

# Exhibit A

FILED DATE: 1/7/2021 3:34 PM    2021L000211

some part thereof, occurred in Cook County.

## PARTIES

4.    Plaintiff is a corporation organized and existing under the laws of the State of Delaware. It maintains its principal office at 1717 S. Prairie #1307, Chicago, IL 60616. Shimbly is a budding real-estate technology firm that was formed to enter the competitive market of online residential and commercial property search tools, using its proprietary consumer-based algorithm technology.

5.    Defendant served as General Counsel, Chief Operations Officer, and Chief Strategy Officer of Shimbly from January 22, 2020 to November 12, 2020.

## FACTUAL ALLEGATIONS

6.    Around July of 2019, Katelynn Banks, the current Chief Executive Officer of Shimbly, conceived of the idea and developed the method for a smarter, more efficient way for buyers to find the home of their dreams and for sellers to reach their target market. This brainchild eventually became Shimbly.

7.    Around this same time, Defendant approached Banks and represented himself as a licensed attorney with high technology and intellectual property experience who was an expert in corporate securities law, and who would be an asset to Banks and the future corporation. He represented himself to be a Yale Law graduate and that he was an unrefined genius. However, it was later discovered that Defendant falsely represented that he graduated from Yale Law, but instead obtained a degree from a lesser-ranked law school.

8.    Banks took a chance and invited Defendant to join the team. Banks hired Defendant as General Counsel, Chief Operations Officer, and Chief Strategy Officer of Shimbly.

9.    Shimbly became incorporated on January 22, 2020. At that time, Defendant represented that he had the education, training, experience, and knowledge to carry out his duties as General

FILED DATE: 1/7/2021 3:34 PM    2021L000211

Counsel and, in particular, to incorporate and organize Shimbly and issue shares. However, Defendant failed to do so.

10. Defendant failed to carry out even a semblance of his duties. Defendant never advised Shimbly of the requirements for valid corporate standing nor ensured that the Corporation maintained a semblance of corporate formalities. Defendant failed to advise on the organization of any shareholder meetings, any board of director meetings, failed to ensure minutes were maintained for any meeting, failed to prepare and disseminate corporate bylaws, and failed to establish a proper document retention policy. All the while, he assured Shimbly's shareholders that "all was well."

11. Problems continued in April of 2020 when Defendant, took it upon himself to draft a "Founders' Agreement" in which he represented himself, individually, the company, Banks, and its other individual shareholder, failing to disclose the clear conflict of interests present. He purported to designate substantial equity to himself out of Shimbly's 9,000 authorized shares, coupled with convoluted "vesting" schedules. Each shareholder, trusting Defendant's representations that he, as their attorney, was acting in their best interest, executed the agreement.

12. On June 18, 2020, Defendant, at his insistence, drafted a "Revised Founders' Agreement," now purporting to designate 91,200 shares to himself and Banks, despite Delaware's authorization for only 9,000 shares still in effect. Defendant represented to the shareholders that instead, there were 240,000 authorized shares.

13. The gross absence of any corporate formalities subjected Shimbly and its shareholders to extensive corporate and personal liability.

14. Defendant's tentacles spread beyond corporate governance and investor relations, but throughout the organization itself. Throughout his tenure at Shimbly, Defendant paid himself with

corporate funds without any authorization to do so.

15. On November 12, 2020, Khanna was terminated from his positions as General Counsel, Chief Strategy Officer, and Chief Operations Officer, for cause.

## COUNT 1 – BREACH OF FIDUCIARY DUTY

16. Plaintiff re-alleges and incorporates Paragraphs 6 through 15 as if set forth in full herein as Paragraph 16 of Count 1.

17. Defendant owed fiduciary duties to the shareholders of Shimbly by virtue of his position as a director and officer of the corporation.

18. Defendant has knowingly, recklessly, and in bad faith violated fiduciary duties of care, loyalty, and good faith owed to the shareholders of Shimbly and has acted to put his personal interests ahead of the shareholders.

19. Defendant has breached his fiduciary duties of care, loyalty, and good faith because, among other reasons:

    a. Defendant failed to perform any duties as General Counsel, such as, among others, the failure to advise on or take adequate steps to ensure corporate formalities were maintained;

    b. Defendant failed to disclose the clear conflict of interest by acting as counsel for Shimbly, counsel for himself, and counsel for the other shareholders in their individual capacity, in order to further his own interests;

    c. Defendant made false representations to the investor to induce securing funding to the detriment of the Corporation; and

    d. Defendant misappropriated corporate assets for his personal benefit to the detriment of the corporation, its shareholders, and its creditor.

FILED DATE: 1/7/2021 3:34 PM   2021L000211

20. Defendant's breaches of fiduciary duty proximately caused damages to Shimbly.

21. Shimbly suffered damages in excess of $70,000.00 as a result of Defendant's breaches of fiduciary duty to Shimbly.

**WHEREFORE,** Plaintiff Shimbly Corporation demands judgment against Defendant Derek Khanna as follows:

(A)     The Defendant provide a complete accounting of all funds received from Plaintiff;

(B)     That the Court impose a constructive trust on all property of Defendant on which it cannot provide positive proof of ownership separate and apart from the funds derived from the Plaintiff;

(C)     That the Court enter Judgment in favor of Plaintiff and against Defendant in an amount not less than the amount paid by Plaintiff to Defendant as a result of the breach of fiduciary duty of Defendant;

(D)     Awarding Plaintiff the costs of this action, including a reasonable allowance for the fees of Plaintiff's attorneys and experts; and

(E)     Granting Plaintiff such further relief, general and special, that this Court deems proper.

<h3 style="text-align:center">COUNT II – COMMON LAW FRAUD</h3>

22. Plaintiff restates and realleges Paragraphs 6 through 15 as if set forth in full herein as Paragraph 22 of this Count II.

23. Defendant made material representations to Plaintiff to induce Plaintiff to provide employment and shares to Defendant. Such representations include, but are not limited to the school at which he obtained his law degree, his capacity for management and product design, and his legal capabilities to engage in the practice of corporate law.

FILED DATE: 1/7/2021 3:34 PM    2021L000211

24. Plaintiff, to its detriment, relied on Defendant's representations by hiring Defendant as General Counsel, Chief Operations Officer, and Chief Strategy Officer.

25. Defendant's misrepresentations proximately caused damages to Plaintiff in excess of $70,000.00

**WHEREFORE,** Plaintiff Shimbly Corporation demands judgment from Defendant Derek Khanna as follows:

(A)    That the Court enter judgment in favor of Plaintiff and against Defendant in an amount to justly compensate Plaintiff for the damages it sustained as a proximate cause of Defendant's fraud,

(B)    Awarding Plaintiff the costs of this action, including a reasonable allowance for the fees of Plaintiff's attorneys and experts; and

(C)    Granting such further relief, general and special, that this Court deems proper.

### COUNT III – FRAUD IN THE INDUCEMENT

26. Plaintiff restates and realleges Paragraphs 6 through 15 as if set forth herein as Paragraph 26 of this Count III.

27. Defendant made false representations of material fact, including but not limited to Defendant's competence to assess and apply corporate law for the benefit of the Corporation, the place at which Defendant obtained his law degree, and the valid authorization and issuance of 240,000 corporate shares.

28. Defendant made these representations with knowledge and/or belief of their falsity.

29. Defendant made the misrepresentations with the purpose of inducing the Corporation to retain him as its legal counsel, give him powers as an officer of the Corporation, and issue share ownership to him, among others.

Plaintiff's Original Complaint
HBDOCS#930152

30. The Corporation reasonably relied on the misrepresentations to its detriment.

**WHEREFORE,** Plaintiff Shimbly Corporation demands judgment from Defendant Derek Khanna as follows:

(A)  That the Court enter judgment in favor of Plaintiff and against Defendant in an amount to justly compensate Plaintiff for the damages it sustained as a proximate cause of Defendant's fraudulent inducement,

(B)  Awarding Plaintiff the costs of this action, including a reasonable allowance for the fees of Plaintiff's attorneys and experts; and

(C)  Granting such further relief, general and special, that this Court deems proper.

## COUNT IV – NEGLIGENT MISREPERSENTATION

31.  Plaintiff restates and realleges Paragraphs 6 through 15 as if set forth in full herein as Paragraph 31 of this Count IV.

32.  Defendant had a duty to communicate accurate information as General Counsel for the Corporation and was in the business of supplying information for the guidance of Shimbly in its business transactions.

33.  Defendant made false statements of material fact, including but not limited to the valid authorization of 240,000 corporate shares, his competence to assess and apply corporate law for the benefit of the Corporation, the place at which Defendant obtained his law degree, and was careless and/or negligent in determining the statements' truth.

34.  Defendant made false statements to induce Shimbly to issue substantial share ownership to him by way of the Founders' Agreement and the Revised Founders' Agreement;

35.  In reliance on the statements' truth, Shimbly, through its shareholders, executed the Founders' Agreement and the Revised Founder's Agreement;

FILED DATE: 1/7/2021 3:34 PM    2021L000211

FILED DATE: 1/7/2021 3:34 PM  2021L000211

36. Shimbly sustained damage from its reliance, however, no adequate remedy at law exists to compensate Shimbly for Defendant's misrepresentations and the parties can and should be restored to the status quo ante.

**WHEREFORE**, Plaintiff Shimbly Corporation demands judgment against Defendant Derek Khanna as follows:

(A)     That the Court order rescission of the Founders' Agreement and the Revised Founders' Agreement; and

(B)     Granting such further relief, general and special, that this Court deems proper.

## COUNT V – PROFESSIONAL NEGLIGENCE

37. Plaintiff restates and realleges Paragraphs 6 through 15 as if set forth in full herein as Paragraph 37 of this Count IV.

38. A professional relationship existed between Plaintiff and Defendant arising from Defendant's capacity as General Counsel for Shimbly.

39. Defendant breached his duties arising from that relationship by, among others, failing to disclose conflicts of interest between himself and the Corporation and failing to maintain adequate corporate formalities.

40. Defendant's breaches of duty caused Plaintiff actual damages in excess of $70,000.00.

**WHEREFORE**, Plaintiff Shimbly Corporation demands judgment from Defendant Derek Khanna as follows:

(A)     That the Court enter judgment in favor of Plaintiff and against Defendant in an amount to justly compensate Plaintiff for the damages it sustained as a proximate cause of Defendant's fraudulent inducement,

(B)     Awarding Plaintiff the costs of this action, including a reasonable allowance for the

Case: 1:21-cv-05752 Document #: 38-1 Filed: 02/03/22 Page 9 of 10 PageID #:129
Case: 1:21-cv-05752 Document #: 106-2 Filed: 03/07/23 Page 44 of 45 PageID #:915

fees of Plaintiff's attorneys and experts; and

    (C)    Granting such further relief, general and special, that this Court deems proper.

## COUNT VI – PUNITIVE DAMAGES

41. Plaintiff restates and realleges Paragraphs 6 through 19 as if set forth herein as Paragraph 41 of this Count VI.

42. Defendant's actions were intentional, willful and wonton, and were performed with malice toward Plaintiff and its agents.

43. Punitive damages are necessary to punish Defendant for his conduct and deter him from committing similar transgressions in the future.

**WHEREFORE,** Plaintiff Shimbly Corporation seeks punitive damages from Defendant Derek Khanna in an amount not less than $100,000.00.

Respectfully Submitted,

**FRIEDMAN & FEIGER, LLP**

By: /s/ *Kaitlyn M. Coker*
Kaitlyn M. Coker
Texas Bar No. 24115264
Jason H. Friedman
Texas Bar No. 24059784

5301 Spring Valley Road, Suite 200
Dallas, Texas 75219
T: (972) 788-1400
F: (972) 788-2667

**PRO HAC VICE PENDING**

**WALLACE LAW GROUP, LLC**

By: /s/ *Todd Wallace*
Todd Wallace
ARDC No. 6279489
todd@twallacelaw.com

FILED DATE: 1/7/2021 3:34 PM    2021L000211

302 E. State Street
Geneva, IL 60134
T: (630) 405-7333
F: (630) 232-3901

**ATTORNEYS FOR PLAINTIFF**

**ATTORNEY CERTIFICATION**

    Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109), the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

/s/*Kaitlyn M. Coker*
**Kaitlyn M. Coker, Esq.**

FILED DATE: 1/7/2021 3:34 PM    2021L000211