**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DEREK KHANNA, individually and derivatively on behalf of Shimbly Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 21-cv-5752 ) |
| KATELYNN BANKS, ISELLMLS.COM, INC. d/b/a CINDY BANKS TEAM, CINDY BANKS, TONY BANKS, PAMELA CARY, RICHARD CARY, EIRIK SOMERVILLE, MARYAM HUSSEIN, | ) ) Hon. Judge Virginia M. Kendall ) Magistrate Judge Keri Holleb-Hotaling ) ) ) |
| Defendants, and | ) ) |
| SHIMBLY CORPORATION, a Delaware Corporation, | ) ) ) |
| Nominal Defendant. | ) |

**DEFENDANTS' KATELYNN BANKS, ISELLMLS.COM, INC.,
CINDY BANKS, TONY BANKS, AND SHIMBLY CORPORATION
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
<u>DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

Mitchell J. Edlund (6229190)
Corey T. Hickman (6317871)
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: (312) 474-7900
medlund@cozen.com
chickman@cozen.com

*Counsel for Defendants Katelynn Banks,
ISellMLS.com, Inc., Cindy Banks,
Tony Banks, and Shimbly Corporation*

Defendants, Katelynn Banks ("Banks"), ISellMLS.com, Inc., Cindy Banks, Tony Banks (together with Banks, the "Banks Defendants"), and Shimbly Corporation ("Shimbly"), submit their Memorandum of Law in support of their Motion to Dismiss Plaintiff, Derek Khanna's ("Plaintiff" or "Khanna") First Amended Verified Complaint (the "Complaint"), with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1.

## INTRODUCTION

Plaintiff, a former Shimbly shareholder, attempts to cast himself as a victim of misconduct, when he took no corporate action to remedy his apparent grievances despite being the "manager" of Shimbly's Board of Directors. Plaintiff's Complaint is long, but says very little, containing vague, repetitive allegations lacking any substance or specifics. At its core, the Complaint alleges that Banks failed to act in Shimbly's best interests, causing harm to Shimbly and its shareholders. Khanna asserts a laundry list of baseless claims, derivatively and directly, all of which should be dismissed.

First, Plaintiff's derivative claims are improper. A party asserting claims derivatively must be a shareholder throughout the pendency of the lawsuit. Shimbly was dissolved almost two years ago. Plaintiff, "manager" of the Board and owning 38% of Shimbly's stock, did not object or take any corporate action to prevent the dissolution or to reinstate the company. Shimbly is dissolved, and therefore Plaintiff is not a shareholder and cannot maintain any derivative claims. Plaintiff's derivative claims fail for a second fundamental reason – he fails to adequately plead demand futility. Plaintiff alleges that the Board consisted of Plaintiff, as well as Banks and Theophile Khayat ("Khayat"). Plaintiff alleges that a demand on the Board would have been futile, but the Complaint is devoid of any allegations to establish futility, especially when Plaintiff himself admits he had control of the Board. Further, there are no allegations as to

1

Khayat. Plaintiff has not, and cannot, establish demand futility, and therefore cannot assert derivative claims.

Plaintiff also brings various direct claims, including restating all his derivative claims. But Plaintiff's "direct" claims are not direct at all. Rather, they allege harm to Shimbly that, in turn, allegedly caused Plaintiff harm because Shimbly was devalued. Damages that are a direct result of a plaintiff's status as a shareholder are quintessentially derivative. Plaintiff's lengthy Complaint does not allege a single harm to him that is not also an alleged harm to Shimbly. Plaintiff's "direct" claims must therefore be dismissed.

Plaintiff's remaining claims do not fare any better. He asserts defamation and false light claims against Banks based on her forwarding of an alleged defamatory email. However, the law is clear that a party is immune from liability under § 230 of the Communications Decency Act ("CDA") for forwarding a defamatory e-mail. Further, the alleged statements are not defamatory as a matter of law. Plaintiff also lacks standing to assert any trade secrets or conversion claims, and even if he had standing, he fails to plead the elements of those claims. Plaintiff's allegations of a shareholder dispute are also not "extreme and outrageous" conduct that can give rise to a claim for intentional infliction of emotional distress. Finally, Plaintiff's purported "gross negligence" claim is barred by the economic loss doctrine.

## RELEVANT ALLEGATIONS

### A. The Founders' Agreement

According to the Complaint, beginning in July 2020, Plaintiff and Banks began discussing launching a new company that would offer a real-estate product similar to Zillow. (Dkt. 186, ¶¶ 20, 70-71). Shimbly was incorporated in Delaware on January 21, 2020. (*Id.*, ¶ 25). Plaintiff, Banks, and Khayat constituted the Board on the incorporation documents. (*Id.*).

On April 23, 2020, Plaintiff, Banks, and Khayat entered into the "Shimbly Founders' Collaboration Agreement" (the "Agreement"). (*Id.*, ¶ 26, Dkt. 186-1). The Agreement provides that the "Business Concept" "includes the related technology and IP that is used to create, implement, develop or perfect the idea," and that the "Founders will transfer the Business Concept" to Shimbly. (Dkt. 186-1, p. 1). The Agreement states that "[e]ach Founder will grant and assign to the Company his or her right, title, and interest in and to the Business Concept, including all ideas . . . and work product that results from any task or work performed by the Founder that relates to the Business Concept for the full term of such rights." (*Id.*).

### B. The Revised Founders' Agreement

In June 2020, the shareholders executed a Revised Founders' Agreement (the "Revised Agreement"). (Dkt. 186, ¶ 41; Dkt. 186-2). The Revised Agreement named Banks as CEO, Khanna as COO, Chief Strategy Officer, and General Counsel, and stated that Khayat was no longer regularly active in the company. (Dkt. 186-2, pp. 1-2). Khanna's role was specifically defined to include "facilitating and managing Board operations," whereas Banks' and Khayat's roles do not describe anything relating to the Board. (*Id.*, p. 2).

The Revised Agreement provided that Banks and Khanna each owned 91,200 shares, Khayat owned 3,600 shares, and the remaining 54,000 shares were allocated to the employee pool and for initial investment. (*Id.*, pp. 2-3). The Revised Agreement provided that voting rights were in accordance with the number of shares allocated "not including vesting clause." (*Id.*, p. 4). Similarly, the three founders "have the same rights (including but not limited to voting and distribution rights) accorded to the Percentage Interest issued to each Founder (allocated shares,

not vested shares.") (*Id.*, p. 4). On March 1, 2022, Shimbly was voided by the State of Delaware for failure to pay taxes and file annual reports. (*See* Exhibit A).[1]

## ARGUMENT

I. **Plaintiff's Derivative Claims (Count XVII) Fail as a Matter of Law**

    a. **Shimbly is Dissolved and Plaintiff is Therefore Not a Shareholder**

A former shareholder of a dissolved corporation, like Plaintiff here, cannot bring a derivative claim. *Hale v. China Online, Inc*., 08 C 5548, 2009 WL 2601357, at *1 (N.D. Ill. Aug. 21, 2009). This Court's ruling in *Hale* is on point. In *Hale*, the plaintiffs brought a derivative lawsuit alleging that the defendant breached his fiduciary duty by intentionally damaging China Online, a Delaware corporation. The Court dismissed the derivative claims on the grounds that the plaintiffs lacked standing because China Online was dissolved. *Id.* at *5.

The Court noted that under Delaware law, a plaintiff bringing a derivative action "must be a stockholder of the corporation **at the time he commences the suit and must maintain that status throughout the course of the litigation**." *Id.* at *2 (collecting cases) (emphasis added). The Court reasoned that under Delaware law, "**dissolution of a corporation terminates an individual's status as a shareholder of the corporation and therefore bars the individual from bringing a derivative action** on behalf of the dissolved corporation." *Id.* at *2 (emphasis added) (citing *Giordano v. Marta*, CIV.A. 11613, 1998 WL 227888, at *4 (Del. Ch. Apr. 28, 1998) ("[T]he plaintiff has never complained or taken any action with respect to the dissolution of DeGior . . . plaintiff no longer has standing to pursue any of the claims alleged in his amended complaint that derive from or depend upon his continued status as a stockholder.")).

---

[1] The Court may take judicial notice of public records, including Secretary of State documents. *Berger v. PIKR, Ltd*., 14 C 8543, 2015 WL 2208200, at *1 (N.D. Ill. May 8, 2015).

The Court held that because China Online was dissolved, plaintiffs' status as shareholders was terminated and therefore, they lacked standing to pursue derivative claims. *Id.* at *3-4 (finding that "Plaintiffs lack standing to bring a derivative cause of action on behalf of China Online, a dissolved corporation."). *Hale* was affirmed by the Seventh Circuit. *Hale v. Victor Chu*, 614 F.3d 741, 744 (7th Cir. 2010) ("[The] allegations in the complaint did not plausibly suggest that the plaintiffs had a right to relief.").

*Hale* is on point. Plaintiff must have been a shareholder when this lawsuit was commenced and "must maintain that status throughout the course of the litigation." Hale, 2009 WL 2601357 at *2. Plaintiff is no longer a shareholder because Shimbly was voided on March 1, 2022. (Exhibit A; Dkt. 186, ¶ 7 ("Plaintiff **was** a Shimbly shareholder at the time of the wrongdoing.") (emphasis added)). Under Delaware law,[2] dissolution terminates shareholder status. *Hale*, 2009 WL 2601357 at *2. Because Plaintiff is not a current shareholder of Shimbly, a dissolved and voided corporation, he cannot assert derivative claims. *See Transpolymer Indus., Inc. v. Chapel Main Corp.*, 582 A.2d 936 (Del. 1990) (finding that corporation's failure to pay taxes renders it void, "inoperative" and it "thereby cease[s] to exist and has lost any standing to appeal and be heard.").

### b. Plaintiff Has Not and Cannot Allege Demand Futility

*Hale* is again on point. In *Hale*, the Court found that even if the plaintiffs had standing, their derivative claims would still fail because they did not adequately plead that a demand was made to the board or that such a demand would have been futile. *Hale*, 2009 WL 2601357 at *3. The Court noted that "demand" is a substantive requirement under Delaware law and therefore Delaware law applies in determining whether a complaint adequately pleads demand futility. *Id.* Under Delaware law, a demand may be excused when only "1) a shareholder [has pleaded] *with*

---

[2] As in *Hale*, Delaware law applies because Shimbly is a Delaware corporation.

*particularity* facts that establish that demand would be futile because the majority of the board of directors upon whom demand would be made are not independent or disinterested; or 2) a shareholder has alleged facts, *with particularity*, which create a reasonable doubt that the challenged transaction was a product of a valid exercise of the directors' business judgment." *Id.* at *3 (citations omitted).

The Court dismissed the complaint because it failed to allege demand futility with particularity. The Court found the conclusory statement that the defendants "committed the wrongs complained of herein, profited from the wrongs, and would not sue themselves or cause China Online to file suit against themselves" was insufficient because it provided the Court with "no framework in which to analyze the directors' alleged independence." *Id.* at *4. Further, the Court reasoned that the plaintiffs themselves were on the board and therefore they "cannot demonstrate demand futility if the demand would have been made upon themselves." *Id.*

The same reasoning applies here. While Plaintiff alleges that the Board consisted of Banks, Plaintiff, and Khayat, he fails to allege any facts to support that a majority of the Board was not independent or disinterested. (Dkt. 186, ¶ 25). He alleges only the conclusory statement that a demand would have been a "futile, wasteful, and useless act" because "Banks's interests were (and are) directly adverse to bringing an action on behalf of Shimbly against herself." (*Id.* ¶ 204). Under *Hale*, this conclusion is simply not enough. Plaintiff must show that a **majority** of the Board (*i.e.,* Banks **and** Khayat), were not independent or disinterested. The Complaint, however, contains no facts as to Khayat, let alone facts that would establish he was "not independent or disinterested."

Finally, as in *Hale*, Plaintiff himself is on the Board and is the "Manager of the Board of Directors." (Dkt. 186, ¶¶ 25, 35). The Revised Agreement states that Plaintiff is responsible for

"facilitating and managing Board operations," whereas the other two Board members have no delineated duties relating to the Board. (Dkt. 186-2, p. 2). Accordingly, any demand would have needed to be made on Plaintiff, who as "Manager of the Board," would have been the one to act on any such demand. Plaintiff cannot allege demand futility when demand would have been made on himself. Accordingly, Plaintiff's derivative claims fail for this additional reason.

II.  **Plaintiff's "Direct" Claims (Counts I, III, V, VII, IX) Against Banks Do Not Allege Any Harm Unique to Plaintiff, and Therefore Must Also Be Dismissed**

Plaintiff purports to bring a number of claims directly against Banks, including all the same claims he brought derivatively. However, a review of those claims makes clear that they allege harm only to Plaintiff by virtue of his status as a shareholder of Shimbly, and therefore can only be brought derivatively. And, because Plaintiff cannot assert derivative claims for the reasons stated above, all his "direct" claims must also be dismissed, with prejudice.

The question of whether a claim is direct or derivative depends on: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)" *Wise v. Biowish Techs., Inc*., CV 18-676-RGA, 2019 WL 192876, at *3 (D. Del. Jan. 11, 2019). "Where all of a corporation's stockholders are harmed and would recover pro rata in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature." *Id.* (citations omitted). To demonstrate a direct injury, a plaintiff must show that they can "prevail without showing an injury to the corporation." *Hale*, 2009 WL 2601357 at *5 (citations omitted). Claims for devalued stock are quintessentially harms to the corporation that must be raised derivatively. *Id.* at *5 (citing *In re J.P. Morgan Chase & Co. S'holder Litig*., 906 A.2d 808, 826 (Del. Ch. 2005)). Claims that the

board "mismanaged or wasted corporate assets" are harms to the company that may only be raised derivatively. *Wise*, 2019 WL 192876 at *3.

*Hale* is once again on point. In addition to derivative claims, the plaintiffs in *Hale* attempted to raise their claims directly. The Court dismissed the "direct" claims because those claims alleged that the plaintiffs were harmed as a result of harm to China Online. Specifically, the Court found that allegations that the defendants caused China Online to be "exposed to significant losses" and that "the shares of that business became substantially devalued" did not give rise to direct claims because the plaintiffs could not prevail on those claims "without showing injury to China Online." *Id.* at *5; *see also Marshal T. Simpson Tr. v. Invicta Networks, Inc.*, 249 F. Supp. 3d 790, 794 (D. Del. 2017) (holding that claims of failure to provide "competent and active management" resulting in devalued stock are derivative); *Clifford Paper, Inc. v. WPP Inv'rs, LLC*, CV 2020-0448-JRS, 2021 WL 2211694, at *11 (Del. Ch. June 1, 2021).

Like *Hale,* that Plaintiff's direct claims are identical to his derivative claims evidences that, in reality, those claims allege only harm to Shimbly, not Plaintiff directly. His specific allegations make that clear. All of his "direct" claims assert that the alleged wrongful acts and harm were directed toward Shimbly, and that Plaintiff was only harmed by virtue of his devalued stock. (*See e.g.*, Dkt. 186, ¶ 124(h) ("driving down the value of Plaintiff's Shimbly stock to nothing"); ¶ 132 (describing Banks' alleged fraudulent scheme to "destroy Shimbly's value, steal Shimbly's trade secrets and other proprietary information," and to usurp "Shimbly's targeted marketplace"); ¶ 141 ("depriving Shimbly of ownership of the Business Concept . . . and stealing the Business Concept from Shimbly and its shareholders . . . breaching her duty to perform her role and responsibilities as Shimbly's CEO"); ¶¶ 152, 155 (alleging theft of Shimbly's trade secrets); ¶ 161 (alleging that Banks converted Shimbly's "protected Business Concept"). In fact,

Plaintiff's own allegation of "separate and distinct" harm proves his claims are *not* direct, as it includes "the total loss of millions of dollars of value in Plaintiff's shares of Shimbly stock." (*Id.*, ¶ 99).

While Plaintiff attempts to mislead the Court by asserting that he was somehow harmed directly, a plain reading of his allegations makes clear that Plaintiff's alleged harm was because *Shimbly* was allegedly harmed. Because Plaintiff does not allege *any* harm distinct from Shimbly, all his claims should be dismissed.[3]

### III. Plaintiff's Defamation and False Light Claims Against Banks (Counts XI, XIII) Fail as a Matter of Law

#### a. Forwarding an E-mail Cannot Subject a Party to Liability

Plaintiff's defamation and false light claims against Banks are predicated primarily on her "publication of defamatory content in the Hussein report." (Dkt. 186, ¶ 169). Plaintiff alleges that Defendants Maryam Hussein and Eirik Somerville prepared a report in October 2020 containing defamatory statements that was sent by e-mail, and that on October 27, 2020, Banks "re-published the defamatory report" by "forward[ing] this email to Khayat." (*Id.*, ¶¶ 81-84).

Plaintiff's claims fail because it is well-settled that under § 230 of the CDA, a party is immune from liability for sharing or "re-publishing" an alleged defamatory statement by email. *Monge v. Univ. of Pennsylvania*, CV 22-2942, 2023 WL 2471181, at *2 (E.D. Pa. Mar. 10, 2023). In *Monge*, the plaintiff asserted defamation based on the forwarding of emails containing defamatory articles about the plaintiff. The court rejected the claim, finding that the CDA immunizes a party from liability for forwarding content created by another party. *Id.* at *2 (collecting cases and holding that "Courts analyzing and applying the CDA have consistently

---

[3] Plaintiff alleges direct harm relating to lost salary, but those claims have been stayed. (Dkt. 35).

held that distributing, sharing, and forwarding content created and/or developed by a third party is conduct immunized by the CDA. . . Dr. Thomas's conduct of sharing the allegedly defamatory articles via email is immune from liability under the CDA."); *Peters v. LifeLock Inc.*, CV-14-00576-PHX-ROS, 2014 WL 12544495, at *3 (D. Ariz. Sept. 19, 2014) ("Schaan cannot be liable for defamation based on forwarding Jones' email.").

Plaintiff cannot avoid the clear application of § 230 of the CDA. Because his claims are predicated on the e-mail forwarding of allegedly defamatory material, they must be dismissed.

### b. The Alleged Statements are Not Defamatory as a Matter of Law

Statements are not actionable as defamation when they contain statements of opinion that do not imply objective facts regarding the plaintiff. *Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 518 (1st Dist. 1998). The first amendment further "protects overly loose, figurative, rhetorical, or hyperbolic language, which negates the impression that the statement actually presents facts." *Id.* (colleting cases) (holding that the statement that the plaintiff was "fired because of incompetence" was nonactionable opinion); *Wynne v. Loyola Univ. of Chicago*, 318 Ill. App. 3d 443, 452 (1st Dist. 2000) ("While in one sense all opinions imply facts, the question of whether a statement of opinion is actionable as defamation is one of degree; the vaguer and more generalized the opinion, the more likely the opinion is nonactionable as a matter of law."). Statements that are "vague and conclusory" are "not reasonably capable of being objectively verified" and are non-actionable as a matter of law. *Gerrard v. Garda*, 08-CV-1146, 2009 WL 269028, at *3 (C.D. Ill. Jan. 30, 2009).

Even if Plaintiff could assert claims based on the forwarding of the Hussein report, they would still fail because Plaintiff alleges only vague statements that lack any verifiable facts. Plaintiff alleges that the Hussein report stated that Plaintiff was "sabotaging the company,"

engaged in "mismanagement," and that his contributions "cheapen the brand." (Dkt. 186, ¶¶ 169-70). None of these statements are defamatory. Whether Plaintiff was "sabotaging" the company or engaging in "misconduct" are exactly the type of vague, imprecise statements that do not contain any objectively verifiable facts, that courts have held cannot constitute defamation. Further, whether his contributions "cheapen the brand" is a pure statement of opinion that is not actionable. In addition to the Hussein report, Plaintiff alleges that Banks made other statements that Plaintiff "improperly made payments," and was guilty of "financial mismanagement." (Dkt. 186, ¶¶ 169-70). These statements also are entirely vague, imprecise, and lacking in any factual detail that could be verified. They also are merely opinions of Plaintiff's performance and conduct, and are capable of an innocent construction. Plaintiff has simply not pled any actionable defamation or false light claim, and therefore those claims should be dismissed.

## IV. Plaintiff's Trade Secrets Act and Conversion Claims Fail

### a. Plaintiff Lacks Standing to Assert Claims Relating to Trade Secrets

Standing requires that a plaintiff suffer a concrete injury to a legally cognizable interest. *Keep Chicago Livable v. City of Chicago*, 913 F.3d 618, 622 (7th Cir. 2019). Plaintiff's claims for violation of the Trade Secrets Act and conversion expressly allege that Banks misappropriated *Shimbly's* trade secrets. (Dkt. 186, ¶¶ 152, 161). The Agreement makes clear that any purported trade secrets belong solely to *Shimbly*. It provides that the "Business Concept" was transferred entirely to Shimbly, and that each of the Founders "will grant and assign to the Company his or her right, title, and interest in and to the Business Concept." (Dkt. 186-1, p. 1). Accordingly, only Shimbly has the right to assert claims relating to Shimbly's trade secrets and property, not Plaintiff directly. *See Desmond v. Taxi Affiliation Services LLC*, 344 F. Supp. 3d

915, 928 (N.D. Ill. 2018) (conversion requires that a plaintiff has a right to "immediate possession of the property, absolutely and unconditionally.").

### b. Plaintiff Fails to Adequately Allege Any Trade Secrets or Conversion

A plaintiff asserting a trade secret claim "must do more than point to broad areas of [information] … and assert that something there must have been secret and misappropriated. The plaintiff must show concrete secrets." *Carpenter v. Aspen Search Advisers*, LLC, 10 C 6823, 2011 WL 1297733, at *3 (N.D. Ill. Apr. 5, 2011) (holding that trade secrets claim, "while lengthy, provide no specifics about the nature of the confidential data for which it claims trade secret protection."); *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992) (noting that trade secrets claim must allege "concrete secrets.").

Here, the Complaint contains nothing but platitudes regarding the alleged trade secrets and technology, with no specific facts demonstrating what the supposed secret information actually is. (Dkt. 186, ¶ 21 ("Plaintiff also operationalized many concepts, making preliminary wireframes to start the design process, building Shimbly's business model, developing application-programming interfaces, . . .;" ¶ 29 (alleging that Plaintiff determined "how Shimbly would operate, what specific website pages would be developed, what specific APIs would be utilized, and how the development work would progress," and that the "Business Concept" included "these ideas, APIs, code, roadmaps, pitch decks, and other materials."). Despite its length and abundant use of technology jargon, it is unclear from the Complaint what the Shimbly product even is, let alone what is confidential or secret about it. Moreover, the Agreement Plaintiff relies on states that "certain proprietary concepts of the business remain confidential," but fails to state what those concepts are. (Dkt. 186-1, p. 4). This vague and essentially meaningless confidentiality provision, coupled with Plaintiff's imprecise allegations, preclude any trade secrets claim.

Plaintiff's conversion claim is preempted by the Trade Secrets Act because what Plaintiff ultimately alleges is conversion of Shimbly's Business Concept, strategies, processes, and ideas, which do not have any tangible form. (Dkt. 186, ¶ 161). *See Am. Ctr. for Excellence in Surgical Assisting Inc. v. Cmty. Coll. Dist*. 502, 190 F. Supp. 3d 812, 815 922 (N.D. Ill. 2016); *AutoMed Tech, Inc. v. Eller*, 160 F. Supp. 2d 915, 922 (N.D. Ill. 2001) (dismissing conversion claim because it was based on defendants' unauthorized control of plaintiff's proprietary software and design plans). The conversion claim also fails because Plaintiff did not allege that he made a "demand for possession of the property," a necessary element of a conversion claim. *Bill Marek's The Competitive Edge, Inc. v. Mickelson Group, Inc.*, 346 Ill. App. 3d 996, 1003 (2d Dist. 2004); *Desmond*, 344 F. Supp. 3d at 928. Accordingly, the conversion claim should be dismissed.

## V. **Plaintiff's Gross Negligence Claim (Count XV) is Barred by the Economic Loss Doctrine**

The economic loss doctrine provides that a plaintiff cannot recover under a negligence theory where only economic losses, and no physical damage property or bodily injury, are alleged. *See, e.g., In re Chicago Flood Litig.*, 176 Ill. 2d 179, 199 (1997). There are only three exceptions to the economic loss doctrine: "(1) where the plaintiff sustained damage, i.e., personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.*, fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *Id.*

Here, Plaintiff's "gross negligence" claim is a rehash of his other claims, and does not allege any physical injury or property damage. Plaintiff's claim asserts solely economic losses, does not fit into any exception, and is therefore barred under the economic loss doctrine.

## VI. Plaintiff's Allegations Do Not Give Rise to a Claim for Intentional Infliction of Emotional Distress Claim (Count XVI)

A plaintiff claiming intentional infliction of emotional distress ("IIED") must allege: "(1) that the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress." *S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 859 (N.D. Ill. 2010) (dismissing IIED claim for failing to plead more than conclusions). "Threadbare recitals of the elements" do not suffice. *Id.* The standard is "quite high." *Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 511 (N.D. Ill. 2012). To plead extreme and outrageous conduct, "a defendant's conduct must be so extreme as to go beyond all possible bounds of decency" and must be "regarded as intolerable in a civilized community." *Id.* (dismissing IIED claim for failure to plead extreme and outrageous conduct).

Here, Plaintiff's IIED claim fails for multiple reasons. First, his allegations merely repeat the elements, which is insufficient to state a claim. (Dkt. 186, ¶ 198 ("Katy Banks's conduct was extreme and outrageous, and Katy Banks knew that there was a high probability that her conduct would cause severe emotional distress to Plaintiff.")). There are no specific allegations beyond these conclusions as to Banks' alleged intent to cause emotional distress or the specific emotional distress suffered by Plaintiff. Second, the allegations do not come close to describing "extreme and outrageous conduct." Rather, Plaintiff's Complaint merely amounts to a shareholder dispute. Business disputes do not give rise to IIED claims, as they do not present the type of "intolerable" conduct that IIED claims are intended to redress. Plaintiff's IIED claim should be dismissed.

## VII. Plaintiff's Aiding and Abetting Claims (Counts II, IV, VIII) Against the Banks Defendants Fail Because There is No Underlying Tort

A claim for aiding and abetting requires an underlying tort; "[w]ithout an underlying tort, the derivative claims for conspiracy and aiding and abetting fail." *Squires-Cannon v. Forest Pres.*

*Dist. of Cook Cnty.*, 897 F.3d 797, 806 (7th Cir. 2018). Aiding and abetting is not an independent tort, and therefore, where there is no underlying liability there can be no liability for aiding and abetting. *See Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) ("[A]iding and abetting is a theory for holding the person who aids and abets liable for the tort itself.").

Here, because all the alleged underlying torts are subject to dismissal for the reasons stated above, all of Plaintiff's aiding and abetting claims also fail and should be dismissed. Additionally, Plaintiff's Complaint fails to plead any facts supporting an inference that the Banks Defendants "knowingly and substantially" assisted in wrongful conduct. *Peterson v. A Clear Title & Escrow Exch., LLC*, 14-CV-09932, 2017 WL 1134483, at *3 (N.D. Ill. Mar. 27, 2017).

### VIII. Plaintiff's Complaint Asserts Claims (Counts I, V, VI, X) that are Stayed

The Court's April 6, 2022 Order provided that the following claims are stayed and must be submitted to mediation: "Khanna's claims for breach of fiduciary duty (insofar as the claim arises from his termination), breach of contract (for failure to submit to mediation and for breach of the salary agreement), and wrongful and retaliatory discharge, and violations of the Illinois Whistleblower Act." (Dkt. 36). The Court should dismiss all claims except for those delineated in the Court's prior order, and reaffirm that the remaining counts are stayed subject to mediation.

### CONCLUSION

Plaintiff cannot assert derivative claims against the Banks Defendants. Further, Plaintiff's "direct" claims are really just derivative claims that assert harm to Plaintiff via his status as a Shimbly shareholder. Plaintiff's aiding and abetting claims fail because the underlying torts are all subject to dismissal. Finally, Plaintiff's remaining stand-along claims fail, as a matter of law, for the reasons stated herein. Except for the claims that are stayed, the Complaint should be dismissed entirely, with prejudice.

Dated: February 20, 2024                    **Katelynn Banks, ISellMLS.com, Inc., Cindy Banks, Tony Banks, and Shimbly Corporation**


By: /s/ *Mitchell J. Edlund*
      One of their attorneys


Mitchell J. Edlund (6229190)
Corey T. Hickman (6317871)
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: (312) 474-7900
Facsimile: (312) 382-8910
Email: medlund@cozen.com
      chickman@cozen.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2024, a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record via the Court's CM/ECF automated filing system.

/s/ *Mitchell J. Edlund*
Mitchell J. Edlund

LEGAL\68573319\6