**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DEREK KHANNA, individually and derivatively on behalf of Shimbly Corporation,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 21-cv-5752** |
| **v.** | ) | |
| | ) | **Hon. Judge Virginia M. Kendall** |
| | ) | **Magistrate Judge Keri Holleb-Hotaling** |
| **KATELYNN BANKS, *et al*.,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |

**PLAINTIFF'S OPPOSITION TO KATELYN BANKS', ISELLMLS.COM, INC.'S, CINDY BANKS', TONY BANKS' AND SHIMBLY CORPORATION'S MTD**

## INTRODUCTION

The Court should deny the entirety of the Motion to Dismiss ("MTD") filed by Defendants Katelynn Banks ("Defendant Banks"), ISellMLS.com, Inc. Cindy Banks, Tony Banks (collectively, the "Banks Defendants") and Shimbly Corporation ("Shimbly"). As discussed below, Defendant Banks asserts deficient and erroneous arguments in challenging Plaintiff's standing to assert derivative claims. Defendant Banks also cannot even seek to dismiss Plaintiff's non-derivative claims (Counts I, III, V, VII, IX) because she already filed a Rule 12(b) motion, and cannot file another under Fed. R. Civ. P. 12(g)(2). Even if Defendant Banks could overcome that dispositive deficiency (which she cannot), her dismissal arguments ignore the supporting allegations in Plaintiff's First Amended Complaint ("FAC"), and mischaracterize governing law.

The other Banks Defendants also fail to support their lone challenge against Plaintiff's claims for aiding and abetting (Counts II, IX, and VIII), and rely on nothing beyond a cursory sentence at the end of their brief, which the Court should disregard or reject.

The bottom line is that Plaintiff's FAC contains sufficient, indeed robust, allegations supporting each and every one of his claims in this civil action. The Court should deny the MTD and order the Banks Defendants and Shimbly to answer the FAC forthwith.

## ARGUMENT

### I. PLAINTIFF HAS STANDING TO ASSERT DERIVATIVE CLAIMS (COUNT XVII).

#### A. There Has Been No Shimbly "Dissolution," and Defendant Banks Cannot Avoid a Derivative Suit by Failing to Pay Shimbly's Taxes.

Defendant Banks mischaracterizes this Court's decision in *Hale v. China Online, Inc.*, No. 08 C 5548, 2009 U.S. Dist. LEXIS 75053 (N.D. Ill. Aug. 21, 2009), as somehow enabling her to avoid Plaintiff's derivative claims by failing to pay Shimbly's Delaware taxes. As an initial matter, *Hale* addressed a corporate "dissolution," upon which the corporate entity failed to exist. 2009 U.S. Dist. 75053, at ** 7-8. The case upon which *Hale* relied, *Giordano v. Marta*, Civ. Action No. 11613, 1998 Del. Ch. LEXIS 63 (Del. Ch. Apr. 27, 1998), specifically addressed a "dissolution" as "a legal consequence of [a] Merger," at which time plaintiff's shares "were converted into the right to receive cash." *Id.* at *13. The corporation's "dissolution," therefore, through a merger, effectively terminated plaintiff's shareholder rights, thereby precluding plaintiff from bringing a derivative action. *Id.* at * 14.

There was no such "dissolution" here. Instead, Defendant Banks simply refused to pay Shimbly's taxes, during the middle of this litigation, prompting the Delaware Secretary of State to declare Shimbly's status as inoperative. (MTD, at Exh. A.) This fixable status is vastly different from a corporate "dissolution," through merger or otherwise, and there is no cognizable evidence

(nor would any be appropriate in supporting a Rule 12(b)(6) motion) that Plaintiff's rights as a shareholder were lost or impacted in any manner, unlike the plaintiff in *Hale*.[1]

In addition, governing law is clear that "a former shareholder may directly challenge a merger which terminated the shareholder's status, if the merger itself is the subject of a claim of fraud." *Lynch v. Marklin of America, Inc.*, 724 F. Supp. 595, 597 (N.D. Ill. 1989) (applying Delaware law). *Accord Kramer v. Western Pacific Industries, Inc.*, 546 A.2d 348, 354 (Del. 1988) (one of the "exceptions in the merger context" is "if the merger itself is the subject of a claim of fraud….") Since Delaware law permits shareholders to bring derivative claims even in the context of a total dissolution through merger, if the merger itself is at issue, *a fortiori*, the same must be true for Defendant Banks's refusal to pay taxes, which is part of Plaintiff's claims and allegations of her misconduct. *See* FAC, at ¶ 94 (alleging misconduct by Banks since she "failed to pay Shimbly's corporate taxes, conduct legally required sexual-harassment training, and/or file tax forms with the IRS for Shimbly personnel").

**B. Plaintiff Has Adequately Alleged Demand Futility.**

"Where a complaint does not address an action taken by the board, however, or alleges that the board failed to act, the inquiry is whether 'as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to demand.'" *Hale*, 2009 U.S. Dist. LEXIS 75053, at * 12 (citations omitted). Plaintiff's FAC clearly satisfies these standards, and Defendant Banks's contrary argument is based on a palpable misrepresentation of Mr. Khayat's Board status at the time Plaintiff's demand would have occurred. To wit, Defendant Banks's erroneously argues that Plaintiff failed to

[1] Delaware law also is clear that Shimbly's status is subject to "revival" once certain measures are undertaken. Delaware General Corporation Law, Title 8, § 311. Plaintiff will be filing a motion for injunctive relief requiring Defendant Banks to take those measures and preserve the status quo during this litigation.

adequately allege futility because "Plaintiff must show that a majority of the Board (*i.e.*, Banks and Khayat) were not independent or disinterested." (MTD, at p. 6.) Defendant Banks, however, fails to mention that Mr. Khayat *was an inactive Shimbly Board member when this litigation commenced*. (*See* Doc. No. 186, at ¶ 41) (alleging that, in "June 2020, the Founders unanimously agreed that Khayat would depart the company. To facilitate that transition, on or around June 14, 2020, the Founders entered into the Revised Founders' Agreement (the 'Revised Agreement')," which clearly states that Mr. Khayat was now Shimbly's "*Previous CTO*," and was "*no longer active*." (Doc. No. 186-2, at p. 3) (emphasis in original). *See Lavin v. Reed*, Doc. No. 17-cv-1014, 2023 U.S. Dist. LEXIS 196058, at * 11 (N.D. Ill. Nov. 1, 2023) ("Generally, demand futility must be analyzed as to the directors who were on the board on the date that the complaint was filed").

A clearer case of futility, indeed, is difficult to conceptualize. As Plaintiff alleges with particularity, Defendant Banks persistently ignored Plaintiff and refused to address (let alone resolve) Plaintiff's repeated concerns about her unlawful conduct, including (a) her refusal to even respond to four (4) separate Section 220 letters under Delaware Law; (b) her similar refusal to address Plaintiff's concerns about her failure to pay Shimbly taxes and otherwise to keep Shimbly in good standing, and (c) her failure to file necessary IRS tax forms, among many other examples of her intransigence. (*See* FAC, at ¶¶ 94-95.) "Plaintiff did not make any demand on Shimbly and Defendant Katy Banks to institute this action because such a demand would have been a futile, wasteful, and useless act. As Shimbly's CEO accused of serious wrongdoing, and having seized control over Shimbly, Katy Banks's interests were (and are) directly adverse to bringing an action on behalf of Shimbly against herself." (FAC, at ¶ 204.) *See In re Abbott Depakote Shareholder Derivative Litig.*, 2013 U.S. Dist. LEXIS 78841, at * 25 (N.D. Ill. June 5, 2013).

This allegation stands in sharp contrast to the conclusory futility allegation adjudicated by this Court in *Hale*, in which "Plaintiff's Complaint does not identify who was on China Online's board of directors at the time the instant action was filed nor does it identify how many individuals were on the board." 2009 U.S. Dist. LEXIS 75053, at * 13. Plaintiff *has* identified who was active on Shimbly's Board of Directors at the time this civil action was filed – Plaintiff and Defendant Banks. Similarly, Plaintiff's pleading is a far cry from the *Hale* complaint, which "does not allege that any of the named Defendants were on China Online's Board of Directors and therefore Plaintiff's allegations with respect to the Defendants' actions cannot be used to determine whether China Online's directors were independent or disinterested." 2009 U.S. Dist. LEXIS 75053, at * 13. Plaintiff's FAC includes multiple allegations and claims against the named Defendant Banks, who was the lone other active director (aside from Plaintiff) on Shimbly's Board. A demand on Katelynn Banks to sue herself, as Plaintiff has alleged, clearly would have been a futile act.

## II. FED. R. CIV. P. 12)(G)(2) BARS DEFENDANT KATELYN BANKS FROM FILING A RULE 12(B)(6) MOTION WITH DEFENSES OR OBJECTIONS THAT WERE AVAILABLE WHEN SHE FILED HER INITIAL RULE 12 MOTION.

Defendants Katelyn Banks and Shimbly cannot seek dismissal based on any of the other Rule 12(b)6) grounds argued in the MTD. As set forth in Fed. R. Civ. P. 12(g)(2): "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." In addition, Fed. R. Civ. P. 12(b) provides that a Rule 12(b)(6) motion "must be made before pleading if a responsive pleading is allowed."

Defendants Katelyn Banks and Shimbly filed a Rule 12(b)(1) motion long ago, on January 7, 2022, when they filed their "MTD Under Fed. R. Civ. P. Rule 12 [sic] for Lack of Jurisdiction, or, Alternatively, to Compel Mediation" (the "Prior MTD," Doc. No. 17.) In addition, on April

20, 2022, Defendant Banks filed her "Verified Answer to Plaintiff's Complaint and Affirmative Defense" ("Verified Answer"). (Doc. No. 37.) In her responsive pleading, Defendant Banks answered Plaintiff's allegations and claims, and asserted one "Affirmative Defense," "Unclean Hands." (*See id.* at pp. 56-59.) Defendant Banks did not include any defense other than "Unclean Hands." (*Id.*) Shimbly, moreover, never answered Plaintiff's initial complaint.

By filing a Rule 12(b)(1) motion and omitting any other defense under Rule 12 (including Ruled 12(b)(6)), and then answering Plaintiff's' initial Complaint, Defendants Katelynn Banks cannot now seek dismissal under Rule 12(b)(6). *See Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 2008 U.S. Dist. LEXIS 41539, at * 9 (N.D. Ill. May 22, 2008) (holding that "Defendants' argument is technically waived – in the limited context of a Rule 12(b)(6) motion – if the argument was 'available' at the time of Defendants' earlier motions"); *Sloan Valve Co. v. Zurn Industries, Inc.*, Doc. No. 10-cv-204, 2012 U.S. Dist. LEXIS 46254, at * 22-23 (N.D. Ill. Apr. 1, 2012) (finding waiver of Rule 12(b)(6) arguments in a subsequent Rule 12(b) motion that added additional purported grounds for dismissal, since defendant "presented its argument in a Rule 12(b)(6) motion, which does not fall within any of the three exceptions to Rule 12(g) that are outlined in Rule 12(h)(2)"); *766347 Ontario. Ltd.*, 274 F. Supp. 2d 926, at 930 ("Because [defendants] did not previously raise any of the other arguments they now make, they are precluded from raising them here in their third MTD").[2]

---

[2] One Seventh Circuit case includes broad language that "[f]ailure-to-state-a claim defenses are thus excepted from the Rule 12(g)(2) consolidation requirement and not included in the Rule 12(g)(1) waiver rule." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). *Ennenga*, however, adjudicated an argument by plaintiff that "defendants waived the statute-of-limitations defense by not raising it in their first MTD." *Id.* By contrast, Plaintiff is not arguing that Defendants Katelynn Banks waived her defenses in their entirety. Rather, Plaintiff is relying on the clear-and-plain language of Rule 12(g)(2) which establishes that Defendant Banks has waived her Rule 12(b)(6) arguments by omitting them from her prior Rule 12(b) motion. Pursuant to Rule 12(g)(2), Defendant Banks may assert her Rule 12(b)(6) arguments through certain filings, including pleadings or Rule 12(c) motions, but not in another Rule 12(b) motion.

The Court also should decline any invitation by Defendants Katelynn Banks and Shimbly to "convert" their MTD into a Rule 12(c) motion, which would be an improper attempt to end-run around the restrictions of Rule 12(c). *See Doe v. White*, Doc. No. 08-1287, 2009 U.S. Dist. LEXIS 12315, at * 8 (C.D. Ill. Oct. 30, 2009) (holding that "[e]ven if [defendant] filed a proper Rule 12(c) motion, though, this Court would recommend that the motion be denied because the argument is waived for purposes of the MTD stage").[3]

The Court, therefore, should deny Defendant Katelyn Banks's MTD Counts I, III, V, VII, and IX outright. (MTD, pp. 7-15.) In the event that the Court decides to reach the merits of those arguments, they are discussed below.

## III. PLAINTIFF'S DIRECT CLAIMS AGAINST BANKS ALLEGE UNIQUE HARM SPECIFIC TO PLAINTIFF (COUNTS I, III, V, VII, IX).

"To determine if a claim is direct or derivative the Court must ask: 1) who suffered the alleged harm (the corporation or the suing shareholders, individually), and 2) who would receive the benefit of any recovery or other remedy? The Court must look to all of the facts alleged in Plaintiff's Complaint to determine whether a direct claim exists." *Hale*, 2009 U.S. Dist. LEXIS 75053, at * 19. "To demonstrate a direct injury, a shareholder plaintiff must demonstrate 'that the duty breached was owed to the [shareholder] and that he or she can prevail without showing an injury to the corporation.'" *Id.* (citation omitted).

---

[3] If, however, the Court entertains any request to "convert" the MTD to a Rule 12(c) motion, Plaintiff respectfully requests the opportunity to file an opposition brief raising additional arguments based Defendant Banks's Verified Answer, which raises substantial factual issues that cannot be adjudicated under a Rule 12(c) motion (or, for that matter, in a Rule 56 summary-judgment motion). *See Patriot Homes, Inc. v. Forest River Housing, Inc.*, 489 F. Supp. 2d 865, 868 (N.D. Ill. 2007) (recognizing that, in adjudicating a Rule 12(c) motion, "[t]his "Court is permitted only to consider the pleadings, which include the complaint, the answer, and any written instruments attached to those documents and exhibits").

Here, the FAC has a plethora of allegations and claims showing direct injury to Plaintiff, aside and apart from harm caused by Defendant Banks to Shimbly. Count I, for example, alleges that Defendant Banks breached her fiduciary duties by, *inter alia*, "conspiring with the Conspiring Defendants and others to concoct fabricated charges and false statements about Plaintiff in order to justify his wrongful termination and execute Banks's scheme to steal the company," "engaging in retribution against Plaintiff as a whistleblower," and "using Shimbly resources to procure and publish false statements." (Doc. No. 186, at ¶ 124.) Count I further alleges that Defendant Banks also breached her fiduciary duties by "effectively terminating" Plaintiff by freezing him out of the company, "attempting to justify Plaintiff's discharge with false material information," "effectively removing Plaintiff as a Director by excluding him from any future Board of Directors meetings, cancelling his scheduled Board of Directors meetings, denying four Section 220 letter requests and providing zero disclosure about the company," and multiple other allegations targeted at and damaging Plaintiff individually. (*Id.* at ¶ 125.)

Additional claims allege damages caused directly to Plaintiff, beyond any damages caused to Shimbly. Count V, for example, alleges breaches of the Shimbly Agreements in at least thirteen (13) independent respects, each and all of which directly damaged Plaintiff. (*Id.* at ¶ 141.) Count VI, for retaliatory discharge, is to be mediated, yet includes multiple allegations of harm caused directly by Defendant Banks to Plaintiff, and those damages are not tethered to or dependent on showing harm to Shimbly. (*Id.* at ¶¶ 145-150.) The same is true for Count X for obstruction of justice in violation of the Illinois Whistleblower Act, which alleges that Plaintiff was directly damaged by Defendant Katelynn's unlawful retaliation and termination, and which again does not require Plaintiff to show damages caused to Shimbly. (*Id.* at ¶¶ 164-167.) Count XI, for defamation, alleges multiple false factual statements by Defendant Banks about Plaintiff, each and

all of which directly damaged Plaintiff. (*Id.* at ¶¶ 168-174.) Count XII alleges false light by Defendant Banks, who made false statements that "planed Plaintiff in a false light before the public, in a manner that would be highly offensive to a reasonable person." (*Id.* at ¶¶ 184-187.) Plaintiff's claims for gross negligence, Count XI, include multiple allegations of harm caused directly to Plaintiff, not Shimbly, including false statements published by Plaintiff (and others) to justify Plaintiff's wrongful termination. (*Id.* at ¶¶ 192-196.) Finally, Plaintiff's claims for intentional infliction of emotional distress by Defendant Banks (Count XVI) focuses solely and exclusively on damages caused directly to Plaintiff. (*Id.* at ¶¶ 197-201.)

Each and all of these claims caused harm to Plaintiff, and do not depend on showing harm to Shimbly. By contrast, *Hale* adjudicated generic allegations "that the Defendants' conduct harm China Online and therefore harmed all of its shareholders" in certain respects, including alleged "significant losses" suffered by the company and harm to the company's ability "to maintain its normal business to the point where the shares of that business became substantially devaluated.'" 2009 U.S. Dist. LEXIS 75053, at * 19 (quoting plaintiff's pleading). Based on those allegations, which focused solely on corporate harm, *Hale* held that plaintiffs "cannot prevail on their individual devaluation claims without showing injury to China Online and therefore Plaintiffs' individual claims cannot stand as a matter of law and are dismissed." *Id.* at * 20.

Plaintiff's claims against Defendant Banks look nothing like those "devaluation" claims, and instead are analogous to claims that have been held to be direct and properly brought by individual shareholders. *See Weinstein v. Schwartz*, 422 F.3d 476, 478 (7th Cir. 2005) (affirming the district court's decision that plaintiff's "claim is a direct claim" because he alleged that he will "be deprived" of the use of corporate property, which defendants otherwise would sell, and "the 'remedy' would insure to [plaintiff's] benefit…."); *AON Corp. v. Cabezas*, No. 15-cv-04980, 2018

U.S. Dist. LEXIS 37098, at 22 (N.D. Ill. Mar. 7, 2018) (holding that plaintiff "had standing to pursue both its breach of fiduciary claim and its fraud claim directly"); *Noble v. AAR Corp.*, No. 12 C 7973, 2013 U.S. Dist. LEXIS 48075, at ** 14-15 (N.D. Ill. Apr, 3, 2013) ("Under Delaware law, a breach of the duty to disclose gives rise to a direct, not derivative, shareholder claim because any such breach implicates a shareholder's right to cast an informal vote"); *Tooley v. Donaldson*, 845 A.2d 1031, 1039 (Del. 2004) (holding that a fiduciary "duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation").

## IV. <u>PLAINTIFF ADEQUATELY PLEADS DEFAMATION AND FALSE LIGHT (COUNTS XI, XIV)</u>.

Defendant Banks cites no governing law in seeking dismissal of Plaintiff's defamation and false-light claims (Counts XI, XIII) based on Section 230 of the Communication Decency Act ("CDA"). Tellingly, Defendant Banks cites no Illinois federal or state cases finding immunity under CDA Section 230 for email forwards, and instead relies on one district court case in Pennsylvania (and other non-Illinois cases cited therein). (MTD, at p. 9.) However, Seventh Circuit and Illinois courts have taken a much different and narrower view of immunity under CDA Section 230. *See Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 669 (7th Cir. 2008) (holding that "[w]e have questioned whether § 230(a)(1) creates any form of 'immunity,' and observing that "[t]he caption of subsection (c) as a whole refers to 'blocking and screening'"); *City of Chicago v. StubHub!, Inc.*, 624 F.3d 363, 365 (7th Cir. 2010) (Easterbrook, J.) ("As earlier decisions in this circuit establish, subsection (c)(1) does not create an 'immunity' of any kind").[4]

---

[4] *See also Huon v. Denton*, 841 F.3d 733, 741 (7th Cir. 2016) (construing Section 230(c)(1) narrowly and holding that a company can "be liable for creating and posting, inducing another to post, or otherwise actively participating in the posting of a defamatory statement in a forum that that company maintains'); *Lansing v. Southwest Airlines Co.*, 2012 IL App (1st) 101164, at ¶ 41 (2012) ("We, like the Seventh Circuit, read subsection 230(c)(1) to do exactly what it says, and

It is far from "well-settled," therefore, that "under § 230 of the CDA, a party is immune from liability for sharing or 're-publishing' an alleged defamatory statement by email," as Defendant Banks argues. (MTD, at 9.) In any event, Counts XI and XIII allege far more than a simple "forwarding of allegedly defamatory emails…." (*Id.*) Rather, Counts XI and XIII allege that Defendant Banks collaborated with Defendant Hussein "to provide a false and defamatory report" about Plaintiff (FAC, at ¶ 64); Defendant Banks "enlisted the help of Defendants Hussein and Somerville to prepare and submit the false report" (*id.* at ¶ 81); and Defendant Banks made independent affirmative false and defamatory statements while forwarding the report (*id.* at ¶ 81). Defendant Banks's involvement in creating the report, and her independent defamatory statements in connection with the report, are outside the scope of CDA Section 230 immunity. *See Pace v. Baker-White*, 432 F. Supp. 3d 495, 507 (E.D. Pa. 2020) (holding that plaintiffs "are not entitled to Section 230 immunity" because "it is Defendants' added commentary that is being challenged").

Furthermore, Plaintiff also has alleged multiple false and defamatory statements by Defendant Banks, above and beyond the statements related to the Hussein and Somerville reports. For example, Plaintiff alleges that Defendant Banks made false statements "that Khanna was 'improperly making payments' on behalf of Shimbly (*id.* at ¶ 170); that "Plaintiff was responsible for 'financial mismanagement' of Shimbly" (*id.*); that "Plaintiff misled her [Defendant Banks] on his legal background and legal education (*id.*); and that Plaintiff improperly budgeted Shimbly spending and caused Shimbly harm through mismanagement" (*id.*).

Defendant Banks ignores or marginalizes these allegations because they do not fit her false narrative that she simply served as the mere email conduit of information provided by others. In

what it says is that an ICS user or provider like defendant must not 'be treated as the publisher or speaker of any information provided by' someone else").

addition, Defendant Banks cannot avoid these claims and allegations by mischaracterizing her statements as "vague," "lacking in any factual detail that could be verified," and/or "capable of an innocent construction." (MTD, at pp. 10-11.) Defendant Banks's above-alleged statements are specific and factual, not merely "vague" statements or opinions, and whether they are "capable of an innocent construction" is a factual assertion to be tested in the discovery process.

## V. PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE ILLINOIS TRADE SECRETS ACT AND CONVERSION (COUNTS VII AND IX).

The Court should reject Defendant Banks's cursory argument seeking dismissal of Plaintiff's claims for violations of the Illinois Trade Secrets Act (Count VII) and conversion (Count IX). This argument is a rehashed summary of Defendant Banks's baseless argument, discussed above, regarding the purported absence of allegations of direct harm to Plaintiff, and Defendant Banks cites no additional cases holding or even suggesting that Plaintiff did not suffer direct harm caused by Defendant Banks's misconduct. The law, indeed, is to the contrary, and supports Plaintiff's individual claims given his direct damages, including harm to his shareholder value and rights that are unique to him. *See e.g., Weinstein v. Schwartz*, 422 F.3d 476, 478 (7th Cir. 2005) (affirming the district court's decision that plaintiff's "claim is a direct claim" because he alleged that he will "be deprived" of the use of corporate property, which defendants otherwise would sell, and "the 'remedy' would insure to [plaintiff's] benefit….").

Also untrue is Defendant Banks' argument that the FAC Plaintiff "contains nothing but platitudes regarding the alleged trade secrets and technology, with no specific facts demonstrating what the supposed secret information actually is." (MTD, at p. 12.) Even Defendant Banks's cherry-picked allegations are specific and precise regarding the proprietary information and trade secrets stolen by Banks, not "platitudes" or "jargon," which they decidedly are not. (MTD, at p. 12.) Defendant Banks also fails to mention additional allegations that specify the misappropriated

technology and proprietary information, wireframes, work product, APIs, business plans, prospects, databases, electronic and hard-copy records that memorialize and include Shimbly's Business Concept, customer lists, and information, and additional proprietary documentation and information. (*See e.g.*, ¶ ¶ 56, 91, 152, 158, 161.)

Similarly, Defendant Banks fails to support her argument that Plaintiff did not allege that he made a 'demand for possession of the property…." (MTD, at p. 13.) Plaintiff's pleading expressly includes allegations that Plaintiff tried unsuccessfully to secure the return by Defendant Banks of Shimbly's proprietary information and trade secrets. (*See e.g.*, FAC, at ¶¶ 67, 73.)

## VI. PLAINTIFF ADEQUATELY ALLEGES GROSS NEGLIGENCE (COUNT XV).

Defendant Banks oversimplifies and misapplies the Moorman doctrine, which precludes plaintiffs from recovering "in tort for purely economic losses arising out of a failure to perform contractual obligations." "To determine whether the Moorman doctrine bars tort claims, the key question is whether the defendant's duty arose by operation of contract or existed independent of the contract." *Wigod v. Wells Fargo Banks, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012) (denying defendant's motion to dismiss because "the Court cannot state as a matter of law at this stage of the litigation that [defendant] did not owe an extra-contractual duty to Plaintiff"). .

Here, the Court can and should affirmatively hold that Defendant Banks *did have an extracontractual duty to Plaintiff*. As alleged by Plaintiff, *and admitted by Defendant Banks*, Defendant Banks "owed a duty of care to Plaintiff to act reasonably in the conduct of the business of Shimbly. Katy Banks's duty arose from, inter alia, the parties' relationship as fiduciaries, officers, employees, and shareholders of Shimbly." (FAC, Doc. No. 1, ¶ 159; Doc. No. 37, at ¶ 159). Having admitted her extra-contractual duty to Plaintiff (which was undeniable), and

having failed to previously move to dismiss Plaintiff's gross-negligence claim, Defendant Banks cannot invoke Moorman and argue that no such duty exists in her second Rule 12(b) motion.

## VII. PLAINTIFF ADEQUATELY ALLEGES INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT XVI).

Defendant Banks again ignores Plaintiff's allegations in seeking dismissal of his claim for intentional infliction of emotional distress ("IIED"). Plaintiff certainly does more than "merely repeat the elements" of an IIED claim, which is the basis on which the case cited by Defendant Banks dismissed that claim. (MTD, at p. 14.) Defendant Banks fails to address or even mention the multitude of allegations, which are incorporated by reference therein, showing Defendant Banks's extreme and outrageous conduct. *See e.g.*, FAC at ¶¶ 58-64 (alleging Defendant Banks's accounting fraud and scheme to harm Plaintiff); ¶¶ 65-68 (alleging Banks's concealment and acceleration of Shimbly's financial decline to bolster her scheme to steal the company and its trade secrets); ¶¶ 69-74 (alleging Defendant Banks's seizure of control over Shimbly); ¶¶ 75-79 (alleging Defendant Banks's actions in ignoring and burying Plaintiff's whistleblower complaints); ¶¶ 80-89 (alleging Defendant Banks's working in cahoots with Defendants Hussein and Somerville to defame and terminate Plaintiff); ¶¶ 90-98 (alleging Defendant Banks's theft and use of Shimbly's trade secrets to start a competing company). These allegations are not threadbare or conclusory, and support Plaintiff's IIED claim against dismissal under Rule 12(b)(6).

## VIII. <u>PLAINTIFF ADEQUATELY ALLEGES AIDING AND ABETTING. (COUNTS II, IV, VIII).</u>

The Court should disregard or reject the Banks Defendants' cursory and conclusory one-sentence argument that "Plaintiff's Complaint fails to plead any facts supporting an inference that the Banks Defendants 'knowingly and substantially' assisted in wrongful conduct." (MTD, at p.

15.)[5] First, this is the precise type of unsupported argument that this Court rejects as forfeited or waived. *See Thomas v. Urban Partnership Bank*, No. 12-C-56257, 2013 U.S. Dist. LEXIS 59818, at * 36 (N.D. Ill. Apr. 26, 2013) (holding that defendant "makes no effort to explain why these allegations do not suffice to state an ICFA claim, and has therefore forfeited the argument for purposes of its Rule 12(b)(6) motion").

Even if Defendant Banks had supported this argument (which she did not), it falls by its own weight. The FAC is replete with allegations that the other Banks Defendants "knowingly and substantially assisted" Defendant Banks's wrongful conduct. (*See e.g.*, FAC, at ¶¶ 101-121) (alleging multiple specific instances in which the other Banks Defendants conspired to, and did, aid and abet Defendant Banks in her scheme to steal Shimbly's trade secrets, and compete in the same marketplace targeted by Shimbly). The Court, therefore, should reject this argument, even it were supported by Defendants Banks (which it was not).

## IX. <u>THE COURT SHOULD PROVIDE LEAVE TO AMEND IN THE EVENT THAT THE COURT DISMISSES ANY COMPONENT OF PLAINTIFF'S FAC</u>.

If the Court dismisses any portion of Plaintiff's FAC, despite the absence of any basis asserted by Defendants for doing so, Plaintiff respectfully requests that the Court grant leave to amend, which should be freely given to cure any such deficiencies.[6]

---

[5] This is the only dismissal argument asserted by the Banks Defendants other than Katelynn Banks (*i.e.*, ISellMLS.com, Inc., Cindy Banks, and Tony Banks. Accordingly, the Banks Defendants have waived any other purported bases for seeking dismissal.

[6] *See Lavin v. Reed*, No. 17-cv-1014, 2023 U.S. Dist. LEXIS 196058, at * 37 (N.D. Ill. Nov. 1, 2023) ("Leave to amend shall be freely given absent undue delay or prejudice to the opposing party"); *Runnion v. Girl Scouts of Greater Chicago & NW Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a MTD"); *Donnawell v. Hamburger*, Doc. No. 12-C-9074, 2013 U.S. Dist. LEXIS 89353, at * 16 (N.D. Ill. June 25, 2013) ("Because it is conceivable that plaintiff could correct the defect with an amendment, the Court will grant plaintiff 28 days to file an amended complaint, should she so choose").

Dated: March 6, 2024

Respectfully submitted,

/s/ Hillard M. Sterling
Hillard M. Sterling

HILLARD M. STERLING
ARDC No. 6232655
ROETZEL & ANDRESS
70 West Madison St., Ste. 3000
Chicago, Illinois 60602; (312) 962-8082
hsterling@ralaw.com
**ATTORNEY FOR PLAINTIFF**