**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DEREK KHANNA, individually and derivatively on behalf of Shimbly Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KATELYNN BANKS, ISELLMLS.COM, INC. d/b/a CINDY BANKS TEAM, CINDY BANKS, TONY BANKS, PAMELA CARY, RICHARD CARY, EIRIK SOMERVILLE, MARYAM HUSSEIN,<br><br>Defendants, and<br><br>SHIMBLY CORPORATION, a Delaware Corporation,<br><br>Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 21-cv-5752<br>)<br>)<br>)<br>) Hon. Judge Virginia M. Kendall<br>) Magistrate Judge Keri Holleb-Hotaling<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' KATELYNN BANKS, ISELLMLS.COM, INC.,
CINDY BANKS, TONY BANKS, AND SHIMBLY CORPORATION
REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO
<u>DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

Mitchell J. Edlund (6229190)
Corey T. Hickman (6317871)
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: (312) 474-7900
medlund@cozen.com
chickman@cozen.com

*Counsel for Defendants Katelynn Banks,
iSellMLS.com, Inc., Cindy Banks,
Tony Banks, and Shimbly Corporation*

I.    **Plaintiff's Derivative Claims (Count XVII) Fail as a Matter of Law**

   **A.  Because Shimbly is Dissolved, Plaintiff is Not a Shareholder**

   Plaintiff argues that, despite that Shimbly is no longer being in existence, he has the right to bring a shareholder derivative suit. Plaintiff is wrong. A former shareholder of a dissolved corporation cannot bring a derivative claim. *Hale v. China Online, Inc.*, 08 C 5548, 2009 WL 2601357, at *1 (N.D. Ill. Aug. 21, 2009). In *Hale*, the Court noted that under Delaware law, a plaintiff bringing a derivative action "must be a stockholder of the corporation at the time he commences the suit and must maintain that status throughout the course of the litigation." *Id.* at *2 (collecting cases). The Court reasoned that "dissolution of a corporation terminates an individual's status as a shareholder of the corporation and therefore bars the individual from bringing a derivative action on behalf of the dissolved corporation." *Id.* at *2 (emphasis added) (citing *Giordano v. Marta*, CIV.A. 11613, 1998 WL 227888, at *4 (Del. Ch. Apr. 28, 1998).

   Plaintiff is no longer a shareholder because Shimbly was voided on March 1, 2022. (Dkt. 210-1; Dkt. 186, ¶ 7 ("Plaintiff **was** a Shimbly shareholder at the time of the wrongdoing.") (emphasis added)). Because Plaintiff is not a current shareholder, he cannot assert derivative claims.

   Plaintiff argues in his response that *Hale* is distinguishable because it involved a dissolution "upon which the corporate entity failed to exist," whereas Shimbly was not dissolved but was declared inoperative for failure to pay taxes. (Response, p. 2). Plaintiff cites no law to support that distinction. In fact, Delaware public records expressly state that Shimbly "*is no longer in existence.*" (Dkt. 210-1, ¶ 2) (emphasis added).  Accordingly, there is no reason to differentiate between a corporate dissolution and the voiding of a corporation for failure to pay taxes, as both result in the corporation no longer having legal existence.

1

Plaintiff also continues to disclaim any responsibility despite being a Board member and the "Manager of the Board of Directors." (Dkt. 186, ¶¶ 25, 35). Plaintiff, as "Manager" of Shimbly's Board, could have paid Shimbly's taxes or taken actions to ensure its continued existence. He did nothing, instead filing a lawsuit that acknowledged and expressly alleged that Shimbly's taxes were unpaid and that it was not in good standing. (Dkt. 186, ¶ 94). Plaintiff, the "Manager of the Board," cannot assert a derivative claim on behalf of a voided company.

Finally, Plaintiff cites to a number of cases discussing shareholders having the right to challenge a proposed merger. This case does not involve a merger, and therefore those cases are irrelevant and should be disregarded.

Plaintiff is not a shareholder of Shimbly, a corporation that no longer in exists under Delaware law, and cannot bring derivative claims.

## B. Plaintiff Has Not and Cannot Allege Demand Futility

Banks argues in her Motion that Plaintiff failed to adequately allege demand futility because there are no allegations relating to the third member of the Board, Theophile Khayat ("Khayat"). Plaintiff counters that Khayat was an "inactive Shimbly board member" at the time this lawsuit was commenced, and therefore Plaintiff did not need to allege facts relating to Khayat. (Response, p. 4). Plaintiff is mistaken.

Under Delaware law, a demand on the board may be excused when only "1) a shareholder [has pleaded] *with particularity* facts that establish that demand would be futile because the majority of the board of directors upon whom demand would be made are not independent or disinterested; or 2) a shareholder has alleged facts, *with particularity*, which create a reasonable doubt that the challenged transaction was a product of a valid exercise of the directors' business judgment." *Hale*, 2009 WL 2601357, at *3 (citations omitted).

Here, Plaintiff's Complaint alleges that the Board consisted of Banks, Plaintiff, and Khayat, but fails to allege any facts to support that a *majority* of the Board was not independent or disinterested. (Dkt. 186, ¶ 25). He alleges only the conclusory statement that a demand would have been a "futile, wasteful, and useless act" because "Banks's interests were (and are) directly adverse to bringing an action on behalf of Shimbly against herself." (*Id.*, ¶ 204). The Complaint contains no facts about Khayat, let alone facts that would establish he was "not independent or disinterested."

Plaintiff's response states that Defendants' argument is "based on a palpable misrepresentation of Mr. Khayat's Board status" because "Mr. Khayat *was an inactive Shimbly Board member when this litigation commenced.*" (Response, p. 4) (emphasis in original). Notably, <u>Plaintiff does not argue that Khayat was not a Board member</u>. Nor could he, given that Plaintiff's own Complaint alleges that Khayat is a member of the Board. The Revised Founders' Agreement that Plaintiff argues made Khayat "inactive" merely describes the roles of the company's officers. That agreement does not delineate or alter the makeup of the Board. Plaintiff only alleges that Khayat was an "inactive Shimbly Board member." A Board member is a Board member – whether Khayat was "inactive" makes no difference to the demand futility requirement. To establish demand futility, a shareholder must show that a *majority* of the board was not independent or disinterested. There is no exception for "inactive" board members. Plaintiff has no facts to support that Khayat was independent or disinterested.

Finally, Plaintiff fails to address the argument that, like *Hale*, he cannot assert demand futility when he is on the Board and is the "Manager of the Board of Directors." (Dkt. 186, ¶¶ 25, 35). The Revised Founders' Agreement states that Plaintiff is responsible for "facilitating and managing Board operations," whereas the other two Board members have no delineated

duties relating to the Board. (Dkt. 186-2, p. 2). Any demand would have needed to be made on Plaintiff, who as "Manager of the Board," would have been the one to act on any such demand. Just as in *Hale*, Plaintiff cannot allege demand futility when demand would have been made on himself. Plaintiff's derivative claims fail as a matter of law.

## II.   <u>Banks' Rule 12(b) Motion is Proper Because it Attacks the Amended Complaint</u>

Plaintiff argues that Banks' Motion should be denied because it is an improper successive motion to dismiss. Plaintiff is mistaken. A party may raise a successive Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion. Stated differently, Rule 12(h)(2) specifically excepts failure-to-state-a-claim defenses from the Rule 12(g) consolidation requirement."); *Knox v. Luke*, 19-CV-00343, 2023 WL 3389347, at *4 (N.D. Ill. May 11, 2023) ("Because successive Rule 12(b)(6) arguments are not prohibited under Rule 12(g)(2), Defendant's present motion to dismiss for failure to state a claim is permissible even if Defendant's Heck argument was available during the first motion to dismiss."); *Bernard v. Illinois Dep't of Corr.*, 20-CV-5383, 2023 WL 2018915, at *5 (N.D. Ill. Feb. 15, 2023) ("Seventh Circuit precedent specifically interprets 12(b)(6) motions as excluded from 12(g)(2)'s prohibition by Rule 12(h)(2) . . . this Court is bound by the Seventh Circuit's precedent and thus permits the motion.").

This Court has expressly held that a second Rule 12(b)(6) motion to dismiss is permissible when it responds to an amended complaint. *Williams v. State Farm Mut. Auto. Ins. Co.*, 22 C 1422, 2023 WL 8827946, at *3 (N.D. Ill. Dec. 21, 2023) ("[T]he Seventh Circuit interpreted Rule 12(g)(2) as allowing defendants to raise new arguments in successive Rule 12(b)(6) motion—at least, in response, to an amended complaint.").

Here, Banks moved to dismiss the initial complaint under Rule 12(b)(1), seeking to compel mediation. The complaint has since been amended, and Banks' current motion to dismiss argues under Rule 12(b)(6) that the First Amended Complaint fails to state a claim upon which relief can be granted. Accordingly, Banks' Rule 12(b)(6) motion to dismiss is entirely proper.

## III. Plaintiff's "Direct" Claims (Counts I, III, V, VII, IX) Against Banks Do Not Allege Any Harm Unique to Plaintiff, and Therefore Must Also Be Dismissed

Plaintiff attempts to assert direct claims against Banks, including all the same claims he brought derivatively. Banks' Motion makes clear that the substance of those claims allege harm only to Plaintiff due to his status as a shareholder of Shimbly, and therefore can only be brought derivatively. And, because Plaintiff cannot assert derivative claims for the reasons stated above, all his "direct" claims must also be dismissed.

Plaintiff's response proves this point. Plaintiff argues that there are "a plethora of allegations and claims showing direct injury to Plaintiff," but then only references allegations of harm to the company and allegations relating to claims that have been stayed or are not moved against. (Response, p. 8). For example, Plaintiff points to allegations that:

- Defendants performed acts "to justify his wrongful termination and execute Bank's scheme to steal the company." – claims relating to wrongful termination have been stayed, (Dkt. 36), and Plaintiff's purported claims for "stealing the company" arise out of his status as a stockholder, and are therefore derivative;

- Defendants used "Shimbly's resources to procure and publish false statements." – Banks' Motion does not argue that Plaintiff's defamation and false light claims are derivative;

- Defendants "effectively removed[ed] Plaintiff as a Director." – This allegation arises out of Plaintiff's status as a stockholder and Board member, and is therefore derivative. *See Clifford Paper, Inc. v. WPP Inv'rs, LLC*, CV 2020-0448-JRS, 2021 WL 2211694, at *11 (Del. Ch. June 1, 2021) (holding that claims are derivative when the alleged harm resulting from a denial of voting rights is a harm suffered by the company);

- Defendants committed retaliatory discharge and obstruction of justice in violation of the Illinois Whistleblower Act – again, these claims are stayed. (Dkt. 36).

(*Id.*). Plaintiff's response provides no support that any of the "direct" claims moved against are actually direct.

The question of whether a claim is direct, or derivative depends on: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)." *Wise v. Biowish Techs., Inc*., CV 18-676-RGA, 2019 WL 192876, at *3 (D. Del. Jan. 11, 2019). "Where all of a corporation's stockholders are harmed and would recover pro rata in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature." *Id.* (citations omitted). To demonstrate a direct injury, a plaintiff must show that they can "prevail without showing an injury to the corporation." *Hale*, 2009 WL 2601357 at *5 (citations omitted). Claims for devalued stock are quintessentially harms to the corporation that must be raised derivatively. *Id.* at *5 (citing *In re J.P. Morgan Chase & Co. S'holder Litig*., 906 A.2d 808, 826 (Del. Ch. 2005)). Claims that the board "mismanaged or wasted corporate assets" are harms to the company that may only be raised derivatively. *Wise*, 2019 WL 192876 at *3.

In *Hale*, the Court found that the plaintiffs lacked standing to assert derivative claims, and that all the "direct" claims they alleged were derivative because they related to the company's losses and devaluation of the company's shares. 2009 WL 2601357 at *5. The Court held that because the plaintiffs could not prevail on those claims "without showing injury to China Online," those claims were derivative and must also be dismissed for lack of standing. *Id.* at *5; *see also Marshal T. Simpson Tr. v. Invicta Networks, Inc*., 249 F. Supp. 3d 790, 794 (D. Del. 2017) (holding that claims of failure to provide "competent and active management" resulting in devalued stock are derivative).

While Plaintiff argues that his claims "look nothing like" devaluation claims, Plaintiff fails to address how his claims do not depend on showing harm to Shimbly. (Response, p. 9). A review of his Complaint makes clear that his claims are for damage to Shimbly because of Banks' purported scheme to harm the company. Plaintiff ignores his allegations that he was harmed by virtue of harm to the company and devalued stock. (*See e.g.*, Dkt. 186, ¶ 124(h) ("driving down the value of Plaintiff's Shimbly stock to nothing"); ¶ 132 (describing Banks' alleged fraudulent scheme to "destroy Shimbly's value, steal Shimbly's trade secrets and other proprietary information," and to usurp "Shimbly's targeted marketplace"); ¶ 141 ("depriving Shimbly of ownership of the Business Concept . . . and stealing the Business Concept from Shimbly and its shareholders . . . breaching her duty to perform her role and responsibilities as Shimbly's CEO"); ¶¶ 152, 155 (alleging theft of Shimbly's trade secrets); ¶ 161 (alleging that Banks converted Shimbly's "protected Business Concept"). Plaintiff's own allegation of "separate and distinct" harm includes "***the total loss of millions of dollars of value in Plaintiff's shares of Shimbly stock***." (*Id.*, ¶ 99) (emphasis added).

Plaintiff can put lipstick on a pig, but it is still a pig. Plaintiff has alleged harm was because *Shimbly* was allegedly harmed. Plaintiff does not allege *any* harm distinct from Shimbly. Accordingly, Plaintiff's direct claims should be dismissed.

## IV. Plaintiff's Defamation and False Light Claims Against Banks (Counts XI, XIII) Fail as a Matter of Law

### A. Forwarding an E-mail Cannot Subject a Party to Liability

Plaintiff's defamation and false light claims against Banks are predicated primarily on her "publication of defamatory content in the Hussein report." (Dkt. 186, ¶ 169). Plaintiff alleges that Defendants Maryam Hussein and Eirik Somerville prepared a report in October 2020

containing defamatory statements that was sent by e-mail, and that on October 27, 2020, Banks "re-published the defamatory report" by "forward[ing] this email to Khayat." (*Id.*, ¶¶ 81-84).

In her Motion, Banks argues that Plaintiff's claims fail under § 230 of the CDA because a party is immune from liability for sharing or "re-publishing" an alleged defamatory statement by email. *Monge v. Univ. of Pennsylvania*, CV 22-2942, 2023 WL 2471181, at *2 (E.D. Pa. Mar. 10, 2023) (collecting cases and holding that "Courts analyzing and applying the CDA have consistently held that distributing, sharing, and forwarding content created and/or developed by a third party is conduct immunized by the CDA. . . Dr. Thomas's conduct of sharing the allegedly defamatory articles via email is immune from liability under the CDA."); *Peters v. LifeLock Inc.*, CV-14-00576-PHX-ROS, 2014 WL 12544495, at *3 (D. Ariz. Sept. 19, 2014) ("Schaan cannot be liable for defamation based on forwarding Jones' email.").

Plaintiff argues in his response that the Seventh Circuit has taken a narrower view of the CDA that does not afford immunity, but instead only ensures that a user is not "treated as the publisher or speaker of any information provided by someone else." (Response, pp. 10-11 n. 10). In so arguing, Plaintiff supports Banks' argument. If the CDA ensures that a user is not "the publisher or speaker of any information provided by someone else," then there can be no defamation claim for forwarding an email since defamation requires a publication. *See Huon v. Denton*, 841 F.3d 733, 741 (7th Cir. 2016) (under the CDA, "no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." . . . [F]or purposes of defamation and other related theories of liability, a company like Gawker cannot be considered the publisher of information simply because the company hosts an online forum for third-party users to submit comments.").

8

Here, Plaintiff's defamation and false light claims, to the extent they rely on the forwarding of the e-mail, cannot withstand dismissal because Banks cannot be considered the publisher of the information in the forwarded email. Plaintiff argues that Banks "added" to the email when she stated: "Here are a few 'real examples' of how the actions are negatively effecting the culture and organization [sic]." (Dkt. 186). This statement is not close to defamatory, is a mere statement of opinion, and does not change the analysis. The CDA precludes Plaintiff's defamation and false light claims.

### B.  The Alleged Statements are Not Defamatory as a Matter of Law

Plaintiff next argues that his claims cannot be disposed of on a motion to dismiss because they raise factual issues about whether the statements are defamatory. However, Plaintiff ignores that courts routinely dismiss defamation claims which present statements that clearly are not defamatory. *See Am. Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.*, 820 F. Supp. 1072, 1076 (N.D. Ill. 1993) (dismissing *per se* claim because it was capable of an innocent construction and "not so obviously and naturally harmful that proof of special damages is unnecessary," and dismissing *per quod* claim because the alleged material "does not impugn American Needle."); *Glassman v. Metro. Life Ins. Co.,* 616 F. Supp. 145, 147 (N.D. Ill. 1985) (granting motion for judgment on the pleadings because statements at issue were not defamatory and were capable of an innocent construction); *McGurren v. Hubbard Radio Chicago, LLC*, 21 C 6287, 2022 WL 602467, at *3 (N.D. Ill. Mar. 1, 2022) (dismissing defamation claims on numerous grounds, including that statements were non-defamatory opinions, and also were subject to an innocent construction); *DeNicolo v. Hubbard Radio Chicago, LLC*, 21-CV-6292, 2022 WL 17251278, at *6 (N.D. Ill. Nov. 28, 2022) (same).

A defamatory statement is one "that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with him or her." *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). Statements are not actionable as defamation when they contain statements of opinion that do not imply objective facts regarding the plaintiff. *Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 518 (1st Dist. 1998). The first amendment further "protects overly loose, figurative, rhetorical, or hyperbolic language, which negates the impression that the statement actually presents facts." *Id.* (colleting cases).

Additionally, where a statement has **any** reasonable, non-defamatory interpretation, the innocent construction rule bars claims for defamation *per se. Powers v. Delnor Hosp.*, 148 Ill. App. 3d 844, 847 (2d Dist. 1986). So long as there is even one reasonable innocent interpretation, this is sufficient to warrant dismissal for the defendant. *Garber-Pierre Food Prod., Inc. v. Crooks*, 78 Ill. App. 3d 356, 359-60 (1979). Statements relating to a person's job performance are not actionable because they are subject to an innocent construction. *See, e.g.*, *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 415-16 (1996) (holding that statements that the plaintiff "did not follow up on assignments" and "could not get along with her coworkers" were not actionable); *Valentine v. N. Am. Co. for Life & Health Ins.*, 60 Ill. 2d 168, 170 (1974) (statements that the plaintiff was a "lousy agent" and "had not done for the company the things he was supposed to have done" were capable of an innocent construction).

Plaintiff's response does not address the specific statements he claims are defamatory, but instead generally asserts that the statements "are specific and factual, not merely 'vague' statements or opinions." (Response, p. 12). Plaintiff misses the mark. Statements that Plaintiff was "improperly making payments," "misled [Banks] on his legal background and legal education," and "improperly budgeted Shimbly spending," are not defamatory. They do not deter

others in the community from dealing with Plaintiff, and are pure statements of opinion regarding Plaintiff's performance as an employee and Board member of Shimbly. Vague statements such as "mismanagement" and "improperly" are also incapable of verification. Plaintiff has not pled any actionable defamation or false light claim, and therefore those claims should be dismissed.

## V.   Plaintiff's Trade Secrets Act and Conversion Claims Fail

### A.  Plaintiff Lacks Standing to Assert Claims Relating to Trade Secrets

Plaintiff's claims for violation of the Trade Secrets Act and conversion expressly allege that Banks misappropriated *Shimbly's* trade secrets. (Dkt. 186, ¶¶ 152, 161). The Agreement makes clear that any purported trade secrets belong solely to *Shimbly*. It provides that the "Business Concept" was transferred entirely to Shimbly, and that each of the Founders "will grant and assign to the Company his or her right, title, and interest in and to the Business Concept." (Dkt. 186-1, p. 1). Accordingly, only Shimbly has the right to assert claims relating to Shimbly's trade secrets and property, not Plaintiff directly. *See Desmond v. Taxi Affiliation Services LLC*, 344 F. Supp. 3d 915, 928 (N.D. Ill. 2018) (conversion requires that a plaintiff has a right to "immediate possession of the property, absolutely and unconditionally.").

Plaintiff asserts in his response that he suffered direct harm because he would be deprived of the use of Shimbly's trade secrets. (Response, p. 12). The sole case cited by Plaintiff, *Weinstein v. Schwartz*, 422 F.3d 476, 478 (7th Cir. 2005), is inapposite. In *Weinstein*, the corporate property was a farm that the shareholder was renting for his separate horse breeding business, and the Court found that a sale of that farm would impact the shareholder directly because it would close his horse breeding business. Here, the property at issue is trade secrets that indisputably belong *only* to Shimbly and, by the definition of trade secrets, are confidential and could never be owned or used by Plaintiff or anybody else. Unlike a farm, Plaintiff has no ownership in the alleged

11

trade secrets and is not using them for his own direct benefit, but for Shimbly's benefit. Plaintiff lacks standing to assert any claims relating to Shimbly's trade secrets.

### B. Plaintiff Fails to Adequately Allege Any Trade Secrets or Conversion

A plaintiff asserting a trade secret claim "must do more than point to broad areas of [information] … and assert that something there must have been secret and misappropriated. The plaintiff must show concrete secrets." *Carpenter v. Aspen Search Advisers*, LLC, 10 C 6823, 2011 WL 1297733, at *3 (N.D. Ill. Apr. 5, 2011) (holding that trade secrets claim, "while lengthy, provide no specifics about the nature of the confidential data for which it claims trade secret protection."); *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992) (noting that trade secrets claim must allege "concrete secrets.").

Banks' Motion points out that the Complaint contains nothing but vague, general statements describing the Shimbly product, with no specific facts demonstrating what the supposed secret information is. Plaintiff's response still makes no effort to explain what the product is, what the trade secrets are, or why they are secret. Instead, he simply argues that the allegations "are specific and precise." (Response, p. 12). Plaintiff offers nothing more. It remains unclear what the Shimbly product even is, let alone what is confidential or secret about it. Plaintiff also ignores that the Founders Agreement states only that "certain proprietary concepts of the business remain confidential," but fails to state what those concepts are. (Dkt. 186-1, p. 4). Like Plaintiff's allegations, this provision is so vague that it is meaningless.

Finally, a conversion claim requires a plaintiff to make a "demand for possession of the property." *Bill Marek's The Competitive Edge, Inc. v. Mickelson Group, Inc*., 346 Ill. App. 3d 996, 1003 (2d Dist. 2004); *Desmond*, 344 F. Supp. 3d at 928. Plaintiff argues that he has sufficiently alleged that he sought the return of the trade secrets in paragraphs 67 and 73 of the Complaint.

However, neither of those allegations have anything to do with conversion or a demand, and it is unclear why Plaintiff cites to them. No demand was made, defeating any conversion claim.[1]

## VI.    Plaintiff's Gross Negligence Claim (Count XV) is Barred by the Economic Loss Doctrine

This is a business dispute, yet Plaintiff asserts a claim for "gross negligence" against Banks. Such a claim is clearly barred by the economic loss doctrine, which provides that a plaintiff cannot recover under a negligence theory where only economic losses, and no physical damage to property or bodily injury, are alleged. *See, e.g., In re Chicago Flood Litig.*, 176 Ill. 2d 179, 199 (1997). In his response, Plaintiff argues that the economic loss doctrine does not apply because Banks had "an extracontractual duty to Plaintiff" arising out of "the parties' relationship as fiduciaries, officers, employees, and shareholders of Shimbly." (Response, p. 13). Plaintiff's argument should be rejected.

The existence of a fiduciary duty may give rise to a claim for breach of fiduciary duty, which Plaintiff has asserted. But Plaintiff cites no case supporting an independent "gross negligence" claim against a fiduciary. Plaintiff also cites no case holding that "officers, employees, and shareholders" have extracontractual duties that circumvent the economic loss doctrine. Negligence claims arising out of extracontractual duties are reserved for professionals such as attorneys and accountants, not shareholders in a business. The economic loss rule applies.

## VII.    Plaintiff's Allegations Do Not Support a Claim for Intentional Infliction of Emotional Distress Claim (Count XVI)

Plaintiff argues in his response that Banks "ignores Plaintiff's allegations" that establish severe and outrageous conduct. However, the allegations, on their face, are not the type that can

---

[1] Plaintiff's response does not address Banks' argument that the conversion claim is preempted by the Trade Secrets Act.

give rise to an intentional infliction of emotional distress ("IIED") claim. A plaintiff claiming IIED must allege: "(1) that the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress." *S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 859 (N.D. Ill. 2010) (dismissing IIED claim for failing to plead more than conclusions). The standard is "quite high." *Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 511 (N.D. Ill. 2012). To plead extreme and outrageous conduct, "a defendant's conduct must be so extreme as to go beyond all possible bounds of decency" and must be "regarded as intolerable in a civilized community." *Id.* (dismissing IIED claim for failure to plead extreme and outrageous conduct).

Here, Plaintiff's response simply repeats the allegations of the Complaint, none of which support an IIED claim. There are no specific allegations that Banks had the intent to cause emotional distress. There are no specific allegations about Plaintiff's purported emotional distress. Plaintiff's allegations merely describe a shareholder dispute, not "intolerable" conduct that goes "beyond all possible bounds of decency" and that is "intolerable in a civilized community." Business disputes between sophisticated individuals are not grounds for IIED claims. Plaintiff's IIED claim should be dismissed.

## VIII.  Plaintiff's Aiding and Abetting Claims (Counts II, IV, VIII) Against the Banks Defendants Fail Because There is No Underlying Tort

A claim for aiding and abetting requires an underlying tort; "[w]ithout an underlying tort, the derivative claims for conspiracy and aiding and abetting fail." *Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*, 897 F.3d 797, 806 (7th Cir. 2018). Accordingly, if the Court grants Banks' Motion and dismisses the underlying torts, the aiding and abetting claims against the Banks Defendants should also be dismissed. Plaintiff does not dispute this in his response.

Moreover, Plaintiff's Complaint fails to plead any facts supporting an inference that the Banks Defendants "knowingly and substantially" assisted in wrongful conduct. *Peterson v. A Clear Title & Escrow Exch., LLC*, 14-CV-09932, 2017 WL 1134483, at *3 (N.D. Ill. Mar. 27, 2017). Plaintiff asserts in his response that the Banks Defendants' argument is underdeveloped, but a plain reading of the Complaint makes clear that there are no concrete facts supporting any knowledge of the Banks Defendants of a "scheme" by Banks or an intent to participate in any such "scheme." The aiding and abetting claims fail for this additional reason.

## IX. Plaintiff's Complaint Asserts Claims (Counts I, V, VI, X) That Are Stayed

Plaintiff appears to misunderstand the Court's April 6, 2022 Order when he repeatedly references in his response claims that are stayed, and suggests that only his wrongful/retaliatory discharge claims are stayed. The Court's Order is much broader, providing that the following claims are stayed and must be submitted to mediation: "Khanna's claims for breach of fiduciary duty (insofar as the claim arises from his termination), breach of contract (for failure to submit to mediation and for breach of the salary agreement), and wrongful and retaliatory discharge, and violations of the Illinois Whistleblower Act." (Dkt. 36). Accordingly, Plaintiff's repeated reference to stayed claims should be ignored, as Banks' Motion makes no argument as to those claims. The Court should dismiss all claims except for those delineated in the Court's April 6, 2022 Order, and reaffirm that the remaining counts are stayed subject to mediation.

## X. Conclusion

For the foregoing reasons, and those set forth in their opening brief, Defendants respectfully request that the Court grant the instant Motion and dismiss Plaintiff's First Amended Complaint, with prejudice.

Dated: March 13, 2024            **Katelynn Banks, iSellMLS.com, Inc., Cindy Banks, Tony Banks, and Shimbly Corporation**


By: /s/ *Mitchell J. Edlund*
                One of their attorneys

Mitchell J. Edlund (6229190)
Corey T. Hickman (6317871)
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: (312) 474-7900
Facsimile: (312) 382-8910
Email: medlund@cozen.com
       chickman@cozen.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2024, a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record via the Court's CM/ECF automated filing system.

/s/ *Mitchell J. Edlund*

Mitchell J. Edlund

LEGAL\69139843\6