**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DEREK KHANNA, individually and derivatively on behalf of Shimbly Corporation, | ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | |
| KATELYNN BANKS, ISELLMLS.COM, INC. d/b/a CINDY BANKS TEAM, CINDY BANKS, TONY BANKS, PAMELA CARY, RICHARD CARY, ERIK SOMERVILLE, MARYAM HUSSEIN, | ) ) ) ) ) ) | No. 21 C 5752  Judge Virginia M. Kendall |
| *Defendant*s, and | ) ) | |
| SHIMBLY CORPORATION, a Delaware Corporation, | ) ) ) | |
| *Nominal Defendant*. | ) ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Derek Khanna brings this action against Defendants Katelynn Banks ("Banks"), ISellMLS.com, Inc. ("Cindy Banks Team"), Cindy Banks, Tony Banks (together with Banks, the "Banks Defendants"), Shimbly Corporation, Pamela Cary, Richard Cary, Erik Somerville, and Maryam Hussein. Khanna seeks all manner of legal recourse for what, at is core, is a business arrangement gone bad. This matter is now before the Court on the Banks Defendants and Somerville's respective motions to dismiss. For the reasons below, the Banks Defendants' motion [209] and Somerville's motion [211] are both granted in part and denied in part.

1

## BACKGROUND

### I.    Factual Background

In July 2019,[1] Khanna and Banks began working on a business concept (the "Business Concept") that would later serve as the foundation for their startup company, Shimbly Corporation ("Shimbly"). (Dkt. 186 ¶ 20). Shimbly is a platform designed to help users find, sell, and manage real estate properties and enable agents to collaborate with users in the process. (*Id.* ¶ 27). In January 2020, Khanna and Banks selected Theophile Khayat ("Khayat") to join them as Shimbly's third co-founder and Chief Technology Officer. (*Id.* ¶ 23). That month, the three co-founders formally incorporated Shimbly under the laws of Delaware. (*Id.* ¶¶ 25, 27).

Later, in April, the trio executed Shimbly's Founders' Collaboration Agreement (the "Agreement") which memorialized each founder's consent to transfer "his or her right, title, and interest in" the Business Concept to Shimbly. (*Id.* ¶¶ 26–28). The Agreement further set forth each founder's ownership interest in the company; restricted transfers of ownership interests and the Business Concept; specified the founders' rights in the event of a substantive dispute; detailed provisions governing the expenditure and reimbursement of working capital; and articulated the parties' status as fiduciaries of the company. (*Id.* ¶¶ 30–40). The Agreement also appointed each founder to the board of directors and assigned the founders' roles and responsibilities as follows: Banks was Chief Executive Officer ("CEO"); Khanna was Chief Operations Officer ("COO"), Chief Strategy Officer ("CSO"), Manager of the Board of Directors, and General Counsel; and Khayat was Chief Technology Officer ("CTO"). (*Id.* ¶ 35).

In June 2020, the co-founders executed a revised agreement (the "Revised Agreement"), meant to supersede the Agreement where the two were in conflict. (*Id.* ¶ 41–42). The Revised

---

[1] The Complaint states that the parties began working on the Business Concept in July 2020, but the Court assumes this is a typo and that Plaintiff meant July 2019.

Agreement reflected the co-founders' consensus that Khayat would "no longer" be a "regularly active employee with Shimbly in [the] role of [Chief Technology Officer]." (*Id.* ¶ 43; Dkt. 186-2 at § 3.2). The Revised Agreement struck the former ownership interest agreement and established a new "share-structure" arrangement. (Dkt. 186 ¶ 44). Under the Revised Agreement, Khanna, Banks, and Khayat each received common stock and voting rights. (*Id.* ¶¶ 46–47).

A month later, Banks created a budget line item for $85,000 in working capital expenses without first seeking approval of the expense from the shareholders, in violation of the Agreement. (*Id.* ¶ 58; Dkt. 186-1 § 7.5). The expenditure was for a database for Shimbly, but it was developed by Banks' own brokerage company, the Cindy Banks Team, and was owned and operated by Banks' family. (Dkt. 186 ¶¶ 9–11, 59). Though Khanna objected to the expense and its presence on Shimbly's accounting records, Banks declined to remove the line item from the budget or seek approval for the expense. (*Id.* ¶ 61).

In the fall, Banks effectively abandoned her role as CEO, cancelling all meetings and declining to respond to Khanna's petitions for her to re-engage with the company, discuss fundraising ideas, and develop a strategy to launch Shimbly. (*Id.* ¶¶ 66–67, 73). Around the same time, Banks made additional unauthorized payments of Shimbly funds. (*Id.* ¶¶ 63–64). One such payment went to Khayat for "goods or services," while another went to Maryam Hussein to secure her assistance in preparing a report that would later be used to justify terminating Khanna. (*Id.* ¶ 64). None of these unauthorized payments helped Shimbly's financial condition, which was in decline. (*Id.* ¶ 65).

On October 26, 2020, Khanna sent a formal whistleblower notice to Shimbly's board of directors and investors, detailing Bank's improper expenses, among other things. (*Id.* ¶ 76). The next day, Banks told Khanna that she could not work with him anymore and gave him three days

to resign or face termination. (*Id.* ¶ 77). She also disclosed that she received a report, prepared by Maryam Hussein and Erik Somerville (the "Hussein/Somerville Report") claiming that Khanna was the one mismanaging and sabotaging Shimbly. (*Id.* ¶¶ 77, 81–82). Banks forwarded the report to Khayat, noting that the report included "a few 'real examples' of how [Khanna's] actions [were] negatively effecting the culture and organization." (*Id.* ¶¶ 78, 84). Shortly thereafter, Banks terminated Khanna. (*Id.* ¶¶ 87–88). Banks then proceeded to alter Shimbly's accounting records, transfer Shimbly's trade secrets and intellectual property, and launch a new company using Shimbly's assets. (*Id.* ¶ 91). She also began promoting aspects of the Business Concept as though they belonged to the Cindy Banks Team, and offered to sell Shimbly shares to investors Richard Cary and Pamela Cary ("the Carys") for nominal consideration. (*Id.* ¶ 92–96). In the end, Shimbly defaulted on its corporate tax obligations, leading the Secretary of the State of Delaware to declare Shimbly "inoperative and void." (*Id.* ¶ 94; Dkt. 210-1 at 2).

Throughout this saga, Defendants Cindy Banks Team, Cindy Banks, Tony Banks, the Carys, Somerville, and Hussein (collectively the "Conspiring Defendants") knew of and assisted with Banks' plan to appropriate Shimbly's assets and use them in furtherance of a new company that would operate in Shimbly's place. (*Id.* ¶¶ 102-03).

## II.    Procedural Background

On October 27, 2021, Khanna initiated this lawsuit, later filing a seventeen-count Amended Complaint. The claims are as follows: breaches of fiduciary duty (Count I), aiding and abetting Banks' breaches of fiduciary duty (Count II), fraudulent concealment (Count III), aiding and abetting Banks' fraudulent concealment (Count IV), breaches of contract (Count V), wrongful and retaliatory discharge (Count VI), violations of the Illinois Trade Secrets Act (Count VII), aiding and abetting Banks' violations of the Illinois Trade Secrets Act (Count VIII), conversion (Count

IX), obstruction of justice in violation of the Illinois Whistleblower Act (Count X), defamation (Counts XI and XII), false light (Counts XIII and XIV), gross negligence (Count XV), intentional infliction of emotional distress (Count XVI), and derivative claims (XVII). The Banks Defendants and Somerville respectively moved to dismiss the complaint. (Dkts. 209, 211). The Carys later joined the Banks Defendants' motion to dismiss (Dkts. 214, 217).

On April 6, 2022, Magistrate Judge Feinerman ordered the parties to submit to "binding confidential mediation" on Khanna's claims for "breach of fiduciary duty (insofar as the claim arises from his termination), breach of contract (for failure to submit to mediation and for breach of the salary agreement), wrongful and retaliatory discharge, and violations of the Illinois Whistleblower Act." (Dkt. 35). Those claims are stayed and the Court's opinion will address only those claims which are not stayed.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* (citing *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)). Yet, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements" are not enough. *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). The complaint's factual content must "raise a right to relief above the speculative level." *Kaminski*, 23 F.4th at 776 (quoting *Twombly*, 550 U.S. at 555).

For claims "rest[ing] on allegations of deceptive conduct," Federal Rule of Civil Procedure 9(b) requires the plaintiff to "plead with particularity the circumstances constituting fraud." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)); Fed. R. Civ. P. 9(b). This means the plaintiff "must identify the 'who, what, when, where, and how' of the alleged fraud." *Benson*, 944 F.3d at 646 (quoting *Vanzant*, 934 F.3d at 738).

## DISCUSSION

Khanna brings derivative and direct shareholder claims alongside a host of tort claims. In diversity cases, district courts must apply the substantive law of the state in which the court sits. *Van Diest Supply Co. v. Shelby Cnty. State Bank*, 425 F.3d 437, 439 (7th Cir. 2005) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Thus, Illinois law applies here. But, in Illinois, derivative claims brought on a corporation's behalf or individual claims brought by a corporation's stockholders are governed by the law of the state of incorporation. *Housman v. Albright*, 368 Ill.App.3d 214, 218–19 (Ill.App.Ct. 2006) (citing *Spillyards v. Abboud*, 278 Ill.App.3d 663, 667 (Ill.App.Ct. 1996)). Because Shimbly is incorporated under the laws of Delaware, the Court will apply Delaware law to Khanna's derivative and direct claims.

## I. Khanna Fails to State a Shareholder Derivative Claim (Count XVII).

The Banks Defendants argue that Khanna's derivative claims fail for two reasons. First, they claim Khanna lacks standing to bring a shareholder derivative action because he is no longer

a Shimbly shareholder. Next, they contend Khanna has not and cannot allege demand futility. The Court considers each argument in turn.

### A. Khanna's Shareholder Status

Court of Chancery Rule 23.1 and Section 327 of the Delaware General Corporation Law, taken together, require that a "plaintiff, bringing a derivative suit on behalf of a corporation, must be a stockholder of the corporation at the time he commences the suit and must maintain that status throughout the course of the litigation." *Parfi Holding AB v. Mirror Image Internet, Inc.*, 954 A.2d 911, 935 (Del. Ch. 2008) (internal citations omitted); *see also Lewis v. Anderson*, 477 A.2d 1040, 1049 (Del. Ch.1984) (a plaintiff who is not a stockholder, or who ceases to be a stockholder during the pendency of his suit, loses standing to maintain a derivative action). This rule applies to derivative actions brought in federal court. *See e.g., Winters v. Stemberg*, 529 F.Supp.2d 237, 245 (D. Mass. 2008) (applying Delaware law); *Brambles USA, Inc. V. Blocker*, 731 F.Supp. 643, 648 (D. Del. 1990) (applying Delaware law).

The Banks Defendants argue that Khanna is not a Shimbly shareholder, as required, because Shimbly no longer exists. In support of their position, the Banks Defendants point to a letter from Delaware's Secretary of State declaring Shimbly "no longer in existence and good standing under the laws of … Delaware having become *inoperative and void*" on March 1, 2022. (Dkt. 210-1 at 2) (emphasis added).

Under Delaware law, dissolution of a corporation terminates an individual's status as a shareholder of the corporation and therefore bars the individual from bringing a derivative action on behalf of the dissolved corporation. *Hale v. China Online, Inc.*, 2009 WL 2601357, at *2 (N.D. Ill. Aug. 21, 2009), *aff'd sub nom. Hale v. Victor Chu*, 614 F.3d 741 (7th Cir. 2010) (citing *Giordano v. Marta*, 1998 WL 227888, at *4 (Del. Ch. April 28, 1998)). But courts interpreting

Delaware law have found that dissolution is not the legal equivalent of a corporation being declared void for non-payment of taxes. *See In re Efoora, Inc*., 472 B.R. 481, 486 (Bankr. N.D. Ill. 2012) ("[The company] was not dissolved. It forfeited its certificate of incorporation for failure to pay franchise taxes, which is not the same.); *Board of Managers of Soho Int'l Arts Condo. v. City of New York*, 2005 WL 1153752, at *11 & n. 19 (S.D.N.Y. May 13, 2005) ("[D]issolution of a corporation "is a specific legal term and is not the legal equivalent of a corporation declared inactive for non-payment of franchise taxes."); *United States v. Ne. Pharm. & Chem. Co*., 810 F.2d 726, 746 (8th Cir. 1986) ("[F]orfeiture of the corporate charter and voluntary dissolution of the corporation are not legally equivalent."). While these decisions are not binding, the Court finds their reasoning persuasive and declines to find that Shimbly's inoperative status precludes Khanna's derivative claims. Nevertheless, Khanna's derivative claims fail for a separate reason.

### B. Demand Futility

The Banks Defendants argue that Khanna has not and cannot plead demand futility for two reasons, but the first is decisive. Khanna failed to make a demand on the board of the directors and this failure is not excusable because the Complaint fails to allege with specificity that demand would be futile.

"To bring a derivative action, a plaintiff shareholder must demonstrate 'that the corporation itself [] refused to proceed after suitable demand, unless excused by extraordinary conditions.'" *Hale*, 2009 WL 2601357, at *3 (citing *Ross v. Bernhard*, 396 U.S. 531, 534 (1970)). This requirement is also captured in Federal Rule of Civil Procedure 23.1 which requires a plaintiff, in a shareholder derivative action, to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors … and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed. R. Civ. P. 23.1. While

Rule 23.1 speaks only to the adequacy of a shareholder plaintiff's pleadings, the requirement of a shareholder demand is more than a pleading requirement; it is a substantive right belonging to shareholders and directors. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 97 (1991). Thus, "to determine whether the demand requirement may be excused by futility" the Court must look to the substantive law of the state where Shimbly was incorporated. *Id.* at 98–99, 104 (whether a shareholder should be allowed to proceed without making a demand "is based on the application of the State's futility doctrine").

In assessing demand futility, Delaware courts look to three factors on a director-by-director basis: (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the demand; (ii) whether the director would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand; and (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand. *Lebanon Cnty. Employees' Ret. Fund v. Collis*, 311 A.3d 773, 796 (Del. 2023). "If the answer to any of these questions is 'yes' for at least half of the members of the demand board, then demand is excused as futile." *Id*. (quoting *United Food and Com. Workers Union and Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1059 (Del. 2021)).

Here, Khanna was required to make a demand on Shimbly's board of directors, which had three members: Khanna, Khayat, and Banks. While the allegations in the Complaint support a finding of demand futility with respect to Banks, there are no allegations of demand futility with respect to Khayat.

Khanna insists that demand on Khayat was unnecessary because he was an inactive member of the board, but this argument is inaccurate and unavailing. The Revised Agreement specifies that although Khayat was no longer regularly active as Shimbly's CTO, "he maintained "[v]oting shares … in accordance with his 3,600 shares of common stock." (Dkt. 186-2 at 4). On the face of the Complaint, and the attachments thereto, Khanna himself pleads that Khayat is a member of the board with voting rights. Because the Complaint does not raise any allegations of demand futility with respect to Khayat, Khanna fails to plead demand futility. Accordingly, the shareholder derivative claim fails and Count XVII is dismissed.

## II. Khanna Predominately Fails to State Direct Shareholder Claims (Counts I, III, V, VII, IX, and XV).

The Banks Defendants also seek to dismiss each of the direct shareholder claims brought against Banks, arguing that Khanna fails to allege any unique harm to himself. To demonstrate a direct injury, a shareholder plaintiff must demonstrate "that the duty breached was owed to the [shareholder] and that he or she can prevail without showing an injury to the corporation." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004). To determine if a claim is direct or derivative the Court must ask: (1) who suffered the alleged harm (the corporation or the suing shareholder, individually), and (2) who would receive the benefit of any recovery or other remedy? *Tooley*, 845 A.2d at 1033. Courts must look to all the facts alleged in a complaint to determine whether a direct claim exists. *Dieterich v. Harrer*, 857 A.2d 1017, 1027 (Del. Ch. 2004). The Court considers each direct claim in turn.

### A. Breach of Fiduciary Duty (Count I)

To state a claim under Delaware law for breach of fiduciary duty, a plaintiff must allege both (1) that the defendant owed the plaintiff a fiduciary duty, and (2) that the defendant breached it. *Est. of Eller v. Bartron*, 31 A.3d 895, 897 (Del. 2011). Officers, directors, and managers owe a

company they serve the traditional triad duties of care, loyalty, and good faith. The duty of loyalty "mandates that the best interests of the corporation and its shareholders takes precedence over any interest possessed by a director, officer, or controlling shareholder and not shared by stockholders generally." *In re MultiPlan Corp. S'holders Litig.*, 268 A.3d 784, 799 (Del. Ch. 2022) (quoting *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993)). To sufficiently plead a claim for breach of the duty of loyalty, a plaintiff must "allege facts showing that a self-interested transaction occurred, and that the transaction was unfair to the [plaintiff]." *Artoss, Inc. v. Artoss GmbH*, 2022 WL 18462594, at *6 (D. Del. Oct. 14, 2022) (citing *Joyce, on Behalf of CTC Mins., Inc. v. Cuccia*, 1997 WL 257448, at *5 (Del. Ch. May 14, 1997)).

Though Khanna alleges that Banks breached her fiduciary duty to him in myriad respects, the allegations which are not subject to the aforementioned stay are obviously about breaches of fiduciary duties owed to and harms suffered by Shimbly. (*See* Dkt. 186 at ¶¶ 124–125). For example, Khanna alleges that Banks engaged in accounting fraud, failed to develop Shimbly's business, purposefully bankrupted Shimbly, executed a plan to steal Shimbly's trade secrets, and drove down the value of Shimbly stock. (*Id.* at ¶ 124). Such allegations can only be brought derivatively, because, at their core, these allegations are about harm to Shimbly. Accordingly, Count I is dismissed.

### B.  Gross Negligence (Count XV)

Although Banks does not identify Count XV as a direct claim, it is one. In pleading his gross negligence claim, Khanna asserts that Banks breached the duty of care owed to him because

of the parties' relationship as fiduciaries, officers, employees, and shareholders of Shimbly. It is axiomatic that such allegations amount to a direct shareholder claim.

Moving to the merits, to state a claim for gross negligence, a plaintiff must establish that he was owed a "standard of care" from which the defendant took an "extreme departure." *Greenfield as Next Friend for Ford v. Miles*, 211 A.3d 1087, 1101 (Del. 2019). Here, Khanna does not allege that Banks breached her duty of care in a way that uniquely harmed him. Khanna merely complains that he was harmed when Banks engaged in accounting fraud; executed a plan to steal Shimbly's trade secrets; and drove down the value of Shimbly stock. Khanna does not plead any facts showing Banks' alleged gross negligence caused him to suffer any harm that was not also borne by the company. Thus, Count XV is dismissed.

### C. Fraudulent Concealment (Count III)

"Fraudulent concealment requires a plaintiff to show that [his] injury was caused by the defendant's deliberate concealment of a material fact with intent to induce plaintiff's reliance." *Tr. Robin, Inc. v. Tissue Analytics, Inc.*, 2022 WL 17423728, at *5 (Del. Ch. Dec. 2, 2022) (citing *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987)). This cause of action also requires that the defendant acted with scienter. *Id.* Here, Khanna alleges that Banks intentionally concealed information regarding her scheme to terminate Khanna, destroy Shimbly's value, and steal its trade secrets. As aforementioned, Khanna can only bring direct claims to the extent that he can demonstrate an injury distinct from any injury to the corporation. The only allegation at bar that could support a direct shareholder claim is the allegation that Banks intentionally concealed material information regarding her scheme to terminate Khanna. The claim still fails because Khanna does not allege that he relied on Banks' representation in any way. While Khanna claims that Banks concealed her scheme with the intention of inducing him to use substantial effort to

develop and build Shimbly's business, Khanna, as a co-founder and director, was already using great effort to build up the company. Khanna does not claim to have worked any harder because he believed Banks would not terminate him. Because Khanna does not identify how he relied on Banks' concealment, or how he was injured as a result, he fails to state a claim for fraudulent concealment. Thus, Count III is dismissed.

### D. Breach of Contract (Count V)

To state a claim for breach of contract under Delaware law, a plaintiff must plead: (1) the existence of a contract; (2) a breach of an obligation imposed by that contract, and (3) resulting damages. *VLIW Tech., LLC v. Hewlett-Packard Co*., 840 A.2d 606, 612 (Del. 2003). As with the breach of fiduciary duty claim, Khanna alleges breaches of contract that patently injured Shimbly. For example, Khanna claims Banks breached the Agreement by depriving Shimbly of ownership of the Business Concept and failing to perform her role as CEO. Again, such allegations may only be pursued in a derivative shareholder action because whatever injury, if any, Khanna sustained necessarily overlaps with the injury to Shimbly.

That being said, some of Khanna's allegations describe direct injuries. Khanna complains that Banks breached the Agreement by failing to procure his consent prior to transferring interests in the Business Concept to a third party and failing to provide Khanna with a right of first offer and right of first refusal. (*See generally* Dkt. 186 at ¶ 141(b)-(d)). The Banks Defendants, having blanketly argued that Khanna did not allege a direct harm as required, do not challenge the sufficiency of Khanna's pleadings on this issue. Accordingly, to the extent Count V is not stayed, Count V survives insofar as it stems from direct injuries.

### E. Violations of the Illinois Trade Secret Act (Count VII) and Conversion (Count IX)

The Court need not analyze at length Khanna's claims for conversion and violations of the Illinois Trade Secrets Act ("ITSA") because Khanna has not pled that he owns any trade secrets or other property separate and apart from that belonging to Shimbly. To succeed on an ITSA claim, a plaintiff must allege that a trade secret was misappropriated, and the misappropriation damaged the trade secret's owner. *Got Docs, LLC v. Kingsbridge Holdings, LLC*, 657 F. Supp. 3d 1034, 1043 (N.D. Ill. 2023) (citing *Westrock Co. & Victory Packaging, LP v. Dillon*, 2021 WL 6064038, at *6 (N.D. Ill. Dec. 22, 2021)). Similarly, to state a claim for conversion, a plaintiff must claim to have a right in the property at issue. *Lorenzetti v. Hodges*, 62 A.3d 1224 (Del. 2013). The allegations in the Complaint do not describe any property interest *belonging to Khanna* that was infringed. By signing the Agreement, Khanna relinquished his rights to and interests in the Business Concept and any intellectual property or trade secrets that could have been infringed upon necessarily belong to Shimbly. Therefore, any damage resulting from the alleged misappropriation and conversion would necessarily accrue to Shimbly. So, Counts VII and IX are dismissed.

## III. Khanna's Aiding and Abetting Claims Fail (Counts II, IV, and VIII).

Khanna brings claims against the Conspiring Defendants for aiding and abetting Banks' breaches of fiduciary duties (Count II), fraudulent concealment (Count IV), and violations of the Illinois Trade Secrets Act (Count VIII). Having determined that Khanna fails to state a claim for the predicate torts, the Court necessarily finds that his aiding and abetting claims fail as well. *Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*, 897 F.3d 797, 806 (7th Cir. 2018) (without an underlying tort, derivate claims for aiding and abetting fail) (citing *Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003, 1008 (7th Cir. 1989)). Counts II, IV, and VIII are dismissed.

14

IV.     **Khanna's Defamation and False Light Claims Survive in Part (Counts XI, XII, XIII, and XIV)**

Khanna brings claims of defamation and false light against Banks (Counts XI and XIII), Hussein and Somerville (Counts XII and XIV). Defamation and false light are similar torts. Defamation is the publication of any false statement that "tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with [him]." *Madison v. Frazier*, 539 F.3d 646, 652–53 (7th Cir. 2008) (citing *Seith v. Chicago Sun–Times, Inc.*, 371 Ill.App.3d 124 (Ill. 2007)). Five types of statements are defamatory per se, including: (1) those that prejudice a party, or impute a lack of ability, in his trade, profession, or business; and (2) those that impute an inability to perform or lack of integrity in the discharge of duties of one's office or employment. *Muzikowski v. Paramount Pictures, Corp.*, 322 F.3d 918, 924 (7th Cir. 2003); *see also Tuite v. Corbitt*, 224 Ill. 2d 490 (2006).

Whether or not a statement falls into one of the defamation per se categories, a false statement that casts a person in a negative light before the public may provide the basis for a false light invasion of privacy claim. To state a claim for false light, a plaintiff must allege that (1) he was placed in a false light before the public as a result of the defendants' actions, (2) the false light he was placed in would be highly offensive to a reasonable person, and (3) the defendants acted with actual malice, "that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 17–18 (1992).

A.  **Claims Stemming from the Somerville Report are Untimely.**

Khanna's claims against Somerville rely, in part, on statements found in a report Somerville published on October 18, 2020 ("Somerville Report"). Somerville argues that the claims stemming from this report are time-barred because Khanna is subject to Illinois' one-year

15

statute of limitations on defamation and false light claims, and that period lapsed before Khanna brought this action. Khanna urges the Court to find that his claims are subject to Massachusetts' three-year statute of limitations and, as such, are timely.

Although "expiration of the statute of limitations is an affirmative defense that may be pled in an answer pursuant to Rule 8(c), it can be used as a basis for granting a 12(b)(6) motion where the case is 'obviously time-barred.'" *Ericson v. Conagra Foods, Inc*., 559 F. Supp. 3d 705, 711 (N.D. Ill. 2021) (citing *Chapman v. Vill. of Hinsdale*, 2008 WL 2557465, at *1 (N.D. Ill. June 23, 2008) (quoting *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005))). "When its jurisdiction is based on diversity of citizenship, a federal court is obliged to apply the statute of limitation of the state in which it sits." *Id.* (quoting *Reinke v. Boden*, 45 F.3d 166, 170 (7th Cir. 1995)) (internal quotations omitted). Accordingly, Somerville contends (and the Court agrees) that the Court must apply Illinois' statutes of limitations to Khanna's claims.

Khanna's argument that the Court should, instead, apply Illinois' choice of law rules to determine the applicable statute of limitations is without merit. But even if the Court were to do so, the outcome would remain the same. Under Illinois' choice of law rules, statutes of limitations are considered procedural in nature. *Humanes v. Gen. Elec. Transp. Services*, 2000 WL 1029127, at *2 (N.D. Ill. July 24, 2000) (citing *Kalmich v. Bruno*, 553 F.2d 549, 553 (7th Cir. 1977)). Thus, Illinois courts apply their own statutes of limitations, even when the substantive rights of a given claim are governed by the laws of another state. *See e.g., ABF Cap. Corp. v. McLauchlan*, 167 F. Supp. 2d 1011, 1014 (N.D. Ill. 2001) (applying the Illinois statute of limitations in a contract case despite the parties' choice-of-law provision that New York law applies to the contract).

Accordingly, Khanna had one year from October 18, 2020, when his cause of action accrued, to bring his defamation and false light claims. 735 Ill. Comp. Stat. Ann. 5/13-201. *See*

*Ciolino v. Simon*, 2020 IL App (1st) 190181, ¶ 42, *aff'd*, 2021 IL 126024, ¶ 42 (Ill. 2021) (causes of action for defamation and false light "accrue[] on the date that … [the] statement is published"). Because Khanna did not initiate this action until October 27, 2021, his claims against Somerville, inasmuch as they pertain to the Somerville report, are dismissed with prejudice as untimely.

### B. Khanna states a colorable claim of defamation per se (Counts XI and XII).

To the extent Khanna seeks to state a claim for defamation per se, he need not allege special damages because the false statement's defamatory character must be so "obvious and apparent on its face" that "injury to [his] reputation may be presumed." *Tuite*, 224 Ill. 2d at 501. "Statements that have been deemed defamatory per se by Illinois courts" in the categories at issue here "have always been related to job performance; to succeed, the plaintiff must have been accused of lacking *ability in his trade* or doing something bad *in the course of carrying out his job*." *McGurren v. Hubbard Radio Chicago, LLC*, 2022 WL 602467, at *2 (N.D. Ill. Mar. 1, 2022), *appeal dismissed*, 2022 WL 18493433 (7th Cir. Aug. 16, 2022) (emphasis in original) (internal quotations omitted) (quoting *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005)).

The test for determining whether a statement is protected from defamation claims under the first amendment is whether it can reasonably be interpreted as stating actual fact. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 386 (2008). In applying this test, courts consider (1) whether the statement has a precise and readily understood meaning, (2) whether the statement is verifiable, and (3) whether the statement's literary or social context signals that it has factual content. *Id.* The statement is evaluated from the perspective of an ordinary reader. *Id.* at 398. Whether or not a statement is a factual assertion that could give rise to a defamation claim is a question of law for the court. *Id.*

Khanna claims that Somerville and Hussein defamed him by publishing the following statements in the Hussein/Somerville Report: (1) "Derek's design and functionality contributions cheapen[ed] the brand that Katy envisioned;" (2) he engaged in "mismanagement;" and (3) "Derek was sabotaging the company." While the first statement is clearly an expression of opinion, and as such is not actionable, the second and third statements are actionable because they can reasonably be interpreted as stating an actual fact. Both statements imply that Khanna did something bad in carrying out his job. Both statements are arguably verifiable because evidence can establish whether Khanna managed Shimbly within the parameters of Shimbly's policies and whether Khanna deliberately damaged the company. And both statements were made in response to an inquiry from Shimbly's CEO. Such a serious professional context signals that these statements are not opinions, but instead are factual and true. Accordingly, Khanna states a claim of defamation per se against Somerville and Hussein.

Khanna also states a claim of defamation per se against Banks who republished the Hussein/Somerville Report and told Khayat and the Carys that Khanna was "improperly making payments" on behalf of Shimbly; was responsible for financial mismanagement; harmed Shimbly through improper budgeting and general mismanagement; and misled her about his legal education and experience. First, "[t]he republisher of a defamatory statement [originally] made by another is himself liable for defamation even if he gives the originator's name." *Brennan v. Kadner*, 351 Ill.App.3d 963, 970 (2004) (citing *Owens v. CBS Inc.*, 173 Ill.App.3d 977, 994 (1988)). Banks seems to think she is excused from liability because she merely forwarded the report to others. But Banks does not cite any precedential authority in support of this position.

Second, the statements Banks allegedly made to Khayat and the Carys are independent bases for Khanna's defamation per se claims. The statements imply that Khanna not only lacked

18

ability in his roles as COO, CSO, and General Counsel, but also that he engaged in bad acts while working in these capacities. Also, the statements are verifiable. It can be proven whether Khanna made unauthorized payments on behalf of Shimbly, made false representations about his legal education and experience, or conducted his duties in a manner that is inconsistent with Shimbly's policies. Further the context of these statements, a company's CEO informing a board member and investors about another senior executive's malfeasance, signals that these statements are factual. Accordingly, Khanna states a claim of defamation per se against Banks.

### C. Khanna states a claim for false light (Counts XIII and XIV).

To state a claim for false light under Illinois law, Khanna must allege that (1) he was "placed in a false light before the public as a result of [Defendants] actions," (2) that false light "would be highly offensive to a reasonable person," and (3) the Defendants "acted with actual malice." *Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 180 Ill.Dec. 307, 607 N.E.2d 201, 209 (1992). Banks and Somerville challenge the false light allegations solely on the basis that the statements are not defamatory and are subject to innocent construction.

"The so-called 'innocent construction rule' in Illinois requires a court to consider the statement in context and give the words of the statement, and any implications arising from them, their natural and obvious meaning." *Madison* 539 F.3d at 653–54 (quoting *Solaia Tech., LLC v. Speciality Publ'g Co.*, 221 Ill.2d 558 (2006)). "While this rule favors a defendant because a tougher standard is warranted where damages are presumed, it 'does not require courts to strain to find an unnatural innocent meaning for a statement when a defamatory meaning is far more reasonable.'" *Id.* (quoting *Tuite*, 224 Ill.2d at 504–05). The allegations at issue go beyond mere critiques of Khanna's performance as an employee and board member. Indeed, the alleged statements imply that Khanna breached his fiduciary duties to the company, lacked the education required to serve

as General Counsel, and altogether failed to execute the duties of his multiple offices. Such statements are not protected by the innocent construction rule. Having already found that Khanna states a colorable claim of defamation, Counts XIII and XIV survive.

## V. Khanna Fails to State a Claim for Intentional Infliction of Emotional Distress ("IIED") (Count XVI).

To state a cause of action for IIED under Illinois law, a plaintiff must allege that (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that her conduct would inflict severe emotional distress; and (3) the defendant's conduct did cause severe emotional distress. *Sun v. Xu*, 99 F.4th 1007, 1013 (7th Cir. 2024). To "qualify as outrageous, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017) (quoting *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 83 (Ill. 2003)).

It follows, then, that "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not amount to extreme and outrageous conduct, nor does conduct characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id.* at 566–67 (quoting *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997) (quoting *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976))) (internal quotation marks omitted). Liability attaches only when "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sun*, 99 F.4th at 1013 (quoting *McGrath v. Fahey*, 126 Ill.2d 78 (1988) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). "[T]o avoid imposing liability for idiosyncratic and individualized reactions, '[w]hether conduct is extreme and outrageous is judged on an objective standard based on all the facts and

circumstances of a particular case.'" *Richards*, 869 F.3d at 567 (quoting *Franciski v. Univ. of Chi. Hosps*., 338 F.3d 765, 769 (7th Cir. 2003)).

Liability for IIED is even more constrained in the employment context. Indeed, there is general hesitation "to find [IIED] in the workplace because, if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for [IIED], nearly every employee would have a cause of action." *Id.* (quoting *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 606 (7th Cir. 2006)) (internal quotation marks omitted). As a result, "Illinois courts have limited recovery to cases in which the employer's conduct has been truly egregious." *Id.* (quoting *Van Stan*, 125 F.3d at 568).

Under those governing legal principles, the misconduct that Khanna advances as the premise of the emotional-distress claim does not qualify as "extreme and outrageous," even when viewed in the light most favorable to him. Khanna claims that Banks, his partner and co-founder, devised and executed a scheme to force him out of a company they created together. That is all. While, such a breakdown in a business relationships is regrettable, it simply does not rise to the level required to state a claim for intentional infliction of emotional distress. Moreover, as Banks points out, Khanna's allegations lack specificity as to the specific emotional distress Khanna suffered and Banks' intent to cause his distress. The pleading standard for IIED is high and Khanna's pleadings do not meet it. Therefore, Count XVI is dismissed.

## **CONCLUSION**

For the reasons set forth above, the Banks Defendants' motion [209] and Somerville's motion [211] are both granted in part and denied in part.


_____
Virginia M. Kendall
United States District Judge

Date: July 9, 2024