# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DEREK KHANNA, individually and derivatively on behalf of Shimbly Corporation,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 21-cv-5752** |
| ) | |
| **KATELYNN BANKS,** ) | |
| **ISELLMLS.COM, INC. d/b/a CINDY BANKS** ) | |
| **TEAM, CINDY BANKS, TONY BANKS,** ) | **Hon. Judge Virginia M. Kendall** |
| **PAMELA CARY, RICHARD CARY,** ) | **Magistrate Judge Keri Holleb-Hotaling** |
| **EIRIK SOMERVILLE, MARYAM HUSSEIN,** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **Defendants, and** ) | |
| ) | |
| **SHIMBLY CORPORATION, a Delaware** ) | |
| **corporation** ) | |
| ) | |
| **Nominal Defendant.** ) | |
| _____ ) | |

## [PROPOSED] SECOND AMENDED VERIFIED COMPLAINT

Plaintiff Derek Khanna ("Plaintiff" or "Khanna"), by and through his undersigned counsel, hereby files his Second Amended Verified Complaint, individually and derivatively on behalf of Nominal Defendant Shimbly Corporation ("Shimbly"), against Defendants Katelynn Banks ("Katy Banks"), ISELLMLS.COM, Inc. (d/b/a and hereinafter referred to as the "Cindy Banks Team" or "CBT"), Cindy Banks, Tony Banks, Pamela Cary, Richard Cary, Eirik Somerville, and Maryam Hussein (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1. This is a shareholder individual and derivative action brought by a Shimbly minority shareholder to recover substantial damages caused by Defendant Katy Banks and a conspiracy of other individuals, who hatched and perpetrated a scheme to damage Plaintiff, destroy the company,

and keep its assets for a follow-on entity to be controlled by Katy Banks and the other Defendants alone, and to do so through fraudulent means, breaches of fiduciary duties to Plaintiff and Shimbly, defamation, wrongful discharge, and other misconduct as alleged below.

2.      When Plaintiff tried to stop and expose Katy Banks's scheme through whistleblower reports which highlighted her fraudulent misconduct and fiduciary breaches aimed at decimating the company, Katy Banks threatened Plaintiff, repeatedly cancelled Plaintiff's scheduled meetings of the Board of Directors, and eventually discharged him to silence him, in direct breach of her contractual and fiduciary duties, and without any attempt to even try to follow required corporate procedures.  In firing Plaintiff, indeed, Plaintiff's whistleblower report was cited as a key factor.

3.      Katy Banks then destroyed the company. She converted its assets and leveraged the carcass of Shimbly to engage in unlawful retribution against Plaintiff and profit through stealing Shimbly's proprietary technology and trade secrets.  Taking effective control of Shimbly as CEO, Katy Banks decimated the company for her own competitive interests, defaulted the company by failing to satisfy Delaware and Illinois corporate requirements and pay corporate debts, destroyed Shimbly's value with her misconduct and recklessness, and misappropriated Shimbly's trade secrets to fuel her scheme to fill the competitive void left by Shimbly's demise.

4.      Katy Banks's actions purposefully destroyed a successful technology startup, on the verge of break-out success, causing substantial monetary and irreparable harm to Plaintiff, the company, and its shareholders.

5.      In addition, Defendants CBT, Cindy Banks, Tony Banks, Pamela Cary, Richard Cary, Eirik Somerville, and Maryam Hussein aided and abetted Katy Banks in her unlawful scheme. As alleged below, those Defendants knowingly and actively assisted Katy Banks in hatching and executing her plot to steal Shimbly and use its trade secrets and intellectual property to form a

2

competitive company that would usurp Shimbly's competitive opportunities by competing in the exact same marketplace as Shimbly. Banks, in fact, transferred over 100 Shimbly files to CBT, Cindy Banks, and Tony Banks, as documented by Google Drive records. Plaintiff, indeed, recently discovery those documents and others, via subpoena, exposing this scheme in which Shimbly's proprietary trade secrets were transferred directly to CBT, which served as cover for Katy Banks and her scheme to misappropriate and use Shimbly's trade secrets for her corporation named Pivot Re, Co. ("Pivot"), a separate Illinois corporation for which Katy Banks is listed as President and which only she controls. Banks also used the name "BRIX" for this new-Shimbly entity. This was done with the substantive knowledge, assistance, and involvement of CBT, Cindy Banks, Tony Banks, Richard Cary, Pamela Cary, Eirik Somerville, and others to be exposed in discovery.

6.    Accordingly, Plaintiff brings this action in order to recover his substantial damages caused by Defendants' misconduct, including millions of dollars lost because Banks (aided by the other Defendants) destroyed the value of his Shimbly shares and paid him nothing, as well as significant additional damages caused by Defendants to Plaintiff individually and to Shimbly. Plaintiff also seeks appropriate injunctive and equitable relief to prevent Defendants from profiting as a result of their fraudulent scheme and campaign of misconduct against Plaintiff and Shimbly.

## PARTIES, JURISDICTION AND VENUE

7.    Plaintiff Khanna is a citizen and domiciliary of the District of Columbia. Plaintiff was a Shimbly shareholder at the time of the wrongdoing alleged herein.

8.    Defendant Katelynn ("Katy") Banks ("Banks") is a citizen and domiciliary of the State of Illinois.

9.      Defendant ISELLMLS.COM., Inc. is an Illinois corporation with its principal place of business in the State of Illinois.  ISELLMLS.COM does business, and is referred to hereinafter, as the "Cindy Banks Team" ("CBT").

10.     Cindy Banks is a citizen and domiciliary of the State of Illinois.  Cindy Banks is co-owner/co-operator of CBT, which is affiliated with Re-Max.

11.     Tony Banks is a citizen and domiciliary of the State of Illinois.  Tony Banks is also co-owner/co-operator of CBT.

12.     Pamela Cary is a citizen and domiciliary of the State of Illinois.

13.     Richard Cary is a citizen and domiciliary of the State of Illinois.  Defendants Pamela Cary and Richard Cary are collectively referred to herein as the "Cary Defendants."

14.     Eirik Somerville is a citizen and domiciliary of the State of Massachusetts.

15.     Defendant Maryam Hussein ("Hussein") is a citizen and domiciliary of the country of Scotland.

16.     Nominal Defendant Shimbly Corporation is a corporation incorporated under the laws of the State of Delaware, with its corporate headquarters and principal place of business in the State of Illinois.

17.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  There is complete diversity between the parties, and the matter in controversy far exceeds the jurisdictional minimum of $75,000.00.

18.     This Court has venue over this action pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and Defendants are subject to personal jurisdiction in this District at the time this action has been commenced.

19.     Pursuant to 735 ILCS 5/2-209(a), this Court has personal jurisdiction over Defendants, who either reside in this State and/or have transacted business and entered into contracts substantially connected with this State, including the key shareholder and director agreements which are governed by Illinois law.  This action also is based on facts that occurred within this State, such that Defendants has engaged in contacts that are sufficient to subject them to personal jurisdiction in this State under governing law.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**Khanna Developed The Concept That Became Shimbly, And Agreed To Team With Banks To Incorporate The Company And Build It As Fiduciaries To Each Other.**

20.     Beginning in July 2019, Khanna and Banks were working on a new company concept.  Plaintiff, as a former McKinsey & Company consultant and an entrepreneur, conceptualized the new company's technology and functionality, assessed the markets and competitive landscape, and developed core aspects of the proprietary functionality for what would (later) become Shimbly.

21.     Plaintiff also operationalized many concepts, making preliminary wireframes to start the design process, building Shimbly's business model, developing application-programming interfaces ("APIs") (which process data between applications and servers), and selecting and negotiating with corporate partners and vendors.

22.     In November, 2019, Plaintiff and Banks entered into a verbal agreement under which they formalized their status as co-founders of Shimbly, with an agreed-upon salary of $180,000.00 for each of them in the first year, and $220,000.00 in the second year. This verbal agreement was memorialized in written documents, including Shimbly budgets.

23.     In or around January 2020, Plaintiff insisted that Shimbly needed a technical co-founder as Chief Technology Officer, and Banks discovered Theophile ("Theo") Khayat ("Khayat"), who was selected to join the team, as the third co-founder, to manage the technical side.

24.     Plaintiff was the only full-time employee of Shimbly for most of Shimbly's existence, and handled most day-to-day management of the company and its business operations.

**The Initial Founders Agreement**

25.     Shimbly was incorporated on or around January 21, 2020.  Plaintiff, Banks, and Khayat became Directors of Shimbly; Banks was listed as Corporate President; and Plaintiff was listed as Corporate Treasurer and Corporate Secretary.

26.     After concurrent negotiations in January 2020, Plaintiff, Banks, and Khayat agreed to the particulars of a contract on equity distribution and other aspects of the company's formation. After  Banks submitted the contract for review by multiple counsel, on or around April 23, 2020, Plaintiff, Banks, and Khayat entered into the "Shimbly Founders' Collaboration Agreement" (the "Agreement"), a true and correct copy of which is attached hereto as Exhibit A.

27.     The Agreement provided that Plaintiff, Banks, and Khayat were considered "Founders" of Shimbly, and agreed to collaborate "with the purpose of developing a Business Concept," which was defined as follows:  "*Shimbly Incorporated is a Delaware Corporation that is building a platform for enabling users to find the right home, to invest and manage their property and to sell their home and for agents to collaborate with users in this process*."  (Agreement, Exh. A, at p. 1) (emphasis in original).

28.     The Agreement further provided that the "Founders own the Business Concept pursuant to this Founders' Collaboration Agreement.  Founders will transfer the Business Concept to [] Shimbly Incorporated that was formed by the Founders in January, 2020... Each Founder will

6

grant and assign to the Company his or her right, title, and interest in and to the Business Concept, including all ideas (however formed or unformed) and labor and work product performed by the Founder that relates to the Business Concept for the full term of such rights." (*Id.* at §§ 1.1, 1.2.)

29.     Shimbly had been operating as a functional entity (minus a formal name and incorporation) before this time. Substantial work was done by Plaintiff, in particular, from July 2019 to January 2020 regarding how Shimbly would operate, what specific website pages would be developed, what specific APIs would be utilized, and how the development work would progress. By the time the parties signed the Agreement, they knew that Shimbly's "Business Concept" included these ideas, APIs, code, roadmaps, pitch decks and other materials.

30.     The Agreement also included a confidentiality provision to protect Shimbly's trade secrets and other proprietary information. As set forth therein: "Certain proprietary concepts of the business remain confidential. The Founders will use reasonable efforts to keep this information private. Founders may disclose the Business Concept on an as-needed basis for internal work, partnerships and raising money from investors (or getting feedback to facilitate those goals) while making reasonable efforts to limit disclosure of proprietary aspects of the business." (*Id.* at § 5.)

31.     The Agreement defined the "Ownership" of Shimbly shares as follows: Banks received a 38% ownership interest; Plaintiff received a 38% ownership interest; and Khayat received a 24% ownership interest. (*Id.* at p. 1, § 4.1.)

32.     Each Founder (Plaintiff, Banks, and Khayat) also agreed to "grant and assign to the Company his or her right, title, and interest in and to the Business Concept, including all ideas (however formed or unformed) and labor and work product that results from any task or work performed by the Founder that relates to the Business Concept for the full term of such rights." (*Id.* at § 1.2.)

33.     Furthermore, each Founder agreed to restrict transfers of ownership interests and the Business Concept as follows: "Any future agreement that requires an ownership interest in the Business Concept to be transferred to a third party must be agreed upon by each Founder." (*Id.* at § 1.3.)

34.     The Agreement also provided each Founder with a "Right of First Refusal" as follows.  Prior to any permitted transfer, "interest holders (Founders specifically) must be given an opportunity to buy shares for sale.  If the interest holders do not buy the percentage interest within 45 days, seller may sell (assuming agreement in 1.3,) but on terms no more favorable than those offered to the other interest holders (must go back to the other interest holders if need to lower price)." (*Id.* at § 1.4.)  In addition, "[i]n the event that transferring ownership is allowed by the Founders (1.3 and 1.4)[,] Selling owner offers to sell the percentage interest at the same rate as bona fide third party offer.  Selling owner must disclose information on bona fide third party offer (including who purchaser is)." (*Id.* at § 1.5.)

35.     The Agreement also assigned Shimbly roles and responsibilities as follows:  Banks was Chief Executive Officer ("CEO"); Plaintiff was Chief Operations Officer ("COO"), Chief Strategy Officer ("CSO"), Manager of the Board of Directors, and General Counsel ("GC") ("as the organization expands"); and Khayat was Chief Technology Officer ("CTO").  (*Id.* at § 3.1.)  Banks, Plaintiff, and Khayat each were Directors in the company.  (*Id.*)

36.     As CEO, Banks agreed and promised to satisfy the following responsibilities: "Role includes providing strategic vision on the future of the company, acting as chief visionary, setting aesthetics and feel of platform and ensuring the company achieves company goals and deadlines." (*Id.* at § 3.2(a).)

37.     As is typical in a new technology business, the Agreement also defined the vesting of each Founder's percentage interest.  Banks's 38% interest "will vest pursuant to a four (4) year vesting schedule beginning March, 2019, which will vest 1/48th per month in exchange for continuous and consecutive service to the Business Concept (including part-time work." (*Id.* at § 4.2(i).)  Khanna's 38% interest "will vest pursuant to a four (4) year vesting schedule beginning July, 2019, which will vest 1/48th per month in exchange for continuous and consecutive service to the Business Concept (including part-time work)." (*Id.*)

38.     The Agreement also gave the Founders specified rights in the event of a substantive dispute regarding Shimbly.  "In the event of a substantial dispute among the members, defined as a dispute that has a large impact on the company, all Founders[] are guaranteed the right to present their perspective and documentation to all Founders and Directors.  A majority vote of shares shall decide differing opinions on future direction." (*Id.* at § 6.2)

39.     The Agreement included specific provisions governing the expenditure and reimbursement of "working capital," which was defined "as money provided by shareholders to fund operations, preceding seed and Series-A investment." (*Id.* at § 7.1.)  The Founders may be reimbursed for such "working capital," but only "in the form of either a convertible note for non-voting shares or loan at 20% interest rate (per annum) to be decided by shareholder vote." (*Id.* at § 7.2.)  In order to qualify as "working capital," "funds provided must be for clear, direct, attributable and reasonable expenses for Shimbly, consistent with Shimbly's development priorities and roadmap.  Shared expenses do not qualify.  Expenses must be clearly documented." (*Id.*)  In addition, the Founders agreed that any "[e]xpenses over $1000 from Working Capital shall require shareholder disclosure and approval." (*Id.* at § 7.5.)

40.     The Agreement also included key representations and warranties that required each Founder to protect Shimbly's intellectual property and proprietary information, to act as fiduciaries for shareholders, and to avoid potential conflicts of interest.  To wit: "Each Founder represents and warrants that no third party can claim any rights to any intellectual property or other proprietary right possessed by that Founder as it relates to the Business Concept."  (*Id.* at § 9.2.)  In addition, "[e]ach Founder represents and warrants that they will act as fiduciary agents for shareholders and avoid potential conflicts of interest."  (*Id.* at § 9.4.)

**The Revised Founders' Agreement**

41.     In June 2020, the Founders unanimously agreed that Khayat would depart the company.  To facilitate that transition, on or around June 14, 2020, the Founders entered into the Revised Founders' Agreement (the "Revised Agreement"), a true and correct copy of which is attached hereto as Exhibit B.

42.     The Founders entered into the revised Agreement "to reflect new team roles and responsibilities[,] new team members, a revised equity distribution and more precise clarification on potential confusion in previous agreements."  (Revised Agreement, Exh. B, at p. 1.)  The Revised Agreement was "designed to supersede" the Agreement where the two contracts were "in conflict." (*Id.* at § 5.1.)

43.     As for "New Roles and Responsibilities," the Revised Agreement clarified that Plaintiff and Banks were Co-Founders, and also made clear that Khayat was "no longer regularly active" in the company.  (*Id.* at § 3.2.)  In addition, Plaintiff, Banks, and Khayat understood and agreed that, because Mr. Khayat was "no longer regularly active" in the company, Khayat was no longer on the Board of Directors of Shimbly, effective as of June 2020.  While Khayat retained voting shares under the Revised Agreement, those voting shares pertained to Khayat's role as a

shareholder, not as a member of the Shimbly Board of Directors. Despite Khayat's departure from the Shimbly Board of Directors, out of an abundance of caution, Plaintiff addressed each and all of his demands to initiate a derivative action to both Defendant Banks and Khayat, as well as others who had interests in Shimbly (including the Carys), so that those demands were as expansive as possible and could not be subsequently attacked.

44. The Revised Agreement set forth a new share allocation and ownership structure as follows. Striking the prior percentage shares, the Revised Agreement provided for a "formal share-structure arrangement with new shares created today. That formal share structure is divided into 240,000 common stock shares." (*Id.* at § 3.2.) The 240,000 shares were allocated as follows: Banks received 91,200 shares of common stock; Plaintiff also received 91,200 shares of common stock; Khayat received 3,600 shares of common stock; 34,800 shares of common stock were assigned to an employee "pool" for future employees who would join Shimbly; and an additional 19,200 shares were reserved for an "initial investment" to be determined. (*Id.* at § 3.3.)

45. Vesting of those shares, moreover, was similar to the prior vesting conditions. Banks's shares "will best pursuant to a four (4) year vesting schedule beginning March, 2019, which will vest 1/48th per month – subject to a one year cliff – in exchange for continuous and consecutive service to the Business Concept (including part-time work)." (*Id.* at § 3.2(i) [sic].) The "one-year cliff" meant that "individuals will not get any shares vested until the first anniversary of vesting start date. At the one year anniversary, individuals have 25% of shares vested. After that, vesting occurs monthly." (*Id.* at n.5.)

46. Plaintiff's shares also vested pursuant to the same schedule as Banks's shares, although Plaintiff's vesting started in July 2019. (*Id.* at § 3.2(ii) [sic].) Khayat's 3,600 shares were

deemed "fully vested," given his "substantial contribution to Shimbly" and his departure from Shimbly as an active employee.  (*Id.* at § 3.2(iii) [sic].)

47.     The Revised Agreement defined the shareholders' voting rights as follows: "Voting rights for each common-share shareholder, in the case of voting shares, shall be in accordance with the above schedule, not including vesting clause or performance clause."  (*Id.*)

48.     The Revised Agreement also included strict restrictions on the sale of corporate assets.  As stated therein, "[s]ale of the Company to an interested third party will take place if the sale is authorized by each Founder and majority of shareholders and otherwise conforms to all applicable state and federal laws."  (*Id.* at § 3.4.)

**July 2020 to November 2020: Banks Embarks Upon Her Scheme to Terminate Plaintiff, Steal Plaintiff's Shares, Destroy Shimbly, and Steal its Trade Secrets for Her Personal Interests and Profit.**

49.     Between July 2020 and November 2020, Banks hatched and executed a scheme to destroy Shimbly and steal its trade secrets and other intellectual property.  Banks concocted this scheme in order to use Shimbly's property (including the "Business Concept" defined by the Agreement as alleged above) to launch and support her own company to compete in the same marketplace and fill the gap left by the demise of Shimbly.

50.     Banks perpetrated her scheme through multiple independent instances of misconduct.  Banks engaged in accounting fraud to make herself the largest debt-holder in the company by knowingly entering false, non-reimbursable expenses.  Banks then engaged in securities fraud by misleading investors with those records.  In addition, Banks orchestrated a self-directed scenario under which Shimbly artificially ran out of money, fueled by Banks's failure to undertake even basic fundraising efforts, such that Shimbly defaulted on its legal and payment obligations.

51.     At the same time, Banks was derelict in her duties as CEO, failing and refusing to do anything to develop Shimbly's business, including refusing to engage in any efforts to bring Shimbly's product to market – despite Plaintiff's multiple attempts to get Banks to satisfy her fiduciary duties and launch the product.

52.     When Plaintiff complained about Banks's inaction and unlawful conduct, Banks threatened, extorted, and then discharged Plaintiff to silence him, and used false and defamatory statements (including those by Defendant Hussein) to justify this wrongful discharge.

53.     Banks then disappeared entirely as a functioning Shimbly officer and employee – refusing any shareholder outreach, and failing to respond to official inquiries or even hold a shareholder or Board meeting.  Turning against Shimbly, within days of Plaintiff's termination, Banks copied Shimbly's Business Concept and other trade secrets on tangible electronic and hard-copy files, which she transferred to Pivot RE (a company that Banks controlled) and her other entities, and used those trade secrets to fuel another business to compete in the same marketplace on which Shimbly was supposed to be focused.

54.     Banks even attempted to (and, on information and belief, actually did) make improper and unauthorized agreements to transfer Shimbly to third parties for no consideration whatsoever, while keeping Shimbly's Business Concept and trade secrets for herself.

55.     Each and all of the above-alleged misconduct by Banks – individually and in combination – constituted a gross breach of her contractual and fiduciary duties.  Banks's focus has been the antithesis of a CEO, as she focused on destroying the once-promising company, flouting her contractual and fiduciary responsibilities in the process, all for her own personal profit and benefit.

13

56. Banks now operates as CEO and partner of multiple competing entities after misappropriating and Shimbly's Business Concept and trade secrets (including its partnerships, product-roadmap, and technologies) – *all while still refusing to resign as Shimbly CEO*.

57. These stages and misconduct are alleged further below.

*July 2020 to August 2020: Banks Engaged in Accounting Fraud and Enlisted Defendant Hussein and Khayat to Help Her Terminate Plaintiff.*

58. On or around July 19, 2020, Banks entered a false liability into Shimbly's accounting records in order to fraudulently become Shimbly's largest debtholder. Specifically, Banks, concocted a budgetary line item under which she manufactured a false debt to herself consisting of $85,000.00 in purported expenses that clearly did not qualify as "working capital" under the Agreement.

59. The $85,000.00 line item was fraudulent and otherwise improper in multiple independent respects. First, Banks did not incur that debt at all; her family's brokerage did. Second, she falsely represented that the expenditure was for a database for Shimbly, but it was actually a database developed by her own brokerage company, owned and operated by Banks's family from several years before. Third, Section 7.3 of the Agreement barred Banks from seeking any reimbursement for this purported expense, which did not qualify as "working capital" because it was not "for clear, direct, attributable and reasonable expenses for Shimbly, consistent with Shimbly's development priorities and roadmap." Fourth, Banks failed to seek and secure "shareholder disclosure and approval" for this purported expense, as required by Section 7.5 of the Agreement. This fraudulent expense violated numerous other provisions of the Agreement, including Banks's total failure to provide any supporting documentation.

60. The bigger problem with the improper expense, which Plaintiff did not know at the time, is that it was part and parcel of Banks's stratagem to use Shimbly as her personal piggybank

and raw material for her own companies and competitive interests that were directly adverse to Shimbly and its shareholders.

61.     On or around August 19, 2020, Plaintiff objected to Banks's fraudulent and improper accounting records, including through specific notations on the accounting records citing the provisions of the Agreement that prohibited the expense.  Banks, however, ignored Plaintiff's objections and failed to fix the accounting records, despite the absence of any shareholder review and approval of her actions.

62.     On or around September 15, 2020, Plaintiff again objected through notations on the accounting records. Nevertheless, in or around September, 2020, Banks secretly provided these false and fraudulent accounting records to third-party investors, including Pamela Cary and Richard Cary (the "Carys") (to whom Banks eventually would try to give Shimbly for no consideration whatsoever, as alleged further below).  Banks knew that she was misleading these investors through her false accounting records, at substantial risk to Shimbly, Plaintiff, and the investors, but Banks did so in any event.

63.     In or around October, 2020, Banks made additional unauthorized and improper payments of Shimbly funds, to the detriment of Shimbly and its shareholders.  Banks paid corporate funds, for example, to Khayat, who did not deliver goods or services commensurate with his payment, as Banks herself admitted at the time.  Although this payment was improper under the Agreement, Banks made the improper payment to Khayat in order to curry favor with him and position to secure his consent to terminate Plaintiff improperly.

64.     On information and belief, Banks also improperly paid Shimbly funds to enlist Defendant Hussein's help in terminating Plaintiff.  Banks falsely represented that she paid funds to Hussein for "severance," but (like Banks's other payments) this payment violated the Agreement

in multiple respects, including the absence of any justification for the payment. Banks made and concealed this improper payment, on information and belief, in order to curry favor with Hussein and secure her commitment to provide a false and defamatory report used by Banks to terminate Plaintiff wrongfully, as alleged further below.

***August 2020 to September 2020: Banks Concealed and Accelerated Shimbly's Financial Decline to Bolster Her Scheme to Give Away the Company and Steal its Trade Secrets.***

65.     As CEO, Banks deliberately orchestrated Shimbly's dire financial state, about which she knew, facilitated and concealed from the other shareholders. Banks's concealment caused Shimbly's financial problems to escalate and its financial condition to deteriorate. Making matters immeasurably worse, Banks effectively disappeared as a functioning Shimbly officer and employee, and failed and refused to respond to persistent attempts by Plaintiff to get Banks involved in the company.

66.     Rather than disclose and address Shimbly's deteriorating financial condition, Banks took the opposite tact, and focused her actions and inactions on destroying the company. Banks did not want to save Shimbly. To the contrary, Banks wanted to – and did – destroy Shimbly in order to advance her own scheme and self-interests to the detriment and harm of Shimbly and its shareholders, including Plaintiff.

67.     As Shimbly was weeks away from forced insolvency (about which only Banks knew), Banks cancelled all meetings, refused to respond to Plaintiff's phone calls, and effectively disappeared. For example, from late September 2020 through early October 2020, Banks failed and refused to attend at least seven (7) critically important meetings and working sessions. Banks also cancelled all senior staff meetings. Banks's stratagem was to isolate any other persons from detecting or discovering her scheme of misrepresentations and misappropriations. Plaintiff

beseeched Banks to re-appear and focus on developing Shimbly and its proprietary Business Concept, and to explain what was happening, but Plaintiff's efforts fell on Banks's deaf ears.

68.     Banks had multiple opportunities and avenues to finalize and launch Shimbly. However, Banks deliberately failed and refused to explore those or any other measures that likely would have improved Shimbly's performance and prospects, instead repeatedly canceling scheduled Board and shareholder meetings.  As CEO, Banks also could and should have undertaken measures to reduce Shimbly's expenses and put Shimbly on a path to financial health, but again Banks failed and refused to do so because improving Shimbly's financial health would have been antithetical to her scheme to sell Shimbly for nothing and steal its trade secrets.

***October 2020: Plaintiff Tries to Save Shimbly, But Banks Remained Intransigent and Insistent on Driving the Company Into the Ground.***

69.     Because of Plaintiff's intensified efforts, Shimbly had ample opportunities to launch and succeed in the marketplace.  However, Banks's contrary efforts were too much to overcome, given her role as CEO and her surreptitious scheme to harm the company and benefit herself.

70.     Specifically, as of October 8, 2020, Shimbly should have enjoyed break-out success, despite Banks's efforts to the contrary.  Shimbly had substantial investment interest, and its technology platform was nearing completion.  Initial feedback from over a dozen beta testers was extremely positive, indicating that consumers viewed Shimbly as a viable competitor with, or better than, Zillow (then an $8B+ company).

71.     This was, after all, not a new business or market, but a vibrant and competitive market, led by the giant Zillow, with tried and true market models, known potential unit economics, and vast opportunities for other competitors with creative and better ideas, like Shimbly.  Over 100 consumer-facing pages, designed by a team of over a dozen designers and advisors, were completed

and coded. APIs and vendors were selected and terms agreed upon, with most integrated into the platform.

72. This progress was encouraging to Plaintiff, who was largely unaware of Banks's scheme to steal the company. Plaintiff was aware that time was of the essence, given the limited window of opportunity in a competitive property-tech marketplace during the home-sale explosion of 2020-2021.

73. Despite these positive developments and signs, Banks seized control of Shimbly and deliberately refused to proceed with steps that were critical to Shimbly's launch. In October and November 2020, for example, Plaintiff developed a list of action items that were necessary for launch, all of which could have been done by Banks and Plaintiff, but Banks refused to even meet to discuss the action items, develop a launch strategy, or explore further fundraising. Banks's refusal was intentional and part of her scheme to seize Shimbly, steal its Business Concept, discharge Plaintiff to silence him, sell Shimbly for nothing (or close thereto), and steal Shimbly's trade secrets and opportunities for her own competitive enterprise.

74. There were multiple independent ways that Banks refused to act on Shimbly's and its shareholders' behalf, leading to Shimbly's doom that was the centerpiece of Plaintiff's scheme. For example, Banks refused to send Shimbly platform's wireframes to multiple potential users for testing; Banks never contacted the persons who had tested the platform; Banks never contacted numerous potential venture capitalists for investment; Banks failed to respond to those venture capitalists who did express interest in investing; Banks never consulted with technology advisors who had valuable information that could have helped Shimbly; Banks refused to contact or consult with technology consultants referred to her by Plaintiff; and Banks never responded to Plaintiff's multiple other entreaties to discuss and develop ways to save the company. Each and all of these

measures would have helped Shimbly and its shareholders to bring the product to market, but Banks pursued none of them.

### *June 2020 Through November 2020: Khanna Serves The Shimbly Board And Senior Management With Whistleblower Complaints, Which Banks Ignores And Buries.*

75.     Startled by Banks's misconduct and unlawful behavior, Plaintiff made multiple whistleblower complaints to Shimbly's management, its senior directors, and other key stakeholders.  Plaintiff's complaints provided serious allegations of gross misconduct by Banks, including allegations of malfeasance, tortious and criminal acts, as well as multiple breaches of her fiduciary duties.  Banks ignored them, obstructed any investigation, and instead threatened Plaintiff that he would be discharged if he pursued his complaints.

76.     After it was clear that Banks would not schedule a board meeting to discuss Plaintiff's complaints, on October 26, 2020, Plaintiff sent a formal whistleblower notice to Khayat, Banks, and Shimbly's investors, alleging accounting fraud among other serious matters, and demanding a board meeting to present his evidence in a transparent process. A few hours later, Banks directly warned that Plaintiff would be "judge[d]" for writing this whistleblower notice.

77.     On October 27, 2020, the day after Plaintiff's whistleblower notice, Banks stated that, due to his whistleblower notice, she could not work with him anymore, and that she was giving Plaintiff three days to resign, or she would discharge him.  Banks also disclosed to Plaintiff that Banks received and relied on a report prepared by Defendant Hussein, which (as alleged further below) included false and defamatory statements that Plaintiff had engaged in "mismanagement" and "sabotage" towards Shimbly, which was a defamatory attempt to project Banks's improprieties on Plaintiff and justify her plan to silence Plaintiff by discharging him.  On October 27, 2020, Banks also forwarded the report to Khayat, with full knowledge of its falsity.

78.     Banks also deprived Plaintiff of access to critical Shimbly information and property – within a week of Plaintiff's October 26th whistleblower report – and removed Plaintiff's access to Shimbly's bank account, despite the fact that Plaintiff was Shimbly's Co-Founder, Chief Operating Officer and Corporate Treasurer, with responsibility for managing operations across the company, as set forth in the Agreement and Revised Agreement.  (Exh. A, at p. 2; Exh. B at p. 1.)

79.     Banks made no attempt to address these matters in any meaningful way whatsoever – instead, Banks stated that she was simply refusing to respond. Banks never held any investigation, refused the board meeting requests, and cancelled scheduled board meetings.  In fact, on the few occasions when Banks referenced Plaintiff's serious whistleblower allegations, Banks simply stated that she refused to address them, and that she would undertake retribution against Plaintiff if he pursued them.

**October 2020 To November 2020:  Working In Cahoots With Banks, Hussein and Somerville Submit A False And Defamatory Report That Banks Used As A Pretext To Terminate Khanna.**

80.     In or around October 2020, Banks embarked on the next phase of her scheme – to secure a report of false allegations against Plaintiff as a pretext for discharging Plaintiff.

81.     On information and belief, Banks enlisted the help of Defendants Hussein and Somerville to prepare and submit the false report (the "Hussein/Somerville Report").

82.     The Hussein/Somerville Report included multiple false and defamatory factual misrepresentations about Plaintiff and his business conduct and practices.  For example, the report falsely accused Plaintiff of engaging in "sabotage" against Shimbly, which was patently false.  The Hussein/Somerville Report also falsely stated that Plaintiff's "design and functionality contributions cheapen[] the brand that Katy envisioned," and that Plaintiff engaged in "mismanagement," which supposedly "cost me my income source that I relied on."

20

83. These statements are defamatory *per se*, in that they falsely impugn Plaintiff's business practices and character. They also caused Plaintiff to suffer substantial actual damages, including harm that was impending from Banks, who used the report as purported justification for discharging Plaintiff, which Banks actually undertook in order to silence Plaintiff.

84. On or around October 27, 2020, Defendant Katy Banks re-published the defamatory report to Khayat. Banks forwarded this email to Khayat with the false and defamatory statement that: "Here are a few 'real examples' of how the actions are negatively effecting the culture and organization [sic]." Banks re-published Hussein's and Somerville's defamatory statements, along with Defendant Katy Banks's own defamatory statement, for the improper purpose of creating a pretext on which to terminate Plaintiff, which was central to Banks's scheme to sell Shimbly for nothing and steal its trade secrets.

85. Plaintiff responded to the false and defamatory Hussein/Somerville Report, and Banks's defamatory email, line-by-line with Banks, making clear that the false statements had no factual basis. Banks was unable to justify the statements as factually accurate under scrutiny. Nevertheless, Banks ignored Plaintiff's response, again as part of her scheme to use the defamatory statements to terminate Plaintiff.

86. Banks's publication of the Hussein/Somerville Report as a basis for Plaintiff's termination was clearly malicious, intended to harm Plaintiff and further Banks's scheme to misappropriate Shimbly, its Business Concept, and its other trade secrets and proprietary information.

87. On or around November 9, 2020, Plaintiff also responded to Hussein's, Somerville's, and Banks's defamatory statements in a PowerPoint Presentation. Like Plaintiff's prior reports, Plaintiff's whistleblower presentation informed the Board and investors about the

multiple instances of misconduct by Banks, and how her misconduct was threatening the very survival of Shimbly.

88.     Within 16 hours of a scheduled meeting to review this presentation with investors, Banks unilaterally terminated Khanna without any contractual or legal authority to do so. Banks provided no justification for this termination.  Nor was there any legitimate justification.

89.     Banks's termination of Plaintiff was wrongful and unlawful on multiple independent grounds.  First, the termination was part of Banks's improper and unlawful scheme to destroy Shimbly, seize Shimbly's trade secrets, and compete against Shimbly in the marketplace.  Second, Banks's termination was a direct and unlawful response to Plaintiff's whistleblower's complaints on matters of public policy (such as accounting fraud), which is exactly what the law forbids.  Third, the Agreement required Banks to submit a "substantial dispute" like this one to all Founders for resolution, but Plaintiff was entirely excluded from any meeting or indeed any discussion about his prospective termination.   Fourth, Banks's wrongful termination also violated the Agreement because the issue of a separation agreement (or lack thereof) is directly subject to a binding-mediation process, which was ignored by Banks.   Fifth, Banks utterly failed to follow any contractually and statutorily required corporate procedures – nary a formal shareholder meeting or official vote – in terminating Plaintiff, depriving Plaintiff of any voice or forum to expose the wrongfulness of his discharge and Banks's other improprieties.

**November 2020 to Present: Banks Destroys Shimbly's Value and its Shareholders' Interests, and Steals its Trade Secrets to Compete Against Shimbly in the Marketplace.**

90.     Since Plaintiff's wrongful termination in November 2020, Banks only escalated her extended campaign to destroy Shimbly's remaining value, to the devastating injury of its shareholders (including Plaintiff), and convert Shimbly's trade secrets and assets for Plaintiff's personal gain.

91.     Banks engaged in the following measures, among others, as part of this unlawful campaign.  Banks manipulated Shimbly's accounting records to make the company appear worthless, to justify her plan to destroy the company and steal its property.  Banks transferred Shimbly's trade secrets and intellectual property to a company called "Pivot RE," which only she controlled.  Banks launched her new company with the same assets and personnel that were part of Shimbly, and with Shimbly's trade secrets, including Shimbly's Business Concept, wireframes, work product, business relationships and APIs, strategies, business plan, and prospects.

92.     Banks's misconduct has been brazen.  Although Banks was under contractual and fiduciary duties to promote Shimbly and its proprietary Business Concept, Banks eventually pivoted to promoting substantial portions of the Business Concept as part of her own family's brokerage business and other entities which, in substantial respects, would compete with Shimbly.

93.     As of September 30, 2020, Banks was revising a proposed deal with her family brokerage to give Shimbly shares to her family.  In or around spring 2021, Banks's family brokerage began publicly using Shimbly's Business Concept, trade secrets and other proprietary information on the brokerage's website, findallchicagohomes.com.  This direct lifting of core-Shimbly features was in direct competition with Shimbly and the "Business Concept" that Banks was supposed to maintain and preserve for Shimbly's (not her) benefit.

94.     Because of Banks, Shimbly defaulted under its legal obligations in Illinois and Delaware, and its IRS obligations.  Shimbly's registered agent expired in Delaware, and Banks failed to pay Shimbly's corporate taxes, conduct legally required sexual-harassment training, and/or file tax forms with the IRS for Shimbly personnel.  Plaintiff informed Banks and Shimbly of these failures and their consequences multiple times – in writing – yet Banks still refused to rectify the

matter or respond. Banks even refused to accept certified mail delivered to Shimbly headquarters. Again, Banks purposefully ran Shimbly into the ground to attempt to dissolve the company.

95.     As a Shimbly shareholder, Plaintiff served Banks, Khayat, the Carys, and Shimbly with formal requests for corporate documentation, on four (4) separate occasions, pursuant to Section 220 of the Delaware General Corporation Law. Plaintiff's requests sought important records clearly within the ambit of Section 220, including records reflecting Banks's termination of Plaintiff (any resolution or documentation of a written consent or meeting) and attempts to transfer/convey the company to the Carys for no consideration whatsoever. Plaintiff requested additional relevant materials, such as accounting documents reflecting Banks's fraud and current business-strategy materials. On each such occasion, however, Plaintiff, Shimbly, and the other recipients ignored and failed to respond to Plaintiff's requests. Their intransigence, on information and belief, was part of Banks's attempts to conceal her scheme to destroy Shimbly and misappropriate its Business Concept and other assets and proprietary information. Each of Plaintiff's Section 220 letters also demanded, in specifics and substance, that the Board of Directors initiate legal action against Defendant Banks and other culpable parties on behalf of Shimbly for the illegalities discussed therein and referenced in this Second Amended Complaint. However, on each and every occasion, Defendant Banks and Khayat ignored Plaintiff's Section 220 letters and refused to initiate litigation against Defendant Banks and other culpable parties based on Plaintiff's allegations set forth in the Section 220 letters and in this Second Amended Complaint.

96.     Plaintiff also engaged in multiple written and verbal correspondence with Shimbly, Defendant Katy Banks, and Khayat, in which Plaintiff instructed and directed Defendant Banks and Khayat to bring litigation on behalf of Shimbly against Defendant Katy Banks for the illegalities referenced above. However, on each and every occasion, Defendant Banks and Khayat ignored

Plaintiff's requests and refused to initiate litigation against Defendant Banks and other culpable parties based on Plaintiff's allegations, which are alleged in this Second Amended Complaint.

97.     Plaintiff's correspondence also formally requested the opportunity to purchase Shimbly shares for the same price offered by Banks to the Carys (essentially zero).  Plaintiff also requested Banks's resignation from Shimbly (or her stepping down as CEO to another role), so that Plaintiff could try to develop the company and maximize its value, which Banks defiantly refused to do.  Again, however, Banks ignored and refused to respond to Plaintiff's requests, as part of her plan to destroy and steal from Shimbly.

98.     On March 30, 2021, Banks posted as follows:  "through a series of life changing events I feel I've finally finished my research phase and am qualified to scale something beautiful. ☙ I appreciate your continued support as I move some of my energy into producing education for the general market of how to grow long term wealth with real estate ⌂ a basic need for all. . . I'm excited to be able to help on a bigger level, starting with real estate 🏭. . . I finish this next stage of the company."

99.     Yet on May 27, 2021, Banks announced that Shimbly had no value whatsoever.  In an email on that date, Bank falsely stated as follows: "Given the organization's lack of activity and funds, Shimbly has no way to move forward."  Banks, however, artificially caused the "lack of activity and funds" about which she now purported to complain, and it was grossly false to state that "Shimbly has no way to move forward," which was a self-fulfilling prophecy caused by Banks's misconduct.    Banks, in sum, had completed her destruction of Shimbly and misappropriation of its trade secrets for her new entities.

**September 2020 to Present:  Defendants CBT, Cindy Banks, Tony Banks, Pamela Cary, Richard Cary, Eirik Somerville, and Maryam Hussein Conspire to and Aid and Abet Katy Banks in Her Scheme to Steal Shimbly and its Trade Secrets, and Compete in the Same Marketplace Targeted by Shimbly.**

100.    Commencing in or around September 2020, Defendants CBT, Cindy Banks, Tony Banks, Pamela Cary, Richard Cary, Eirik Somerville, and Maryam Hussein (the "Conspiring Defendants") conspired to – and did – aid and abet Defendant Katy Banks to pursue and accomplish her unlawful scheme, alleged above, to destroy Shimbly, steal its trade secrets, and use those trade secrets and Shimbly's proprietary information and plans to start another company intended to compete in the same marketplace targeted by Shimbly.  As Katy Banks wrote in one key document discussing her plan, "the created IP goes to a new company owned by Cary Family Trust."  This document was shared and presented to the Cary Defendants on or around November 11, 2020.

101.    Specifically, at the request and direction of Defendant Katy Banks, the Conspiring Defendants knowingly and actively engaged in a scheme to destroy Shimbly, and to transfer any and all remaining Shimbly funds, trade secrets, and additional intellectual property and proprietary information, to a new company that would operate in the place of Shimbly, yet with Shimbly's technological infrastructure, which was developed with Plaintiff's painstaking efforts.  All of the Conspiring Defendants knew about, encouraged, and actively participated in the unlawful theft and transfer of Shimbly's trade secrets and technology to a competitive entity in which they all would benefit, to the detriment of Plaintiff and demise of Shimbly.

102.    The Conspiring Defendants knew about the well-grounded whistleblower and other allegations previously asserted by Plaintiff (as alleged above).  The Conspiring Defendants also knew that Plaintiff was a substantial shareholder and Director in Shimbly (as they had the founding documents in their possession), and that Plaintiff would not sign a release and waive his well-grounded claims against Defendants as alleged above.  Accordingly, the Conspiring Defendants knowingly and actively planned to start the new Shimbly-focused company in order to dodge those allegations and start anew with Shimbly's trade secrets and intellectual property under the control

26

of a new company. For example, Defendant Banks wrote (and informed the Conspiring Defendants) that they would transfer the "created IP" to a "new company owned by Cary Family Trust."

103.    In October, 2020, Plaintiff met with the Cary Defendants on multiple occasions, during which Plaintiff provided detailed evidence on ongoing malfeasance by Defendant Katy Banks, and documented her hidden plan to steal the company (via email evidence that Plaintiff had obtained). After engaging in this series of meetings, and reviewing follow-up evidence provided by Plaintiff, the Cary Defendants agreed to "do the right thing" and actively participate in a Shimbly Board meeting to address these issues in the then-coming days.

104.    Instead of the agreed-upon plan, however, the Cary Defendants met with Defendant Katy Banks and directly agreed to support, encourage, and assist her in the scheme and theft. On information and belief, Defendant Katy Banks promised to – and did – pay or otherwise compensate the Cary Defendants for their support. The Cary Defendants concealed their support and encouragement from Plaintiff, and took multiple steps to obstruct and impede the planned Board Meeting so as to enable the scheme and theft.

105.    In or around October through November 2020, the Conspiring Defendants held additional secret meetings with Defendant Katy Banks to aid and abet her plot to steal Shimbly and its trade secrets, including its proprietary information and intellectual property. During those secret meetings, in the day following Plaintiff's well-grounded whistleblower reports, and in direct response to those reports and other concerns expressed by Plaintiff, Defendant Richard Cary advised Defendant Katy Banks that Plaintiff cannot be "actively involved with the company going forward," and encouraged Defendant Katy Banks to terminate Plaintiff, which Defendant Banks did, as alleged above. In a document sent by Defendant Katy Banks to the Cary Defendants on

November 11, 2020, Defendant Katy Banks she explicitly cited the need to remove Plaintiff as triggered – in part – by his "sending allogations [sic] [] to the board and investors."

106.    Defendant Katy Banks further met with the Cary Defendants, who had invested funds in Shimbly, and secured the Cary Defendants' agreement to fund Katy Banks's above-alleged scheme and allow their existing financial investment (with its remaining resources) to be used for those purposes.    During those meetings, Defendant Katy Banks showed the Cary Defendants designs and other documentation regarding the new Shimbly-focused entity, and the Cary Defendants agreed to fund the new competitive entity.    The Cary Defendants were aware of, and encouraged, Defendant Katy Bank's scheme, including without limitation by suggesting names for this new entity, giving suggestions on language to be used in separation documents, and encouraging Defendant Katy Banks to conceal this scheme and create a pretext therefor.    Defendant Katy Banks also asked the Cary Defendants' daughter, Miranda Cary, to join the Board of Directors of the new Shimbly; on information and belief, this was done with the Cary Defendants' knowledge and support, and as a form of compensation by Defendant Katy Banks to the Cary Defendants.

107.    As part of the execution and concealment of this unlawful scheme, in the spring of 2021 Defendant Katy Banks and the Cary Defendants agreed that Defendant Katy Banks would transfer Shimbly to the Cary Defendants for no consideration whatsoever, for free, yet they would try to hide this transaction by concocting a false transaction under which the Cary Defendants purported to "call the note" of their initial investment in Shimbly, which they did not, never intended to do, and could not do under governing law.    Later, Defendant Katy Banks deleted text messages related to these affairs.

108.    To facilitate this sham transaction and hide this transfer of Shimbly for $0 to the Cary Defendants, Defendant Katy Banks and the Cary Defendants met, conspired, and collaborated

to concoct false statements about Plaintiff, then publish those statements to others including Khayat. Those false statements included baseless accusations that Plaintiff was responsible for Shimbly's challenges (which he was not), and that Plaintiff had made misleading statements regarding his law license and experience (which Plaintiff did not). Defendant Katy Banks and the Cary Defendants knew that these statements were false, yet concocted and published these statements in order to distract and deflect from their scheme to transfer Shimbly to the Cary Defendants for no consideration whatsoever, and then use Shimbly's trade secrets and technology to create and operate a new entity that would compete in Shimbly's marketplace to the exclusion and harm of Plaintiff and Shimbly.

109. The Cary Defendants also agreed to allow their investment in Shimbly to fund a legally and factually baseless lawsuit filed by Defendant Katy Banks in Cook County Circuit Court, which falsely alleged that Plaintiff made misrepresentations regarding his law license, his J.D. degree, and his experience, which Plaintiff did not, as established by Defendant Katy Banks's own statements in recommendation letters and resumes that she drafted. These are the same false allegations repeated by Defendant Banks in response to Plaintiff's initial Verified Complaint filed in this civil action. Aware that her Cook County lawsuit was frivolous and sanctionable, and in response to a motion to dismiss filed by Plaintiff threatening such sanctions, Defendant Katy Banks voluntarily dismissed the lawsuit, but not before causing Plaintiff to expend substantial money (including attorneys' fees), reputational harm, and time in order to defend against the frivolous allegations and claims. Defendant Katy Banks never re-filed the frivolous lawsuit, yet she accomplished her clear purpose, with the Cary Defendants' funding and encouragement, to intimidate Plaintiff to cease his whistleblowing, and to distract and burden Plaintiff while she and the Conspiring Defendants pursued the scheme to steal Shimbly and start over with a new company.

In the summer and fall of 2021, the Cary Defendants had meetings with Defendant Katy Banks to discuss the new startup entity, during which they encouraged her to leverage CBT for this new entity and otherwise supported Defendant Katy Banks's post-Shimbly plans by, for example, assisting her in finding additional funding sources.

110. Defendant Somerville, an external consultant, also was an active participant in the scheme. Defendant Somerville received detailed documents of the scheme, including information showing that Defendant Katy Banks considered the Shimbly platform to have valuable trade secrets and intellectual property that she wanted to steal. Defendant Katy Banks expressly informed Defendant Somerville that the plan was focused on creating a new company, transferring Shimbly's trade secrets and technology to this new company, dissolving "Shimbly after asset transfer," and using this new company to – in Defendant Katy Banks's words – "make[] all the money." Defendant Somerville specifically valued Shimbly's shares as worth over $1 million at the time this scheme was hatched.

111. Defendant Somerville engaged in multiple independent actions with the purpose and intent to further this scheme. First, Defendant Somerville spoke with members of the Shimbly development team and took active steps with those members to facilitate the scheme, including by hiring Shimbly's Angela Zhang at his company (BolderRoad) in order to perform services for the benefit of Defendant Katy Banks and the new entity she created with Shimbly's trade secrets and intellectual property. Working with Defendant Katy Banks, Defendant Somerville also gave Ms. Zhang a BolderRoad email address, with the express purpose and intent to conceal communications with Ms. Zhang related to Defendant Katy Banks's scheme.

112. Second, Defendant Somerville also met with the Cary Defendants and other persons on multiple occasions to support the tortious scheme. Defendant Somerville provided advise and

guidance to the Cary Defendants to further their scheme to work with Defendant Katy Banks and her entity created with Shimbly's trade secrets and intellectual property. During the course of these discussions, including with Mr. Khayat, Defendant Somerville made false statements in order to tarnish Plaintiff's reputation and promote Defendant Banks's unlawful scheme, including statements blaming Plaintiff for Shimbly having gone through three technology leads in a year (which was not Plaintiff's fault or responsibility), and for purportedly mis-budgeting Shimbly (which again was false, given Plaintiff's conservative and careful budgeting).

113.    Third, Defendant Somerville actively and intentionally concealed his work for Defendant Katy Banks, including when confronted by Plaintiff, who asked Defendant Somerville direct questions regarding what was happening with Shimbly. Rather than answer Plaintiff's inquiries with the truth, Defendant Somerville lied and falsely stated that Defendant Somerville was unaware of what Defendant Katy Banks was doing, which was a false statement intended to conceal the scheme and Defendant Somerville's involvement therein.

114.    Fourth, with knowledge and intent to facilitate the scheme, Defendant Somerville wrote a defamatory report attacking Plaintiff Khanna with false statements regarding Plaintiff's business conduct, including repetitions of the above-alleged false assertions that Plaintiff was responsible for alleged personnel-related and budgeting issues with Shimbly. These assertions were false, and Defendant Somerville knew they were false, yet Defendant Somerville made and published these false statements in order to promote and further Defendant Katy Banks's scheme. And, in fact, the false statements did further the scheme by promoting and distracting from Defendant Katy Banks's misconduct. Indeed, Defendant Somerville published his defamatory report at the exact same time that Defendant Katy Banks was meeting with the Cary Defendants to solicit their approval of, and involvement in, the scheme and theft.

31

115. Fifth, Defendant Somerville provided services, free of charge, to Defendant Katy Banks to knowingly assist her in creating the new company with Shimbly's trade secrets and technology. Defendant Somerville, for example, held numerous meetings with Defendant Katy Banks regarding her project plan for creating and launching the new company, provided free services to Defendant Katy Banks (including services that were direct continuations of the services he had been performing on behalf of Shimbly), and participating in multiple consulting sessions aimed at helping Defendant Katy Banks bring the new entity (with Shimbly's trade secrets and technology) to market. Indeed, Defendant Katy Banks referred to Defendant Somerville as the "new Derek Khanna" (and/or words to that effect) for the new company to Theophile Khayat.

116. Defendants CBT, Tony Banks, and Cindy Banks (the "CBT Defendants") also knowingly and actively assisted Defendant Katy Banks in pursuing and accomplishing her unlawful above-alleged scheme to steal and use Shimby's trade secrets and intellectual property under the rubric of another company competing in the same marketplace. The CBT Defendants and Defendant Katy Banks (collectively, the "Banks Defendants") undertook to – and did – use CBT as platform to plan and accomplish their unlawful scheme in multiple independent respects, including as follows. First, the CBT Defendants communicated and worked with Defendant Katy Banks to transfer Shimbly's trade secrets and intellectual property to the Google Drives of CBT, Tony Banks and Cindy Banks, which and whom kept that technology hidden in CBT's servers and cloud-based storage services. Second, the CBT Defendants provided CBT's email platform as a secret forum for Katy Banks's communications with the Conspiring Defendants, including the Cary Defendants and Defendant Somerville, to pursue and accomplish their unlawful scheme. Third, the CBT Defendants provided Defendant Katy Banks with a CBT phone to secretly undertake her communications in connection with the unlawful scheme (and, indeed, to conceal that second phone

from Plaintiff and the Court during discovery in this very case by explicitly denying its existence as a separate CBT phone). Fourth, CBT issued a request for a third party to help use Shimbly's trade secrets and technology within CBT, including in a document file titled, "Client Reference Portal – Cindy Banks Team .docx," with the document's actual title being "Cindy Banks Team Request for Proposal: MVP of Client View." Fifth, newly produced documents (from CBT) reveal that Defendant Katy Banks planned to appoint Defendant Cindy Banks to the Board of Directors of the stolen-Shimbly company. Sixth, additional newly produced documents (also from CBT) disclose that, in September 2020, Shimbly and CBT were negotiating a substantial contract to deploy Shimbly technology within CBT in a paid capacity – which would have brought in millions of dollars of revenue for Shimbly. However, this deal was never signed, and instead, on information and belief, CBT pursued this deal for the newly created company. Seventh, Defendant Cindy Banks encouraged others to join the plot, including meeting or communicating with Theo Khayat and Defendant Pamela Cary to seek and secure their endorsement and involvement of the scheme.

117.     Defendant Katy Banks was a "Partner" of CBT (as she and CBT publicly described her role at CBT), and she took the above-alleged actions on behalf of CBT.

118.     The CBT Defendants also knew about, encouraged, and assisted in perpetrating Defendant Katy Banks's and the Cary Defendants' attempt to transfer Shimbly to the Cary Defendants for no consideration or compensation whatsoever. Recently produced documents by CBT, for example, show that Defendant Katy Banks copied hundreds of Shimbly files to the CBT Defendants through CBT's Google Drive. As alleged above, moreover, the CBT Defendants and Defendant Katy Banks further planned to install Defendant Cindy Banks on the board of the new company. Indeed, Defendant Tony Banks has referred to the scheme to dissolve Shimbly and start a new company, with Shimbly's trade secrets and technology, as a plan to "screw over" Plaintiff.

119.     Having stolen Shimbly's trade secrets and intellectual property, and hidden that technology in CBT's servers and cloud-based storage services, the Banks Defendants conspired to – and did – continue to develop the reconstituted Shimbly, at first under the moniker Pivot, and then under the new name of "BRIX." Thereafter, on information and belief, the Banks Defendants used other names and entities to accomplish their unlawful scheme to steal Shimbly's assets and launch their own entity in Shimbly's marketplace. In or around 2022, for example, the Banks Defendants were developing and marketing a platform for buyers and sellers of residential homes, and real-estate agents, who were the exact same targeted users of Shimbly's platform. The Banks Defendants also were featuring, as part of their new platform, overlapping features and functionality that were core elements of Shimbly, and were stolen from Shimbly by the Conspiring Defendants. On multiple occasions, Defendant Katy Banks tried to hide this from Plaintiff, for example writing in September 2022 (11 months into this trial) that: "We [CBT] are launching a website in LA (don't tell Derek)." In 2023, CBT launched "Cindybanks.homes," which included real-estate education components – concepts and opportunities directly appropriated from Shimbly's trade secrets and intellectual property.

120.     In fact, the Banks Defendants were able to conceal the magnitude of their (and the other Conspiring Defendants') wrongdoing until only recently, when Plaintiff finally was able to secure a substantive document production by CBT in response to a subpoena issued by Plaintiff in this civil action. CBT had evaded that subpoena for almost one year, until after a contempt holding and multiple other orders to compel issued by the Court. Only then did CBT finally produce approximately 7,000 theretofore concealed documents, which disclosed and exposed the nature, scope, and extent of the Conspiring Defendants' collaborations and actions in connection with the unlawful scheme to steal Shimbly, transfer its trade secrets and intellectual property to CBT, and

use those trade secrets and intellectual property to develop and market a new company – BRIX – that essentially is a reconstituted Shimbly focused on competing in the exact same marketplace with the same features and functionality developed painstakingly for years prior to the initiation of this unlawful scheme.

121.    In addition, Defendant Banks and Khayat worked closely and directly, and communicated frequently, about expelling Plaintiff from Shimbly, destroying him professionally, and collaborating together to reap the consequent benefits, including their shared objective of benefitting and profiting personally and unlawfully from Shimbly's developed intellectual property and other trade secrets.  For example, and by way of illustration only, prior to the filing of this lawsuit, Defendant Katy Banks and Khayat corresponded about their shared plans to steal the company, including communications in which Khayat told Defendant Banks, in writing, that the plan was to "firebomb [Shimbly] and jump over to other company."  And that is exactly what Defendant Banks did, as alleged herein, with the active encouragement, assistance, and involvement of Khayat – "firebomb" Shimbly and "jump over to another company."  Also before the filing of this lawsuit, Defendant Katy Banks and Khayat frequently communicated about their shared desire to "jump over to [an]other company," which further showed the futility of any additional requests for Defendant Katy Banks (or Khayat, if he were on the Board of Directors at that time) to file suit on behalf of Shimbly against Defendant Bank and other associated wrongdoers.

**Khanna Suffered Severe And Special Damages Caused By Defendants' Misconduct.**

122.    Plaintiff has suffered substantial damages caused by Defendants' misconduct as alleged above.  Plaintiff's injuries are separate and distinct from those caused by Defendants to Shimbly, including without limitation harm to Plaintiff's contractual and voting rights, Plaintiff's lost compensation, and the total loss of millions of dollars of value in Plaintiff's shares of Shimbly

stock while the company's other main shareholder – Banks – suffered no such losses because of her misappropriation of Shimbly's trade secrets and other proprietary information.

123.     Plaintiff also suffered special and distinct harm caused by Banks's accounting fraud, which benefitted her solely and directly at the expense of Plaintiff's contractual and shareholder rights and interests, and by her wrongful termination of Plaintiff, which caused Plaintiff to suffer substantial and distinct losses in compensation, shareholder rights, and other direct and consequential damages.  In addition, Plaintiff has suffered substantial and irreparable harm to his reputation because of Banks's and Hussein's false and defamatory statements, which have impugned Plaintiff's business practices and devastated Plaintiff's standing as a lawyer and entrepreneur in the marketplace.

124.     In addition, Plaintiff suffered direct injuries to himself, separate and apart from the injuries suffered by Shimbly and by Plaintiff as a Shimbly shareholder.  Specifically, based on the foregoing allegations, Defendants' misconduct, individually and collectively, has caused Plaintiff to suffer the following individual, personal, and direct injuries and harm: (a) damages and harm to Plaintiff's ability to seek and secure gainful employment in fields related to technology and the practice of law; (b) lost income as a result of Plaintiff's decreased employment opportunities and earning capacity; (c) damages and harm to Plaintiff reputation in those chosen fields; (d) the costs of rebuilding Plaintiff's reputation; (e) damages and harm consisting of attorneys' fees and other damages to litigate false and fraudulent allegations in a fraudulent civil action and complaint before the California Bar Association; and (f) emotional damages and harm including personal humiliation, mental anguish, and suffering.  Plaintiff would not and cannot be compensated for each and all of these damages and harm through an award of damages to Shimbly.

## COUNT I (AGAINST DEFENDANT KATY BANKS)

## BREACHES OF FIDUCIARY DUTIES

125.   Plaintiff re-alleges and incorporates by reference paragraphs 1-124 as though fully set forth herein.

126.   As CEO and shareholder of Shimbly, Defendant Katy Banks was, at all times relevant hereto, a fiduciary of Plaintiff.  As such, Banks owed the highest duty of good faith, fair dealing, and loyalty to Plaintiff, Shimbly, its shareholders, and its other officers and directors.

127.   Katy Banks breached her fiduciary duties to Plaintiff, including her duty of loyalty, by, *inter alia*: (a) engaging in accounting fraud, securities fraud, Sarbanes Oxley violations, obstruction of justice, and profiting from her falsified financial records; (b) failing and refusing to undertake any actions whatsoever to help Shimbly and develop its business, effectively disappearing and refusing to respond to multiple attempts by Plaintiff to get her involved in the company; (c) purposefully bankrupting Shimbly; (d) conspiring with the Conspiring Defendants and others to concoct fabricated charges and false statements about Plaintiff in order to justify his wrongful termination and execute Banks's scheme to steal the company; (e) developing and executing a plan to steal Shimbly's trade secrets and other proprietary information for Banks's personal gain; (f) starting and managing a business with Shimbly's Business Concept, trade secrets, relationships and other proprietary information, in the same marketplace in which Shimbly competed; (g) engaging in an attempt to (and, on information and belief, an actual transaction to) transfer Shimbly shares for no consideration whatsoever; (h) driving down the value of Plaintiff's Shimbly stock to nothing, while profiting from her stock through her fraudulent scheme and other misconduct; (i) refusing to convene (and obstructing the convening of) meetings of the Shimbly Board of Directors or shareholders, in clear violation of her fiduciary duties and Delaware law, for improper purposes including stopping the investigation or disclosure of her impropriety and

criminal behavior; (j) refusing any disclosure on the status of the company to Shimbly's Board of Directors, and usurping their authority to run the company; (k) presenting knowingly materially false information and withholding materially false information to the Shimbly board for purposes of soliciting votes; (l) creating and refusing to fix Shimbly's falsified accounting records; (m) defaulting Shimbly under Delaware Law, Illinois law and with federal tax law by refusing to pay taxes, file forms, conduct required training, or have a registered agent; (n) making no efforts whatsoever to enhance Shimbly shareholder value and impeding Plaintiff's efforts to do so; (o) repetitively denying Plaintiff access to Shimbly accounting documents to hide her improprieties; (p) engaging in retribution against Plaintiff as a whistleblower; and (q) using Shimbly resources to procure and publish defamatory statements.

128.    Defendant Katy Banks has breached her fiduciary duties in multiple additional respects through her wrongful and retaliatory mistreatment and discharge of Plaintiff.  For example, Katy Banks breached her fiduciary duties to Plaintiff, including her duty of loyalty, by, *inter alia*: (a) effectively terminating Plaintiff through excluding him from accessing Shimbly information and resources while Plaintiff was still an employee; (b) threatening Plaintiff and issuing a three-day ultimatum to resign because Plaintiff was exposing Katy Banks's improprieties in whistleblower notices; (c) terminating Plaintiff because of the whistleblower notices and as part of her campaign to steal the company; (d) attempting to justify Plaintiff's discharge with false material information; (e) failing and refusing to engage in mandatory and necessary corporate processes in connection with Plaintiff's discharge, including her total failure to engage in a valid, proper or legally authorized board and/or shareholder meetings or seek proper written consent as required by Delaware Law; (f) refusing to allow Plaintiff to attend meetings at which Plaintiff's termination was discussed and improperly agreed without any vote (let alone a vote of the majority of

shareholders or Directors); (g) effectively removing Plaintiff as a Director by excluding him from any future Board of Directors meetings, cancelling his scheduled Board of Directors meetings, denying four Section 220 letter requests and providing zero disclosure about the company; and (h) voting as a self-interested party without disclosure.

129.     Each and all of the above-alleged improprieties constituted a breach of Katy Banks's fiduciary duties to Plaintiff.

130.     As a direct and proximate cause of Katy Banks's breaches of fiduciary duties, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Katy Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Katy Banks's breaches of fiduciary duties; (b) injunctive and equitable relief to preclude Katy Banks from profiting over her misappropriations of Shimbly's trade secrets and other proprietary information; (c) exemplary and/or punitive damages as a result of Katy Banks's willful and malicious misconduct; (d) Plaintiff's attorneys' fees; (e) interest and costs; and (f) any such further relief that this Court deems just and appropriate. Plaintiff also seeks appropriate injunctive and equitable relief to stop Katy Banks from continuing to engage in misconduct, to protect and preserve the status quo pending the adjudication of this action, and to remedy the harm and damages caused by Banks to Plaintiff and Shimbly.

## COUNT II (AGAINST DEFENDANTS CBT, CINDY BANKS, TONY BANKS, PAMELA CARY, RICHARD CARY, EIRIK SOMERVILLE, AND MARYAM HUSSEIN (THE "CONSPIRING DEFENDANTS")

## AIDING AND ABETTING KATY BANKS'S BREACHES OF FIDUCIARY DUTIES

131.     Plaintiff re-alleges and incorporates by reference paragraphs 1-130 as though fully set forth herein.

132. The Conspiring Defendants knowingly aided and abetted Defendant Katy Banks's breaches of fiduciary duties to Plaintiff, in that the Conspiring Defendants performed wrongful acts that assisted (or substantially assisted) Katy Banks's breaches, including without limitation Katy Banks's actions in (a) engaging in accounting fraud, securities fraud, Sarbanes Oxley violations, obstruction of justice, and profiting from her falsified financial records; (b) failing and refusing to undertake any actions whatsoever to help Shimbly and develop its business, effectively disappearing and refusing to respond to multiple attempts by Plaintiff to get her involved in the company; (c) purposefully bankrupting Shimbly; (d) conspiring to concoct fabricated charges and false statements about Plaintiff in order to justify his wrongful termination and execute Katy Banks's scheme to steal the company; (e) developing and executing a plan to steal Shimbly's trade secrets and other proprietary information for Katy Banks's personal gain; (f) starting and managing a business with Shimbly's Business Concept, trade secrets, relationships and other proprietary information, in the same marketplace in which Shimbly competed; (g) engaging in an attempt to (and, on information and belief, an actual transaction to) transfer Shimbly shares for no consideration whatsoever; (h) driving down the value of Plaintiff's Shimbly stock to nothing, while profiting from her stock through her fraudulent scheme and other misconduct; (i) refusing to convene (and obstructing the convening of) meetings of the Shimbly Board of Directors or shareholders, in clear violation of her fiduciary duties and Delaware law, for improper purposes including stopping the investigation or disclosure of her impropriety and criminal behavior; (j) refusing any disclosure on the status of the company to Shimbly's Board of Directors, and usurping their authority to run the company; (k) presenting knowingly materially false information and withholding materially false information to the Shimbly board for purposes of soliciting votes; (l) creating and refusing to fix Shimbly's falsified accounting records; (m) defaulting Shimbly under

40

Delaware Law, Illinois law and with federal tax law by refusing to pay taxes, file forms, conduct required training, or have a registered agent; (n) making no efforts whatsoever to enhance Shimbly shareholder value and impeding Plaintiff's efforts to do so; (o) repetitively denying Plaintiff access to Shimbly accounting documents to hide her improprieties; (p) engaging in retribution against Plaintiff as a whistleblower; and (q) using Shimbly resources to procure and publish defamatory statements.

133.    As a direct and proximate cause of the Conspiring Defendants' aiding and abetting Katy Banks's breaches of fiduciary duties, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against the Conspiring Defendants, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by the Conspiring Defendants' aiding and abetting Katy Banks's breaches of fiduciary duties; (b) exemplary and/or punitive damages as a result of the Conspiring Defendants' substantial assistance to Katy Banks's willful and malicious misconduct; (c) Plaintiff's attorneys' fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

### COUNT III (AGAINST DEFENDANT KATY BANKS) FRAUDULENT CONCEALMENT

134.    Plaintiff re-alleges and incorporates by reference paragraphs 1-124 as though fully set forth herein.

135.    Defendant Katy Banks intentionally concealed material information regarding her fraudulent scheme to terminate Plaintiff, destroy Shimbly's value, steal Shimbly's trade secrets and other proprietary information, and use those trade secrets and information to create and manage her own company operating in Shimbly's targeted marketplace. Katy Banks had a duty to disclose that

information because, *inter alia*, she was in a fiduciary relationship with Plaintiff. Katy Banks, however, concealed that information in order to induce Plaintiff's false belief that she was acting in the best interests of Shimbly and its shareholders, including Plaintiff.

136. By concealing those materials facts, Katy Banks intended to – and did – induce Plaintiff to use substantial efforts to develop and build Shimbly's business, including without limitation Shimbly's Business Concept, trade secrets and other proprietary information, which Banks then stole for her own personal gain and self-interest. Plaintiff could not have discovered Katy Banks's concealed scheme through reasonable inquiry or inspection, and was prevented from making such an inquiry or inspection because of Katy Banks's concealment and other misconduct.

137. In addition, the concealed information was such that Plaintiff would have acted differently if he would have been aware of it. For example, if Plaintiff knew Katy Banks's concealed information, Plaintiff would have refrained from expending substantial efforts to develop Shimbly's Business Concept, trade secrets and proprietary information that, unbeknownst to him, Katy Banks was planning to – and did – steal.

138. As a direct and proximate cause of Katy Banks's fraudulent concealment, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Katy Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Katy Banks's fraud; (b) exemplary and/or punitive damages as a result of Katy Banks's willful and malicious misconduct; (c) Plaintiff's attorneys' fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

**COUNT IV (AGAINST DEFENDANTS CBT, CINDY BANKS, TONY BANKS, PAMELA CARY, RICHARD CARY, EIRIK SOMERVILLE, AND MARYAM HUSSEIN (THE "CONSPIRING DEFENDANTS")**

**AIDING AND ABETTING BANKS'S FRAUDULENT CONCEALMENT**

139.    Plaintiff re-alleges and incorporates by reference paragraphs 1-138 as though fully set forth herein.

140.    The Conspiring Defendants knowingly aided and abetted Katy Banks's fraudulent concealment, in that they performed wrongful acts that assisted (or substantially assisted) Banks's fraud, including without limitation their active assistance in concealing Katy Banks's actions in (a) engaging in accounting fraud, securities fraud, Sarbanes Oxley violations, obstruction of justice, and profiting from her falsified financial records; (b) failing and refusing to undertake any actions whatsoever to help Shimbly and develop its business, effectively disappearing and refusing to respond to multiple attempts by Plaintiff to get her involved in the company; (c) purposefully bankrupting Shimbly; (d) conspiring to concoct fabricated charges and false statements about Plaintiff in order to justify his wrongful termination and execute Katy Banks's scheme to steal the company; (e) developing and executing a plan to steal Shimbly's trade secrets and other proprietary information for Katy Banks's personal gain; (f) starting and managing a business with Shimbly's Business Concept, trade secrets, relationships and other proprietary information, in the same marketplace in which Shimbly competed; (g) engaging in an attempt to (and, on information and belief, an actual transaction to) transfer Shimbly shares for no consideration whatsoever; (h) driving down the value of Plaintiff's Shimbly stock to nothing, while profiting from her stock through her fraudulent scheme and other misconduct; (i) refusing to convene (and obstructing the convening of) meetings of the Shimbly Board of Directors or shareholders, in clear violation of her fiduciary duties and Delaware law, for improper purposes including stopping the investigation or disclosure

of her impropriety and criminal behavior; (j) refusing any disclosure on the status of the company to Shimbly's Board of Directors, and usurping their authority to run the company; (k) presenting knowingly materially false information and withholding materially false information to the Shimbly board for purposes of soliciting votes; (l) creating and refusing to fix Shimbly's falsified accounting records; (m) defaulting Shimbly under Delaware Law, Illinois law and with federal tax law by refusing to pay taxes, file forms, conduct required training, or have a registered agent; (n) making no efforts whatsoever to enhance Shimbly shareholder value and impeding Plaintiff's efforts to do so; (o) repetitively denying Plaintiff access to Shimbly accounting documents to hide her improprieties; (p) engaging in retribution against Plaintiff as a whistleblower; and (q) using Shimbly resources to procure and publish defamatory statements.

141.    As a direct and proximate cause of the Conspiring Defendants' knowing aiding and abetting Katy Banks's fraudulent concealment, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against the Conspiring Defendants, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by the Conspiring Defendants' aiding and abetting Katy Banks's breaches of fiduciary duties; (b) exemplary and/or punitive damages as a result of the Conspiring Defendants' substantial assistance to Banks's willful and malicious misconduct; (c) Plaintiff's attorneys' fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

## COUNT V (AGAINST DEFENDANT KATY BANKS)

## BREACHES OF CONTRACT: THE SHIMBLY AGREEMENTS

142.     Plaintiff re-alleges and incorporates by reference paragraphs 1-124 as though fully set forth herein.

143.     The Agreement, Revised Agreement, and Katy Banks's and Plaintiff's verbal salary agreement are valid and enforceable contracts.

144.     Katy Banks materially breached the Agreement and Revised Agreement by, *inter alia*, (a) depriving Shimbly of ownership of the Business Concept, failing to assign the Business Concept to Shimbly, and stealing the Business Concept from Shimbly and its shareholders, in violation of Sections 1.1 and 1.2 of the Agreement; (b) breaching her duty to secure consent from each Founder prior to transferring interests in the Business Concept to a third party, in violation of Section 1.3 of the Agreement; (c) breaching her duty to provide Plaintiff with the right of first offer in connection with Banks's attempted (and, on information and belief, actual) transfers of Shimbly's shares, in violation of Section 1.4 of the Agreement; (d) breaching her duty to provide Plaintiff with the right of first refusal in connection with Banks's offer to give away Shimbly's stock to third parties, in violation of Section 1.5 of the Agreement; (e) breaching her duty to perform her role and responsibilities as Shimbly's CEO, in violation of Sections 3.1 and 3.2 of the Agreement; (f) breaching her duty to submit disputes over the failure to agree on a separation agreement for Plaintiff to binding confidential mediation, in violation of Section 6.1 of the Agreement; (g) breaching her duty to guarantee Plaintiff the right to present his perspective and documentation to all Founders and Directors in connection with substantial disputes among the members, in violation of Section 6.2 of the Agreement; (h) breaching her representation and warranty that she was not party to any other agreement, company, or entity that would restrict her ability to perform her obligations under the Agreement, in violation of Section 9.1 of the Agreement; (i) breaching her representation and warranty that no third party can claim any rights to any intellectual property or

other proprietary right possessed by Katy Banks as related to the Business Concept, in violation of Section 9.2 of the Agreement; (j) breaching her representation and warranty that she will act as fiduciary agents for shareholders and avoid conflicts of interest, in violation of Section 9.4 of the Agreement; (k) breaching her duty to seek and secure authorization of each Founder and a majority of the shareholders, and to comply with applicable state and federal laws, in connection with any attempted or actual sale of Shimbly to an interested third party, in violation of Section 3.4 of the Revised Agreement; (l) breaching her duty to seek and secure 50%+ vote of all Shimbly shareholders before entering into any major contract, in violation of Section 4.2 of the Agreement; and (m) breaching her duty to seek and secure 60%+ vote of shareholders before any actual or attempted dilution event, in violation of Section 4.3 of the Revised Agreement.

145.    Katy Banks also breached her verbal agreement with Plaintiff under which they agreed to be partners and co-founders of Shimbly, with an agreed-upon salary of $180,000.00 for each of them in the first year, and $220,000.00 in the second year.  Katy Banks breached that verbal agreement (which was memorialized in written documents) by, *inter alia*, seizing control of Shimbly and refusing to pay any salary to Plaintiff – let alone the salary promised in the parties' verbal agreement.

146.    Plaintiff satisfied all of his material duties, and performed all of his material obligations, under the Agreement, the Revised Agreement, and the parties' verbal agreement.

147.    As a direct and proximate cause of Katy Banks's material breaches of contract, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Katy Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Katy Banks's breaches of contract; (b)

exemplary and/or punitive damages as a result of Katy Banks's willful and malicious misconduct; (c) Plaintiff's attorneys' fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

## COUNT VI: (AGAINST DEFENDANT KATY BANKS)

## WRONGFUL AND RETALIATORY DISCHARGE

## [TO BE MEDIATED FIRST PURSUANT TO COURT ORDER]

148.    Plaintiff re-alleges and incorporates by reference paragraphs 1-124 as though fully set forth herein.

149.    Defendant Katy Banks terminated Plaintiff in retaliation for his activities, including without limitation his whistleblower complaints regarding Katy Banks's misconduct, and for other unlawful reasons, in violation of clear mandates of public policy, including public policy prohibiting fraudulent conduct by shareholders and officers, and protecting whistleblowers who attempt to expose such fraudulent conduct to protect the company and its shareholders.

150.    For example, Katy Banks terminated Plaintiff because Plaintiff had informed Shimbly's Board of Directors, shareholders, and investors that Katy Banks: (a) breached her fiduciary duties of loyalty to Plaintiff and Shimbly in multiple independent respects, including her decisions to benefit her family and her own self-interest at the expense of Shimbly and its shareholders, her failure to act in Shimbly's interests, and her erratic and inexplicable failure to make any business decisions in Shimbly's and its shareholders' interests; (b) falsified Shimbly's accounting records to pay herself back with Shimbly money; (c) illegally recorded telephone calls; (d) violated labor laws with regard to at least one Shimbly employee, (e) misused and misappropriated Shimbly property and resources; and (f) lied to investors in pursuing obtaining securities with false information on employee numbers and launch dates. Each and all of these

47

improper termination grounds – individually and in combination – constitute a separate and independent violation of public policy.

151. There was a direct causal relationship between Plaintiff's activities and whistleblower complaints, on the one hand, and Katy Banks's termination of Plaintiff, on the other.

152. Katy Banks's discharge of Plaintiff also was wrongful because Plaintiff failed and refused to satisfy mandatory corporate processes in connection with terminating Plaintiff, including without limitation Katy Banks's total failure to: (a) submit her attempted discharge for binding confidential mediation in violation of Section 6.1 of the Agreement, and/or (b) follow requisite corporate processes mandated under Delaware and other governing law, such as holding a shareholder meeting, a board meeting, and allowing shareholders and/or directors (including Plaintiff) to vote on her proposed termination of Plaintiff.

153. As a direct and proximate cause of Katy Banks's wrongful and retaliatory discharge of Plaintiff, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Katy Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Katy Banks's wrongful and retaliatory discharge; (b) exemplary and/or punitive damages as a result of Katy Banks's willful and malicious misconduct; (c) Plaintiff's attorneys' fees; (e) interest and costs; and (f) any such further relief that this Court deems just and appropriate.

## COUNT VII: (AGAINST DEFENDANT KATY BANKS)
## VIOLATIONS OF THE ILLINOIS TRADE SECRETS ACT

154. Plaintiff re-alleges and incorporates by reference paragraphs 1-124 as though fully set forth herein.

155.     Defendant Katy Banks acquired and used Shimbly's trade secrets, including Shimbly's Business Concept, proprietary strategies, products, services, processes, ideas, customer lists and information, and other confidential and proprietary information relating to Shimbly's business. This information constitutes a "Trade Secret," individually and collectively, under the Illinois Trade Secrets Act, in that the information derives economic value from not being generally known to (or ascertainably by proper means by) other persons who can obtain economic value from its disclosure, and the information was the subject of reasonable efforts under the circumstances to maintain its secrecy.

156.     Katy Banks used improper means to acquire knowledge of Plaintiffs' Trade Secrets, including without limitation by engaging in theft.

157.     When Katy Banks acquired knowledge of Shimbly's Trade Secrets, she knew or had reason to know that she: (a) acquired the Trade Secrets by improper means; (b) acquired the Trade Secrets under circumstances giving rise to a duty to maintain their secrecy or limit their use; and/or (c) derived the Trade Secrets from or through persons who owed a duty to Shimbly and Plaintiff to maintain its secrecy or limit its use.

158.     Katy Banks has engaged in actual and threatened misappropriation of Shimbly's Trade Secrets.

159.     Katy Banks's above-alleged misappropriations have caused Plaintiff to suffer monetary and non-monetary harm.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Katy Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Katy Banks's misappropriations of Shimbly's Trade Secrets; (b) exemplary and/or punitive damages consisting of twice Plaintiff's

actual damages as a result of Katy Banks's willful and malicious misconduct; (c) Plaintiff's attorneys' fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate. Plaintiff also seeks appropriate injunctive and equitable relief to stop Katy Banks from continuing to engage in misconduct, to protect and preserve the status quo pending the adjudication of this action, and to remedy the harm and damages caused by Banks to Plaintiff and Shimbly.

### COUNT VIII: (AGAINST (AGAINST DEFENDANTS CBT, CINDY BANKS, TONY BANKS, PAMELA CARY, RICHARD CARY, EIRIK SOMERVILLE, AND MARYAM HUSSEIN (THE "CONSPIRING DEFENDANTS")

### AIDING AND ABETTING BANKS'S VIOLATIONS OF THE ILLINOIS TRADE SECRETS ACT

160.    Plaintiff re-alleges and incorporates by reference paragraphs 1-124, 154-159 as though fully set forth herein.

161.    The Conspiring Defendants aided and abetted Katy Banks's violations of the Illinois Trade Secrets Act, in that they performed wrongful acts that assisted (or substantially assisted) Banks's acquisition and use of Shimbly's Trade Secrets, including Shimbly's Business Concept, proprietary strategies, products, services, processes, ideas, customer lists and information, and other confidential and proprietary information relating to Shimbly's business.

162.    As a direct and proximate cause of the Conspiring Defendants' knowing aiding and abetting Katy Banks's violations of the Illinois Trade Secrets Act, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against the Conspiring Defendants, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by the Conspiring Defendants' aiding and abetting of Katy Banks's misappropriations of Shimbly's Trade Secrets; (b) exemplary and/or

punitive damages consisting of twice Plaintiff's actual damages as a result of the Conspiring Defendants' willful and malicious misconduct; (c) Plaintiff's attorneys' fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate. Plaintiff also seeks appropriate injunctive and equitable relief to stop the Conspiring Defendants from continuing to engage in misconduct, to protect and preserve the status quo pending the adjudication of this action, and to remedy the harm and damages caused by the Conspiring Defendants to Plaintiff and Shimbly.

## COUNT IX: (AGAINST DEFENDANT KATY BANKS)

## CONVERSION

163. Plaintiff re-alleges and incorporates by reference paragraphs 1-124 as though fully set forth herein.

164. Defendant Katy Banks converted and used Shimbly's tangible property that contained Shimbly's protected Business Concept and other trade secrets, including electronic and hard-copy records that memorialize and include Shimbly's Business Concept, its databases and APIs, all of which included proprietary strategies, products, services, processes, ideas, customer lists and information, and other confidential and proprietary information relating to Shimbly's business (collectively, "Shimbly's Property").

165. Katy Banks used improper means to acquire Shimbly's Property.

166. Katy Banks's above-alleged conversion have caused Plaintiff to suffer monetary and non-monetary harm.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Katy Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Katy Banks's misappropriations of Shimbly's Trade Secrets; (b) exemplary and/or punitive damages as a result of Katy Banks's willful

51

and malicious misconduct; (c) Plaintiff's attorneys' fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

## COUNT X (AGAINST DEFENDANT KATY BANKS)

## OBSTRUCTION OF JUSTICE IN VIOLATION OF THE ILLINOIS WHISTLEBLOWER ACT

167.    Plaintiff re-alleges and incorporates by reference paragraphs 1-124 as though fully set forth herein.

168.    In October 2020, Defendant Katy Banks was aware of Plaintiff's plans to confront her with serious evidence of impropriety including accounting fraud, securities fraud and an ongoing Sarbanes Oxley violation to the Board of Directors, with a specific proffered resolution to refer the matter to the SEC.

169.    Katy Banks violated the Illinois Whistleblower Act by retaliating against and terminating Plaintiff for his reports to Shimbly's Board of Directors and investors regarding Banks's violations of state and federal laws.  For example, Katy Banks unlawfully retaliated against and terminated Plaintiff for alleging that Banks: (a) falsified Shimbly's accounting books to pay herself back with Shimbly money in violation of her criminal and civil legal obligations, (b) was engaged in a campaign to steal the company from shareholders, (c) illegally recorded telephone calls; (d) violated labor laws in connection with another employee, (e) committed securities fraud by pursuing obtaining securities with false information on employee numbers; (f) engaged in securities fraud by misleading investors on launch dates; and (g) engaged in numerous breaches of her fiduciary duties to Plaintiff and Shimbly.

170.    As a direct and proximate cause of Katy Banks's violations of the Illinois Whistleblower Act, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Katy Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Katy Banks's unlawful retaliatory discharge; (b) exemplary and/or punitive damages as a result of Katy Banks's unlawful misconduct; (c) Plaintiff's attorneys' fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

## COUNT XI (AGAINST DEFENDANT KATY BANKS)

## DEFAMATION

171.     Plaintiff re-alleges and incorporates by reference paragraphs 1-124 as though fully set forth herein.

172.     Defendant Katy Banks intentionally made false statements about Plaintiff, including without limitation Katy Banks's publication of defamatory content in the Hussein report, which falsely stated that:  (a) "Derek was sabotaging the company"; b) "Derek's design and functionality contributions cheapens the brand that Katy envisioned, which I then wanted to translate into the website. Functions like "hunter mode" and the "funnel" cheapen the brand, these functions are used in dating apps;" and (c) Plaintiff engaged in "mismanagement."

173.     Katy Banks made additional false and defamatory statements about Plaintiff to third parties, including Shimbly's investors.  For example, Katy Banks falsely told Khayat and the Defendant Carys, during conversations in early November 2020 in Chicago, that Khanna was "improperly making payments" on behalf of Shimbly, and that Plaintiff was responsible for "financial mismanagement" of Shimbly.  On information and belief, Banks also falsely told Khayat and the Defendant Carys that Plaintiff misled her on his legal background and legal education, and

that Plaintiff improperly budgeted Shimbly spending and caused Shimbly harm through mismanagement.

174.    Katy Banks knew that her statements about Plaintiff were false and defamatory.

175.    Katy Banks's false statements are defamatory *per se*, in that they imputed that: (a) Plaintiff was unable to perform or lacks integrity in performing his employment and professional duties, and (b) Plaintiff lacked ability in his profession.  Katy Banks's false and defamatory statements also prejudiced Plaintiff in his profession.

176.    Katy Banks's statements were malicious and reckless, and were part of her plan to steal Plaintiff's shares, harm an active whistleblower, and steal the company.

177.    As a direct and proximate cause of Katy Banks's false and defamatory statements, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Katy Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Katy Banks's defamation; (b) exemplary and/or punitive damages as a result of Katy Banks's willful defamation; (c) Plaintiff's attorneys' fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

## COUNT XII (AGAINST DEFENDANTS HUSSEIN AND SOMERVILLE)

## DEFAMATION

178.    Plaintiff re-alleges and incorporates by reference paragraphs 1-124, 171-177 as though fully set forth herein.

179.    Hussein and Somerville made false statements about Plaintiff, including without limitation defamatory content in reports submitted to Defendant Katy Banks, and then Shimbly's Board of Directors and investors, which falsely stated that: (a) ""Derek was sabotaging the

company;" (b) "Derek's design and functionality contributions cheapens the brand that Katy envisioned;" and (c) Plaintiff engaged in "mismanagement."

180.    On October 18, 2020, Somerville submitted a separate report on to Shimbly's Board of Directors and investors, to coincide with and assist Defendant Katy Banks in her meeting with investors later that afternoon.  This report was defamatory, and included false statements that: (a) Plaintiff had engaged in mismanagement by developing a product "with only $100K in confirmed capital" – when, in fact, at least $400,000.00 in capital had been confirmed; (b) Plaintiff was responsible for having engaged in mismanagement by hiring purportedly unqualified personnel – when, in fact, Defendant Katy Banks had made those hiring decisions; (c) Plaintiff supposedly had "no necessary documentation [for] MLS listing data" – when, in fact, Defendant Katy Banks was responsible for that issue; (d) Plaintiff supposedly was responsible for "building a product on top of an MLS database connection that violates [MLS rules]" – when, in fact, this was not Plaintiff's workstream or responsibility; (e) Plaintiff supposedly engaged in profligate spending and having "no formal  product roadmap" – when, in fact, Plaintiff had not done so, and Plaintiff was not responsible for or involved in the decisions and actions referenced by Somerville; and (f) Plaintiff supposedly was responsible for Shimbly having "ran out of initial $100k seed money" – when, in fact, Shimbly had not run out of money, the company had access to capital, and budgeting decisions made by Khanna and the executive team were not mismanagement but appropriate and necessary.

181.    The Somerville report, therefore, included multiple false statements accusing Plaintiff as being responsible for purported mismanagement, despite the fact that Plaintiff had not done so, and any mismanagement issues were the fault and responsibility of Defendant Katy Banks, not Plaintiff.

182.    Plaintiff responded to the Somerville report with a detailed rebuttal, demanding a retraction and correction, but Defendant Somerville refused to do so, and instead submitted his report as part of Defendant Katy Banks's scheme to steal the company and start a competitive business with Shimbly's trade secrets and other intellectual property.

183.    Hussein and Somerville knew that their statements about Plaintiff were false and defamatory.

184.    Hussein's and Somerville's statements were malicious and reckless, and were intended to (and did) assist Defendant Katy Banks in her unlawful scheme to steal Plaintiff's shares, harm an active whistleblower, and steal the company.

185.    Hussein's and Somerville's false statements are defamatory *per se*, in that they imputed that: (a) Plaintiff was unable to perform or lacks integrity in performing his employment and professional duties, and (b) Plaintiff lacked ability in his profession.  Their false and defamatory statements also prejudiced Plaintiff in his profession.

186.    As a direct and proximate cause of Hussein's and Somerville's false and defamatory statements, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendants Hussein and Somerville, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Hussein's and Somerville's defamation; (b) exemplary and/or punitive damages as a result of Hussein's and Somerville's willful defamation; (c) Plaintiff's attorneys' fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

## COUNT XIII (AGAINST DEFENDANT KATY BANKS)

## FALSE LIGHT

187.    Plaintiff re-alleges and incorporates by reference paragraphs 1-124, 178-186 as though fully set forth herein.

188.    Katy Banks's false statements placed Plaintiff in a false light before the public, in a manner that would be highly offensive to a reasonable person.

189.    Katy Banks acted with actual malice, with knowledge that her statements were false and/or with reckless disregard for whether her statements were true.

190.    As a direct and proximate cause of Katy Banks's false statements, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Katy Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Katy Banks's defamation; (b) exemplary and/or punitive damages as a result of Katy Banks's willful defamation; (c) Plaintiff's attorneys' fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

## COUNT XIV (AGAINST DEFENDANTS HUSSEIN AND SOMERVILLE)

## FALSE LIGHT

191.    Plaintiff re-alleges and incorporates by reference paragraphs 1-124, 187-190 as though fully set forth herein.

192.    Hussein's and Somerville's false statements placed Plaintiff in a false light before the public, in a manner that would be highly offensive to a reasonable person.

193.    Hussein and Somerville acted with actual malice, with knowledge that her statements were false and/or with reckless disregard for whether her statements were true.

194.    As a direct and proximate cause of Hussein's and Somerville's false statements, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendants Hussein and Somerville, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Hussein's and Somerville's defamation; (b) exemplary and/or punitive damages as a result of Hussein's and Somerville's willful defamation; (c) Plaintiff's attorney fees; (d) interest and costs; and (e) any such further relief that this Court deems just and appropriate.

## COUNT XV (AGAINST DEFENDANT KATY BANKS)

## GROSS NEGLIGENCE

195.     Plaintiff re-alleges and incorporates by reference paragraphs 1-124 as though fully set forth herein.

196.     Defendant Katy Banks owed a duty of care to Plaintiff to act reasonably in the conduct of the business of Shimbly.  Katy Banks's duty arose from, *inter alia*, the parties' relationship as fiduciaries, officers, employees, and shareholders of Shimbly.

197.     Katy Banks breached her duty to Plaintiff by, *inter alia*: (a) engaging in accounting fraud and profiting from her falsified financial records; (b) conspiring with Hussein to concoct fabricated charges and false statements about Plaintiff in order to justify his wrongful termination and execute Banks's scheme to steal the company; (c) developing and executing a plan to steal Shimbly's trade secrets and other proprietary information for Banks's personal gain; (d) starting and managing a business with Shimbly's trade secrets and other proprietary information, in the same marketplace in which Shimbly competed; and (d) driving down the value of Plaintiff's Shimbly stock to nothing, while profiting from her stock through her fraudulent scheme and other misconduct.

198. Katy Banks's breaches of her duty of care constituted gross negligence, in that Katy Banks's misconduct was willful and wanton, and exhibited a reckless indifference to or a deliberate disregard of Plaintiff's rights beyond the bounds of reason.

199. As a direct and proximate cause of Katy Banks's negligence, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Banks's breaches of fiduciary duties; (b) injunctive and equitable relief to preclude Banks from profiting over her misappropriations of Shimbly's trade secrets and other proprietary information; (c) exemplary and/or punitive damages as a result of Banks's willful and malicious misconduct; (d) Plaintiff's attorney fees; (e) interest and costs; and (f) any such further relief that this Court deems just and appropriate.

## COUNT XVI (AGAINST DEFENDANT KATY BANKS)

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

200. Plaintiff re-alleges and incorporates by reference paragraphs 1-124 as though fully set forth herein.

201. Katy Banks's conduct was extreme and outrageous, and Katy Banks knew that there was a high probability that her conduct would cause severe emotional distress to Plaintiff.

202. Katy Banks actions were from a position of power to steal the company from Plaintiff.

203. Katy Banks's conduct in fact caused severe emotional distress to Plaintiff.

204. As a direct and proximate cause of Katy Banks's negligence, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant Katy Banks, and award Plaintiff damages including, without limitation: (a) Plaintiff's direct and consequential damages caused by Katy Banks's breaches of fiduciary duties; (b) injunctive and equitable relief to preclude Katy Banks from profiting over her misappropriations of Shimbly's trade secrets and other proprietary information; (c) exemplary and/or punitive damages as a result of Katy Banks's willful and malicious misconduct; (d) Plaintiff's attorneys' fees; (e) interest and costs; and (f) any such further relief that this Court deems just and appropriate.

## COUNT XVI( (AGAINST ALL DEFENDANTS)

## SHIMBLY DERIVATIVE CLAIMS

205.     Plaintiff re-alleges and incorporates by reference paragraphs 1-142, 150-170 as though fully set forth herein.

206.     Plaintiff's Counts I, II, III, IV, VII, VIII, and IX also are filed on behalf of Shimbly, as derivative claims, in that Shimbly suffered damages caused by Defendants' above-alleged misconduct.  For example, Plaintiff's misconduct alleged in I, II, III, IV, VII, VIII, and IX caused Shimbly to suffer damages consisting of its destruction as a viable company, the loss of all value of its stock, lost profits in an existing and competitive marketplace, and additional direct and consequential damages.

207.     Plaintiff  made repeated requests and demands on Shimbly, Defendant Katy Banks, and Khayat to file litigation on behalf of Shimbly against Defendant Katy Banks and other culpable parties, including without limitation in Plaintiff's Section 220 letters, other written correspondence, and verbal communications.  However, Defendant Katy Banks and Khayat rejected those requests and demands.

208.     Plaintiff did not make any additional demands on Shimbly, Defendant Katy Banks, and/or Khayat to institute this action because such a demand would have been a futile, wasteful, and a useless act.  As an initial matter, such additional demands were unnecessary, given Plaintiff's prior demands to initiate litigation on behalf of Shimbly, as alleged above.  In addition, as Shimbly's CEO accused of serious wrongdoing, and having seized control over Shimbly, Katy Banks's interests were (and are) directly adverse to bringing an action on behalf of Shimbly against herself.

209.     Any specific additional demands on Khayat would have been unnecessary, because Khayat was no longer serving on the Shimbly Board of Directors, as alleged above.  In addition, even if Khayat were considered to be on Shimbly Board of Directors, any demands on Khayat to file suit against Shimbly would have been futile, wasteful, and a useless act.  Khayat, as alleged above, ignored all of Plaintiff's prior demands to file suit on behalf of Shimbly, including without limitation in Plaintiff's Section 220 letters, his other written correspondence, and his verbal communications.

210.     In addition, any demand on Khayat also would have been futile for multiple additional independent reasons.  First, Khayat received material personal benefits from Defendant Katy Banks's misconduct.  As alleged above, and repeated here for clarity, Khayat and Defendant Banks worked closely and directly, and communicated frequently, about expelling Plaintiff from Shimbly and collaborating together to reap the consequent benefits, including their shared objective of benefitting and profiting personally and unlawfully from Shimbly's developed intellectual property and other trade secrets.  For example, and by way of illustration only, prior to the filing of this lawsuit, Defendant Katy Banks and Khayat corresponded about their shared plans to steal the company, including communications in which Khayat stated that his purpose, along with Defendant Banks, was to "firebomb [Shimbly] and jump over to other company," which further showed the

61

futility of any additional requests for Defendant Katy Banks (or Khayat, if he were on the Board of Directors) to file suit on behalf of Shimbly against Defendant Banks and other associated wrongdoers. In addition, Defendants Katy Banks and Khayat also collaborated and communicated about "moving [Katy Banks's] efforts to another entity," with Shimbly's trade secrets and intellectual property, and Khayat expressly and actively encouraged and assisted Defendant Banks in doing so. Moreover, Defendant Katy Banks and Khayat agreed, at her request, to withhold all corporate information from Plaintiff, which Khayat did, despite the obvious illegality thereof. Defendant Banks also enlist Khayat to communicate with Plaintiff and report all information back to Defendant Banks, to further her and Khayat's plans to expel Plaintiff and steal Shimbly. In addition, Defendant Katy Banks and Khayat had a personal relationship that precluded Khayat from engaging in objective decision-making, and being impartial, in connection with Plaintiff and Plaintiff's requests to bring litigation on behalf of Shimbly against Defendant Katy Banks. Furthermore, as part of Defendant Katy Banks's and Khayat's plan to expel Plaintiff from Shimbly, Defendant Katy Banks offered Khayat all of Plaintiff's shares in Shimbly, for no consideration whatsoever, adding to Khayat's financial incentives to reject any additional demands from Plaintiff to sue Defendant Katy Banks on behalf of Shimbly. Defendant Katy Banks and Khayat also were conspiring to exonerate all of Defendant Katy Banks's actions and inactions (including the assignment of all of Plaintiff's stock to Khayat), retroactively, in an improper corporate resolution. Despite all of the foregoing instances in which Khayat knew about Defendant Katy Banks's improper conduct, Khayat did nothing to stop or slow such misconduct, but instead actively assisted and encouraged it, including all of the above instances as well as additional improprieties, such as: (a) the destruction, deletion, and transfer of Shimbly's intellectual property, trade secrets, and

additional information such as email accounts, and (b) Defendant Katy Banks's filing of a baseless and improper lawsuit against Plaintiff in Cook County Circuit Court.

211.     Accordingly, any additional pre-suit demands on Khayat also would have been futile because, as alleged above, Khayat: (a) faced substantial likelihood of liability based on the claims that were the subject of Plaintiff's litigation demands and this lawsuit; and (b) lacked independence from Defendant Katy Banks.  As alleged above, Khayat was working actively with Defendant Katy Banks to expel Plaintiff from Shimbly, cause him personal harm including the destruction of Plaintiff professionally, and steal Shimbly's intellectual property and trade secrets to benefit themselves at the expense of Plaintiff and Shimbly.

212.     As a direct and proximate cause of Defendants' misconduct, Shimbly suffered injuries for which Plaintiff seeks monetary damages, including compensatory, exemplary and punitive damages, as set forth in the ad damnum clauses for Counts I, II, III, IV, VII, VIII, and IX, which are incorporated by reference as though fully set forth herein.  This is not a collusive action to confer jurisdiction that the Court would otherwise lack.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor on behalf of Shimbly, and award Shimbly damages including, without limitation: (a) Shimbly's direct and consequential damages caused by Defendants' misconduct; (b) injunctive and equitable relief to preclude Banks from profiting over her misappropriations of Shimbly's trade secrets and other proprietary information; (c) exemplary and/or punitive damages as a result of Defendants' willful and malicious misconduct; (d) Plaintiff's attorney fees; (e) interest and costs; and (f) any such further relief that this Court deems just and appropriate.

## **JURY DEMAND**

Plaintiff hereby requests and demands a trial by jury on all factual issues that are triable by a fact-finder.

## **RESERVATION OF RIGHTS**

Plaintiff has filed a charge with the Illinois Department of Human Rights ("IDHR") as a result of Defendant Banks's sexual harassment and discrimination of Plaintiff. Accordingly, Plaintiff has refrained from asserting those allegations and claims in this Complaint, and respectfully reserves and preserves his right to assert those allegations and claims herein based on IDHR's disposition of Plaintiff's charge.

Rspectfully submitted,

*/s/ Hillard M. Sterling*
HILLARD M. STERLING

Dated: August ___, 2024
HILLARD M. STERLING,
ARDC No. 6232655
ROETZEL & ANDRESS
70 West Madison St., Ste. 3000
Chicago, Illinois 60602
(312) 952-8082; hsterling@ralaw.com
**ATTORNEY FOR PLAINTIFF**

## **RULE 23.1 VERIFICATION**

I, Derek Khanna, am the named Plaintiff in this action. I am a shareholder of Shimbly Corporation, and have been at all times through the relevant period alleged in this Verified Complaint. I have reviewed the allegations in this Verified Complaint, and state that the matters stated therein about which I have personal knowledge are true, and that the other matters stated therein are true and accurate to the best of my knowledge, information, and belief. Having reviewed a copy of this Verified Complaint, I hereby approve and authorize its filing.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on the ___ day of August 2024.

_____
Derek Khanna