IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEREK KHANNA, individually and derivatively on behalf of Shimbly Corporation, <br><br> Plaintiff, <br><br> v. <br><br> KATELYNN BANKS, ISELLMLS.COM, INC. d/b/a CINDY BANKS TEAM, CINDY BANKS, TONY BANKS, PAMELA CARY, RICHARD CARY, EIRIK SOMERVILLE, MARYAM HUSSEIN, <br><br> Defendants, and <br><br> SHIMBLY CORPORATION, a Delaware Corporation, <br><br> Nominal Defendant. | Case No. 21-cv-5752 <br><br> Hon. Judge Virginia M. Kendall <br> Magistrate Judge Keri Holleb-Hotaling |

**DEFENDANTS' KATELYNN BANKS, AND SHIMBLY CORPORATION
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
<u>DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT</u>**

Defendants Katelynn Banks and Shimbly Corporation, by and through their attorneys, DeVore Radunsky LLC, submit their Memorandum of Law in support of their Motion to Dismiss Plaintiff, Derek Khanna's ("Plaintiff" or "Khanna") Second Amended Verified Complaint (the "Complaint"), with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1.

## <u>BACKGROUND</u>

On July 9, 2024, this Court dismissed Counts I (breach of fiduciary duty), III (fraudulent concealment), VI (wrongful/retaliatory discharge), VII (Illinois Trade Secrets Act), IX (conversion), X (Illinois Whistleblower Act), XV (gross negligence), XVI (IIED), XVII (derivative claims) and XVIII of Plaintiff's First Amended Verified Complaint. (*See* Dkts. #240,

292). Plaintiff's Second Amended Complaint fails to cure the issues raised by the Court in its 22-page opinion. (*See* Dkt. #240.) Accordingly, as discussed herein, Counts I, III, VI, VII, IX, X, XV, XVI (Unauthorized Filing), XVII (derivative claims) and XVIII (IIED) in Plaintiff's Second Amended Verified Complaint, directed at Defendants Katelynn Banks and Shimbly Corporation, should be dismissed with prejudice. Pursuant to this Court's July 7, 2024, order and Magistrate Feinerman's April 6, 2022, order, Khanna's claims for "breach of fiduciary duty" (arising from termination) (Count I), breach of contract, wrongful and retaliatory discharge (Count VI), and violations of the Illinois Whistleblower Act (Count X) are stayed. (Dkts. #36, #240).

Plaintiff, a former Shimbly shareholder and "manager" of Shimbly's Board of Directors attempts to shift blame after he took no corporate action to address any purported issues. The most recent iteration of the complaint contains little substance and relies on retooling previously pled vagaries, coupled with assertions that do not offer the requisite specificity to advance plaintiff's claims. It largely mimics a myriad of prior allegations while signaling the paucity of support for plaintiff's claims. Ultimately, the Complaint alleges that Banks failed to act in Shimbly's best interests, causing harm to Shimbly and its shareholders. A handful of claims survived dismissal and others have been stayed. The remaining counts against Banks should be dismissed.

First, Plaintiff brings various direct claims and restates each of his derivative claims. Yet, Plaintiff's "direct" claims are not direct at all. Instead, they allege harm to Shimbly that, in turn, allegedly caused Plaintiff harm because Shimbly was devalued. Damages that are a direct result of a plaintiff's status as a shareholder are derivative. (*See* Dkt. #292 at pgs. 1-3, ¶¶1-6).

1

Plaintiff's "direct" claims fail because they are tethered to harms to Shimbly and the lengthy Complaint does not allege a single harm exclusive to plaintiff for which he can recover. Plaintiff also lacks standing to assert any trade secrets or conversion claims, and even if he had standing, he fails to plead the elements of those claims. Furthermore, Plaintiff's description of a shareholder dispute do not rise to the level of "extreme and outrageous" needed to support intentional infliction of emotional distress claim. Also, Plaintiff's purported "gross negligence" claim is barred by the economic loss doctrine.

Moreover, Plaintiff's derivative claims are improper. A party asserting claims derivatively must be a shareholder throughout the pendency of the lawsuit. Shimbly was dissolved almost two years ago. Plaintiff, "manager" of the Board and owning 38% of Shimbly's stock, did not object or take any corporate action to prevent the dissolution or to reinstate the company. Shimbly is dissolved, and therefore Plaintiff is not a shareholder and cannot maintain any derivative claims.

Importantly, as discussed by this Court, Plaintiff's derivative claims fail for a second fundamental reason he fails to adequately plead demand futility. (Dkt 292 at ¶¶210 - 232).

Plaintiff alleges that the Board consisted of Plaintiff, as well as Banks and Theophile Khayat ("Khayat"). Plaintiff alleges that a demand on the Board would have been futile, but his attempts to establish futility fail. He admits that he controlled the Board. Further, there are no allegations as to Khayat. Plaintiff has not, and cannot, establish demand futility, and therefore cannot assert derivative claims.

## RELEVANT ALLEGATIONS

A. **The Founders' Agreement**

According to the Complaint, beginning in July 2019, Plaintiff and Banks began discussing launching a new company that would offer a real-estate product similar to Zillow. (Dkt. #240, ¶¶18, 70-71). Shimbly was incorporated in Delaware on January 21, 2020. (*Id.*, ¶¶23-26). Plaintiff, Banks, and Khayat constituted the Board on the incorporation documents. (*Id.*).

On April 23, 2020, Plaintiff, Banks, and Khayat entered into the "Shimbly Founders' Collaboration Agreement" (the "Agreement"). (*Id.* at Dkt. #240-1, at ¶24). The Agreement provides that the "Business Concept" "includes the related technology and IP that is used to create, implement, develop, or perfect the idea," and that the "Founders will transfer the Business Concept" to Shimbly. (Dkt. #240-1, at pg. 1). The Agreement states that "[e]ach Founder will grant and assign to the Company his or her right, title, and interest in and to the Business Concept, including all ideas . . . and work product that results from any task or work performed by the Founder that relates to the Business Concept for the full term of such rights." (*Id.*).

**B.  The Revised Founders' Agreement**

In June 2020, the shareholders executed a Revised Founders' Agreement (the "Revised Agreement"). (Dkt. #292, ¶41; Dkt. #292-2). The Revised Agreement named Banks as CEO, Khanna as COO, Chief Strategy Officer, and General Counsel, and stated that Khayat was no longer regularly active in the company. (Dkt. #292-2, pgs. 1-2). Khanna's role was specifically defined to include "facilitating and managing Board operations," whereas Banks' and Khayat's roles do not describe anything relating to the Board. (*Id.*, at pg. 2).

The Revised Agreement provided that Banks and Khanna each owned 91,200 shares, Khayat owned 3,600 shares, and the remaining 54,000 shares were allocated to the employee pool and for initial investment. (*Id.*, at pgs. 2-3). The Revised Agreement provided that voting rights were in accordance with the number of shares allocated "not including vesting clause."

3

(*Id.*, at pg. 4). Similarly, the three founders "have the same rights (including but not limited to voting and distribution rights) accorded to the Percentage Interest issued to each Founder (allocated shares, not vested shares.") (*Id.*, at pg. 4). On March 1, 2022, Shimbly was voided by the State of Delaware for failure to pay taxes and file annual reports. (*See* Exhibit A).[1]

## ARGUMENT

I. **Plaintiff's "Direct" Claims (Counts I, III, VII, IX) Against Katelynn Banks Do Not Allege Any Harm Unique to Plaintiff, and Therefore Must Also Be Dismissed**

Plaintiff attempts to assert direct claims against Banks, including same claims he brought derivatively. To demonstrate a direct injury, a shareholder plaintiff must demonstrate "that the duty breached was owed to the [shareholder] and that he or she can prevail without showing an injury to the corporation. ((Dkt. #240). (citing *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.* 845 A.2d 1031, 1039 (Del. 2004)(citations omitted)).

Count I (Breach of Fiduciary Duty) continues its reliance on vague allegations without any specificity. It alleges that plaintiff's ability to seek employment was harmed and he suffered unspecified humiliation and mental anguish. (Dkt. #292, at ¶126). Yet, each allegation of harm to plaintiff at its core derives from harm to Shimbly. (*See* Dkt. #240). As this Court noted, allegations that Banks engaged in accounting fraud and took actions that drove down the value of Shimbly stock "can only be brought derivatively." (Dkt. #240 at pg. 11). Accordingly, this claim, along with his other "direct" claims must also be dismissed.

This Court dismissed Plaintiff's direct claims because they are identical to his derivative claims, which alleges only harm to Shimbly, not Plaintiff directly. Plaintiff attempts to recast allegations to cure this issue fail. Once again, he cites loss related to devalued stock and damage

---

[1] The Court may take judicial notice of public records, including Secretary of State documents. *Berger v. PIKR, Ltd.*, 14 C 8543, 2015 WL 2208200, at *1 (N.D. Ill. May 8, 2015).

4

to his reputation. Any loss related to stock price would reflect injury to the corporation. Thus, it would not be a direct injury to plaintiff.

The question of whether a claim is direct, or derivative depends on: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)." *Wise v. Biowish Techs., Inc.*, CV 18-676-RGA, 2019 WL 192876, at *3 (D. Del. Jan. 11, 2019). "Where all of a corporation's stockholders are harmed and would recover pro rata in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature." *Id.* (citations omitted). To demonstrate a direct injury, a plaintiff must show that they can "prevail without showing an injury to the corporation." *Hale*, 2009 WL 2601357 at *5 (citations omitted).

Notably, claims for devalued stock are quintessentially harms to the corporation that must be raised derivatively. *Id.* at *5 (citing *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 826 (Del. Ch. 2005)). Claims that the board "mismanaged or wasted corporate assets" are harms to the company that may only be raised derivatively. *Wise*, 2019 WL 192876 at *3. In *Hale*, the Court found that the plaintiffs lacked standing to assert derivative claims, and that all the "direct" claims they alleged were derivative because they related to the company's losses and devaluation of the company's shares. 2009 WL 2601357 at *5. The Court held that because the plaintiffs could not prevail on those claims "without showing injury to China Online," those claims were derivative and must also be dismissed for lack of standing. *Id.* at *5; *see also Marshal T. Simpson Tr. v. Invicta Networks, Inc.*, 249 F. Supp. 3d 790, 794 (D. Del. 2017) (holding that claims of failure to provide "competent and active management" resulting in devalued stock are derivative).

5

Plaintiff's claims relate to harm to the company and devalued stock. (*See e.g.*, Dkt. #292, ¶129(h)) ("driving down the value of Plaintiff's Shimbly stock to nothing"); ((*Id.* at ¶129 (describing Banks' alleged fraudulent scheme to "destroy Shimbly's value, steal Shimbly's trade secrets and other proprietary information," and to usurp "Shimbly's targeted marketplace")); ((*Id.* at ¶146). ("depriving Shimbly of ownership of the Business Concept . . . and stealing the Business Concept from Shimbly and its shareholders . . . breaching her duty to perform her role and responsibilities as Shimbly's CEO")); *((Id.* at ¶¶ 134, 137). (alleging theft of Shimbly's trade secrets)); (( *Id.* at ¶166 (alleging that Banks converted Shimbly's "protected Business Concept"). Plaintiff's own allegation of "separate and distinct" harm includes "the total loss of millions of dollars of value in Plaintiff's shares of Shimbly stock." (*Id.*at ¶ 99). (emphasis added). Count III should be dismissed because plaintiff cannot identify how he relief on Banks' concealment and specifically how he was injured. "Fraudulent concealment requires a plaintiff to show that [his] injury was caused by the defendant's deliberate concealment of a material fact with intent to induce plaintiff's reliance." *Tr. Robin, Inc. v. Tissue Analytics, Inc.*, 2022 WL 17423728, at *5 (Del. Ch. Dec. 2, 2022) (citing *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987)). This cause of action also requires that the defendant acted with scienter. *Id.*

Here, Khanna alleges that Banks intentionally concealed information regarding her scheme to terminate Khanna, destroy Shimbly's value, and steal its trade secrets. Khanna can only bring direct claims to the extent that he can demonstrate an injury distinct from any injury to the corporation. As noted by this Court, Khanna does not claim that he worked harder because he believed Banks would not terminate him. (Dkt. #240 at pg. 13). Thus, Khanna cannot say that he worked harder in reliance on Banks' actions. Hence, Count III should be dismissed.

Ultimately, Plaintiff cannot untie himself from harms to Shimbly. Plaintiff's attempts to allege *any* harm distinct from Shimbly fail and each of his "direct" claims should be dismissed.

II. **Plaintiff's Trade Secrets Act and Conversion Claims Fail (Counts VII and IX)**

Plaintiff's claims for violation of the Illinois Trade Secrets Act ("ITSA") and conversion rely on allegations that Banks misappropriated *Shimbly's* trade secrets. (Dkt. 292, ¶¶157- 160, 165-168). As discussed by this Court, Count VII (Violations of ITSA) fails "because Khanna has not pled that he owns any trade secrets or other property separate and apart from that belonging to Shimbly." To succeed on an ITSA claim, a plaintiff must allege that a trade secret was misappropriated, and the misappropriation damaged the trade secret's owner. *Got Docs, LLC v. Kingsbridge Holdings, LLC*, 657 F. Supp. 3d 1034, 1043 (N.D. Ill. 2023) (citing *Westrock Co. & Victory Packaging, LP v. Dillon*, 2021 WL 6064038, at *6 (N.D. Ill. Dec. 22, 2021)). Plaintiff's claims clearly relate to "Shimbly's property," not plaintiff's property. Plaintiff meekly attempts to suggests that he had trade secrets, but fails to articulate what those may be or differentiate them from Shimbly's property. (Dkt. #292, ¶158). Yet, a plaintiff asserting a trade secret claim "must do more than point to broad areas of [information] … and assert that something there must have been secret and misappropriated. The plaintiff must show concrete secrets." *Carpenter v. Aspen Search Advisers*, LLC, 10 C 6823, 2011 WL 1297733, at *3 (N.D. Ill. Apr. 5, 2011). The failure to show concrete secrets owned by Khanna should terminate Count VII.

Similarly, Count IX (Conversion) fails because Plaintiff has not asserted an ownership right, but instead alleges that Shimbly's property was converted. (Dkt. #292, ¶ 166-67). Under the prevailing law to state a claim for conversion, a plaintiff must claim to have a right in the property at issue. *Lorenzetti v. Hodges*, 62 A.3d 1224 (Del. 2013). Critically, this Court already dismissed the conversion claim because the prior Complaint does not describe any property interest

7

*belonging to Khanna* that was infringed. The Second Amended Complaint omits any reference to Khanna's property. This omission is fatal.

"By signing the Agreement, Khanna relinquished his rights to and interests in the Business Concept and any intellectual property or trade secrets that could have been infringed upon necessarily belong to Shimbly. Therefore, any damage resulting from the alleged misappropriation and conversion would necessarily accrue to Shimbly." (Dkt. #240, at pg. 14). The Agreement makes clear that any purported trade secrets belong solely to *Shimbly*. It provides that the "Business Concept" was transferred entirely to Shimbly, and that each of the Founders "will grant and assign to the Company his or her right, title, and interest in and to the Business Concept." (Dkt. #292-1, at pg. 1). Only Shimbly has the right to assert claims relating to Shimbly's trade secrets and property, not Plaintiff directly. *See Desmond v. Taxi Affiliation Services LLC*, 344 F. Supp. 3d 915, 928 (N.D. Ill. 2018) (conversion requires that a plaintiff has a right to "immediate possession of the property, absolutely and unconditionally.").

Accordingly, Count IX should also be dismissed.

### III. Plaintiff's Gross Negligence Claim (Count XV) is Barred by the Economic Loss Doctrine

Plaintiff's failure to allege an extreme departure from a standard of care owed to Khanna warrants dismissal of the gross negligence claim. When stating a claim for gross negligence, a plaintiff must establish that he was owed a "standard of care" from which the defendant took an "extreme departure." *Greenfield as Next Friend for Ford v. Miles*, 211 A.3d 1087, 1101 (Del. 2019). This court dismissed this claim, based upon substantially similar allegations because Khanna did not allege that Banks breached her duty of care in a way that uniquely harmed him. Instead, Khanna complained that he was harmed when Banks engaged in accounting fraud; executed a plan to steal Shimbly's trade secrets; and drove down the value of Shimbly stock.

8

Count XV of the newest Complaint does not cure the ills. Now, Khanna contends that he "suffered injuries." (Dkt. #292 ¶202). Again, Khanna does not plead any facts showing Banks' alleged gross negligence caused him to suffer any harm that was also not borne by the company. This reflects the lack of a unique harm suffered by Khanna. Further, Plaintiff asserts a claim for "gross negligence" against Banks for a business dispute. The economic loss doctrine provides that a plaintiff cannot recover under a negligence theory where only economic losses, and no physical damage to property or bodily injury, are alleged. *See, e.g., In re Chicago Flood Litig.*, 176 Ill. 2d 179, 199 (1997). Here, no physical damage to property is alleged. Hence, the economic loss rule applies and Count XV should be dismissed.

## IV.     Unauthorized Filing (Count XVI) is Not a Separate Cause of Action

Count XVI of Khanna's Complaint, labeled "Unauthorized Filing," fails to state a claim upon which relief can be granted under either federal or Illinois law and should therefore be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "Unauthorized Filing" is not a recognized cause of action under federal common law, federal statutes, or Illinois substantive law. Federal courts sitting in diversity apply state substantive law, and Illinois courts do not recognize such a claim as an independent tort or statutory violation. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).Plaintiff alleges that Defendant Katy Banks initiated a lawsuit in the name of Shimbly Corporation without board approval. (See Dkt. #292 at ¶204). At most, these allegations implicate issues of internal corporate governance; however, they do not give rise to a cognizable legal claim. If Plaintiff seeks to challenge the propriety of a corporate action taken without formal board resolution, the appropriate procedural mechanism under Illinois law is a derivative action not an individual suit. See *Small v.*

*Sussman*, 306 Ill. App. 3d 639, 645 (1st Dist. 1999); *Caparos v. Morton*, 364 Ill. App. 3d 159, 167 (1st Dist. 2006).

Moreover, Plaintiff lacks standing to assert this claim in his individual capacity. The Complaint does not allege that Plaintiff suffered any distinct or personal injury separate from the alleged harm to Shimbly Corporation. It is well-settled under Illinois law that shareholders cannot bring individual actions for injuries suffered by the corporation. *Id*. *Small* , 306 Ill. App. 3d 639, 645  Only the corporation itself, or a properly situated derivative plaintiff, may pursue such claims.

Even assuming the allegations to be true, Count XVI does not meet the plausibility standard required under *Twombly* and *Iqbal*. The initiation of litigation by a corporate officer, even absent a formal board vote, is not inherently unlawful. Under Illinois law, corporate officers are generally presumed to have apparent authority to act on behalf of the corporation in legal matters. See *Zahl v. Krupa*, 365 Ill. App. 3d 653, 850 N.E.2d 304, 312 (Ill. App. Ct. 2006). Third parties are entitled to rely on the actions of a corporate officer when it is reasonable to believe that the officer has such authority. See *Paloian v. Fifth Third Bank (In re Canopy Fin., Inc.)*, 2015 U.S. Dist. LEXIS 70866, at *7–8 (N.D. Ill. May 29, 2015) (citing *Petrovich v. Share Health Plan of Ill., Inc.*, 188 Ill. 2d 17, 719 N.E.2d 756, 766 (Ill. 1999)); see also *Orix Credit Alliance, Inc. v. Taylor Mach. Works, Inc.*, 125 F.3d 468, 474 (7th Cir. 1997).

Plaintiff affirmatively alleges that Defendant Banks was the CEO of Shimbly Corporation (Dkt. #292 at ¶206), a position typically vested with such authority. Accordingly, there is no dispute that Banks held a corporate office that presumptively authorized her to act on the corporation's behalf. Plaintiff's attempt to recast a corporate governance issue as a personal tort fails under prevailing pleading standards. His references to alleged discovery delays or spoliation are irrelevant to the viability of Count XVI and do not transform the alleged conduct into a separate

cause of action. Any procedural disputes related to discovery must be addressed through appropriate motions under the Federal Rules of Civil Procedure not through a freestanding tort claim. For all these reasons, Count XVI must be dismissed in its entirety.

V. **Plaintiff's Allegations Do Not Support a Claim for Intentional Infliction of Emotional Distress Claim (Count XVIII)**

Khanna complains of conduct that does not qualify as "extreme and outrageous" when viewed in the light most favorable to him. According to this Court and the 7th Circuit, to state a cause of action for IIED under Illinois law, a plaintiff must allege that (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that her conduct would inflict severe emotional distress; and (3) the defendant's conduct did cause severe emotional distress. (Dkt. #240 at pg. 20). (citing *Sun v. Xu*, 99 F.4th 1007, 1013 (7th Cir. 2024)). Courts have determined that to "qualify as outrageous, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017) (quoting *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 83 (Ill. 2003)).

Importantly, "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not amount to extreme and outrageous conduct, nor does conduct characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id.* at 566–67 (quoting *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997) (quoting *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976))) (internal quotation marks omitted). Liability attaches only when "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sun*, 99 F.4th at 1013 (quoting *McGrath v. Fahey*, 126 Ill.2d 78 (1988) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). "[T]o avoid

11

imposing liability for idiosyncratic and individualized reactions, '[w]hether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of a particular case.'" *Richards*, 869 F.3d at 567 (quoting *Franciski v. Univ. of Chi. Hosps.*, 338 F.3d 765, 769 (7th Cir. 2003)).

Courts constrain liability even further in the employment context and "Illinois courts have limited recovery to cases in which the employer's conduct has been truly egregious." *Id.* (quoting *Van Stan*, 125 F.3d at 568). Courts are hesitant "to find [IIED] in the workplace because, if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for [IIED], nearly every employee would have a cause of action." *Id.* (quoting *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 606 (7th Cir. 2006)) (internal quotation marks omitted). As a result, "Illinois courts have limited recovery to cases in which the employer's conduct has been truly egregious." *Id.* (quoting *Van Stan*, 125 F.3d at 568).

Khanna claims that Banks devised and executed a scheme to force him out of a company they created together. As this Court noted when dismissing the prior complaint, "such a breakdown in a business relationship is regrettable, it simply does not rise to the level required to state a claim for intentional infliction of emotional distress." (Dkt. #240 at pg. 21). Khanna's unspecific allegations regarding emotional distress and Banks' intent to cause his distress are not enough. *See S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 859 (N.D. Ill. 2010) (dismissing IIED claim for failing to plead more than conclusions). The standard is "quite high." *Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 511 (N.D. Ill. 2012). To meet the high pleading standard for IIED "a defendant's conduct must be so extreme as to go beyond all possible bounds of decency" and must be "regarded as intolerable in a civilized community." *Id.* Count XVI should be dismissed for its failures.

## VI. Plaintiff Asserts Claims Against Katelynn Banks (Counts I, VI, X) That Are Stayed

This Court's July 7, 2024, order and Magistrate Feinerman's April 6, 2022, order, reflect that Khanna's claims for "breach of fiduciary duty" (arising from termination) (Count I), breach of contract, wrongful and retaliatory discharge (Count VI), and violations of the Illinois Whistleblower Act (Count X) are stayed. (Dkts. #35, #292). These claims remain stayed subject to mediation.

## VII. Plaintiff's Derivative Claims (Count XVII) Fail as a Matter of Law

Plaintiff's Derivative Claims fail because he has not and cannot allege demand futility. Khanna failed to make a demand on the board of the directors and this failure is not excusable because the Complaint fails to allege with specificity that demand would be futile. "To bring a derivative action, a plaintiff shareholder must demonstrate 'that the corporation itself [] refused to proceed after suitable demand, unless excused by extraordinary conditions.'" *Hale*, 2009 WL 2601357, at *3 (citing *Ross v. Bernhard*, 396 U.S. 531, 534 (1970)). Additionally, Federal Rule of Civil Procedure 23.1 requires a plaintiff, in a shareholder derivative action, to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors ... and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed. R. Civ. P. 23.1. The requirement of a shareholder demand is more than a pleading requirement; it is a substantive right belonging to shareholders and directors. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 97 (1991). The Court must look to the substantive law of the state where Shimbly was incorporated. *Id.* at 98–99, 104.

Delaware courts look to three factors on a director-by-director basis: (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the demand; (ii) whether the director would face a substantial likelihood of liability on any of the claims that are

13

the subject of the litigation demand; and (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand. *Lebanon Cnty. Employees' Ret. Fund v. Collis*, 311 A.3d 773, 796 (Del. 2023). "If the answer to any of these questions is 'yes' for at least half of the members of the demand board, then demand is excused as futile." *Id*. (quoting *United Food and Com. Workers Union and Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1059 (Del. 2021)).

Under Delaware law, a demand on the board may be excused when only "1) a shareholder [has pleaded] *with particularity* facts that establish that demand would be futile because the majority of the board of directors upon whom demand would be made are not independent or disinterested; or 2) a shareholder has alleged facts, *with particularity*, which create a reasonable doubt that the challenged transaction was a product of a valid exercise of the directors' business judgment." *Hale*, 2009 WL 2601357, at *3 (citations omitted).

Here, Khanna was required to make a demand on Shimbly's board of directors, which had three members: Khanna, Khayat, and Banks. Khanna alleges that Khayat attended a meeting but refused to act without Banks. (Dkt. #292 at ¶215). Attending the meeting suggests that making a demand on Khayat would not have been futile. Thus, the Complaint does not raise any allegations of demand futility with respect to Khayat and Count XVII should be dismissed.

## Conclusion

For the foregoing reasons, and those set forth in their opening brief, Defendants respectfully request that the Court grant the instant Motion and dismiss Plaintiff's Second Amended Complaint, with prejudice.

14

Dated: June 13, 2025,    Katelynn Banks and Shimbly Corporation


By: /s/ *Jason E. DeVore*
        One of their attorneys

**DEVORE RADUNSKY LLC**
Jason E. DeVore (ARDC # 6242782)
Troy S. Radunsky (ARDC # 6269281)
Jorie R. Johnson (ARDC # 6325695)
230 W. Monroe Street, Ste. 230
Chicago, IL 60606
(312) 300-4479 telephone
jdevore@devoreradunsky.com
tradunsky@devoreradunsky.com
jjohnson@devoreradunsky.com

### CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2025, a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record via the Court's CM/ECF automated filing system.

*/s/ Jorie R. Johnson*
Jorie R. Johnson

15