**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEREK KHANNA, individually and derivatively on behalf of Shimbly Corporation,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 21-cv-5752** |
| **v.** | ) ) | **Hon. Judge Virginia M. Kendall** |
| **KATELYNN BANKS, *et al*.,** | ) ) ) | **Magistrate Judge Keri Holleb-Hotaling** |
| **Defendants.** | ) ) | |

<u>**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF PUTATIVE PRIVILEGED
MATERIALS AS TO SHIMBLY CORPORATION**</u>

Plaintiff respectfully moves for an Order compelling production of Shimbly

Corporation's documents. These documents consist of attorney–client communications and

attorney work product from September 25, 2020 through November 2, 2021 (prior to the filing of

this lawsuit). Privilege has been waived in this case for at least twelve independent reasons.

Defendant Banks has designated counsel as witnesses (Dkt. 66-1), used their advice as a defense,

disclosed privileged communications to third parties, failed to assert corporate privilege, and

relied on counsel for business—not legal—decisions. Shimbly Corporation has not asserted

privilege, and Banks has withheld materials for over three years without a privilege log. This was

an intentional choice, as Plaintiff repeatedly requested a log for the past 33 months. (Ex. B). The

newly provided privilege log (Ex. E), 39-months late, is grossly deficient: **Plaintiff can prove

that over half of the items** on this log (from before this lawsuit) are incorrectly logged and

don't appear to be privileged. These are each strong independent bases for waiver.

**I.      WAIVER UNDER FEDERAL RULES OF EVIDENCE 502(b)**

1

On August 12, 2025, Defendant Banks provided materials in a supplemental production which included links to an unsecure Dropbox folder with Defendant Banks's text and email communications with counsel, including many of the items listed on her privilege log. Plaintiff promptly notified Defendant Banks counsel of this fact. Today, over 22 days later, Defendant Banks has not attempted to claw back this information. Whereas, Defendant Banks has not taken reasonable steps before or after production, she has waived privilege for these texts and emails with counsel.[1]

## II. PRIVILEGE SHOULD BE WAIVED AS A SANCTION FOR VIOLATING COURT ORDER

After Defendant Banks was found to have violated the 11/9/22 Order to Compel this Court a keyword search. Dkt. 130. The parties agreed to search Defendant Banks phone and emails for keywords (Ex. BA) that flagged known withheld communications, such as agreed terms "Shimbly" "Coker."[2] Exhibit E showcases 793 communications that would have come up with these searches, but Defendant Banks did not turn them over (or a privilege log). Instead Exhibit BD appears to show Defendant Banks labeled 60% of her main email accounts, "designated as privileged" (including her personal email account). As is shown from the privilege log, once it was "designated as privileged" it doesn't appear to have been evaluated. This Court warned Defendant Banks "that sanctions may be appropriate for the failure to comply with discovery obligations or the orders of this Court." Dkt. 134. Nine-months after that warning, the Court had to issue two more orders, before Defendant Banks signed a certification of

---

[1] *See Thorncreek Apartments III, LLC v. Vill. of Park Forest*, Nos. 8 C 1225, 2011 WL 3489828 (N.D. Ill. Aug. 9, 2011) (finding waiver where litigant failed to conduct a check before production, failure to provide a timely privilege log, and a delay in taking adequate steps, noting "thus holding the Village responsible for its failure to take reasonable care to safeguard the privilege or to rectify the inadvertent error once it occurred.").

[2] By Defendant Banks agreeing to search specifically "Coker", "Kyle" and fballantine@dykema.com they knew this would result in communications to counsel.

completion – *10 months late*. (Dkt. 207). Ex. BD appears to show a choice not to follow the Court order, by ignoring the very categories agreed upon. Defendant Banks collected over 550 pages of communications that were responsive (Ex. BE), then elected to neither turn them over nor a privilege log but still affirm, under penalty of perjury, that her discovery was complete.

### III. COUNSEL HIRED BY *SHIMBLY CORPORATION* EXPLICITLY TOLD DEFENDANT BANKS THAT THEY DID NOT REPRESENT HER AND SHIMBLY HAS NOT ASSERTED ITS PRIVILEGE

The aforementioned attorneys were paid for by Shimbly, represented Shimbly, and signed contracts with Shimbly. Kaitlyn Coker presented herself as Shimbly's "General Counsel". (Ex. AB). They were retained to represent Shimbly – not Banks personally.[3] Since Plaintiff *is* Shimbly, and Defendant Shimbly defaulted, Plaintiff Shimbly has a right to their documents. Defendant Banks successfully argued that she is legally distinct from Shimbly Corporation.[4] Its default status in this case leaves Plaintiff, acting derivatively, as the only entity authorized to act for Shimbly. Aware of this, Defendant Banks has not obtained a Board resolution.[5] Without a formal corporate action, any privilege assertion in Shimbly's name is improper.

### IV. DELAWARE LAW MANDATES THAT DERIVATIVE COMPANIES HAVE ACCESS TO COMMUNICATIONS NECESSARY FOR ASSERTING FIDUCIARY BREACH BY CORPORATE OFFICERS

Under Delaware law, attorney-client privilege belongs to the corporation, not the individual officers. *Moore Bus. Forms, Inc. v. Cordant Hldgs, Corp.,* 1996 WL 307444, at *4 (Del. Ch. June 4, 1996). In *Wal-Mart Stores v. IBEW*, the Delaware Supreme Court held that

---

[3] *See, e.g., Ex. AH* ('I'm not the investors attorney. And personally, I'm not even yours.')"; *Ex. R* ("representing Client in connection with the Reorganization of a Corporation").

[4] This Court held, "because the company 'is a distinct legal entity, separate from its shareholders, directors, [and] officers,' [citation omitted] it follows that Banks did not waive or breach the ADR provision, even if she caused Shimbly to bring the suit as its officer or director." (Dkt. 36, p. 5).

[5] Shimbly's contracts state that the CEO is not empowered to act in this way. Dkt. 47 at ¶ 113. As does Kaitlyn Coker, who as General Counsel informed Defendant Banks that "every corporate action" "must be approved by a majority vote of the board of directors." (Ex. AF).

privilege may not be used to shield communications where the legal advice concerned fiduciary breaches and was communicated in the officers' role as corporate stewards. 95 A.3d 1264 (Del. 2014). Plaintiff brings these claims derivatively to redress breach of fiduciary duties by Defendant Banks. As in *Wal-Mart*, the exception applies.[6] A corporation's privilege "exists for the benefit of the corporation-not to any particular corporate constituency," including an individual director." *In re Aerojet Rocketdyne Holdings, Inc.*, C. A. 2022-0127-LWW, at *1 (Del. Ch. May 5, 2022).[7] Today Banks is a "particular corporate constituency" representing only herself[8] and is a party alleged to have engaged in wrongdoing. *See also Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970).[9] Banks was seeking advice in her role as officer. (Ex. AH).

## V.    PRIVILEGE DOES NOT APPLY TO BUSINESS CONVERSATIONS AND PERSONAL CONVERSATIONS

Defendant Banks has withheld numerous communications where counsel acted in operational business-decision roles.[10] Casual or social conversations are not privileged unless the

---

[6] *See also In re WeWork Litig.*, 250 A.3d 901, 911 (Del. Ch. 2020) ("under basic principles of Delaware law, that directors of a Delaware corporation are presumptively entitled to obtain the corporation's privileged information as a joint client of the corporation and any curtailment of that right cannot be imposed unilaterally by corporate management untethered from the oversight and ultimate authority of the corporation's board of directors."). *See also Rainbow Navigation, Inc. v. Yonge*, 1988 WL 7389, at *1 (Del. Ch. Jan. 29, 1988) (ordering production of privileged communications and documents to both sides during the pendency of a dispute over who constituted the board).

[7] *See also Hall v. Search Cap. Grp., Inc.*, 1996 WL 696921, at *2 (Del. Ch. Nov. 15, 1996) (explaining that management "cannot pick and choose which directors will receive [which] information").

[8] For purposes of this litigation.

[9] The Seventh Circuit has also "recognized the existence of a fiduciary exception to the attorney-client privilege." *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 244 F.R.D. 412, 422 (N.D. Ill. 2006). The "[fiduciary duty] exception is premised on the theory that the attorney-client privilege should not be used as a shield to prevent disclosure of information relevant to an alleged breach of fiduciary duty." *Bland v. Fiatallis N. Am., Inc.*, 401 F.3d 779, 787 (7th Cir. 2005); *Ferguson v. Lurie*, 139 F.R.D. 362, 365 (N.D. Ill. 1991) ("The fiduciary duty exception is based upon the notion that a communication between an attorney and a client is not privileged from those to whom the client owes a fiduciary duty.").

[10] Kaitlyn Coker, as self-proclaimed "General Counsel" for Shimbly, Ex. AB, provided a capital table template for Defendant Banks to learn how to make a capital table, Ex. BA, advised on patents for sellability of Shimbly. (Ex. J). Both were withheld and were misleadingly listed on the privilege log as "litigation strategy." (Ex. E at Rows 127, 119). In withheld texts, Kaitlyn Coker and Banks also discussed previously unknown people joining Shimbly's Board of Directors. (Ex. AG). This withheld information is not only not privileged and responsive, but it's highly probative, and, despite numerous questions on related topics to Defendant Banks, she never provided these materials, or ever disclosed these people being added to the Board in *three years of discovery*. Plaintiff will suffer

parties intended to create such a relationship. Kaitlyn Coker stated she was friends with Defendant Banks since "second grade". (Ex. AB).[11] After Kaitlyn Coker was no longer representing Shimbly, Defendant Banks attended a wedding with Ms. Coker, and met with the Cokers socially, including at their homes. (Exs. K, L).

Defendant Banks similarly attempts to withhold numerous conversations with her mother as being privileged. There is no cognizable basis for privilege in conversations of Defendant Banks and her mother. *See e.g.,* Ex. E, Rows 73, 74, 295; Ex. BF (withholding email from Cindy Banks to Defendant Katelynn Banks). These withheld conversation outside a formal attorney-client relationship—do not support privilege.

## VI.    IF PRIVILEGE DID APPLY, IT HAS BEEN WAIVED

### A.    26(A) Disclosures List Counsel as Witness to Testify on Key Matter of Case

Defendant Banks was advised by Kaitlyn Coker, "initial disclosures [] DO NOT DISCLOSE the identity of anyone who you don't want to be involved and have their deposition taken." (Ex. AC). With this knowledge, Defendant Banks identified attorneys Kyle[12] and Kaitlyn Coker ("the Cokers") as witnesses likely to testify about Plaintiff's termination, their roles at Shimbly, and other contested facts. *See* Dkt. 66-1 at 2–3. She further designated them as individuals whose testimony she may rely on to support her defenses. Defendant Banks further affirms that Plaintiff was fired by "vote" after "various discussions," *Ex. H* at No. 9, however, in her interrogatory on this topic, she refuses to provide *a single communication or document on the*

---

significant prejudice if he is not allowed to use knowledge of who Defendant Banks was adding to the Board of Directors in December of 2020 (a time when she has falsely stated that nothing was occurring). Similarly, Kaitlyn Coker (from her personal email account) emailed *a third party* (subject: "Board position") to request she join Shimbly's Board as a business asset while reflecting upon the business of Shimbly. (Ex. AB). This is listed on the privilege log. (Ex. E at Rows 104, 107- 108). Similarly, Defendant Banks is also withholding five emails about Shimbly considering bankruptcy, another business decision. (Ex. F).

[11] See also admission of same by Defendant Banks (Dkt. 90-3, at 6:11-7:9, 11:17-12:14, 22:14-20).

[12] Kyle Coker then briefly returned as counsel for Defendant Banks in October, 2022 (Plaintiff is not requesting materials related to Kyle Coker's return as counsel of record in this case).

*vote she alleges occurred.*[13] *Id.* In the absence of other evidence, this testimony is significantly probative.[14] By designating an attorney to testify on a substantive matter, Defendant Banks chose to inject that attorney's knowledge, credibility, and the basis for that knowledge directly into the dispute.[15] In particular, matters related to the termination of Plaintiff are waived – as Defendant Banks stated Kyle Coker is a witness to testify on this matter. Defendant Banks also admits that counsel was involved with creating the flow chart of her plan – the plan which explicitly includes (as a key step) – terminating Plaintiff to steal the company. (Ex. H at Nos. 6-7).

### B. Shimbly Corporation Cannot Assert Privilege Because Defendant Banks Has Alleged It Is "Defunct"

Defendant Banks has repetitively pled, "Shimbly Corporation is defunct as a company". Dkt. 47 at ¶ 1; *id.* at ¶ 88 (similar); Dkt. 313, p. 3 ("Shimbly was dissolved almost two years ago. . . Shimbly is dissolved."). The position of the Northern District is clear: "[a] completely defunct company should not be allowed to assert privilege, regardless of whether it has technically maintained its legal status." *Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, No. 05-cv-4120, at *7 (N.D. Ill. Mar. 14, 2012).[16] Defendant Banks has stated that the Board of Directors is not

---

[13] Defendant previously provided Plaintiff with her email notification (sent to Plaintiff), but does not consider it evidence of an actual vote.

[14] In listing Kyle and Kaitlyn Coker, Defendant Banks specifies "that the disclosing party may use to support its claims or defenses" and that these "individuals are likely to have discoverable information that Defendant, Katelynn Banks, may use to support her position." Dkt. 66-1 at 1.

[15] *Leybold-Heraeus Technologies, Inc. v. Midwest Instrument Co., Inc.*, 118 F.R.D. 609, 614 (E.D. Wis. 1987); *United States v. Nobles*, 422 U.S. 225 (1975) (waiving privilege by presenting investigator for defense attorney as a witness); *Brown v. Trigg*, 791 F.2d 598 (7th Cir. 1986) (similar).

[16] *See also John Doe Corp. 1 v. Huizenga Managers Fund, LLC*, 2021 Ill. App. 2d 200513, 33 (Ill. App. Ct. 2021) (citations omitted) ("[A] defunct corporation has no one who can speak for it to assert the privilege, and once a corporation is truly extinct, it has lost practical ability to assert the privilege."; *see Restatement (Third) of the Law Governing Lawyers* § 73 (2000) ("When a corporation or other organization has ceased to have a legal existence such that no person can act in its behalf, ordinarily the attorney-client privilege terminates.") cited by *John Doe Corp. 1 v. Huizenga Managers Fund, LLC*, 2021 Ill. App. 2d 200513, 33 (Ill. App. Ct. 2021); *Testimonial Privileges* § 1:74 (3d ed. 2014) ("For organizations, the general rule is that when the organization ceases to have legal existence such that no one can act in its behalf, the privilege terminates.")." *Red Vision Sys., Inc. v. Nat'l Real Estate Info. Servs., L.P.*, 108 A.3d 54, 67 (Pa. Super. Ct. 2015) *cited generally by John Doe Corp. 1 v. Huizenga Managers Fund, LLC*, 2021 Ill. App. 2d 200513 (Ill. App. Ct. 2021).

functional;[17] if true, who can navigate which side to choose in a derivative suit? What matters most for this analysis are the "practical business realities." *Official Comm. of Admin. Claimants v. Moran*, 802 F. Supp. 2d 947, 949 (N.D. Ill. 2011). Ms. Banks herself described Shimbly as entering "defunct status" on May 27, 2021. (Ex. Y at ¶ 91). In June, 2021 Defendant Banks stated, "Either way, the company would most likely be considered defunked in the eyes of a judge." (Ex. U). By admitting Shimbly is "defunct," Defendant Banks has admitted that the corporation cannot assert privilege. Defendant Banks usage of the term refers clearly to the "practical business realities" and whether the company is "continue[ing] on" in a new "corporate structure." *Official Comm. of Admin. Claimants v. Moran*, 802 F. Supp. 2d 947, 949 (N.D. Ill. 2011).[18] *See Ex. Y* at ¶ 152 ("Shimbly is now dead."); Dkt. 66-2 at 15 ("there are no formal business activities happening.");[19] Ex. Y at ¶ 3 ("I wish the company was formally defaulted / bankrupt. It is currently defunct with the CEO's only purpose to reply to attorneys to deal with Plaintiff's inability to allow the company or any of its other members to move forward."). *See SerVaas v. Ford Smart Mobility LLC*, C. A. 2020-0909-LWW, at *1 (Del. Ch. Nov. 9, 2021) ("A corporation's agents i.e., its officers and directors-exercise that privilege, but they must do so in a

---

[17] "We are looking into the Delaware law as Derek and Theo's terms on the board may no longer exist, as we were all added via the incorporation docs with Delaware. I believe the law (from my understanding so far) gives a 1 year term to board members which is over. [] A new, more diversified board would enable Shimbly to present this information and make a decision that is not biased by shares. [] Either way, the company would most likely be considered defunked in the eyes of a judge so not producing documents or pouring excessive resources into it makes sense. [] We are waiting to see if Derek backs off but further action will likely require a new board as this one isn't effective." (Ex. U) (June 17, 2021 Banks to Carys email).

[18] *Moran*, 802 F. Supp. 2d 947, 949 ("To determine whether a corporation has 'died,' courts should look to practical business realities rather than technical legal status. One business may continue on even though its corporate structure has changed, while another business may terminate in reality even though it maintains its legal corporate status. A completely defunct company should not be allowed to assert privilege, regardless of whether it has technically maintained its legal status.")

[19] Defendant Banks also asserts that Shimbly is over: e.g., Plaintiff was responsible for the "ultimate failure of the company," Dkt. 47 at ¶ 1, and stated that "the company never got off of the ground." Interr. No. 2 (2022) (Dkt. 99-4). In 2022, Banks told the Illinois Department of Human Rights that "The Company is defunct" in regard to their complaint against Shimbly Corporation. More recently, Defendant's third counsel has asserted clearly, "Shimbly is no longer in business." Defendant Banks also argued that it was improper for Shimbly to be a nominal defendant because it is defunct ("Deny right to use Shimbly as a nominal defendant as the company is defunct"). (Ex. Y at ¶1).

manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals.").[20]

## C. <u>Waiver Of Privilege Under Federal Rule 26(B)(5)(A)</u>

Under the Federal Rule, privilege must be properly asserted (with a privilege log) or it can be waived.[21] Since Defendant Banks listed the Cokers on her 26(a)(1) Disclosures as witnesses, Plaintiff explicitly requested communications with the Cokers that related to his termination or Shimbly in 2022. *Dkt. 55-1 Nos. 25, 28, 33-35.* The Cokers were also served third-party subpoenas.[22] Defendant Banks failed to file any objections within 30 days to the discovery requests. (Dkt. 55). This Court granted the Motion to Compel (Dkt. 69). As is shown in exhibits to this motion, the legal advice at issue was not legal advice after the fact – the Cokers were key participants in the events in question, making these communications clearly at issue.

These items were responsive, they were requested, and they were deliberately withheld (without a privilege log). Defendant already waived this objection,[23] as Defendant's counsel properly admitted to this, "basically blew the deadline to object to [Plaintiff's] discovery requests." Dkt. 106-2, at 6:17-20. This resulted in this Court stating that the "ship has sailed" as to any objections. (Dkt. 90-3, at 6:11-7:9, 11:17-12:14, 22:14-20).

---

[20] Plaintiff has numerous examples of how Defendant Banks impedes the Board functioning and considers Shimbly to be functionally dissolved, which he has admitted here for length but will add in Reply Motion if necessary.

[21] As this court explained in *Ritacca v. Abbott Lab'ys*, in the case of a privilege waiver due to failure to object in a timely fashion, "Some courts have decided against waiver where there have been (1) minor procedural violations, good faith attempts at complying, and some notice to the opposing party of the privilege objections; (2) where a party accidently fails to list a privileged document in a case involving voluminous documents; and (3) in other cases involving non-flagrant discovery violations where the requested documents are plainly protected by a privilege." *Id.* "In contrast, evidence of foot-dragging or a cavalier attitude towards following court orders and the discovery rules supports finding waiver." 203 F.R.D. 332, 335 (N.D. Ill. 2001). All these factors apply here.

[22] Defendant Banks filed a Motion to Quash the subpoenas, then withdrew the Motion to Quash. (Dkt. 70).

[23] *Trustees of the Suburban v. Bolingbrook Redi-Mix Co.*, 2016 WL 1258849, at *2 (N.D. Ill. 2016) ("it is 'well-established' that the failure to respond and object within a timely manner 'waives a subsequent assertion of objections in the absence of good cause.'").

In 2023, when Ms. Banks was Ordered to turn over Shimbly emails, Dkt. 112, she then provided many such emails but systematically refused to provide emails and texts with counsel. (Ex. I) (showing Defendant indexing several emails with counsel then not providing them). *See also Ex. BE* (showing Defendant collecting privileged emails and texts in 2022 which were not produced to Plaintiff). Noticing this withholding, since November 29, 2022 (Ex. B), Plaintiff has repetitively asked Defendant Banks to provide a "privilege log" to disclose what materials were being withheld.[24] Here, there has been no good faith attempt by Banks at complying and the communications (texts and emails) are of a limited variety that could be identified and produced quickly. The "evidence of foot-dragging" and failure to follow "court orders" is shown by the multiple Motions to Compel and Sanction. *E.g.,* Dkt. 112. These repeated violations, over more than three years, demonstrate a consistent failure to preserve or assert privilege as required by the rules.[25]

In *Abbott Laboratories*, a five-month delay of objection was sufficient with other factors. 203 F.R.D. 332 (N.D. Ill. 2001). The court noted, "the documents at issue only came to Ritacca's attention because Ritacca noticed that Bates numbers were missing from Abbott's first document production. This means that Abbott hand-picked the disputed documents from its collection and set them aside. Certainly, it is safe to assume that Abbott reviewed the documents beforehand. And certainly, it is fair to hold that Abbott should have asserted the attorney-client privilege at that time." *Id.* This same finding applies here, as we can establish that the privileged items *were set aside and explicitly not produced*. As shown in the index of Exhibit I, Defendant conducted a

---

[24] Plaintiff served Kyle and Kaitlyn Coker with subpoenas. In response, aside from an engagement letter, the Cokers provided no communications (and no privilege log).

[25] In *Applied Sys., Inc. v. N. Ins. Co. of New York*, this court found that failure to produce in discovery for 2-months and a delay in objecting for 2-months resulted in a loss of privilege. 1997 WL 639235, at *2 (N.D. Ill. Oct. 7, 1997). The court noted "despite the clear requirements of Rules 26(b)(5) and 34(b), [defendant's] counsel did not see the need on August 13 to state-even belatedly-that the basis for her untimely future objections would be privilege." *Id.*

Google Takeout of emails then Banks "hand-picked the disputed documents from its collection and set them aside." *Ritacca*, 203 F.R.D. at 335. In November, 2022 Defendant Banks collected 100's of emails and texts with counsel, then chose not to produce these items. (Ex. BE). And in 2023 Defendant Banks set aside 60% of her main email "designated as privileged." (Ex. BD).

Here, discovery has been extended eleven times,[26] over 32 months, *largely because of Defendant's Banks* "foot-dragging," "cavalier attitude towards following court orders and the discovery rules."[27] The docket demonstrates that the discovery misconduct has been significant. (Dkt. 69; 112). After receiving discovery requests in 2022, Defendant responded months late, with no extension or timely objections whatsoever. *Id.* In her deposition she admitted to conducting essentially no search for relevant materials in key areas. (Dkt. 66-2 at 66-72). The deposition was suspended for her to produce these documents, Ms. Banks then refused to produce the very documents agreed upon. *Id.*[28] This further intransigence required a Motion to Compel, Dkt. 55, which was granted, then Ms. Banks missed that court deadline, and ultimately again did not comply. *Id.* The Court ordered Defendant Banks to conduct a Court ordered search and complete it within 21-days (by March 30, 2023). *Id.* Ms. Banks failed to do so. Noticing the continued ongoing delay of Defendant's production, this Court warned Defendant Banks "that sanctions may be appropriate for the failure to comply with discovery obligations or the orders of this Court." Dkt. 134 (warning all parties). Nine-months after that warning, the Court had to issue two more orders, Dkt. 204, 206, before Defendant Banks signed a certification of

---

[26] Dkts. 54, 68, 82, 96, 142, 156, 178, 227, 295, 314, 321.
[27] *See also Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.,* 230 F.R.D. 688, 695-96 (M.D. Fla. 2005) (privilege waived due to three and a half month delay in providing a privilege log where case involved "review and production of 13,000 pages of documents.") cited by *Lawrence E. Jaffe Pension Plan v. Household Intern., Inc.,* 244 F.R.D. 412, 425-26 (N.D. Ill. 2006).
[28] Ms. Banks refused to provide evidence, ***even when her own lawyer demanded that she do so****. See Ex. P* ("I can't help you if you don't provide us with the information that you said you had in the dep.").

completion – *10 months late* (still with no privilege log). (Dkt. 207). Defendant Banks waived her privilege by failing to object for over three years.

### D.  At-Issue Waiver

Banks has placed privileged communications at issue by advancing those communications in support of claims and defenses.  Here, Defendant Banks' main defense is advice of counsel, and she invokes it across nearly all her pleadings, claims and defenses.[29] Banks' 2022 Answer states "Defendant Banks affirmatively states that all actions taken by Defendant Banks have been directed by Shimbly's corporate counsel since Plaintiff began threatening the company and Defendant Banks." Dkt. 47 at ¶¶ 104, 105. Further, her defense to the overall allegations is that she "followed everything corp counsel said to a T." (Ex. Y at ¶ 31). And "Defendant Banks affirmatively states that Shimbly's corporate counsel was exclusively handling matters with Plaintiff at this time due to his constant threats." Dkt. 47 at ¶ 82. If counsel was "exclusively" handling these matters involving all allegations of this case – then, relevant actions ***only involve counsel*** – and Plaintiff can only obtain the information from counsel.[30] Advice of counsel is cited by Defendant Banks in her Answer, her 2022 interrogatories, Dkt. 99-4, her deposition and in private communications as the key justification for her behavior.[31]

In particular Defendant Banks repeatedly discussed Shimbly's IP with counsel and these discussions are at issue by her newfound claim that Shimbly doesn't have IP. Which is directly

---

[29] Dkt. 47 at ¶¶ 1-2, 70, 72, 81, 88, 91, 93, 105, 118, 139, and Dkt. 99-4 at Nos. 1-3, 5, 8, 10, 13, 15-17.
[30] *See CCC Information Services, Inc. v. Mitchell Intl., Inc.*, 03 C 2695, at *6 (N.D. Ill. Dec. 1, 2006) ("It is well-settled that when a party relies upon the advice of counsel to defend against willful infringement, "the attorney-client privilege is waived."); *see RTC Indus. v. Fasteners for Retail, Inc.*, No. 17 C 3595, at *10 (N.D. Ill. Mar. 9, 2020) ("In the patent context, for instance, an accused infringer who relies upon an opinion of counsel (as a sword) to defend against a charge of willful infringement is prevented from at the same time using the attorney-client privilege (as a shield) to withhold other communications relating to the same subject matter.").
[31] Dkt. 66-2 at 19, Q: "you dropped this business concept completely after Mr. Khanna's termination" A: "I followed [] counsel the entire time, which advised that I cannot continue to build more things towards the concept."

contradicted by Defendant Banks own pleadings, and dozens of emails with counsel to the contrary. She has put whether Shimbly has IP at issue.[32]

Consider one core exhibit: the flow chart (Ex. A), which Banks admits was created solely in consultation with counsel. (Ex. H Nos. 6) ("Katelynn created the Flow Chart in connection with discussions with Shimbly's outside counsel sometime in November 2020. . . **Other than Katelynn's discussions with her counsel, there have been no communications related to the Flow Chart**.") (emphasis added). She discloses this document but refuses to disclose the communications behind it. By Defendant Banks using this flow chart, she waived privilege as to how it came to be. It came to be[33] as shown in Exhibit AD, documenting her conversations with counsel (which were forwarded to third-parties). Defendant Banks discussed legal advice related to this with third parties on numerous occasions and has waived privilege. *See, e.g.* Ex. AX.

### E. <u>Privilege Broken by Communications to Third Parties</u>

Defendant Banks forwarded or posted numerous privileged communications or work product with third parties, thereby breaking privilege on innumerable occasions not just on the specific messages but on related items. Importantly, Defendant Banks herself recognized (and told the Carys) that this was not privileged in internal messages[34], was told that CC'ing a lawyer

---

[32] Her strategy changed after she concluded Shimbly held valuable proprietary assets—communications she documented and forwarded to third parties. (Exs. G, AD). These disclosures waive privilege and were extensive. Because Defendant Banks selectively disclosed legal advice concerning the company's trade secrets and other IP—while continuing to assert privilege as a shield—she has waived protection for all related communications. The impact of doing so is significant. Defendant Banks' key defense[32] to fiduciary breach, conversion and trade secret theft is to argue that Shimbly has no intellectual property. "Defendant Banks denies that there is any Shimbly intellectual property." Dkt. 99-4 at No. 8. This is an inconsistent argument for Defendant Banks to have made in her interrogatories on June 9, 2022 because June, 2022 was when Defendant was insisting on a Protective Order to protect Shimbly's "trade secrets."[32] After it as entered, Defendant Banks has marked 1000's of Shimbly document as Confidential for having trade secrets, including roadmaps, designs, API materials etc.

[33] Plaintiff disputes the advice of counsel claim.

[34] In a December 9, 2020 email from Defendant Banks to the Carys, she forwarded work product of Kaitlyn Coker with the note, "Please let me know your thoughts and if you would like me to schedule a call with us and Kaitlyn (as she is Shimbly's lawyer, conversations with you are not protected with attorney client privilege, which she can explain better, but she is still able and willing to speak with you)." (Ex. D).

to third parties would generally waive privilege and that the Cokers didn't represent her or the Carys (Ex. AH). With this knowledge, essentially all topics of this litigation were waived by third party disclosure to the Carys, Cindy Banks, Eirik Somerville and others:

1. In nine written communications, Defendant Banks broke privilege on pre-termination (November 12, 2020) legal advice on Plaintiff's termination.[35]

2. In seven written communications, Defendant Banks broke privilege on pre-termination legal advice on her plan to dissolve and steal Shimbly for a "new company" to defraud its shareholders but enrich her co-conspirators.[36]

3. In three written communications, Defendant Banks broke privilege on pre-termination (November 12, 2020) legal advice on whether Shimbly had IP and its value.[37]

4. In eight written communications, Defendant Banks broke privilege on post-termination legal advice on how to effectuate the termination that hadn't properly occurred on November 12, 2020, including the case improperly filed in Shimbly's name in Cook County.[38] In addition to the numerous cited examples, counsel spoke on these topics with the Carys (with acknowledgement of no privilege) on November 18, 2020 (Ex. T, pg. 106) and on the litigation in particular on April 20, 2021 (Ex. AM). *See* (Ex. T, pg. 110) ("I would your opinion on the advice and findings of Shimbly's attorneys.

---

[35] *See Exs. AA, AD* (forwarding advice from lawyer on termination of Plaintiff under pretext); *Ex. T*, pg. 98-99 (forwarding plan on termination from lawyer to the Carys, "Shimbly: Next Steps Given Derek will not Resign"; *Bates:* B0065148 (forwarded recommendations of attorney to the Carys including quoting attorney as saying "Shimbly will consider developing its claims for your legal malpractice as general counsel of the company"); Ex. G (forwarding detailed legal advice to Cindy Banks, discussing process of termination); Ex. A (flow chart publicly shown involving termination of Plaintiff because Plaintiff made "allegations" (sic) against her, which Banks claims was developed with counsel); Bates: B0047959 (forwarded findings and analysis of attorney with Plaintiff); Ex. T, pg. 102 (forwarded legal advice to Carys on terminating Plaintiff); Ex. BF (forwarded legal advice on how to implement Plaintiff's termination "Proposed Framework").

[36] *See* Ex. AA (forwarding advice from a lawyer on her "plan for dissolution of my current company" and then to transfer it to "my other entity."); Ex. AD (forwarding advice from lawyer on new company, transferring IP, viability of theft plan for new entity that would make the "money"); Ex. T, pg. 98-99 (forwarding legal advice, "Shimbly: Next Steps Given Derek will not Resign" discussing how to implement plan to create new company); Ex. T, pg. 102 (Banks referencing legal advice to Carys on "dissolving" Shimbly and moving forward with new company); Ex. A (flow chart on theft plan for Shimbly, which Banks claims was developed with counsel); Ex. G (forwarded detailed legal advice on creation of a "new company" and dissolving Shimbly); Ex. BF (forwarded legal advice on "Proposed Framework" for "Next steps" for shimbly with dissolution).

[37] Ex. AD (forwarded advice on which are Shimbly's IP assets); Ex. G (forwarding advice and discussions on whether Shimbly has IP); Ex. J (emails on patentability of Shimbly, shared with Khayat).

[38] Ex. C (forwarded email on termoving Plaintiff from Board); Ex. D (forwarded email from lawyer to Carys on codifying termination process); Ex. U (forwarded email on moving forward); Ex. I (email to Cindy and lawyer on Plaintiff sent 3 days after termination); Ex. AO (discussed Cook County lawsuit legal strategy with third parties and solicited legal help for third party conversation); Ex. G (forwarding legal advice that termination had not occurred); Ex. E, Row 73, 43 (email to Cindy Banks and lawyer, topic "Litigation Strategy").

5. Defendant Banks broke privilege on post-termination legal advice on her plan to render Shimbly "useless" and steal Shimbly by transferring it's IP to the Carys, including the false claims of anticipatory repudiation and "calling of the note."[39] In addition to the numerous cited examples, counsel spoke on these topics on two video call on the "new company" and stopping "Derek" with the Carys (with acknowledgement of no privilege) on approximately April 20, 2021 (Ex. AM) and May 20, 2021 (Ex. T, pg. 116) (Rich Cary: "I need a legal update from counsel" including "strategy" "litigation" "exposure").

6. Defendant Banks broke privilege on post-termination legal advice on the implementation of the plan to transfer Shimbly through fraud to the Carys. In particular, the specific legal advice in the middle of the scheme by Kyle Coker was shared with the Carys. (Ex. T, pg. 116). Rich Cary specifically asked for their legal advice, which he received, "advise us on what the legal folks have to say on this development." (Ex. T, pg. 110).

7. Defendant Banks broke privilege on post-termination legal advice on business operations of Shimbly.[40]

8. Defendant Banks broke privilege on post-termination legal advice how and why she was obstructing the Board of Shimbly from operating ("Literally just ignore him"), including her denials of Board and Shareholder meetings and denials of Section 220 Letters in violation of Delaware Law. (Ex. T, pg. 116). Counsel Kyle Coker spoke on these topics with the Carys (with acknowledgement of no privilege) on a video call on approximately July 12, 2021 (Ex. AP).

9. Overall, Defendant Banks even referred to the Carys as reviewing the legal billables, materials that are privileged and disclose every aspect of representation. (Ex. AR). Defendant Banks knew that these disclosures would waive privilege. (Ex. AH). Therefore, her continued disclosure was deliberate, strategic, and repeated —waiving privilege as to the subjects discussed and supporting a broad subject-matter waiver.

## F. **Crime/ Fraud Waiver**

Under the crime-fraud exception can include fiduciary breaches. *Mueller*, 927 N.E.2d at 808 ("an intentional breach of fiduciary duty may serve as the fraud necessary to establish the crime-fraud exception.").[41] The facts here establish a prima facie case of fraudulent conduct: After determining that Shimbly had IP, Banks orchestrated a plan to misappropriate Shimbly's

---

[39] Ex. U (forwarding attorney advice on transfer); Ex. C; Ex. G (plan for dissolution/theft after Plaintiff's removal);
[40] Ex. U (forwarding attorney advice on operations); Ex. AB (third party email on joining Board and discussing operations of Shimbly/status);
[41] Note *People v. Radojcic*, 2013 IL 114197 (IL 2013) abrogated *Mueller* but upheld that fiduciary breaches can be a basis of crime fraud exception in certain situations (such as this one). *See Radiac Abrasives, Inc. v. Diamond Tech., Inc*., 177 Ill. App. 3d 628, 630 (Ill. App. Ct. 1988) (applying for fiduciary breach, conversion, conspiracy) (selling company equipment to a third party with a secret plan to repurchase it later).

IP, dissolve the company, conceal these steps from Plaintiff, and launch a new company with the Carys. (Ex. A.) The legal advice she seeks to shield—including on asset transfers, board actions, and valuation—was directly used to execute this scheme. The scheme constitutes a trade secret theft (whether attempted or actualized) in violation of the Trade Secrets Act (765 ILCS 1065/).

Exhibit A showcases the plan to transfer the IP of Shimbly to a new entity and dissolve Shimbly, thereby defrauding its shareholders (to functionally keep Shimbly and its corporate opportunities through deception). This plan included specific identification of what was Shimbly's IP, placing an arbitrarily low valuation on it, then licensing it out for a nominal fee (Ex. AD). Clearly demonstrating the supposed fee as a fraud, the plan states it would transfer "all IP to another company that makes the money." *Id.* As a fiduciary, Defendant Banks hid this plan from those owed a duty such as director and shareholder Plaintiff Khanna.

In this scheme, Defendant Banks manipulated internal budget books through false entries to make herself the largest debtholder. (Ex. M). Communications appear to demonstrate her intention to declare bankruptcy for Shimbly, rendering the accounting fraud also a Sarbanes Oxley §§ 1512, 1519 violation. (Ex. F). Timestamps show the fraudulent line item was added by Defendant Banks who thereafter kept the item in the budgets provided to investors, even after Plaintiff told her it was improper and to remove it twice (in writing). *Id.*[42] Banks instructed others to withhold key information, such as telling Director Khayat to withhold information about the fraudulent transfer to the Carys. (Ex. N). Ms. Banks made misleading statements about the alleged dire financial status of Shimbly – while failing to disclose that Rich Cary had asked to continue funding Shimbly. (Ex. AY). In response to Plaintiff asking questions about what was going on, Somerville stated, "Now I go silent too" referencing their intentions to mislead

---

[42] Defendant Banks admits "The $85,000 referenced by Plaintiff was an expense incurred outside of Shimbly that Shimbly was never expected to repay." (Dkt. 99-4 at No. 9).

Plaintiff. (Ex. AV).[43] Defendant Banks admitted to Somerville that she "bluffed" when Plaintiff asked about meetings, Ex. AT, and she emailed a lawyer she was cancelling a calendar invite (to discuss the scheme) because she didn't want Plaintiff to see it. (Ex. AU).

Defendant Banks also made knowingly false material statements to Shimbly participants to solicit support for her brazen theft scheme, Ex. A, such as claiming that Plaintiff defrauded her on where he went to law school or had said he was a "corporate securities expert." (Ex. Y at ¶ 139).[44] Defendant Banks violated Shimbly's founding contracts to hire corporate counsel for the company for the scheme and improperly spent its remaining $20,000.00 without authorization in brazen violation of the Founders Agreements – a fraud. *See Dkt. 1-2.*

Defendant Banks originally inquired for legal counsel, to help her with a "plan for dissolution of my current company" because, "[she] will be forming another after or using my other entity." (Ex. AA). On November 11, 2020, Banks presents her flow chart plan (Ex. A) to dissolve Shimbly and keep it for herself. Defendant Banks claims this plan is the result of recommendations from counsel. (Ex. H at Nos. 6-7). The flow chart shows that because Plaintiff made "allogations" [sic] against her he therefore had to be fired. (Ex. A). And the chart shows her express plan to dissolve Shimbly, "render" Shimbly as "useless" and "transfer the IP" to a new company. *Id.* Another key document, "Master Outline – Derek Resolution", was provided to key participants such as the Carys and provided her rationale for the theft scheme as explicitly referencing the recommendations of "Attorney Frank." Another shared document showed the fraudulent theft plan in minute detail, Ex. AD, which was provided to attorney Frank, who then

---

[43] Defendant Banks also instructed Mr. Somerville not to create a Shimbly email account for Angela Zhang to keep her off-books so their communications would be hidden ("Ie not happening in Shimbly system"). (Ex. AW).
[44] These assertions were knowingly false. Defendant Banks was given Plaintiff's resume (Ex. V) with proper credentials (showing no such information nor errors) (CBT0000156). Plaintiff was Corporate Treasurer assigned to payroll (Ex. W) and Defendant Banks had authorized his payroll payments. (Ex. AS).

provided legal advice in the shared document which was provided to Defendant Somerville. (Ex. AX). And the day after Plaintiff's termination, Defendant Banks wrote her lawyer, "I have fired Derek. Please let me know next steps regarding dissolution." (Ex. G). And, "**Prepare for dissolution (I'm assuming we cannot help the Cary Family in the creation of a new company**? What is the specific task list to be done)." *Id.*[45] (emphasis added).[46]

The engagement letter shows that counsel was hired "in connection with the Reorganization of a Corporation (the "Matter")." (Ex. R). This "reorganization" is Exhibit A, which is a fiduciary breach of a fraudulent nature. Whereas Defendant Banks specified Flow Chart Step 2 "an action removing Derek as a Board Member," Ex. A, on or around January 9, 2021, Kaitlyn Coker emailed on how to remove Plaintiff. (Ex. C). When Defendant Banks attempted Step 7 and Step 9 to fraudulently transfer all cash and assets to the Carys for $0, Banks claims this was done of the advice of Kyle Coker. (Ex. Y at ¶ 3). Kyle Coker instructed Defendant Banks in how to implement Step 8 ("Shimbly rendered as useless"). (Ex. AZ). When Defendant Banks thought the coast was clear, months before this suit, and she could launch her new company with impunity, she proceeded to Step 9 (creating a "new company) with Kyle Coker, "I'm ready to set up a new entity." (Ex. AK).

When Plaintiff tried desperately to stop this criminal scheme by demanding a Board Meeting and sending Section 220 Letters, Kyle Coker told her to "literally ignore him." (Ex. T). Ignoring Plaintiff as Director while he sent Section 220 letters and demanded a Board meeting –

---

[45] Defendant Banks' pleadings argues that all cited actions in furtherance of this scheme, were actions "directed" by counsel, Dkt. 47 at ¶¶ 104-105, or "exclusively handl[ed]" by counsel", *Id*. at ¶ 82, thereby this advice was in the furtherance of the fiduciary breach.

[46] The situation here has overlaps with *Radiac Abrasives, Inc.* where the court found a sufficient *prima facie* case for applying the crime-fraud privilege where the defendants were transferring equipment with the intent to repurchase it later. In so doing, the court said, "certain activities which plaintiff has alleged defendants undertook, such as the selling of equipment to a third party with the intent to repurchase it later, may be in breach of a fiduciary duty owed to plaintiff. *Radiac Abrasives, Inc.*, 177 Ill. App. 3d at 638 (Ill. App. Ct. 1988). Defendant plan to transfer Shimbly's IP with the intent to reacquire it via a shell company she controlled is well within the crime-fraud exception.

is illegal under Delaware law. The hiding of materials was deliberate, with clear consciousness of the ongoing fraudulent scheme, counsel told Defendant Banks, in regard to her messages with Rich Cary: "It looks like you are colluding. Stop putting stuff in writing." (Ex. AL). According to Defendant Banks, at every step of this scheme, Shimbly's counsel were invoked[47] a she claims that across the entire scheme she "followed everything corp counsel said to a T." (Ex. Y at ¶ 82).

## VII.   AUGUST 2025 "PRIVILEGE LOG" DOES NOT RECTIFY ISSUES OF MOTION

After multiple meet and confers on the topic of attorney-client privilege, on August 12, 2025, Defendant Bank's Counsel provided Exhibit E. The 39 months tardy document is also grossly deficient. The log is deficient on its face. As a quick summary of issues:

1.  The document is titled "8.12.25 Shimbly and Banks Privilege Log" – which is it? They are not the same thing according to this Court. (Dkt. 36, p. 5).

2.  The log is lists only attorney-client privilege as the "privilege claimed." (Ex. E at Column G). Therefore, any work-product doctrine claim is forfeited.

3.  Defendant Banks identified 500+ pages of material as responsive on November 18, 2022 (Ex. BE) and listed them on a spreadsheet as responsive evidence, then has deliberately[48] not included those on her privilege log today, waiving privilege for those items. There are 100's of other known materials that are withheld and not listed.

4.  The log includes multiple emails from Kaitlyn Banks to Cindy Banks (non-attorneys), including one without any other person. (Ex. E at Row 295).[49]

5.  For the 793 items on the privilege log, there are no subject lines of the communications, and the only description provided to substantiate the assertion of privilege is, "subject matter":

---

[47] According to Defendant Banks, counsel were involved, but Plaintiff does not believe that Defendant properly followed legal advice or otherwise is eligible for an advice of counsel of counsel defense.
[48] Defendant Bank's counsel was provided with a draft of this Motion on July 9, 2025 that provided specific exhibits showing text messages with Shimbly's counsel. Thereby Defendant's failure to add any text messages to the privilege log  a month later reflects a deliberate choice not to include even the cited messages in the Motion itself.
[49] The log also appears to show that Defendant Banks is asserting privilege over multiple messages that were forwarded to third parties. She does so even including some emails provided in discovery by her production, which are entirely waived under FRE 502(a). (Ex. G). By forwarding these allegedly privileged emails to third parties, she has waived privilege. (Exs. G, I) (Ex. E at Rows 67-71, 73-74). It also appears that known emails without a lawyer (of a vaguely legal nature) are withheld and not identified on the log. For example, Exhibit Q was never produced with Defendant Banks, ostensibly because it involves hiring a lawyer. This communication was ordered to be produced, as it's from John Eck, a search query under the 2023 order agreed upon by both parties.

"Litigation Strategy." What is the substantive subject matter of each document and the "specific explanation" of why the document is privileged?

6. The privilege log includes 38 listed items just between Defendant Banks and "Nancy DeSalvo AOA Law Office-**Attorney**" and over 85 listed items just between Defendant Banks and "Laura Tripp FF Law Office-**Attorney**." (emphasis added). E.g., Ex. E at Rows 142-150. Except, <u>neither are attorneys</u> (Laura is an Accounts Receivable Manager).[50] Ex. AJ is an example demonstrating these are not privileged.

7. In what "capacity" was Cindy Banks operating when Defendant Katelynn Banks emailed her alone, Ex. E at Row 295, or emailed a lawyer and Cindy Banks? (Ex. E at Rows 73-74). *Banks cannot allege attorney-client privilege for conversations with her mother.*

8. The phrase "Litigation Strategy" as the *only description or information* on all withheld items is grossly insufficient[51] on its face.[52][53] *See Ex. C* (withheld email on removing Plaintiff from Board); *Ex. G* (emails forwarded to Cindy Banks about Shimbly's IP, terminating Plaintiff and transferring company);[54] *Ex. AB* (three withheld emails on adding someone to the Board with third party); *Ex. BA* (withheld email template for building cap table).

The log includes 237 items before the filing of this suit. The above alone demonstrates

mislabeling of over 120 communications on this list with no articulable basis for privilege.

Mislabeling over 50% of the communications in the log demonstrates that Defendant Banks has

not adequately checked whether the materials she is withholding are privileged. Considering

Defendant Banks (a non-lawyer) has self "designated as privileged" *60% of her main email*

---

[50] https://fflawoffice.com/laura-l-tripp/.

[51] Entries in the log must describe withheld documents to "allow[] the reader to assess the claim." *Surgery Ctr. at 900 N. Mich. Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 632 (N.D. Ill. 2016).

[52] In *St. Paul Guardian Insurance Company v. Walsh Construction. Company*, this District held clearly what is required for a proper description to be valid. No. 15 C 10324 (N.D. Ill. Oct. 12, 2021) (Kim, Mag. J.). In that case the court found that the "reliance on generic and boilerplate language renders the log [] deficient in supporting the claims of privilege." The court explained that, using "boilerplate buzzwords" "provide no descriptive information about the document's subject matter and are insufficient to establish a privilege's applicability to any document." The court specifically cited other cases referring to language such as "in anticipation of litigation" or "communication reflecting legal advice regarding anticipated litigation . . ." as insufficient.

[53] Exhibit Q that these early October, 2020 conversations were about reviews of the Founding contracts. Exhibit Y states that in early October, Defendant Banks "finds an attorney to eval firing Derek (~10.7.20)" (Ex. Y at ¶ 82). The 88 emails with Defendant Banks and "Laura Tripp FF Law Office-Attorney" – the Accounts Receivable, Client Services Manager don't appear to be about "Litigation Strategy" (*See, e.g.*, Ex. AJ).

[54] Multiple emails listed in Exhibit I show emails with known subject lines reflecting that they are Plaintiff's whistleblower email and Defendant's notice to terminate Plaintiff unilaterally. (Ex. E at Rows 94, 730).

*accounts*, this presents further concerns to Plaintiff. (Ex. BD). Moreover, Defendant has had the above list of deficiencies in their log since August 23, 2025 – and chose not to amend further.

## **CONCLUSION**

As is documented in Plaintiff's 2023 Motion to Compel, Dkt. 90, Defendant Banks approach to Plaintiff's discovery requests can be summed up in the advice given by Kyle Coker in the context of Plaintiff seeking such materials in 2021, "Literally just ignore him." (Ex. T, pg. 116). Failure to object or provide a privilege log while withholding over 793 responsive materials for three years is evidence of Banks willfully disregarding the Rules of Civil Procedure and Court Orders. Citing privilege for Shimbly Corporation, when you are not Shimbly Corporation, is more evidence of an attempt to evade obligations. Specifically withholding hundreds of items, Ex. BE, that a reasonable inquiry would show are likely not privileged again violates the Rules of Civil Procedure and discovery. After a three-year delay, identifying and withholding 273 communications from before this lawsuit as privileged, when over 50% of those listed items are incorrectly labelled and do not appear to have a reasonable claim to privilege, demonstrates a flagrant abuse of the ability to claim privilege and withhold items on a good-faith basis (effectively an honors system). In fact, under Federal Rules of Civil Procedure, this Motion shouldn't be required at all, as it is up to Defendant Banks to argue to the Court for Good Cause, not for Plaintiff to argue the inverse.

Plaintiff, by:

_____/s/ Ryan P. McLane_____
Ryan P. McLane
McLane & McLane, LLC
269 S. Westfield Street
Feeding Hills, MA 01030
Ph.: (413) 789-7771
Fax: (413) 789-7731
ryan@mclanelaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEREK KHANNA, individually and derivatively on behalf of Shimbly Corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 21-cv-5752** |
| **v.** | ) | |
| | ) | **Hon. Judge Virginia M. Kendall** |
| | ) | **Magistrate Judge** |
| **KATELYNN BANKS,** *et al.*, | ) | **Keri Holleb-Hotaling** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**PLAINTIFF'S MOTION TO COMPEL PROPOSED ORDER**

WHEREFORE, for the reasons set forth in the Motion to Compel, this Court:

- Orders a 30-day time limit for production of all items that it previously ordered Banks to produce.

- Finds that any privilege has been waived by Shimbly Corporation (for the time period from before the filing of this suit).

- Strike Defendant Banks's August 12, 2025 privilege log as non-compliant and deem privilege waived for any withheld item that was not attempted to be logged on August 12, 2025, along with any item that is not logged properly in 20 days.

- Provides any mandatory relief under Rule 37, that this Court may feel is warranted.

- Orders Defendant Banks to turn over all materials related to her compliance and searches and provide an explanation in Court, and rectify cited production issues.

- Orders fact-discovery deadlines be extended by 30-days to allow Plaintiff to utilize these materials in depositions.

- Orders an additional four-hour deposition be allowed.

- Orders an additional 12 supplemental interrogatories be allowed on related topics or as follow-up to new findings from tis production.

**<u>So Ordered.</u>**

_____
Honorable Virgina M. Kendall,
First Justice

## **CERTIFICATE OF SERVICE**

I do hereby certify that a true copy of the above document was served upon the parties and/or attorneys of record via ECF on September 5, 2025.


　　　　　　　　　　　　　　　/s/ Ryan P. McLane
　　　　　　　　　　　　　　Ryan P. McLane, Esq.

## <u>AUTHENTICATION CERTIFICATION</u>

**<u>Plaintiff's counsel declares, under penalty of perjury, that the exhibits attached to this Motion to Compel are true and correct copies thereof, to the best of his knowledge, information, and belief.</u>**

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37.2</u>

Plaintiff's counsel hereby certifies that he has in good faith conferred or attempted to confer with Defendants' counsel concerning failing to make discovery, in an effort to obtain it without Court action. Specifically, after consultation by telephone, and good faith attempts to resolve the parties' differences, they are unable to reach an accord. Those efforts are discussed herein, and include:

1. I forwarded an initial draft of this motion (without all of the current exhibits, some of which have been produced alongside the privilege log) on July 9, 2025 via electronic mail, asking whether a privilege log was ever produced, and asking whether counsel would waive privilege if not.
2. I called counsel for Defendant Banks on 8/5/25, and we arranged to confer on this issue on 8/7/25.
3. Counsel and I discussed the issue, wherein he stated that he was going to produce documents and a privilege log the following week. I stated that I would review it, see what he produced, but that our position was that privilege had been waived. I did hope to avoid motion practice.
4. After the production, we conferred via email on a few items related to discovery. During these email exchanges, I renewed my notice that I would send this updated motion to counsel.
5. Based on our conversations, I do not believe further conferences would be fruitful and filed this motion.

       /s/ Ryan P. McLane
      Ryan P. McLane, Esq.

24