**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DEREK KHANNA, individually and derivatively on behalf of Shimbly Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KATELYNN BANKS, ISELLMLS.COM, INC. d/b/a CINDY BANKS TEAM, CINDY BANKS, TONY BANKS, PAMELA CARY, RICHARD CARY, EIRIK SOMERVILLE, MARYAM HUSSEIN,<br><br>Defendants, and<br><br>SHIMBLY CORPORATION, a Delaware Corporation,<br><br>Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 21-cv-5752<br>)<br>) Hon. Judge Virginia M. Kendall<br>)<br>) Magistrate Judge Keri Holleb-Hotaling<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS KATELYNN BANKS AND SHIMBLY CORPORATION'S
RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

Defendants Katelynn Banks and Shimbly Corporation"), by and through their attorneys, DeVore Radunsky LLC, submit the following Response to Plaintiff's Motion to Compel.

After sitting on his hands for two years Plaintiff filed the original version of this motion to compel. Plaintiff's motion seeks documents that were already produced and has ignored Defendant Banks and Shimbly's good faith efforts **including: producing** nearly 68,000 documents, providing a detailed privilege log, counsel engaging in Rule 37 conferences, and Banks and Shimbly's counsel attempting additional conferences to resolve any remaining disputes.

The manner in which Plaintiff drafted his brief suggests that he is attempting to seek summary judgment and argue the merits of the case, rather than work toward resolving real, current discovery disputes that are proportional to the needs of this case.

## DISCUSSION

### I.    Much of Plaintiff's Motion Should be Ignored for Violating Court Order

Plaintiff's brief violates this Court's September 2, 2025, order and contains 54 footnotes, comprising nearly 13 pages. The brief is 31 double-spaced pages. This Court already struck plaintiff's prior 31-page brief. On September 2, this Court allowed plaintiff to file a 20-page motion, but cautioned that "[t]he Court will not read any part of the motion exceeding 20 pages, which should be sufficient to address the 'issue of attorney-client and work product privilege, and the waiver and exceptions thereof,' subjects with which the Court is not unfamiliar." Dkt #330. Despite this Court's admonishment, on September 5, 2025, Plaintiff stuffed 13 pages of argument into 54 footnotes and effectively filed another 31-page motion.

Courts in the Northern District of Illinois have determined that "[a]rguments in footnotes are typically waived." *Peak v. Laborers Union Local #1 et al*, No. 1:2019cv03351 (N.D. Ill. 2024) (Dkt #144) (quoting *Sanders v. JGWPT Holdings, Inc.*, 2016 WL 4009941, at *10 (N.D. Ill. July 26, 2016)). Here, on September 2, 2025, after receiving and rejecting a 31-page motion, the court ordered a strict 20-page limit on plaintiff's motion. Plaintiff converted significant portions of its argument into footnotes.

The court in *Imperial Const. Management Corp. v. Laborers Intern. Union of North America Local 96*, No. 86 C 5715, 1990 WL 139052, at *1 (N.D. Ill. Sept. 17, 1990), took strong, appropriate, action when encountering much less abusive behavior than that of Khanna. The *Imperial* court refused to address plaintiff's arguments when plaintiff filed nearly **four full pages**

**of single-spaced footnotes** to fit within the court ordered 10-page limit. No. 86 C 5715, 1990 WL 139052, at *1 (N.D. Ill. Sept. 17, 1990). Moreover, the court in *Westinghouse Electric Corp. v. N.L.R.B.,* 809 F.2d 419, 425 (7th Cir.1987), imposed sanctions on a party evading page limits using variety of techniques including "moving gobs of text into single-spaced footnotes".

Similarly, this Court permitted Khanna to file a motion not to exceed 20 pages. Dkt. 330. Yet, Khanna filed a 20-page brief, replete with **nearly 13 full pages of footnotes**, including a whopping 54 footnotes. Dkt #331. On September 8, this Court required Defendants to file a response within 7 days, by September 15. Dkt #332.

Based upon plaintiff's obvious attempt to flout this Court's order, all, or large portions, of his arguments should be ignored. Plaintiff's tactic of using footnotes to advance legal arguments and weavings facts and falsehoods together makes a response more difficult, and imposes undue burden on this Court. If the argument in plaintiff's footnotes remained double-spaced, plaintiff's motion would conclude on approxiximately page 13, after footnote 37 (the true 20-page mark).

This would remove plaintiff's entire "crime/fraud waiver" and "August 2025 Privilege Log" issues from the discussion. (Dkt #331 at 14, 18.) Ultimately, plaintiff's "movement of gobs of text into single-spaced footnotes" is the type of abusive and unfair conduct that should not be condoned.

Toying with spacing and condensing argument into small font, single-spaced text is bad enough, however, Plaintiff includes blatantly false assertions to support his entire argument for Section III of his motion. Dkt #331 at 3. Plaintiff falsely claims that Shimbly is in "default status". Dkt #331 at 3. A review of this Court's docket shows the truth. See Dkt #12, 19. During the year this began, on December 16, 2021, Shimbly was defaulted. Dkt #12. Three weeks later,

on January 12, 2022, this Court vacated the default. Dkt #19. Shimbly continues to participate in this case and plaintiff cannot strip away Shimbly's privileges based on a non-existent default.

Now, Khanna suggests that he, acting "derivatively" is the only "entity" authorized to act for Shimby. Notably, there was no default judgment entered against Shimbly and the "default" existed for less than one month. Further, the court's December 16, 2021, order stated "The court will vacate the default if Defendant Shimbly Corporation files a responsive pleading by 1/12/2022". Dkt #12. Shimbly Corporation filed its responsive pleading on January 12, 2022, prompting the court's January 12, 2022 order. Dkt #17, 19. Plaintiff's attempt to contort the facts is troubling, especially when Khanna does so to seek privileged documents. Based on the foregoing, Defendants ask this Court to ignore Plaintiff's arguments and deny his motion.

## II. Defendants Have Complied with Outstanding Discovery Requests

Plaintiff's motion appears to be designed to force defendants to help plaintiff organize his own file materials. Plaintiff's contentions regarding a purported lack of discovery compliance are unsupported and confusing. Defendants Banks and Shimbly have produced nearly 68,000 documents, and provided a privilege log for several hundred documents. On June 13, 2025, counsel for Defendants Banks and Shimbly provided a detailed letter addressing fifteen issues raised in a June 2 letter from plaintiff's counsel. A copy of the June 13, 2025 letter is attached as Exhibit A.

The June 13, 2025 letter is discussed in more detail below.

## III. Defendants Did Not Waive Any Privileges

Plaintiff contends that waiver applies for several reasons, but none of his arguments have merit. First, listing counsel in a Rule 26(a) disclosure to identify those who may have information that may be relied upon does not constitute a waiver. Plaintiff has not cited any case law to

support its position that listing of potential witnesses in a Rule 26(a). No privileged information was disclosed and no testimony was offered. Unlike *Leybold-Heraeus Technologies, Inc.* 118 F.R.D. 609 (E.D. Wisc. 1987) and *Brown v. Trigg*, 791 F.2d 598 (7ᵗʰ Circ. 1986), cases cited by Plaintiff, no witness was presented for testimony, like the investigator identified in *Leybold* and witness in *Brown*.

Second, an unsupported legal conclusion regarding Shimbly being "defunct" does not dissolve the attorney client privilege. Generally, legal conclusions are conclusions that will determine the outcome of a case, or a legal issue in a case, and are inadmissible. See, e.g., In re Ocean Bank, 481 F. Supp. 2d 892, 898 (N.D. Ill. 2007). Here, plaintiff attempts to use a legal conclusion to determine the legal issue of asserting the attorney client privilege. Thus, plaintiff's argument should be rejected.

Moreover, the attorney client privilege still applies to corporations that are temporarily inactive or dissolved but retain management and ongoing legal interests. *Off. Comm. Of Admin. Claimants ex rel LTV Steel Co., Inc. v. Moran*, 802 F.Supp.2d 947 (N.D. Ill. 2011). In *Moran*, the court found that a construction company temporarily dissolved after failing to pay state franchise taxes was not "dead" for purposes of attorney-client privilege. *Id.* at 948, 949-50. The company retained its management during the temporary dissolution and also pursued claims as a creditor in underlying proceedings, demonstrating that it was not completely defunct. *Id.* at 949-50. This suggests the attorney-client privilege survives if a corporation maintains some form of active management or legal interests. Here, Shimbly's privileges should not be stripped, especially in light of the legal conclusion on which plaintiff bases his argument.

Third, plaintiff contends that documents were "deliberately withheld". Yet, documents that plaintiff appears to reference were previously produced, including a "past list" in a document

Bates Numbered B0067960. Additionally, the June 13, 2025, letter from counsel for Banks and Shimbly provide details relative to prior document production and confirm that numerous documents were produced. Yet, Plaintiff insists that documents and emails were not produced.

Notably, the June 2 letter confirmed the following items:

1. Banks produced thousands of documents in furtherance of the the court order in 2023 for keyword searching by a third-party vendor that would effectuate these requests specifically.

2. Banks transferred files to Shimbly attorneys.

3. A vendor named Percipient performed a key word search per the court's order and thousands of documents were responsive to the keywords provided. This includes emails about discovery with the data vendor.

4. Voluminous Shimbly materials were produced from 3rd parties with keywords.

5. Third-party application documents were produced.

6. On September 1, 2022, Banks provided attorney Angelini for production and also produced by Percipient in 2023: Communications among Katy Banks and parties in her Initial Disclosures (including Cindy Banks, Theo Khayat and Tony Banks) relating to Shimbly, the termination of my client, and the formation of "new Shimbly" or Brex.

7. On September 1, 2022, Banks provided attorney Angelini for production and also produced by Percipient in 2023: Text message communications with third parties on related topics (including Eirik Somerville). The limited materials provided are cherry picked and end prematurely. These include Eirick's communications of Plaintiff

misconduct. Somerville Rpt (BolderRoad.io report); June 8, 2022 also produced responsive records. Eirik produced the same.

8. Confirmed that Brex/Brix/ Brex BRD used no Shimbly technology.

9. More than 200 pages were produced related to: Communications between Ms. Banks and third parties, particularly Bronte Beaird and John Eck, whose involvement in the relevant matters appears significant.

10. All Shimbly "events"/calenders have been produced.

11. Data from Banks' iPhone was produced February, 11 2024. A data vendor pulled them straight from her phone.

12. Shimbly emails were produced starting 12.21.22. Deletion dates are contained in the email notifications. Consultants were fired, emails were not retained.

*   *   *

Plaintiff also claims that Banks advanced privileged communications at issue by advancing them in support of claims and defenses. Non-privileged documents supporting Banks and Shimbly's claims have been produced.

Khanna further claims that Banks broke privilege on certain communications and that "essentially all topics of this litigation" were waived by disclosure to third parties. Dkt #331 at 13. Yet, this contention is meritless.

Ultimately, plaintiff's arguments regarding waiver of the attorney-client privilege and fly in the face of Rule 502, which was designed to promote discovery without risking a global waiver. Additionally, plaintiff contends that defendants were "foot dragging", yet plaintiff waited two years to raise the issue. Furthermore, if there are privileged documents that were disclosed inadvertently, defendants request that those documents be clawed back.

Counsel for Defendants appeared in this matter in April 2025 and have taken tremendous strides to provide any outstanding information, along with a privilege log. If issues exist with the privilege log, Defendants should be afforded an opportunity to address them. Given the nearly 68,000 documents produced and the myriad of claims made by Plaintiff, it would be helpful to work toward resolution, as opposed to revisiting issues regarding purported attorney actions and discussions from several years ago.

Here, Defendants produced volumes of records and more recently produced a detailed privilege log. Thereafter, defense counsel engaged plaintiff's counsel in Rule 37 conferences and invited additional conferrals to address outstanding issues and avoid burdening the court. Defendants Banks and Shimbly reserve the right to further address Plaintiff's arguments in light of plaintiff's non-compliance with this court's order. Plaintiffs actions have effectively required Defendants Banks and Shimbly to respond within seven days to a thirty-one page motion (if it had been double spaced) that is strikingly similar to the motion that this Court already struck.

## Conclusion

For the foregoing reasons, and those set forth in their opening brief, Defendants respectfully request that the Court deny Plaintiff's motion to compel, strike or ignore portions of plaintiff's motions, and award costs and fees to Banks and Shimbly. Sanctions against plaintiff are appropriate to address plaintiff's violation of this Court's order providing a page limitation and plaintiff's repeated requests for information that is disproportionate to the needs of this case while causing undue burden on defendants Banks and Shimbly.

**Dated: September 15, 2025,**          **Katelynn Banks and Shimbly Corporation**

By: /s/ *Jason E. DeVore*
One of their attorneys

**DEVORE RADUNSKY LLC**
Jason E. DeVore (ARDC # 6242782)
Troy S. Radunsky (ARDC # 6269281)
230 W. Monroe Street, Ste. 230
Chicago, IL 60606
(312) 300-4479 telephone
jdevore@devoreradunsky.com
tradunsky@devoreradunsky.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2025, a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record via the Court's CM/ECF automated filing system.

/s/ *Jason E. DeVore*
Jason E. DeVore

9