IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEREK KHANNA, individually and derivatively on behalf of Shimbly Corporation, | ) ) ) |
| Plaintiff, | ) Case No. 21-cv-5752 |
| v. | ) ) Hon. Judge Virginia M. Kendall |
| | ) Magistrate Judge |
| KATELYNN BANKS, *et al.*, | ) Keri Holleb-Hotaling |
| | ) |
| Defendants. | ) ) |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION TO COMPEL PRODUCTION OF PUTATIVE PRIVILEGED MATERIALS AS TO SHIMBLY CORPORATION**

Plaintiff submits this Reply in support of his Motion to Compel. Defendants bear the burden of establishing that "all of the requirements for invoking the attorney-client privilege have been met." *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000). Defendants have not met their burden and this Court should enter the Order to Compel. Defendant Banks has employed a specific litigation strategy: stall. (See Ex. A, texts show Defendant Banks stating litigation strategy—to incoming counsel— as deliberately delaying and obstructing the agreed upon production). Plaintiff is simply requesting materials that Defendants were ordered to produce in an effort get this case back on track. A deposition is scheduled on October 9, 2025 for Defendant Katelynn Banks, Plaintiff needs these materials to be produced, the ability to ask Defendant Banks about them in the deposition, and the ability to depose counsel listed on Defendants' Initial Disclosures.

**I.       BASIS FOR REPLY**

*Defendants' Opposition Motion ("Opposition")* fails to engage with most arguments in Plaintiff's Motion. In the absence of an exhibit or Declaration, there is no evidence before the

Court that Shimbly has invoked privilege by way of a corporate action. Defendants do not attempt to rebut black-letter Delaware law granting a shareholder in a derivative action the right to privileged corporate documents to prove a fiduciary breach.[1] Defendants appear to be characterizing the Crime-Fraud argument, a fact-intensive inquiry, as a "summary judgement" brief. (Opp'n at 2). In so doing, this is an implicit admission of how probative and relevant these materials are. Just as the withheld privileged materials (as specifically cited in the Motion) are necessary to establish the Crime-Fraud Exception, they are necessary for Plaintiff's case.

      Defendants further claim that Plaintiff sat on "his hands for two years", but this is both incorrect and irrelevant. Plaintiff requested a privilege log on at least three occasions in writing which was ignored. Dkt. 331. Plaintiff has met and conferred regarding Defendants' lack of compliance with the Court Order multiple times since then, and with numerous emails from 2023 to today. It was from this prodding that in August 2025, Defendants finally produced a purported Privilege Log, which was deficient on its face. Any proportionality objection is also waived and irrelevant, as this Court already ordered all responsive materials to be turned over with a keyword search. Dkt. 130. Today, Defendants do not contest Plaintiff's argument that they waived privilege by not objecting in 2022, that Defendants admitted to this fact before the Court, or the finding of this Court that such privileges were waived, "that ship has sailed." As Plaintiff reminded them (Dkt. 331 at 20), this Opposition filing was Defendants' opportunity to argue Good Cause to restore their objection. Nonetheless, Defendants did not argue Good Cause. The case is overwhelming that privilege has now been waived.

    **II.**    **MATERIALS WERE NOT "PREVIOUSLY PRODUCED" AS DEFENDANTS ADMIT THEY ARE WITHHOLDING 793 ITEMS UNDER A PURPORTED PRIVILEGE LOG**

---

[1] These materials are text messages, emails and documents - a large number of which were collected in 2022 and can be easily produced.

Defendants assert the documents were "already produced," (Opp'n at 1), yet simultaneously withhold **793 items** on a privilege log—positions that cannot both be true. Further, Plaintiff has identified and provided numerous other *withheld* messages with counsel via a Dropbox link containing hundreds of pages collected in 2022 (pursuant to Court Order) but never produced.

### III. DEFENDANTS VIOLATED THE COURT'S 2023 DISCOVERY ORDER WHICH DEFENDANTS DO NOT MEANINGFULLY CONTEST

Defendants avoid the central question: did Defendants conduct the Court Ordered search from 2023, and did they produce all responsive items? The answer is either yes, keywords were searched, and all items were produced, or no, they were not. Since Defendants have already certified completion, this should be exceedingly simple. But instead, they point to producing some quantity of items. This is irrelevant and Defendants' failure to address this claim speaks for itself. Pursuant to the 2023 Court Order (Dkt. 130), Defendants were to search devices and emails for keywords and produce by March 30, 2023. (Dkt. 331). This would have flagged all 793 communications in the privilege log (all having keywords). *Id.* In December 2022, Defendants assembled over 500 pages of responsive messages with counsel. (Dkt. 331-1 at Exs. BD, BE). Despite Defendants withholding this folder and the 793 items (without a log), Defendant certified that production was complete in 2024. (Dkt. 207). It was not.

Plaintiff cites specific documents (Dkt. 331-1, Ex. BD) showing a deliberate decision not to follow the 2023 Court Order (e.g., not searching 60% of stated accounts by marking entire email accounts as "privileged" with no further review). Rather than rebut the inference of willful noncompliance, Defendants relitigate the 2022 and 2023 Orders to Compel and Sanctions with arguments (Dkt. 105) rejected by this Court. (Dkts. 69, 112).

### IV. PLAINTIFF ABIDED BY 20-PAGE COURT ORDER.

Defendants allege that Plaintiff "converted **significant** portions of argument into

3

footnotes" (emphasis added), but identify no such instance of an argument moved into footnotes. As directed by this Court, Plaintiff reduced his brief from 33 to 20 pages and the number of footnotes thereby *decreased* from 62 to 54. Further, total footnote word count and character count *decreased* and formatting stayed the same. Defendants' citations and claims have no similarity to Plaintiff's Motion filed. Defendant compares the Motion to *Westinghouse*'s citation of "moving gobs of text into single-spaced footnotes". First, this isn't what Plaintiff's Motion is at all, as the median length of footnotes, overall words and number of footnotes all declined. Second, *Westinghouse* citation was to a case with manipulated margins and smaller font. *Westinghouse Electric Corp. v. N.L.R.B.*, 809 F.2d 419, 425 (7th Cir.1987). Defendants' Opposition states that "plaintiff's "movement of gobs of text into single-spaced footnotes" is the type of abusive and unfair conduct that should not be condoned." (Opp'n at 3). While Defendants fail to cite such an example, they make a blanket assertion to "plaintiff's obvious attempt to flout this Court's order". *Id.* Defendants level a serious, yet unsubstantiated, accusation of "abusive and unfair conduct". Again, instead of simply addressing the issue of whether Defendants have complied with this Court's discovery Order, they have decided to level baseless accusations at Plaintiff without answering the simple question: did Defendants conduct the Court Ordered search from 2023, and did they produce all responsive items?

## V. DEFENDANTS HAVE WAIVED MOST ARGUMENTS IN OPPOSITION

The vast majority of arguments in Plaintiff's Motion stand uncontested:

**1. Third Party Disclosure Argument Waived** – Plaintiff presents three pages showing how each topic for legal advice was disclosed and the understanding of the parties was that this would waive privilege. (Dkt 331-1, Ex. AH). Plaintiff provides numerous examples for each topic, showing a pattern and practice. Defendants offer no rebuttal, merely labeling Plaintiff's arguments for third party waiver as "meritless" without explanation. (Opp'n at 7).

4

2. **502 Waiver** - Defendant provided a link which includes a large number of communications and documents with counsel on August 12, 2025. Plaintiff informed Defendants' counsel of this fact and Defendants' counsel stated that he was unaware of anything that should be set aside. Today, more than 30 days later – the Dropbox link that Plaintiff provided Defendant is still public.[2] Defendants have not specified if they are asserting privilege for these materials and the statement within their opposition "**if there are** privileged documents that were disclosed inadvertently, defendants request that those documents be clawed back." (Opp'n at 7), (emphasis added). is not a Rule 502(b) clawback.

3. **Privilege Log Does Not Comply with Legal Requirements** – Plaintiff specifies specific ping citations showing eight specific issues with the 2025 privilege log. (Dkt. 331 at 18-20). Plaintiff reiterates his main issues with the log elsewhere, such as on page one, "Plaintiff can prove that over half of the items on this log from before this lawsuit are incorrectly logged and don't appear to be privileged." *Id.* at 1. Defendants do not address the eight enumerated deficiencies. Instead, Defendants argue, "If issues exist with the privilege log, Defendants should be afforded an opportunity to address them." (Opp'n at 8). The first version of this Motion that was filed and served on August 23, 2025 gave the Defendants ample opportunity to update their privilege log.

4. **Shimbly Corporation Holds Privilege and Has Not Asserted Privilege -** Defendant did not dispute that these were Shimbly's lawyers and Shimbly's legal advice (Section III). Shimbly's stated "General Counsel" Kaitlyn Coker, informed Defendant Katelynn Banks that

---

[2] Until Defendants' September 16 Opposition, Defendant had never attempted to claw back any items. Defendants' unclear statement to this effect is 34 days late, but even here, Plaintiff has no idea what they are referring to, "if there are privileged documents that were disclosed inadvertently, defendants request that those documents be clawed back." (Opp'n at 7). Plaintiff's Exhibit List includes dozens of communications with counsel, for which of those do Defendants assert privilege? Thereby, even today, Defendant has not reasonably abided by Rule 502 to attempt to claw back any item.

5

under Shimbly's contracts, "every corporate action" "must be approved by a majority vote of the Board of Directors. (Dkt. 331-1, Ex. AF). Citing this statement, Plaintiff argued "Without a formal corporate action, any privilege assertion in Shimbly's name is improper." (Dkt 331 at 3). In response, Defendants submit no evidence of corporate authorization (or even a Declaration) to assert Shimbly's privilege. In the absence of corporate authorization, the assertion fails.

5. **Delaware Law Mandates That Derivative Companies Have Access to Communications Necessary for Asserting Fiduciary Breach** – This is among Plaintiff's strongest arguments (Section IV), yet Defendants declines to address this argument in their Opposition, and therefore any opposition to the same should be waived. The case law is clear, both in Delaware and in Illinois, a derivative Plaintiff has right to the materials necessary for asserting a fiduciary breach, including those between the company and counsel.

6. **Privilege Does Not Apply to Business Conversations and Personal Conversations** – Plaintiff establishes (Section V) how Kyle Coker and Kaitlyn Coker were personal friends of Defendant, and that they gave personal and business advice, not subject to privilege.

7. **Waiver of Privilege Under Rule 26(b)(5)(A)** – Over four pages (Section VI, C) Plaintiff demonstrates that Defendant has waived privilege, by repetitively failing to invoke it. Plaintiff cites Defendant stating they "basically blew the deadline to object to [Plaintiff's] discovery requests." (Dkt. 106-2, at 6:17-20). As a result, the Court found the "ship has sailed" in regard to such objections. (Dkt. 90-3). Plaintiff meticulously compares Defendants' failure to assert privilege for 32-months and evidence that Defendant indexed and withheld communications with counsel, with the same conduct of the parties in *Abbott Laboratories* which resulted in a waiver. Defendant does not meaningfully contest this case law or argument.

8. **At-Issue Waiver** – Over two pages (Section VI, D), Plaintiff demonstrates how

6

Defendant has put privileged items at issue by citing that "Defendant Banks' main defense is advice of counsel, and she invokes it across nearly all her pleadings, claims and defenses" and then *citing over 20 examples*. Defendant makes no attempt to address these examples, and only states, "Non-privileged documents supporting Banks and Shimbly's claims have been produced." (Opp'n at 7). This tautological response fails to address the substance of the at-issue waiver argument. Defendant does not dispute that she intends to argue an advice of counsel defense.

9. **Crime-Fraud Waiver** – Over five pages (Section VI, F), Plaintiff demonstrates how the crime-fraud exception applies, providing numerous citations to the record and exhibits as this is a fact-specific analysis. This is notable as the evidence cited is egregious, such as the accounting fraud documented, Defendant stating "I'm ready to set up a new entity." And her counsel stating, "It looks like you are colluding. Stop putting stuff in writing." (Dkt. 331, Exs. AK, AL). Defendant does not address those exhibits or this argument at all.

## VI. WORK PRODUCT DOCTRINE FORFEITED

Plaintiff's Motion is explicit that he is arguing that "any work-product doctrine claim is forfeited." (Dkt. 331 at 18). And Plaintiff explains why with citations to the record. Defendant Banks ignores this argument and thereby does not contest the basis for forfeiture.

## VII. DEFENDANTS LIMITED ARGUMENTS ARE UNAVAILING

### A. Listing Counsel in Defendants' 26(a) Initial Disclosures

Defendants do not deny that they plan to call their listed witnesses Kyle and Kaitlyn Coker in the trial. Whereas Defendants have repetitively stated that Kyle and Kaitlyn Coker are their witnesses in this matter, to testify to specific information and for Kyle Coker as one of a few listed witnesses for plaintiff's termination, Plaintiff must depose Kyle Coker before a trial and obtain his documents.

B.     **Defunct Argument**

Defendants portray Section VI (b) as merely an errant legal conclusion, but this is not what the Motion shows. (*See, e.g.,* Dkt. 131, Ex. Y at ¶ ¶ 3, 152 ("I wish the company was formally defaulted / bankrupt. It is currently defunct with the CEO's only purpose to reply to attorneys to deal with Plaintiff's inability to allow the company or any of its other members to move forward []"); ("Shimbly is now dead."); Dkt. 66-2 at 15 ("there are no formal business activities happening."). The point of privilege is not merely to shield a CEO from legal exposure. Plaintiff was significantly impeded in this specific argument by the page limits, but had dozens of exhibits to provide that demonstrate clearly that the factual basis for privilege being dead (no business operations) is well predicated (and requests to provide these materials if germane).

VIII.   **CONCLUSION**

In the Seventh Circuit, "The party seeking to invoke the [attorney-client] privilege has the burden of establishing all of its essential elements." *United States v. Lawless*, 709 F. 2d 485, 487 (7th Cir. 1983) (citation omitted). Defendants have neither established that the materials 1) are reasonably categorized as privileged, 2) that they are the holders of the privilege, nor 3) that Shimbly has formally invoked its privilege. Defendants further ignore key dispositive arguments such as the fiduciary exception which applies in Delaware for this exact situation.

The Opposition avoids the merits and ignores a straightforward record before the Court. The plaintiff needs these documents for the upcoming deposition. Defendants listed their counsel during the incidents of this case (preceding this action) as witnesses in their Rule 26(a) initial disclosures (specifically listed to testify as to Plaintiff's termination). Plaintiff has sought the related materials since 2022. All relevant objections were waived to producing these items (including proportionality). Defendants admitted to having waived the objections they now invoke in Court. This Court found these objections were waived. As Plaintiff noted in his

Motion, it is Defendants' burden to "argue to the Court for good cause". (Dkt. 331 at 20). With the implicit admission that there is no Good Cause, the case that privilege does not apply to the materials, was not asserted, or that there is an applicable waiver is overwhelming. Plaintiff requests this Court grant the Order to Compel to require Defendants to finally cooperate in discovery and allow this case to proceed.

Plaintiff, by:

/s/ Ryan P. McLane
Ryan P. McLane
McLane & McLane, LLC
269 S. Westfield Street
Feeding Hills, MA 01030
Ph.: (413) 789-7771
Fax: (413) 789-7731
ryan@mclanelaw.com

**CERTIFICATE OF SERVICE**

      I do hereby certify that a true copy of the above document was served upon the parties and/or attorneys of record via ECF on September 20, 2025.

                                                        /s/ Ryan P. McLane
                                                        Ryan P. McLane, Esq.