**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEREK KHANNA, individually and derivatively on behalf of Shimbly Corporation, | ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | |
| KATELYNN BANKS, ISELLMLS.COM, INC. d/b/a CINDY BANKS TEAM, CINDY BANKS, TONY BANKS, EIRIK SOMERVILLE, MARYAM HUSSEIN, | ) ) ) ) ) | No. 21 C 5752 Chief Judge Virginia M. Kendall |
| *Defendant*s, and | ) ) | |
| SHIMBLY CORPORATION, a Delaware Corporation, | ) ) ) | |
| *Nominal Defendant*. | ) ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

In his Second Amended Complaint, Plaintiff Derek Khanna pleads over a dozen claims against Defendants Katelynn Banks ("Banks"), ISellMLS.com, Inc. ("Cindy Banks Team"), Cindy Banks, Tony Banks, Eirik Somerville, Maryam Hussein, and Shimbly Corporation. (*See* Dkt. 292) This matter comes before the Court on two Motions to Dismiss: the first filed by the Cindy Banks Team, Cindy Banks, Tony Banks, and Eirik Somerville, (Dkt. 299), and the second filed by Banks and Shimbly Corporation, (Dkt. 313). For the below reasons, the Cindy Banks Team, Cindy Banks, Tony Banks, and Eirik Somerville motion [299] is granted and the Banks and Shimbly motion [313] is granted in part and denied in part.

1

**BACKGROUND**

A significant majority of the facts included in Khanna's Second Amended Complaint mirror those included in his First Amended Complaint. Accordingly, the Court assumes familiarity with the facts of this case from its prior opinion and only discusses Khanna's revised allegations insofar as they alter the Court's analysis on his specific claims. *See Khanna v. Banks*, 2024 WL 3338938 (N.D. Ill. July 9, 2024). In short, this case revolves around the demise of a business, Shimbly, that Khanna launched with Banks and Theophile Khayat in January 2020. *Id.* at *1. By the fall of 2020, Banks had abandoned her post as the company's CEO and made a series of unauthorized payments of Shimbly funds. (Dkt. 292 ¶¶ 61–63). Eventually, Khanna began sending whistleblower notices to Shimbly's board of directors and investors, detailing Banks's misconduct. (*Id.* ¶¶ 75–76). In October 2020, Banks enlisted Maryam Hussein and Eirik Somerville to create a report (the "Hussein/Somerville Report") that blamed Shimbly's mismanagement on Khanna and served as a basis for his eventual termination. (*Id.* ¶¶ 80–83). Following Khanna's involuntary termination in November 2020, Banks worked in concert with the Cindy Banks Team, Cindy and Tony Banks, Somerville, and Hussein (together, the "Conspiring Defendants") to launch a new business concept using Shimbly's assets, proprietary trade secrets, and intellectual property. (*Id.* ¶¶ 87–88, 100–01).

Khanna filed this suit on October 27, 2021. (Dkt. 1). On April 6, 2022, Judge Feinerman (who was assigned to the case prior to this court) ordered the parties to submit to "binding confidential mediation" on Khanna's claims for "breach of fiduciary duty (insofar as the claim arises from his termination), breach of contract (for failure to submit to mediation and for breach of the salary agreement), wrongful and retaliatory discharge, and violations of the Illinois Whistleblower Act." (Dkt. 35). Those claims remain stayed, and the Court does not address them

2

in this Opinion. On July 9, 2024, this Court dismissed Counts I (breach of fiduciary duty to the extent not implicated by the stay), II (aiding and abetting Banks's breaches of fiduciary duties), III (fraudulent concealment), IV (aiding and abetting Banks's fraudulent concealment), V (breach of contract to the extent not implicated by the stay), VII (Illinois Trade Secrets Act), VIII (aiding and abetting Banks's violations of the Illinois Trade Secrets Act), IX (conversion), XV (gross negligence), XVI (Intentional Infliction of Emotional Distress), and XVII (shareholder derivative claim) of Khanna's First Amended Complaint. (Dkt. 186; Dkt. 240). Khanna's Second Amended Complaint includes the same seventeen counts as his First Amended Complaint but adds an eighteenth for "Unauthorized Filing" stemming from a lawsuit that Banks initiated on Shimbly's behalf in Cook County Court in January 2021. (Dkt. 292 ¶¶ 203–09).

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* (citing *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)). Yet, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644,

649 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). The complaint's factual content must "raise a right to relief above the speculative level." *Kaminski*, 23 F.4th at 776 (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

Khanna raises derivative and direct shareholder claims in his Second Amended Complaint, along with independent tort claims. Because Shimbly is incorporated under the laws of Delaware, the Court will again apply Delaware law to his derivative and direct shareholder claims. *Housman v. Albright*, 857 N.E.2d 724, 729 (Ill. App. Ct. 2006) (citing *Seinfeld v. Bays*, 595 N.E.2d 69, 75 (Ill. App. Ct. 1992)); (Dkt. 240 at 6).

## I.    Count XVII Shareholder Derivative Claims

Both sets of Defendants argue that Khanna's derivative claims fail as a matter of law. (Dkt. 303 at 4–8; Dkt. 313 at 13–14). They primarily focus on whether Khanna sufficiently alleged demand futility, which served as the basis for the Court's previous dismissal of Khanna's derivative claims. (Dkt. 240 at 8–10). In contrast to his First Amended Complaint, Khanna now alleges that he *did* make a litigation demand on Shimbly's Board of Directors, specifically pointing to a "40+ page report" that he created recommending legal investigation, referral to the SEC, and, ultimately, a "lawsuit filed on behalf of Shimbly against Katy Banks" concerning her various fiduciary breaches. (Dkt. 292 ¶ 213–14). Khanna proceeds to devote significant space in the Second Amended Complaint to realleging demand futility, as to both Banks and Khayat. (*Id.* ¶¶ 217–32). But his new "suitable demand" allegations introduce a hurdle that none of the parties

seem to appreciate—Khanna's specific litigation demand terminated his ability to initiate a derivative suit based on demand futility. (*Id.* ¶ 212).

Stockholders who wish to raise derivative claims on behalf of the corporation ordinarily must exhaust their "intracorporate remedies." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984); *see* Fed. R. Civ. P. 23.1. This is because claims alleging a harm to the corporation and its stockholders belong to the corporation, and it is the corporation that must decide whether to pursue those claims. *Grimes v. Donald*, 673 F.2d 1207, 1215 (Del. 1996). Thus, stockholders who wish to raise a derivative claim themselves must *either* allege that they made a pre-suit demand the board wrongfully refused *or* that pre-suit demand was excused because a majority of the board is or was incapable of making an independent decision on whether to assert the at-issue claim. *See id.* at 1216. Therein lies the problem for Khanna, who attempts to plead *both* pre-suit demand and demand futility.

In making a litigation demand on a corporation's board of directors, a stockholder "tacitly concedes the independence of a majority of the board to respond." *Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del. 1990); *see also FLI Deep Marine LLC v. McKim*, 2009 WL 1204363, at *3 (Del. Ch. Apr. 21, 2009). Thus, when Khanna made his specific litigation demand on the Shimbly Board in October 2020, he "waived any claim . . . that the board [could not] independently act on the demand." *Scattered Corp. v. Chi. Stock Exch., Inc.*, 701 A.2d 70, 74 (Del. 1997); *accord. Rosati v. Rosati*, 2021 WL 3666432, at *4 (N.D. Ill. Aug. 18, 2021). The allegations in Khanna's Second Amended Complaint, taken as true, establish that he submitted a substantial report to Shimbly's Board of Director's in October 2020 detailing the same misconduct he alleges in this case. Indeed, he states that the report's allegations are "the same [as] or substantially overlap[]" those included in his derivative action. (Dkt. 292 ¶ 214; Dkt. 306 at 1 n.2). And Khanna's report included the

unequivocal demand that there ought to be a "[l]awsuit filed on behalf of Shimbly against Katy Banks." (*Id.*) These allegations were completely missing from Khanna's previous complaints. But they now establish that, in 2020, Khanna waived his right to bring a derivative claim based on demand futility.

Khanna appears to proceed from the premise that his refused litigation demand opens the door to all his derivative claims, in the same way adequately pleading demand futility would. (Dkt. 306 at 1–2). That is not the case. It is true that when a stockholder makes a demand, he spends "one—but only one—arrow in the quiver. The spent arrow is the right to claim that demand is excused." *Grimes*, 673 A.2d at 1218–19. The stockholder preserves his right to establish that the litigation demand was *wrongly* refused. *Spiegel*, 571 A.2d at 775 ("Once a demand has been made, absent a wrongful refusal, the shareholders' ability to initiate a derivative suit is terminated." (citation modified)). But a plaintiff must plead wrongful demand refusal with particularity. *Grimes*, 673 A.2d at 1216. When a demand is made and rejected, the board is "entitled to the presumption of the business judgment rule unless the stockholder can allege facts with particularity creating a reasonable doubt that the board is entitled to the benefit of the presumption." *Id.* at 1219. In making that assessment, the Court will only examine the "good faith and reasonableness of its investigation." *Spiegel*, 571 A.2d at 777.

Khanna has failed to plead wrongful refusal with particularity as required under Fed. R. Civ. P. 23.1. While he alleges that Banks and Khayat, the only other members of Shimbly's Board besides himself, refused (or possibly simply ignored) the litigation demand incorporated in his "40+ page report," he does not elaborate at all on the good faith or reasonableness of any investigation into that demand. This is unsurprising considering Khanna primarily focuses on demand futility. But again, that issue is moot. *See Spiegel*, 571 A.2d at 775 ("[W]hen a demand is

made, the question of whether demand was excused is moot."). Moreover, it does not appear from Khanna's Second Amended Complaint that he ever made use of the "tools at hand to obtain the relevant corporate records, such as reports or minutes, reflecting the corporate action and related information in order to determine whether or not there is a basis to assert that demand was wrongfully refused." *Grimes*, 673 A.2d at 1218. For example, while Khanna sent multiple letters pursuant to Del. Code Ann. tit. 8, § 220 requesting to inspect these relevant records, he never applied "to the Court of Chancery for an order to compel such inspection." § 220(c). *See Scattered Corp.*, 701 A.2d at 79 (concluding plaintiffs could not proceed with a derivative action based on a § 220 demand letter alone when they failed to bring a subsequent action to compel inspection).

The only allegations in Khanna's Complaint that can be construed as supporting a wrongful refusal theory are conclusions that that the board rejected his litigation demand and, because of its ultimate decision, the process it took "could not have been the result of an adequate, good faith investigation." *Grimes*, 673 A.2d at 1220; (*see, e.g.*, Dkt. 292 ¶ 214). These will not do. Accordingly, Count XVII of Khanna's Second Amended Complaint alleging derivative claims based on demand futility are dismissed with prejudice. To the extent he has pled a wrongful refusal claim, it is dismissed without prejudice.

## II.     "Direct" Shareholder Claims (Counts I, III, XV, and XVI)

The Court's July 9, 2024 Memorandum Opinion and Order dismissed a majority of Khanna's direct shareholder claims because they were quintessentially derivative, meaning Khanna failed to allege any harms that he suffered independent of those inflicted upon the corporation. (Dkt. 240 at 10–14). The allegations in Khanna's Second Amended Complaint fare no better, falling well short of curing the deficiencies the Court identified in its prior Order.

When a shareholder pleads direct claims, he must establish "that the duty breached was owed to the [shareholder] and that he or she can prevail without showing an injury to the corporation." *Tooley v. Donaldson, Lufkin & Jenrette, Inc*., 845 A.2d 1031, 1039 (Del. 2004). To determine if a claim is direct or derivative the Court must ask: (1) who suffered the alleged harm (the corporation or the suing shareholder, individually), and (2) who would receive the benefit of any recovery or other remedy? *Tooley*, 845 A.2d at 1033. Courts must focus their inquiry on the "nature of the wrong alleged" considering the facts in a complaint to determine whether a direct claim exists. *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 817 (Del. Ch. 2005), *aff'd*, 906 A.2d 766 (Del. 2006)

In defense of his direct claims, Khanna raises three primary arguments. First, he was harmed from a financial perspective because Banks and Khayat, the only two Shimbly shareholders apart from himself, orchestrated a scheme to eviscerate the value of Khanna's shares while preserving the value of their own through the creation of a spinoff company using Shimbly's IP. (*See* Dkt. 316 at 4). Second, Banks, Khayat, and the Conspiring Defendants harmed Khanna both reputationally and emotionally, causing him to suffer, for example, from decreased job prospects, lost income, personal humiliation, and mental anguish. (Dkt. 292 ¶ 126; *see* Dkt. 316 at 5) And third, this case involves a "change of control" situation, excepting him from *Tooley*'s ordinary requirement that he show an individualized harm before proceeding with his direct shareholder claims. (Dkt. 316 at 2).

Khanna's first argument alleges the tortious scheme was "not a plan to steal Shimbly from its shareholders, it was a plan to steal Shimbly from Plaintiff." (Dkt. 316 at 3; *see also* Dkt. 306 at 7). The Court already considered and rejected these arguments in its first dismissal. For example, the Court noted that Khanna alleged "Banks engaged in accounting fraud, failed to develop

8

Shimbly's business, purposefully bankrupted Shimbly, executed a plan to steal Shimbly's trade secrets, and drove down the value of Shimbly stock," and concluded "[s]uch allegations can only be brought derivatively, because, at their core, these allegations are about harm to Shimbly." (*See* Dkt. 240 at 11). The same is as true today as it was then. In short, Khanna argues that, because he was the only shareholder *truly* injured—while the other two insulated themselves from harm by spinning off a separate business concept without him—he should be permitted to proceed with his direct claims for breach of fiduciary duty and fraudulent concealment. But the direct versus derivative inquiry does not focus on whether a plaintiff's harm was suffered by all the stockholders equally; instead it looks to whether that injury is distinct from an injury to the corporation. *Brookfield Asset Mgmt. v. Rosson*, 261 A.3d 1251, 1273 (Del. 2021). Regardless of whether Banks and Khayat launched a new venture after they "firebomb[ed]" Shimbly and somehow preserved the value that they had invested in Shimbly as a result, it is the firebombing about which Khanna complains. (Dkt. 316 at  4). And a director's corporate mismanagement, or even intentional dereliction of duties, which results in a business being driven into the ground works a harm on the corporation. That is what happened here, and Khanna has merely alleged that he suffered incidental harm because of his status as a controlling Shimbly shareholder. He thus cannot prevail on this theory "without showing an injury to the corporation." *Tooley*, 845 A.2d at 1039.

Khanna's direct financial harm theory also hinges on the dilution of his Shimbly shares and the diminution of their value. For example, Khanna notes that Banks's and Khayat's actions resulted in his vested shares being "devalued to zero." (Dkt. 292 ¶ 126). But share devaluations raise "textbook derivative claim[s]." *An v. Cosman*, 2025 WL 2180575, at *6 (Del. Ch. July 31, 2025); *see Hale v. China Online, Inc.*, 2009 WL 2601357, at *5 (N.D. Ill. Aug. 21, 2009) (noting plaintiffs could not "prevail on their individual devaluation claims without showing injury to" the

corporation). Khanna separately alleges that Banks hatched a scheme by which she could steal Khanna's shares and redistribute them to Khayat. (*See* Dkt. 292 ¶ 222). But, upon closer examination, this theory merely raises an issue of share dilution. For Khanna contends that, when he was terminated, his shares ceased to vest, and Banks planned to offer Khayat new shares that would give him a "larger share of Shimbly." (*Id.* ¶ 223; *see also id.* ¶ 126). Delaware law is quite clear that claims of share dilution are "neatly" derivative. *Brookfield*, 261 A.3d at 1268. So, Khanna cannot proceed on this theory either. To the extent he claims Banks truly stole his shares— which are his personal property—that theory is undeveloped, and he does not plead a claim for conversion of those shares. *See Foley v. Session Corp.*, 2025 WL 2612595, at *10 (Del. Ch. Sept. 9, 2025) (recognizing a "corporation has no power to deprive a stockholder of its property by fiat" and recognizing conversion as a valid cause of action to remedy situations where a corporation or its directors steal shareholder property).

Next are Khanna's allegations of reputational damage and emotional harm stemming from the Banks's tortious scheme. These allegations of individualized harm are new to his Second Amended Complaint. (*Compare* Dkt. 186 ¶¶ 99–100, *with* Dkt. 292 ¶¶ 124–26). Each allegation, however, ties back to harm Khanna suffered vis-à-vis the corporation or relate to his termination. Khanna's claims that he suffered fewer job prospects and reputational damage because of the scheme all flow directly from the harms inflicted upon Shimbly. (*See* Dkt. 303 at 10). When connected to Khanna's allegations that Banks breached her fiduciary duties to the corporation (and to him) or concealed material information from him in sabotaging the company, those harms trace back to how industry members and the public viewed Khanna after his business concept failed. Khanna could not possibly prevail on these claims "without showing an injury to the corporation." *Tooley*, 845 A.2d at 1039. Moreover, Khanna's claims of decreased earning capacity and lost

income relate to his wrongful termination claims, which remain stayed pending binding mediation. (Dkt. 35).

Finally, Khanna's two-sentence argument that he need not show an individual harm to pursue his direct claims because this case involves a "change of control situation" is unavailing. (*See* Dkt. 316 at 2). *Revlon* establishes that public companies' boards of directors have certain obligations to maximize shareholder value when considering a sale or merger. *See Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 182–85 (Del. 1986). Accordingly, "equity holders confronted by a merger in which derivative claims will pass to the buyer have the right to challenge the merger itself as a breach of the duties they are owed." *Brookfield*, 261 A.3d at 1276–77 (quoting *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1252 (Del. 2016)). This is not at all the scenario that Khanna has alleged. Shimbly was not owned by a "diversified group of public equity holders," but rather was a start-up company with only three shareholders. *Id.* at 1266, 1276 n.133. And while Khanna has alleged that Banks and others drove the value of the company into the ground, he has not alleged that it was ever put up for sale. The limited direct right of public equity holders to challenge whether a public company's board of directors acted in accordance with their fiduciary duty to maximize shareholder value in a change of control situation has no applicability here.

For the above reasons, the Court concludes that Khanna has failed to remedy the defects in his First Amended Complaint and does not allege any harm that he suffered separate from harm to Shimbly. Accordingly, Khanna's direct shareholder claims in Counts I and III, for breach of fiduciary duty and fraudulent concealment are dismissed with prejudice. *See Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (recognizing that claims may be dismissed with prejudice when a plaintiff repeatedly fails to cure the deficiencies

in his Complaint). So too are his claims for gross negligence (Count XV) and unauthorized filing (Count XVI), which depend entirely on the same harms that support his claims in Count I and III. The Court's prior ruling that Khanna has alleged a limited direct claim for breach of contract stands. (*See* Dkt. 240 at 13).

## III.    Trade Secret Claims (Counts VII and IX)

The Court previously dismissed Counts VII and IX of Khanna's First Amended Complaint, which alleged violations of the Illinois Trade Secrets Act and a claim for conversion of trade secrets, because he failed to plead "that he owns any trade secrets or other property separate and apart from that belonging to Shimbly." (Dkt. 240 at 14). Khanna's allegations supporting these claims in his Second Amended Complaint are identical, and he has not alleged that he personally owned any of the trade secrets or intellectual property that Banks stole. (*See, e.g.*, Dkt. 292 ¶ 160 ("Katy Banks has engaged in actual and threatened misappropriation of Shimbly's Trade Secrets."). In his responses to both Defendants' Motion to Dismiss, Khanna does not even attempt to explain how he has alleged that he personally owned any of the trade secrets Banks is alleged to have stolen. Instead he goes to great lengths to explain what Shimbly information, features, coding, and concepts Banks stole.  (*See, e.g.*, Dkt. 306 at 14–17). In advancing this argument, Khanna essentially concedes that these claims only concern theft of *Shimbly* property—not his own. Accordingly, he may only litigate them derivatively. The Court dismisses Counts VII and IX with prejudice.

## IV.    Aiding and Abetting Claims (Counts II, IV, and VIII)

Khanna realleges three claims against the Conspiring Defendants for aiding and abetting Banks's breaches of fiduciary duties (Count II), fraudulent concealment (Count IV), and violations of the Illinois Trade Secrets Act (Count VIII). The Court has now dismissed all three of those

direct claims with prejudice. Without a predicate tort, Khanna cannot proceed with his aiding and abetting claims. *Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*, 897 F.3d 797, 806 (7th Cir. 2018) (without an underlying tort, derivate claims for aiding and abetting fail) (citing *Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003, 1008 (7th Cir. 1989)). The Court dismisses Counts II, IV, and VIII with prejudice.

## V.     Defamation and False Light as to Defendant Somerville (Counts XII & XIV)

Defendant Eirik Somerville argues that Khanna's defamation and false light claims should be dismissed as untimely. (Dkt. 303 at 17–19). Khanna alleges that Somerville defamed him by publishing materially false statements about him in two separate reports: the "Somerville Report" and the "Hussein/Somerville Report." (Dkt. 292 ¶¶ 181, 183). The Court previously dismissed Khanna's false light and defamation claims against Somerville with prejudice insofar as they relied on statements included in the Somerville Report. (Dkt. 240 at 16–17). That report was published more than one year prior to Khanna's filing of this lawsuit, subjecting it to Illinois's statute of limitations for defamation and false light claims. *See* 735 Ill. Comp. Stat. 5/13-201. Because Somerville was not added as a Defendant in this case until 2023, when Khanna filed his First Amended Complaint, (Dkt. 186), he argues that Khanna's claims predicated on the Hussein/Somerville Report, which was also published sometime in October 2020, are likewise untimely.

Illinois has a one-year statute of limitations governing both defamation and false light claims. 735 Ill. Comp. Stat. 5/13-201; *see Ciolino v. Simon*, 170 N.E.3d 992, 1005 (Ill. App. Ct. 2020) (recognizing the one-year statute of limitations for defamation also applies to false light). The one-year clock ordinarily starts to run on the date the defamatory statements are published. *Ciolino*, 170 N.E.3d at 1005. In certain circumstances, however, the discovery rule may delay the

date on which a defamation or false light claim accrues. Some Illinois courts have held that "when a plaintiff does not know and cannot reasonably know about the existence of material defaming him, the cause of action accrues at the time the plaintiff knows or should know that the defamatory material exists." *Id.* at 1005–06 (citing *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 334 N.E.2d 160, 164 (Ill. 1975)). Others have applied the discovery rule more narrowly in the defamation context because Illinois adheres to the "single-publication rule," meaning the first time an offending work is published controls for statute of limitations purposes, regardless of how many subsequent publications or distributions there may be. *Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1194 (Ill. App. Ct. 2006). To avoid conflict with the rationale underlying the single publication rule, those courts apply the discovery rule only if a first publication was "hidden, inherently undiscoverable, or inherently unknowable." *Id.* at 1195.

Khanna brought his claims against Somerville approximately three years after the Hussein/Somerville Report was published in October 2020. (Dkt. 186; Dkt. 292 ¶¶ 80–84). Thus, his claims against Somerville are untimely unless he can demonstrate the discovery rule applies. But even under the more expansive view of the doctrine as applied in this context, Khanna does not claim that he did not know or could not have reasonably known about the allegedly defamatory Hussein/Somerville Report. To the contrary, he received prompt notice of both reports and even requested that Somerville issue a retraction or correction—a request that Somerville promptly refused. (Dkt. 292 ¶ 184). Khanna maintains that the discovery rule applies because he did not know of Somerville's malicious intent in publishing the report until 2023, when he learned of Somerville's awareness of and participation in Banks's fraudulent scheme. (*Id.* ¶ 188). But Khanna stretches the discovery rule too far. The date on which Khanna uncovered information about Somerville's state of mind has nothing to do with when he discovered the underlying defamatory

report. Nor does Somerville's state of mind change the character of the statements included in that report. Even though Somerville's mental state may be relevant to a possible affirmative defense of qualified privilege, Khanna's ignorance to Somerville's mental state did not prevent him from pleading a claim of defamation or false light within the applicable statute of limitations. *See Kreith v. Am. Airlines, Inc.*, 2021 WL 780716, at *4 (N.D. Ill. Mar. 1, 2021) (citing *Kainrath v. Grider*, 115 N.E.3d 1224, 1233 (Ill. App. Ct. 2018)) ("[Q]ualified privilege is an affirmative defense to defamation, not an element of a defamation claim."); *Chi. Bldg. Design., P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014) (recognizing that plaintiffs need not "anticipate and attempt to plead around defenses"). The discovery rule applies to plaintiffs who could not possibly have had the necessary information to state a prima facie claim within the statute of limitations. That is not the case here. Khanna knew of the Hussein/Somerville Report, he knew that Somerville published it, and he instantly believed the statements contained in that report were defamatory. Accordingly, the discovery rule does not apply.

Because Khanna did not bring his defamation or false light claims against Somerville within the applicable one-year statute of limitations, Counts XII and XIV of his Second Amended Complaint against Somerville are dismissed with prejudice.

## VI. Intentional Infliction of Emotional Distress (Count XVIII)

Finally, Banks moves to dismiss Khanna's intentional infliction of emotional distress ("IIED") claim. To state a cause of action for IIED under Illinois law, a plaintiff must allege that (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that her conduct would inflict severe emotional distress; and (3) the defendant's conduct did cause severe emotional distress. *Sun v. Xu*, 99 F.4th 1007, 1013 (7th Cir. 2024). To "qualify as outrageous, the nature of

the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017) (quoting *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 83 (Ill. 2003)). "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not suffice to state an IIED claim. *Id.* (citation modified). "Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of a particular case." *Franciski v. Univ. of Chi. Hosps.*, 338 F.3d 765, 769 (7th Cir. 2003).

The Court previously dismissed Khanna's IIED claim against Banks because his allegations did not come close to alleging extreme or outrageous conduct. Specifically, the Court found that the thrust of Khanna's Complaint boiled down to a business dispute gone bad, whereby his co-founder "devised and executed a scheme to force him out of a company they created together." (Dkt. 240 at 21).

Khanna's Second Amended Complaint includes new allegations that cast Banks's conduct in a more sinister manner. He contends that Banks did not merely force him from the company, but went so far as to "firebomb" Shimbly, steal its IP, use company funds to sue him, and render the corporation and all Khanna invested in it worthless. (*See* Dkt. 316 at 17). He also points to several incidents that were psychologically menacing and humiliating. For example, that Banks and Khayat invoked a meme from the movie *Saw* wherein the fictional serial killer is depicted with his signature quote: "Want to play a game?," referencing what might happen to Khanna if he continued to expose Banks's corporate misconduct. (Dkt. 292 ¶ 226). Banks and Hussein also called Khanna "gross looking and ugly" to humiliate him. (*Id.* ¶ 236 ). Additionally, Khanna describes a blackmail campaign whereby Banks threatened to destroy Khanna's law license if he did not resign from Shimbly, and proceeded to file a complaint with the California Bar Association

which he was forced to defend. (Dkt. 292 ¶¶ 126, 240). According to Khanna, these coordinated efforts amount to a "calculated and malicious campaign" that is sufficient to state an IIED claim.

Khanna has still fallen short of pleading conduct that could plausibly be considered "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Richards*, 869 F.3d at 566; *see Kibbons v. Taft Sch. Dist. 90*, 563 F. Supp. 3d 798, 813 (N.D. Ill. 2021) (noting the "standard for liability for IIED is quite high"). First, Khanna has not plausibly alleged that Banks occupied a position of power or authority over him, such that her conduct can be viewed as inherently extortive. *See Milton v. Ill. Bell Tel. Co.*, 427 N.E. 2d 829, 832 (Ill. App. Ct. 1981). Unlike the cases Khanna cites for support, which involve, for example, a telephone installer as compared to the large corporation that employed him, Khanna and Banks were co-founders, each occupying high-ranking positions within Shimbly. *Id.* The mere fact that Banks threatened to come after Khanna's law license if he decline to resign from Shimbly did not vest her with some greater power, "actual or apparent . . . to damage [Khanna's] interests." *Id.* Further, Khanna does not specify what claims Banks made against him in the California Bar Association proceeding, merely stating that she brought a fraudulent complaint and threatened to destroy his license, (Dkt. 292 ¶ 126(e); 237(iii)).

Khanna's also does not plausibly allege conduct that was so psychologically menacing as to substantiate his IIED claim. The use of a violent meme from a fictional movie in the context of an emotionally charged business dispute may have been offensive and even threatening but, without more, is not so severe as to constitute extreme or outrageous conduct. And that Banks once called Khanna "gross looking and ugly" is an example of a quintessential insult or indignity that is not actionable as outrageous conduct. *Richards*, 869 F.3d at 566.

The remainder of Khanna's allegations do not save his IIED claim, for largely the same reasons underlying the Court's previous dismissal. That is, Khanna and Banks's time as business partners obviously came to a sharp and calamitous end, and Khanna has certainly alleged conduct that is improper and perhaps even illegal—as will become evident as the remaining claims in this case proceed. But the conduct that Khanna describes does not proceed beyond what can be tolerated in a civilized society. His IIED claim, therefore must be dismissed for again failing to sufficiently allege extreme or outrageous conduct.

The Court notes that Khanna's IIED claim fails for the independent reason that he has not alleged any facts that support the third element of IIED—what specific and severe emotional distress he suffered. *See Sun*, 99 F.4th at 1013. The Court noted in its prior dismissal that "Khanna's allegations lack specificity as to the specific emotional distress Khanna suffered." (Dkt. 240 at 21). But again in his Second Amended Complaint, Khanna merely states that he "suffered severe emotional distress" including "personal humiliation, mental anguish, and suffering." (Dkt. 292 ¶¶ 126(f), 240). "Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 684 (Ill. App. Ct. 1999) (quoting *Public Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976)). Khanna's declarations about the harms he suffered are insufficient to withstand Banks's Motion to Dismiss.

For the above reasons—and because Khanna has failed to remedy the deficiencies in his Complaint with respect to his IIED claim despite having the opportunity to do so—Count XVIII is dismissed with prejudice.

18

**<u>CONCLUSION</u>**

For the reasons set forth above, the Cindy Banks Team, Cindy Banks, Tony Banks, and Eirik Somerville Motion to Dismiss [299] is granted in full. Counts II, IV, and VIII, to the extent they allege claims against the moving Defendants, are dismissed with prejudice. Counts XII and XIV as to Defendant Somerville are dismissed with prejudice.

The Banks and Shimbly Motion to Dismiss [313] is granted in part and denied in part. Counts I, III, VII, IX, XV, XVI, XVII, and XVIII are dismissed as specified in this Opinion and Order. To the extend Banks and Shimbly seek dismissal of claims that are stayed pending mediation, (Dkt. 313 at 2), the motion is denied.

Virginia M. Kendall
United States District Judge

Date: October 28, 2025