**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEREK KHANNA, individually and derivatively on behalf of Shimbly Corporation, | ) | No. 21 C 5752 |
| *Plaintiff*, | ) | Chief Judge Virginia M. Kendall |
| v. | ) | |
| KATELYNN BANKS et al., | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION AND ORDER**

There are two competing motions before the Court. Plaintiff Derek Khanna moves to voluntarily dismiss without prejudice under Federal Rule of Civil Procedure 41(a)(2). (Dkt. 382). Defendant Katelynn Banks moves to dismiss with prejudice under Federal Rule of Civil Procedure Rule 41(b) and to impose sanctions under 28 U.S.C. § 1927. (Dkt. 385). For the reasons below, the Court denies Khanna's motion (Dkt. 382), grants Banks' motion (Dkt. 385), and sanctions Khanna.

**BACKGROUND**

The issues underlying this dispute are multitudinous and cover whole swaths of this five-year-old case, including myriad motions, Court orders, oral arguments, settlement conferences, and other filings. The Court breaks down all relevant conduct before discussing the merits of each motion.

**I. Conduct Before the Close of Fact Discovery**

Plaintiff Derek Khanna is a licensed attorney in California, a graduate of Georgetown University Law Center, and a Yale Law School Visiting Fellow. He sued his ex-girlfriend, Defendant Katelynn Banks, in what started as a sixteen-count Complaint in 2021 but then

ballooned into an eighteen-count Complaint when Khanna sued Banks' parents and friends in his First Amended Complaint. (Dkt. 186). Indeed, in this First Amended Complaint, Khanna sued Banks' mother and father—Cindy and Tony Banks. (*Id.*) He also sued Eirik Somerville—the man who gave Khanna and Banks $100,000 to start Shimbly Corporation (which Khanna squandered and spent on himself). (*Id.*) Khanna also sued Maryam Hussein, the man who analyzed Shimbly Corporation's technology and advised that it would not be successful (*Id.*). Khanna's allegations are lengthy, caustic, and built upon his falling-out with Banks.

The case was originally assigned to another district court judge on October 27, 2021 and this Court received the case in January of 2023, when that judge retired. During the Court's Initial Status Hearing, the Court's assessment of the facts led the Court to offer an immediate settlement conference to see if the case could be resolved. The parties engaged in protracted settlement discussions over many sessions, often after the Court directed the parties to share various pieces of discovery, only to have the discussions fail regularly and turn into emotional, vitriolic battles. Finally, the Court ordered the parties to engage in discovery and to bring their disputes to the Magistrate Judge.

Over the last five years, the parties—and the Court—have expended exorbitant time on this case. The parties engaged in significant motions practice, fighting over practically every aspect of the case, from multiple rounds of briefing on motions to dismiss (*see, e.g.*, Dkts. 17, 209, 313), motions to compel (*see, e.g.*, Dkt. 56), motions to strike, (*see, e.g.*, Dkt. 41), and motions to show cause and for sanctions (*see, e.g.*, Dkts. 99, 155, 172). By the time the parties finished briefing motions to dismiss Khanna's Second Amended Complaint, the case had been pending for three years, eight months, and eleven days.

Virtually every step of the way, the parties sought extensions and struggled to move through discovery. The Court has extended fact discovery over a dozen times. (*See, e.g.*, Dkts. 54, 68, 82, 96, 142, 156, 178, 227, 295, 314, 321, 325, 328). When granting the final extension in August 2025, however, Magistrate Judge Holleb Hotaling warned that she "WILL NOT extend this fact discovery deadline again." (Dkt. 328). Judge Holleb Hotaling set the final fact discovery deadline for October 31, 2025. (*Id.*)

Right before fact discovery closed, Khanna filed a 342-page motion to compel that violated Local Rule 26.2 and the page limit requirement, which Judge Holleb Hotaling denied. (Dkt. 328). After giving Khanna two more attempts to correct his filing, Judge Holleb Hotaling was able to set a briefing schedule. (Dkts. 329, 331, 332). This motion, which had 54 footnotes to skirt the page limit requirement, required Judge Holleb Hotaling to conduct *in camera* review of many privileged documents and hear oral argument. (Dkts. 335, 337). In this motion, Khanna, relying on privileged communications, asserted that production was necessary because of Banks' discovery misconduct and strategy to stall and "ignore" Khanna. (Dkt. 331). During oral argument, Judge Holleb Hotaling admonished Khanna for violating the rules. (Dkt. 337). Judge Holleb Hotaling "largely denied as a whole" Khanna's motion and ordered Banks to produce certain cover pages and amend her privilege log by October 7, 2025. (*Id.*) Judge Holleb Hotaling ruled that "[t]he fact discovery deadline of 10/31/2025 remains set" and that the "parties are to file an updated joint status report on 11/3/2025 setting forth a proposed expert discovery schedule[.]" (*Id.*)

About a month later, on October 28, 2025, the Court issued its Memorandum Opinion and Order on Defendants' motions to dismiss. (Dkt. 339). This ruling significantly narrowed the dispute. All that was left after the Court's Order was one Defendant—Banks—and two of Khanna's claims: Count XI for defamation and Count XIII for false light, both under Illinois state law. These

state law claims are bound by a one-year statute of limitations. 735 Ill. Comp. Stat. 5/13-201; *Ciolino v. Simon*, 170 N.E.3d 992, 1005 (Ill. App. Ct. 2020).

The Court held a status hearing the next day and ruled that dispositive motions shall be filed by January 30, 2026. (Dkt. 340). During that status hearing, Khanna's only update was that the parties were going through last minute written discovery responses. (*Id.*) Khanna acknowledged expert discovery but raised no issues about it. (*Id.*)

## II. Conduct After the Close of Fact Discovery

Fact discovery closed on October 31, 2025. (Dkts. 337, 342). In the parties' status report, they acknowledged that fact discovery had closed. (Dkt. 341, ¶¶ 1, 4). They agreed on an expert discovery schedule for Khanna to "disclose his experts by December 15, 2025" and for Banks to depose them by January 20, 2026. (*Id.*, ¶ 5). Compared with the expert discovery schedule that had been in place since July 29, 2025, this new expert discovery schedule pushed the deadline back just two months. (*Compare id. with* Dkt. 321). The parties raised no other issues in their status report. (*Id.*) Judge Holleb Hotaling adopted the new expert discovery schedule. (Dkt. 342).

During expert discovery, on December 23, 2025, Banks moved to bar Khanna's expert. (Dkt. 343). Banks asserted that Khanna violated Rule 26 because his full disclosure was one sentence: "Mr. Smith is expected to offer opinions concerning the valuation of Shimbly and the economic damages suffered by Plaintiff." (*Id*. at 1). Banks asserted that Khanna "failed to provide any required supporting documentation, other than a CV," and failed to respond to Banks' Rule 37 letter and conference request. (*Id.* at 1-2). Judge Holleb Hotaling ordered Khanna to respond to Banks' motion by January 5, 2026. (Dkt. 344). After Banks filed her motion, but before Khanna's response was due, Khanna's attorney, Ryan P. McLane, moved to withdraw. (Dkt. 345). McLane represented that the decision was "mutual." (*Id.* at 1); (Dkt. 345-1, ¶ 6).

On January 5, 2025, the Court ordered McLane and Khanna to appear for a status conference on January 8, 2026. (Dkt. 347). The Court did not rule on McLane's request to withdraw. (*Id.*) Khanna failed to respond to Banks' motion to bar his expert. (*Id.*); (*compare with* Dkt. 344 ("Plaintiff shall file a response by 1/5/2026")). On January 6, 2025, Judge Holleb Hotaling noted that Khanna violated her Order (Dkt. 344) and ruled that "Plaintiff (currently still represented by counsel) has missed the deadline for filing his response brief in opposition to Defendant's motion to bar Plaintiff's expert Stan Smith [Dkt. 343], which was due 1/5/2026. Plaintiff's response SHALL be filed no later than noon on 1/7/2026 (with an explanation for its tardiness) or the Court will consider the motion unopposed." (Dkt. 348). Later that day, despite still being represented by Counsel, Khanna filed a *pro se* response to Banks' motion. (Dkt. 350).

Khanna did not dispute "the accidental non-compliance of the rules[.]" (*Id.* at 2). Khanna conceded that "the disclosure was incomplete" but represented that the "omission was not strategic or in bad faith" and that he was "prepared to cure **immediately**." (*Id.* at 3) (emphasis added). Khanna argued that "[a]ny prejudice is curable through modest schedule adjustments[.]" (*Id.* at 4). He stated that his "counsel [McLane] withdrew on December 31, 2025" and that Khanna "was disappointed and alarmed that his former counsel had made this mistake and [was] moving quickly to address this matter." (*Id.*) He further asserted that he "intends to immediately seek leave to amend the Complaint . . . which may alter claims and require an updated case schedule." (*Id.* at 5). He also stated that he "anticipates filing discovery motions imminently that bear on damages/valuation evidence." (*Id.* at 6). That same day, Khanna filed a motion for CM/ECF E-Filing privileges as a *pro se* litigant and represented that he "understands and agrees that" he "must comply with the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Illinois, and all CM/ECF procedures and technical requirements[.]" (Dkt. 351, ¶ 5).

Two days later, on January 8, 2026, the Court held a status hearing. (Dkt. 354). McLane represented that he was withdrawing because he was not competent to handle the remainder of the case and was dealing with personal issues. (*Id.*) The Court ordered Khanna to retain new counsel by February 10, 2026, and further warned Khanna to act quickly because of his delays and habitual shuffling of attorneys. (*Id.*) Khanna did not move for leave to file an amended complaint or discovery motions; the Court did not reopen discovery, extend expert discovery, or grant the parties leave to file any discovery-related motions. (*Id.*)

Banks filed her response to Khanna's opposition on January 13, 2026. (Dkt. 356). Banks noted that Khanna failed to produce any "tax returns or other income information, which would presumably be relied upon by Stan Smith to calculate any conceivable damages." (*Id.* at 2). The next day Judge Holleb Hotaling ordered Khanna "to submit to the Court's Chambers inbox . . . a copy of his engagement letter with Stan Smith showing when he was retained by [Khanna] and a copy of Stan Smith's expert report." (Dkt. 357). Khanna then went on a filing spree.

## III. Khanna's Post-Discovery Filing Spree

Khanna filed seven motions in fourteen days. (Dkts. 358, 359, 361, 363, 365, 370, 379) (the "Seven Frivolous Filings").

On January 15, 2026, Khanna filed two motions without leave of Court. The first was a 29-page motion to file a Third Amended Complaint to "cure derivative standing." (Dkt. 358) (capitalization and emphasis removed). Khanna sought to add additional "[r]eplacement" allegations for his dismissed Count XVII. (*Id.* at 16-26); (*see* Dkt. 339) (dismissing Count XVII on October 28, 2025). He sought to amend his prayer for relief to add punitive damages against Banks on issues irrelevant to any live claim, including:

> for her willful, wanton, malicious, fraudulent, and oppressive conduct . . . including but not limited to: (i) deliberate efforts to destroy Shimbly and divert Shimbly's

> trade secrets, intellectual property, and corporate opportunities for Banks's personal benefit and for the benefit of her family's business . . . (ii) statements and plans to "firebomb" Shimbly, "render Shimbly useless," and to "screw over" Plaintiff; (iii) extortionate/coercive threats and retaliation intended to prevent Plaintiff from exposing her misconduct and ongoing fraud . . . and (iv) obstruction of this action . . . including spoliation of evidence, refusal to produce evidence, and false testimony . . . .

(*Id.* at 27); (*see also id.* at 10-11) (further accusing Banks of "conduct approaching criminality, including extortion/coercion") (cleaned up). Khanna blamed his untimeliness on his counsel's lack of "knowledge and capacity." (*Id.* at 3-5); (*see also id.* at 9) (Khanna's counsel's "lack of competence is a key reason why this Motion was delayed and why he was removed."); (*id.* at 15) (same). Khanna asserts he "moved to amend promptly" after the Court's October 28, 2025, Order. (*Id.* at 4); (*see also id*. at 5-15) (raising a litany of reasons justifying delay and asserting diligence).

Khanna concurrently filed a 65-page motion to compel "complete" and "verified responses to Plaintiff's First Set of Interrogatories" and "Plaintiff's First Requests for Production of Documents[.]" (Dkt. 359 at 1).[1] Khanna states that he served Banks with these requests less than two months before discovery closed, on September 6, 2025. (*Id.* at 1-2). The predicate for his arguments are discovery disputes dating back to 2022. (*Id.* at 4-7). Khanna argues timeliness because "part of discovery [is] stayed and still has not begun" and he "seeks to enforce written discovery that was timely served—and was due—before the close of fact discovery." (*Id.* at 8). Khanna represented that the information sought "goes directly to the merits of the claims and defenses . . . and to issues the parties have litigated throughout discovery[.]" (*Id.* at 10).[2]

[1] It is not entirely clear which set of discovery Khanna is referencing as he later contradicts himself by stating that he is referring to his Third Set of Interrogatories and Second Set of Requests for Production. (Dkt. 359 at 7). The exhibits appear to reference the latter but do little to absolve the confusion as they are largely unintelligible—many fully redacted, others incoherent screenshots without explanation. (*See, e.g.*, *id.* at 23-30). Moreover, Khanna included several screenshots that are just pictures of Banks and her social media posts. (*See, e.g.*, *id.* at 32-33).

[2] The requests Khanna sought to compel concerned information irrelevant to any active claim—like "Shimbly['s] Bylaws." (Dkt. 359 at 3).

The very next day, January 16, 2026, Khanna filed—again without leave of Court—a 115-page 30-exhibit motion for sanctions. (Dkt. 361). Khanna accuses Banks of "willful misconduct, including potential perjury[.]" (*Id.* at 1). Khanna demanded an "Order to Show Cause" why Banks should not be held in contempt of Court for "multiple violations" of minute entry orders concerning resolved discovery disputes dating back to November 9, 2022, and March 9, 2023. (*Id.* at 6); (*see* Dkts. 69, 112). Khanna represented that he had a "right" to obtain this information because it is necessary to prove his "trade secret theft claim[.]" (*Id.* at 6-7, n.1).[3] Khanna then rehashed years' worth of discovery disputes through a backwards-looking ESI forensic reconstruction rant repeatedly accusing Banks, her attorneys, and others of perjury, criminal conduct, and the like. (*See id.* at 6-19). Many of the communications at issue appear to be subject to attorney-client privilege. (*Id.*) Khanna justifies his delay by pointing to Banks' apparent misconduct from years prior. (*Id.* at 19-22). Khanna then raises a litany of demands, including holding Banks in contempt of court, finding that she committed perjury, and entering a default against her; Khanna included more pictures of Banks with this filing. (*Id.* at 22-24); (*see also id.* at 60, 62, 64, 66) (pictures of Banks and her social media).

Four days later, on January 20, 2026, Khanna filed yet another motion—again without leave of Court—titled a "Motion For Clarification Regarding Application Of The 'Agreed Protective Order' To Materials Filed On The Public Docket And Not Listed On Any Privilege Log." (Dkt. 363) (capitalization removed). Khanna apparently filed this 19-page motion for the Court to issue an order delineating the scope of the protective order as it relates to Khanna's recent filings; but in it he raises and addresses arguments from Judge Holleb Hotaling's August 2025 minute entry order concerning sealing procedures. (*Compare id.* at 8 *with* Dkt. 328); (*see also id.*

[3] Khanna has no active claim for trade secret misappropriation. (*See* Dkts. 339, 358).

at 12-13) (requested relief). Khanna also moved for "practical guidance" yet raised arguments under the First Amendment. (*Id.* at 10-12).

Two days later, Judge Holleb Hotaling summarily denied Khanna's motion to compel because it "should have been brought before the close of fact discovery" and was "untimely by nearly 90 days[.]" (Dkt. 364).

The next day, Khanna filed another motion without leave of Court, this one seeking an "Emergency Motion To Modify The Scheduling Order, Reopen Fact Discovery For A Limited Purpose, Lift The Partial Stay, And Continue Dispositive-Motion Deadlines (and, To The Extent Necessary, Objection Under Rule 72(a))." (Dkt. 365) (capitalization removed). Khanna asserts that he filed this emergency motion "in immediate response to the January 22, 2026 Order of this Court (Dkt. 364)." (*Id.* at 1). Khanna unleashed a torrent of arguments—many already raised and re-raised in prior motions. For example, Khanna again asserts that his motion is timely because he served the discovery requests at issue during fact discovery but never received a response (*id.* at 7-8); he again states that his counsel was incompetent and "abandoned" him. (*Id.* at 9-10). Khanna also sought to lift the stay that has been in place since April 6, 2022, because it was "preventing discovery on facts that overlap with non-stayed claims and will likely be central to summary judgment issues such as causation and damages." (*Id.* at 11).[4] Despite the stay being in place for over four years of litigation, Khanna represented that "[l]ifting or modifying the stay would not impose undue burden or unfair prejudice on Defendants because the discovery can be time-boxed and limited to overlapping issues, and Defendants have long been on notice of the termination-

[4] For context, on April 6, 2022, Judge Feinerman ordered Khanna and Banks to "submit to binding confidential mediation" on "Khanna's claims for breach of fiduciary duty," "breach of contract," "wrongful and retaliatory discharge, and violations of the Illinois Whistleblower Act." (Dkt. 35 at 5-6) (quotes omitted).

related allegations." (Dkt. 365 at 11); (*see also id.* at 10-13) (raising several new undeveloped and unsupported arguments).

Three days after Khanna's emergency motion, he filed another motion without leave of Court. This was a 37-page "Motion To Require Proof of Authority for Counsel Purporting to Represent Shimbly Corporation and for Related Interim Privilege and Preservation Relief." (Dkt. 370). Khanna asserts that Banks' representation of Defendant Shimbly is fraudulent because she "falsely purport[ed] to represent Shimbly when Shimbly had not authorized the lawsuit and she lacked corporate capacity to do so." (*Id.* at 4). Among a catalog of demands, Khanna requested that the Court appoint a preservation receiver under Federal Rule of Civil Procedure 66 and strip Banks' representation of Shimbly. (*Id.* at 1, 15). Citing his prior motions, Khanna asserted that "evidence proves that . . . Banks was actively deleting Shimbly information." (*Id.* at 5) (citing to Dkt. 155, a 2023 discovery motion by Khanna that he later withdrew, *see* Dkt. 185).

Judge Holleb Hotaling issued her ruling on Banks' motion to bar Khanna's expert on the same day that Khanna filed this "Proof of Authority" motion. (Dkt. 372). Judge Holleb Hotaling barred Khanna's purported expert. (*Id.*) Judge Holleb Hotaling found that Khanna "made an intentional misstatement to both the Court and to opposing counsel[.]" (*Id.* at 5). Despite Khanna "representing in his January 6, 2026 response brief that he was prepared 'to cure immediately' the issues regarding his expert disclosure, he failed to take any action to do so," and, after "the Court ordered [Khanna] to provide his retention letter with Mr. Smith," "the Court soon learned that Mr. Smith was never retained, formed no opinions, and prepared no expert report." (*Id.* at 2). In other words, Khanna deliberately lied to the Court. (*Id.*) Judge Holleb Hotaling found Khanna's arguments and reasons for delay "disingenuous" and "not well received." (*Id.* at 4). In issuing this

"discovery sanction[,]" Judge Holleb Hotaling held that the Court could not "countenance any further delay" from Khanna. (*Id.* at 6).

Judge Holleb Hotaling ordered the parties to prepare for oral argument and a hearing over Khanna's recent motions. (Dkt. 376). As the dispositive motion deadline was days away, Banks filed a modest motion to extend from January 30, 2026 to February 6, 2026, stating that she was "prepared to file [her] Rule 56 motion[.]" (Dkt. 378).[5] That same day, Khanna filed another motion, this one for "Clarification and for Limited Reconsideration." (Dkt. 379) (capitalization removed). In this motion, however, Khanna first sought leave to file a "spoliation motion" against Banks. (*Id.* at 3). He then asked the Court to reconsider its finding that he "made an intentional misstatement" to the Court. (*Id.* at 3-5); (*see also id.* at 6-9). He also sought "reconsideration" of his emergency motion to lift the stay and to reopen and extend fact discovery, even though the Court had not yet ruled on those issues. (*Id.* at 5-6). On February 3, 2026, Judge Holleb Hotaling heard oral argument over Khanna's motions. (Dkt. 381). The Court denied all of them. (*Id.*) During the hearing, Khanna continued making representations that were inaccurate and misleading. (*Id.*) Shortly after the hearing ended, Khanna filed a voluntary motion to dismiss without prejudice. (Dkt. 382). Banks then moved for dismissal under Rule 41(b) and for sanctions under 28 U.S.C. § 1927. (Dkt. 385).

## <u>ANALYSIS</u>

### I. Rule 41(a)(2)

Khanna represents that he "seeks dismissal for case-management and efficiency reasons, including but not limited to conservation of judicial and party resources." (Dkt. 382 at 1). He also represents that his "request is not made for purposes of delay or to gain tactical advantage" and that "Defendant will suffer no plain legal prejudice as a result of dismissal without prejudice." (*Id.*)

[5] In stark contrast, Khanna conceded that he had not even started on any "summary-judgment work." (Dkt. 365 at 12).

Banks responds that she will be severely prejudiced by a dismissal without prejudice after Khanna's "systematic attempt to bankrupt" her "by weaponizing" the Court against her. (Dkt. 385 at 9). Banks asserts Khanna "has not produced a shred of evidence to support any of the claims in his complaint," "abused the Federal Rules of Civil Procedure," "squandered multiple chances to support his baseless allegations," and "created a fictional account of what transpired." (*Id.*) Khanna's "desperate motion to voluntarily dismiss this case without prejudice is a transparent attempt to evade the impact of this Court's numerous orders that were adverse to him," Banks states. (*Id.*) Banks argues that Khanna will "be able to evade imminent summary judgment after developing no support for his claims[.]" (*Id.* at 10). Banks continues that dismissal without prejudice would harm her because Khanna's "unfounded allegations and improper motion practice caused Banks to incur hundreds of thousands of dollars in legal fees," and, should he seek to refile, there is "the potential for lost witnesses who have moved out of the country, and exorbitant legal fees to reinvent the wheel." (*Id.*) Finally, Banks asserts in the alternative that Khanna's remaining claims are "time-barred." (*Id.* at 11).

On Reply, Khanna asserts that Banks' argument—that Khanna's remaining claims are time-barred—is "self-defeating" because "Banks cannot simultaneously argue that Plaintiff is time-barred and that she will be prejudiced by the prospect of refiling." (Dkt. 391 at 3). Khanna claims that Banks' expenses are "routine litigation costs." (*Id.*) He calls loss of witnesses and evidence "speculative." (*Id.* at 3-4). He then posits that Banks' "remaining arguments repackage her sanctions request as Rule 41(a)(2) 'prejudice,'" but whether Khanna's "prior motion practice was appropriate is not the Rule 41(a)(2) prejudice inquiry[.]" (*Id.* at 4). Khanna notes that no parties have filed motions for summary judgment, Banks has filed no counterclaims, and Banks did not "identify any expenses specifically related to trial preparation." (*Id.* at 4, 1). Khanna then raises a

flurry of new arguments for the first time on Reply and "proposes" "terms" for the Court to consider to "eliminate any arguable prejudice[.]" (*Id.* at 4-10).

"Rule 41(a)(2) permits the district court to condition a voluntary dismissal without prejudice on payment of attorneys' fees to the defendant." *Cauley v. Wilson*, 754 F.2d 769, 771 (7th Cir. 1985) (citing Fed. R. Civ. P. 41(a)(2)); *Wells Fargo Bank, N.A. v. Younan Props., Inc.*, 737 F.3d 465, 468 (7th Cir. 2013). "The purpose of awarding attorneys' fees on a voluntary dismissal without prejudice is to compensate the defendant for the unnecessary expense that the litigation has caused." *Id.* at 772. "Fees are not awarded when a plaintiff obtains a dismissal *with prejudice* because the defendant cannot be made to defend again." *Id.* (quotes omitted). "In the case of a dismissal *without prejudice*, however, the defendant may have to defend again at a later time and incur duplicative legal expenses." *Id*. "Thus the fee award should reimburse the defendant for expenses incurred in preparing work product that will not be useful in subsequent litigation of the same claim." *Id*.

"The dismissal of a plaintiff's complaint without prejudice under Rule 41(a)(2) is within the sound discretion of the district court[.]" *Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 473 (7th Cir. 1988); *Nwatulegwu v. Boehringer Ingelheim Pharms., Inc.*, 668 F. App'x 173, 175 (7th Cir. 2016). "The district court abuses its discretion only when it can be established that the defendant will suffer plain legal prejudice as the result of the district court's dismissal of the plaintiff's action." *Id.* (cleaned up); *Simons v. Fox*, 725 F. App'x 402, 406 (7th Cir. 2018). Factors the Court may consider are (1) Defendant's "effort and expense [in] preparation for trial," (2) Plaintiff's "excessive delay and lack of diligence . . . in prosecuting the action," (3) Plaintiff's "insufficient explanation for the need to take a dismissal," and (4) whether Defendant filed "a motion for summary judgment[.]" *Pace v. S. Exp. Co.*, 409 F.2d 331, 334 (7th Cir. 1969); *Kunz v. DeFelice*,

538 F.3d 667, 678 (7th Cir. 2008). "The enumeration of the factors to be considered in *Pace* is not equivalent to a mandate that each and every factor be resolved in favor of the moving party before dismissal is appropriate. It is rather simply a guide for the trial judge, in whom the discretion ultimately rests." *Kovalic*, 855 F.2d at 474 (cleaned up).

Khanna sued Banks on October 27, 2021. (Dkt. 1). Since then, there have been multiple rounds of briefing on motions to dismiss (*see, e.g.*, Dkts. 17, 209, 313), motions to compel (*see, e.g.*, Dkts. 56, 331), motions to strike, (*see, e.g.*, Dkt. 41), and motions to show cause and for sanctions (*see, e.g.*, Dkts. 99, 155, 172), all before the onslaught of motions Khanna filed after the close of fact and expert discovery. *Supra* at 6-11. The time Banks spent defending against Khanna's lawsuit is significant. (*See, e.g.*, Dkts. 11-356); (*see also supra* at 1-11); *Pace*, 409 F.2d at 334; *Kunz*, 538 F.3d at 678. Khanna's attempt to repackage half a decade's worth of litigation expenses as "routine" is unpersuasive. (Dkt. 391 at 3-4). That Banks has not yet presented an exact accounting of her expenses is irrelevant; that disclosure typically comes after the Court issues its decision, not before. (*Id.* at 4). Khanna has forced Banks to endure a federal lawsuit with severe allegations against her for over half a decade. *Supra* at 1-11. That impacts more than just money. It damages credit, public relations, business opportunities, and more. Given the nature of this suit—infighting from the fallout of a relationship that spread to attacks on family and friends—the toll has no doubt been high.

True that motions for summary judgment have not been filed; but that is because Khanna filed seven motions after the close of discovery—forcing the parties to prepare for oral argument and Banks to move for an extension of time—all of which Khanna then mooted by filing his voluntarily dismissal. (Dkts. 378, 394); (*see also* Khanna's Seven Frivolous Filings). Khanna also disregards that Banks represented that she was ready to file her summary judgment brief. (Dkt.

378); whereas Khanna had not even begun to prepare. (Dkt. 365 at 12).[6] Preparing for a motion for summary judgment is onerous and expensive. Banks' time spent is now wasted on two time-barred state law claims. *Ciolino v. Simon*, 170 N.E.3d 992, 1005 (Ill. App. Ct. 2020). Given Khanna's preparation for expert discovery—nothing—as well as his preparation for summary judgment—also nothing—the Court harbors no doubt that Khanna's motion is an attempt to dodge a ruling on the merits.

Khanna's delay and lack of diligence is plain. *Pace*, 409 F.2d at 334; *Kunz*, 538 F.3d at 678. When a Court orders a procedural deadline, parties must abide by it. Fed. R. Civ. P. 16(b)(4); *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011) ("the aims of Rule 16 are to prevent parties from delaying or procrastinating and to keep the case moving toward trial") (quotes omitted); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.") (quotes omitted). True Defendants sought extensions; but Khanna bore the ultimate burden of proof on his claims. Litigation may not go on forever, yet Khanna wholly failed to abide by the Court's scheduling order. *See supra* at 1-11. Khanna "was told exactly what to do and when to do it." *White v. Bentsen*, 31 F.3d 474, 475-76 (7th Cir. 1994). He failed to comply. The repercussions for failing to follow the rules, purposefully delaying litigation, and lacking diligence warrant dismissal—not more opportunities to continue to violate the rules. "One who decides to follow a schedule of his own devising, for reasons of his own invention, has no legitimate complaint when the tribunal adheres to the rules." *Id.*; *Cato v. Thompson*, 118 F. App'x 93, 97 (7th Cir. 2004) ("outright and consistent disregard of a court's scheduling orders can *only* be classified as inexcusable inattentiveness or neglect") (quotes omitted).

---

[6] Banks' motion for extension was to push the deadline shortly past the hearing given that the outcome of the Court's rulings on Khanna's motions could change the scope of dispositive motion briefings. (Dkt. 378).

Consider, for example, Khanna's conduct during expert discovery after the Court dismissed all but two of his claims. (*See, e.g.*, Dkts. 339-350). He failed to retain an expert—much less prepare a report in compliance with Rule 16—and lied to the Court about it. *Supra* at 10-11. He then fired a barrage of frivolous and untimely motions relitigating irrelevant issues—that the Court had already squarely addressed (without, of course, deigning to mention those rulings)—while making baseless caustic attacks against Banks. *Supra* at 6-11. That Khanna—an attorney—chose to proceed *pro se* is irrelevant. *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). On top of all of this, despite lying to the Court about being able to "immediately" cure his expert discovery deficiencies, Khanna took no steps to rectify the situation; he instead dug up the past and blasted Banks with irrelevant filings filled with acerbic attacks next to pictures of her and her social media accounts for the public to see.

Khanna chose to walk a dangerous tightrope fighting against Banks' motion to dismiss with prejudice. Accepting Khanna's positions as true for why he needed to reopen discovery, lift the long-standing stay, or compel responses to long-stale discovery shows that he was *not* diligently pursuing his claims. *See supra* at 6-11. If Khanna *were* diligent, there would be no need for these motions in the first place. Khanna cannot have it both ways and does nothing to rebut this. *Barrett v. Baylor*, 457 F.2d 119, 123 (7th Cir. 1972) ("when an issue is once litigated and decided, that should be the end of the matter") (citing *United States v. U. S. Smelting, Refining & Mining Co.,* 339 U.S. 186, 198 (1950)); *see also Catilina Nominees Proprietary Ltd. v. Stericycle, Inc.*, 2021 WL 5140478, at *3 (N.D. Ill. Nov. 4, 2021) ("Plaintiffs may not ignore the Court's prior ruling and attempt to relitigate an issue already decided"); *Browne v. Waldo*, 2024 WL 1327310, at *3 (N.D. Ind. Mar. 27, 2024) ("a party cannot plunge their head into the sand, pretend the adverse ruling

never occurred, and continue to present the losing argument in defiance of the Court's prior ruling").

Khanna filed his Seven Frivolous Filings—not out of respect for the rule of law or to advance his case—but to ratchet up Banks' fees before throwing in the towel. Khanna did this to retaliate against Banks for filing a lawsuit against him (on claims not before this Court). (Dkt. 387 at 12) ("Banks . . . filed a related action against Plaintiff in Cook County in January 2021, *then voluntarily dismissed that action without prejudice* after Plaintiff incurred substantial legal fees. . . . Banks thus invoked the very same procedural mechanism she now asks this Court to deny Plaintiff—while simultaneously seeking sanctions for Plaintiff's litigation conduct."); (Dkt. 391 at 2) ("After Plaintiff spent substantial money on legal counsel, engaged in motion-practice, and suffered reputational harm from baseless claims in pleadings that Banks *knew were false*, Banks *voluntarily dismissed the Cook County action without prejudice*.").

If that were not all, Khanna's basis for dismissal is facially deficient. (Dkt. 382); *Pace*, 409 F.2d at 334; *Kunz*, 538 F.3d at 678. His sole support is that he "seeks dismissal for case-management and efficiency reasons, including but not limited to conservation of judicial and party resources." (*Id.* at 1). That is hardly believable. *Supra* at 1-11; *infra* at 31-43 (sanctioning Khanna for his conduct); *see Ratkovich By & Through Ratkovich v. Smith Kline*, 951 F.2d 155, 158 (7th Cir. 1991) (affirming the finding that plaintiff's motion to voluntarily dismiss was meritless).[7]

[7] For the first time on Reply, Khanna raised a litany of unsupported attorney argument from changing jobs and "professional obligations" to "avoid[ing] parallel pro se litigation in two forums." (Dkt. 391 at 4-10). Khanna waived these arguments. Indeed, "arguments raised for the first time in a reply brief are waived." *Williams v. Bd. of Educ. of City of Chi.*, 982 F.3d 495, 507 n.30 (7th Cir. 2020); *Knowlton v. City of Wauwatosa*, 119 F.4th 507, 515 (7th Cir. 2024); *White v. United States*, 8 F.4th 547, 552-53 (7th Cir. 2021); *see also David Palacios, Indep. Adm'r of the Est. of David Malito, Deceased, v. City of Joliet, et al.*, 2026 WL 1855869, at *4 (N.D. Ill. June 29, 2026) (raising arguments for the first time on reply results in waiver); *Allen v. Casper*, 2026 WL 674309, at *5 (N.D. Ill. Mar. 10, 2026) (explaining that "a litigant may waive an issue or argument in many ways") (quotes omitted) (cleaned up); *Bakov v. Consol. World Travel, Inc.*, 2026 WL 810913, at *14 (N.D. Ill. Mar. 24, 2026) (failing to raise an argument results in waiver). These untimely positions also lack sufficient support, a separate basis for waiver. "[U]ndeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]" *Jackson v. City of Madison*, 176 F.4th 1005,

Consider too that Khanna intends to pursue additional litigation against Banks. (Dkt. 391 at 5-6). He states that "[t]his Court has also referenced Plaintiff to potentially petition the Delaware Court of Chancery as one method to demonstrate derivative standing[.]" (*Id.*) Khanna "seeks dismissal . . . to heed that guidance," "avoid parallel pro se litigation," and enforce an "agreement reached during court-supervised mediation before the District Judge." (*Id.*) Setting aside that the Court's denial of Khanna's claims with prejudice was not a ticket for Khanna to keep filing, these facts show that dismissal without prejudice would exacerbate—not mitigate—the prejudice Banks will suffer if the Court grants Khanna's motion. *Ratkovich*, 951 F.2d at 158-59 ("to permit the plaintiff to take a voluntary dismissal without prejudice (thus permitting the passage of even more time), creates the risk of even greater prejudice to the defendants should the claim be refiled").

Next, Khanna misconstrues Banks' statute of limitations argument. He considers it "self-defeating." (Dkt. 391 at 1, 3). Khanna disregards that Banks raised it in the alternative. (*See* Dkt. 385 at 10-11) ("Alternatively, Plaintiff Should Not Be Allowed To Revive Claims, If Rule 41(a)(2) Dismissal Is Allowed."). Khanna also proposes a set of demands for the Court to consider to purportedly avoid prejudice. (Dkt. 391 at 6). Khanna is in no position to make such a demand.

At bottom, granting Khanna's motion would severely prejudice Banks. There is no condition of dismissal without prejudice that would not cause severe prejudice. Especially as Khanna apparently intends to refile within the next "18 months." (*Id.*) Even conditioning dismissal without prejudice on a full payment of all of Banks' fees would not do. (*Id.*) No amount of money can revitalize stale evidence, missing witnesses, and fading memories. Banks—who is in the best position to recognize this reality—attests to just that. (Dkt. 385). Moreover, the Court dismissed the majority of Khanna's claims with prejudice—all that remains are two state law claims which

---

1016 (7th Cir. 2026); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991); *Palacios*, 2026 WL 1855869, at *4.

Banks prepared a motion for summary judgment over. (Dkts. 339, 378). That work is not reusable if Khanna refiles another shareholder derivate lawsuit against Banks. Ultimately, Khanna's positions are disingenuous as they raise every red flag of a litigant seeking to forum shop to avoid a ruling on the merits. (Dkt. 391); *Esposito v. Piatrowski*, 223 F.3d 497, 501 (7th Cir. 2000) (discussing how the sections of Rule 41 work together to prevent forum shopping). The Court denies Khanna's motion in full. (Dkt. 382); *Ratkovich*, 951 F.2d at 158-159; *see also Dongguan Deego Trading Co. v. Junyao-US*, 2025 WL 2174325, at *1 (N.D. Ill. July 31, 2025) (sanctioning plaintiff under 28 U.S.C. § 1927, Rule 11, and the Court's inherent authority for violating a Court order and seeking to use a voluntary dismissal to forum shop to avoid adverse rulings).

## II. Rule 41(b)

Banks moves for dismissal under Rule 41(b), contending that "[a]fter five long years of protracted, vexatious and costly litigation, Plaintiff's remaining claims should be dismissed with prejudice on the merits, pursuant to Rule 41(b)." (Dkt. 385 at 9). She continues that dismissal with prejudice is proper because Khanna's motion seeks to skirt the impact of the Court's orders dismissing his claims, precluding his expert, and barring discovery. (*Id.* at 9-10).

Khanna counters that "there is no record of failure to prosecute." (Dkt. 391 at 6) (italics and capitalization removed). Banks' position is "internally inconsistent," he claims, because she is "simultaneously alleging legal harassment and failure to prosecute." (*Id.* at 6-7). If "Banks believed the record entitled her to judgment as a matter of law, the proper vehicle was a motion under Rule 56," Khanna claims. (*Id.* at 7). Khanna further argues that "post-discovery motion practice does not establish contumacious conduct" and that Judge Holleb Hotaling did "not find bad faith, did not impose sanctions, and did not recommend dismissal." (*Id.* at 8) (italics and capitalization removed). He claims lesser sanctions are available and that he has not received an

explicit warning. (*Id.* at 8-9). He then blames Banks' "unclean hands" and asserts that the "docket of this case is replete with" Banks' "misconduct," including "systemic and widespread spoliation of evidence" and "defiance of multiple court orders." (*Id.* at 9). "Banks has violated virtually every discovery obligation in this case," Khanna proclaims. (*Id.*) Khanna asserts that "both parties have contributed to litigation delays and discovery difficulties" thus making dismissal with prejudice improper. (*Id.*)

Dismissal under Rule 41(b) is proper under three conditions: when a plaintiff fails to (1) "prosecute" his case, (2) "comply" with the Federal Rules of Civil Procedure, or (3) comply with "a court order." Fed. R. Civ. P. 41(b). When any one of those three violations occur, "a defendant may move to dismiss the action or any claim against it" and it "operates as an adjudication on the merits." *Id.* Dismissal under Rule 41(b) "'depends on the circumstances of the case.'" *Griffiths v. Eggemeyer*, 2025 WL 1527360, at *2 (7th Cir. May 29, 2025) (quoting *McMahan v. Deutsche Bank AG*, 892 F.3d 926, 931 (7th Cir. 2018)). It is proper "'when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing.'" *Salata v. Weyerhaeuser Co.*, 757 F.3d 695, 699 (7th Cir. 2014) (quoting *Webber v. Eye Corp.*, 721 F.2d 1067, 1069 (7th Cir. 1983)). Courts "consider several factors, including the frequency and magnitude of the plaintiff's failures to comply with deadlines, who bears the responsibility for those failures, potential prejudice to the defendants, and disruptions to the calendar of the district court." *Griffiths*, 2025 WL 1527360, at *2 (citing *Ball v. City of Chicago*, 2 F.3d 752, 759-60 (7th Cir. 1993)).

"Although dismissal is a harsh sanction that should be imposed infrequently," "the power to sanction through dismissal is essential to the district courts' ability to manage efficiently their heavy caseloads and thus protect the interests of all litigants." *Salata*, 757 F.3d at 699 (quoting *Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175, 1177-78 (7th Cir. 1987)). Before a Court

dismisses a complaint under Rule 41(b), "[a]n explicit warning is not required . . . so long as there is due warning that dismissal is a real possibility." *Thomas v. Nat'l Educ. Ass'n.–South Bend*, 596 F. App'x 509, 511 (7th Cir. 2015); *see also Fischer v. Cingular Wireless, LLC*, 446 F.3d 663, 665-66 (7th Cir. 2006); *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 632 (1962).

In addition to the Federal Rules of Civil Procedure, "district courts possess inherent authority to dismiss a suit for the plaintiff's lack of prosecution or refusal to comply with court orders." *Nelson v. United States*, 712 F. App'x 573, 575 (7th Cir. 2018) (citing *Link*, 370 U.S. at 630); *James v. McDonald's Corp.*, 417 F.3d 672, 681 (7th Cir. 2005). Similarly, it has long been "clear that a federal court has the inherent power to sanction for conduct which abuses the judicial process." *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991). Courts considering dismissal weigh the prejudice to the defendant and judicial system as well as deterrence and punishment. *See Schilling v. Walworth County Park & Planning Com'n.*, 805 F.2d 272, 275 (7th Cir. 1986); *Ridge Chrysler Jeep, LLC v. DaimlerChrysler Fin. Servs. Americas LLC*, 516 F.3d 623, 627 (7th Cir. 2008).

**a. Failure to Prosecute**

Khanna failed to prosecute his case; he acted contumaciously and vexatiously; and the Seven Frivolous Filings were improper, untimely, and abusive. (Dkts. 358, 359, 361, 363, 365, 370, 379). Fact discovery closed on October 31, 2025. (Dkt. 328, 342). Yet Khanna waited over two months, right up to the eve of the dispositive motions deadline, to file his Seven Frivolous Filings. As they were all late, Khanna was required to show at least good cause for his delay.

Start first with his motion for leave to file his Third Amended Complaint. (Dkt. 358). To amend a complaint after the close of discovery requires both good cause (because Khanna would

have to amend the Court's Scheduling Order) and excusable neglect. Fed. R. Civ. P. 16(b)(4), 6(b); *Murphy v. Eddie Murphy Prods., Inc.*, 611 F.3d 322, 324 (7th Cir. 2010) (quoting Fed. R. Civ. P. 6(b)(1)(A)-(B)). The test for excusable neglect is an "equitable one, taking account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice," "the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect[.]" *Id.* at 392 (quotes omitted).

Khanna failed to show good cause or excusable neglect. Khanna's basis for his untimely amendment was to "address derivative standing and to conform the pleading to the Court's October 28, 2025 Memorandum Opinion and Order." (Dkt. 358 at 1). Well why then did he wait until January 15, 2026, to file? He had everything he needed to file during discovery yet waited months after the deadline. Seeking such an amendment that late would upend the case by forcing the parties back to square one. *See White v. Woods*, 48 F.4th 853, 861 (7th Cir. 2022) (affirming denial under analogous circumstances); *see also Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 850 (7th Cir. 2002) ("The parties had conducted no discovery on this subject, and discovery would have delayed this matter for several months."). Khanna lists ten points justifying his delay. (Dkt. 358 at 4-10). All are frivolous. Khanna cannot blame the holidays, a computer crash, or Banks for his failures. (*Id.*) Khanna claims he "moved to amend promptly." (*Id.* at 4). There is nothing prompt about two months of inaction. Khanna blames his counsel as the source of the delay, claiming he "lacked competence" and failed to act. (*Id.* at 5). Khanna repeats this excuse. *See, e.g.*, *supra* at 6-11; (Dkts. 387, 391). This is unavailing. "[C]lients must be held accountable for the acts and

omissions of their attorneys." *Pioneer*, 507 U.S. at 396. Indeed, "a client may be made to suffer the consequence of dismissal of its lawsuit because of its attorney's failure[s.]" *Id.* Khanna "voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Id.* at 397 (quotes omitted). "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Id.* (quotes omitted); *see also Link*, 370 U.S. at 633 (holding same). Moreover, "attorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant." *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004).

Khanna also blames Banks for the delay, claiming her failure to respond to discovery constitutes good cause and excusable neglect. (Dkt. 358 at 7-8). This point suffers from multiple issues. For starters, none of Khanna's proposed amended allegations refer to a single event after 2022. (*See id.* at 16-26). Khanna had at least three years to timely seek relief to amend his Complaint but failed to do so. Nothing Banks did—or did not do—in September 2025 forced Khanna to sit on his hands for years. Indeed, even if Banks failed to respond in September 2025, that means Khanna apparently had insufficient discovery from at least 2022 until he sought to amend in January 2026; thus, Banks' purported failure changed nothing about Khanna's position. (*Id.* at 7-8); (*see generally* the Seven Frivolous Filings). It only underscores his lack of diligence. Moreover, if Banks did not respond to Khanna's September 2025 discovery requests, that means that from October 6 (when Banks apparently was required to respond) until October 31 (the close of fact discovery), Khanna took no action. (*Id.*) That Khanna now represents that he "reasonably expected supplementation consistent with the pace of discovery in this matter" is disingenuous.

(*Id.* at 7). Rule 37 is not self-executing. Fed. R. Civ. P. 37(a)(3)(B) ("A ***party*** seeking discovery ***may move*** for an order compelling an answer, designation, production . . . . ***This motion*** may be made if . . . .") (emphasis added). The "rules are 'intended to force parties and their attorneys to be diligent in prosecuting their causes of action.'" *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996) (quoting *Geiger v. Allen*, 850 F.2d 330, 331 (7th Cir. 1988)).

Consider next Khanna's motion to compel. (Dkt. 359); *supra* at 7. Rare is the day where a motion to compel filed after the close of discovery is timely. *Packman v. Chicago Trib. Co.*, 267 F.3d 628, 647 (7th Cir. 2001) (affirming order that a motion to compel filed after the close of discovery was untimely); *see also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 332 (N.D. Ill. 2005) ("motions to compel filed after the close of discovery are almost always deemed untimely") (citing *Packman*, 267 F.3d at 647). Khanna's case poses no exceptions. He points to issues that he knew of—yet took no action to remedy—during discovery. *Supra* at 6-11; (Dkt. 359 at 9) ("Plaintiff raised the non-response with defense counsel on October 9, 2025"). While acknowledging that he filed his motion after the close of fact discovery, Khanna nevertheless asserts that the Court should consider his motion "because it seeks to enforce written discovery that was timely served—and was due—before the close of fact discovery." (Dkt. 359 at 8). A party that is aware of an issue during discovery yet sits on their hands and takes no action until after discovery closes is by definition untimely and not diligent. Indeed, "[a]lthough [Khanna] had complaints about . . . the adequacy of [Banks'] responses to [his] discovery requests before the close of discovery, and despite the court's warning[s]," Khanna "waited to file [his] motion to compel until after discovery had closed[.]" *Packman*, 267 F.3d at 647. Judge Holleb Hotaling warned Khanna that discovery would not be extended again. (Dkt. 328). Yet he took no action. This conduct shows a "lack of diligence in pursuing the perceived inadequacies in discovery[.]"

*Packman*, 267 F.3d at 647 (affirming dismissal with prejudice and ruling that the district court "did not abuse its discretion in denying [the] motion to compel as untimely"). Khanna's motion to compel is frivolous. (Dkt. 359). His arguments asserting that he was diligent are disingenuous. (*Id.*); *James*, 417 F.3d at 681 ("Once a party invokes the judicial system by filing a lawsuit, it must abide by the rules of the court; a party cannot decide for itself when it feels like pressing its action and when it feels like taking a break because trial judges have a responsibility to litigants to keep their court calendars as current as humanly possible.") (cleaned up).

Turning now to Khanna's Seven Frivolous Filings as a whole. One of their foundational pillars is Khanna's repeated assertion that Banks engaged in a deliberate strategy to "stall" and ignore him. (Dkt. 359 at 5; Dkt. 361 at 6, 16, 17, 20, 24; Dkt. 370 at 8, n.8; Dkt. 387 at 2; Dkt. 391 at 9). Khanna repeatedly cites to two documents. The first is an undated screenshot of a privileged text message between Banks and her attorney (apparently sent in or around October 5, 2020) where Khanna pulls out one line—where Banks says "Literally ignore him"—from the string of messages concerning Shimbly informing an investor of certain information. (Dkt. 331-1 at 116). The other is another screenshot of privileged communications from September 23, 2022, between Banks and her attorney where Banks is asking for legal advice on how to respond to a discovery letter and asks: "Am I supposed to give Derek any of these things? Or can we stall?" (Dkt. 334-1 at 3).

These are the same arguments he raised in his September 5, 2025, motion to compel. *See supra* at 3 (detailing Khanna's September 5, 2025, motion to compel); (*compare* Dkt. 331 at 20) ("Banks' approach to Plaintiff's discovery requests can be summed up in the advice given by Kyle Coker in the context of Plaintiff seeking such materials in 2021, 'Literally just ignore him.'") (*with* Dkt. 361 at 6) ("Since Plaintiff filed four Section 220 letters asking for the key information of the allegations at hand in 2021, Defendant decided on a specific strategy: 'Literally ignore him.'").

The Court already ruled on each of these issues in its October 2, 2025, Order. (Dkt. 337). The Court "largely denied [the motion] as a whole" and ordered Banks to amend her privilege log by October 7, 2025. (*Id.*). Critically, the Court expressly stated that "[t]he fact discovery deadline of 10/31/2025 remains set[.]") (*Id.*); *see also supra* at 3.

Khanna completely disregards the Court's October 2025, Order. (*Compare* Dkt. 331 at 8-10, 21 (Khanna's September 2025 motion to compel) *with* Dkt. 361 at 7-9 *and* Dkt. 359 at 4-5, 9-10 (seeking same relief as Khanna's September 2025 motion to compel) *with* Dkt. 337 (Court's October 2025 Order denying Khanna's September 2025 motion to compel)). Despite the Court rejecting Khanna's argument, he nevertheless uses it as the factual predicate for five of his Seven Frivolous Filings. (*See* Dkt. 359 at 5; Dkt. 361 at 6, 16, 17, 20, 24; Dkt. 370 at 8, n.8; Dkt. 387 at 2; Dkt. 391 at 9). This is vexatious and contumacious. Moreover, these issues stem from disputes dating back to 2022. (*See* Dkts. 69, 112). It has been litigated over and over. (*See* Dkts. 55-185). "[A] trial court is permitted to say, under proper circumstances, that enough is enough." *Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.*, 869 F.2d 1058, 1062 (7th Cir. 1989) (affirming a Rule 41(b) dismissal).

Equally problematic, as discussed above, is that Khanna has been sitting on the information he now claims shows good cause for his Seven Frivolous Filings for years. *Supra* at 6-11; (*see also* Dkts. 358, 359, 361, 363, 365, 370, 379, 385, 391). None of the evidence Khanna relies on was produced after the close of fact discovery. (*Id.*) (showing no discovery from after the close of fact discovery). Khanna generates an encyclopedic laundry list of excuses why his motions should have been considered, but he cannot overcome this glaring fact. (*Id.*) A party who sits on known facts throughout the discovery period forfeits the right to later claim those same facts are newly unearthed grounds for relief—the Court will not reward parties who manufacture timeliness by

pretending yesterday's evidence was discovered today. *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005); *see also Parker v. Freightliner Corp.*, 940 F.2d 1019, 1025 (7th Cir. 1991) (rejecting analogous arguments where movant blamed the non-movant as the basis for the movant's failure to timely file their motions); *White v. Powell*, 2023 WL 7298941, at *2 (N.D. Ill. Nov. 6, 2023) ("Plaintiff makes no attempt to explain why despite being aware of the evidence supporting the newly asserted allegations, she waited well over a year before seeking leave to amend her complaint. Accordingly, this Court cannot say that Plaintiff was diligent in seeking to amend her complaint."); *Centurylink Commc'ns, LLC v. Peerless Network, Inc.*, 2019 WL 13076639, at *1 (N.D. Ill. Oct. 1, 2019) (denying leave to amend where "Plaintiffs were, or should have been, aware of the facts underlying these newly asserted allegations with more than sufficient time to properly seek leave to amend").

All of these issues and more pervade Khanna's Seven Frivolous Filings and so the Court need not identify every example on Khanna's lack of diligence. Khanna cannot claim that the Court was too stringent in discovery; it extended discovery over a dozen times over the course of half a decade. Khanna failed to prosecute his case.

**b. Violating the Rules**

Khanna has shown a willful disregard for the Federal Rules of Civil Procedure and the Court's orders, repeatedly violating the former while flouting the latter. The Court begins with Khanna's lies. On January 26, 2026, Judge Holleb Hotaling sanctioned Khanna for making "an intentional misstatement to both the Court and to opposing counsel" to avoid having his purported expert barred. (Dkt. 372 at 5); *supra* at 10-11. It is axiomatic that lawyers may not lie to the Court. Fed. R. Civ. P. 11; 18 U.S. Code § 1623; 28 U.S.C. § 1927; American Bar Association (ABA) Model Rule 3.3. Khanna is a licensed attorney in California, a graduate of Georgetown University

Law Center, and a Yale Law School Visiting Fellow. That he filed a *pro se* appearance is irrelevant. He knew he cannot lie to the Court. He did so anyway. This is egregious. *Ayoubi v. Dart*, 640 F. App'x 524, 528-29 (7th Cir. 2016) ("we have held that a dismissal with prejudice is an appropriate sanction for lying to the court in order to receive a benefit from it, because no one needs to be warned not to lie to the judiciary") (citing *Mathis v. N.Y. Life Ins. Co.*, 133 F.3d 546, 547 (7th Cir. 1998) and *Jackson v. Murphy*, 468 Fed. App'x. 616, 620 (7th Cir. 2012)).

Khanna lied while trying to avoid the penalty for violating Rule 26. He was supposed to disclose his experts by December 15, 2025, under Rule 26. (Dkt. 372 at 1). He failed to comply. (*Id.* at 3-6). Khanna took virtually no steps to even begin conducting expert discovery. Khanna's response to Banks' motion to bar raised red flags regarding his candor to the Court (Dkt. 350); calling his bluff, Judge Holleb Hotaling required Khanna to substantiate his positions and provide his expert retention letter. (Dkt. 357). Turns out, Khanna never even retained an expert. (Dkt. 372 at 5-6). Judge Holleb Hotaling sanctioned Khanna under Rule 37 for violating Rule 26, delaying the litigation, disregarding the Court's scheduling order, and admonished Khanna for lying. (*Id.*)

Instead of accepting responsibility, Khanna moved for reconsideration of Judge Holleb Hotaling's finding that he lied. (Dkt. 379 at 3-5). During oral argument, Judge Holleb Hotaling found Khanna's arguments disingenuous, his credibility wanting, and his positions worthy of denial. (Dkt. 381). Even after that, rather than taking stock of his conduct and Judge Holleb Hotaling's rulings, Khanna continued bickering about them. (*See, e.g.*, Dkt. 387 at 7, n.4) (calling his lie a "drafting error" and complaining that "this characterization is not supported in the record").

Khanna repeatedly violated the Court's scheduling order and Federal Rules of Civil Procedure 16(b)(4), (f)(1)(C). Khanna violated the Court's scheduling order and Judge Holleb

Hotaling's August 25, 2025, Order at least six times. He filed Dkts. 358, 359, 361, 363, 365, 370 without leave of Court and after the close of discovery. (Dkt. 328); (*see also* Dkt. 342). He also filed his response to Banks' motion to bar late. (Dkt. 350). Judge Holleb Hotaling ordered Khanna's response to Banks' motion to bar by January 5, 2026. (Dkt. 344). He violated that Order. (*Id.*) He filed his response late and *pro se*—despite being represented by counsel. (Dkt. 350). "[T]here comes a point when a litigant's disregard of scheduling orders becomes so serious that a sanction, including the rendering of the ultimate sanction of dismissal, is in order." *Easley*, 382 F.3d at 698. Indeed, "a trial court has an obligation to control and manage its own docket, and this type of outright and consistent disregard of a court's scheduling orders . . . certainly gives the trial court sufficient reason under Fed. R. Civ. P. 41(b) to involuntarily dismiss an action[.]" *Id.*; *Cato v. Thompson*, 118 F. App'x 93, 97 (7th Cir. 2004) ("outright and consistent disregard of a court's scheduling orders can *only* be classified as inexcusable inattentiveness or neglect, rather than excusable carelessness") (quotes omitted); *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir. 1994) ("Ignoring deadlines is the surest way to lose a case. . . . Lawyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won.") (quotes omitted).

Khanna repeatedly violated Local Rule 37.2 and this Court's Standing Order on Local Rule 37.2. (*See* Dkt. 358) (no L.R. 37.2 statement); (Dkt. 363) (same); (*see also* Dkt. 359) (incomplete and improper L.R. 37.2 statement); (Dkt. 361) (same); (Dkt. 365) (same); *see also* Chief Judge Kendall Standing Order – Discovery ("CJK Standing Order") ("The motion must state with specificity when and how the movant complied with Local Rule 37.2. Parties are reminded that compliance with Local Rule 37.2 requires a good faith effort to resolve discovery disputes[.]"). The purpose of Local Rule 37.2 is "[t]o curtail undue delay and expense in the administration of

justice[.]" L.R. 37.2. Khanna did not make "good faith attempts to resolve differences," but rather placed one call and sprinted to the Courthouse. *Id*. The Court "may require exact compliance with [its] local rules." *Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 349 (7th Cir. 2020); *see also Chavarria v. Bros. Grp. Fleet, Inc.*, 2022 WL 3543541, at *1 (N.D. Ill. Aug. 18, 2022) ("Local Rule 37.2 is obligatory, not optional."); *Savis, Inc. v. Cardenas*, 691 F. Supp. 3d 886, 896 (N.D. Ill. 2023) ("The Court's Local Rules are not suggestions.").

Khanna's filings violated the Court's Standing Order on electronic discovery disputes. Khanna's motion to compel sought an order to "produce responsive documents and ESI." (Dkt. 359 at 8) (capitalization removed). The bulk of Khanna's motion for sanctions attacks Banks' ESI productions and searches. (Dkt. 361 at 7-24). The Court requires the parties "to meet and confer with an IT representative" "*before filing a motion to compel*" regarding ESI. *See* CJK Standing Order. It further requires the "party seeking the discovery" to "bring its IT specialist to this meeting" and that this meeting to "take place in person[.]" *Id.* Khanna complied with none of this. The Local Rules "have the force of law." *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020). This Court "require[s] strict compliance with [its] local rules." *Id.* at 528. Khanna repeatedly violated the Local Rules and the Court's Standing Order.

Finally, Khanna violated 27 U.S.C. § 1927 and Federal Rule of Civil Procedure 11. The Court discusses these violations below when it addresses Khanna's sanctions. *Infra* at 31-43.[8]

In sum, all factors favor dismissal with prejudice. *Griffiths*, 2025 WL 1527360, at *2 (citing *Ball*, 2 F.3d at 759-60). Khanna repeatedly violated the Court's orders and the Federal Rules. These infractions were not minor. They derailed a five-year old case on the eve of summary judgment. Each step of the way—no matter how much he now tries to shrug the blame—Khanna bore the

---

[8] The Court notes that these are not all of Khanna's rule violations, but it need not create an exhaustive list more than it already has.

responsibility for his failures. Anything but dismissal with prejudice would severely prejudice Banks. Because Khanna failed to prosecute his case and violated the Federal Rules and Court Orders, the Court grants Banks' motion for dismissal with prejudice under Rule 41(b). (Dkt. 385).

For the first time on Reply in response to Banks' motion to dismiss under Rule 41(b), Khanna argues that he should be permitted leave to withdraw his motion to voluntarily dismiss under Rule 41(a)(2) if the Court decides to dismiss with prejudice. (Dkt. 391 at 1, 3, 10). First, this position is waived. *Williams v. Bd. of Educ. of City of Chi.*, 982 F.3d 495, 507 n.30 (7th Cir. 2020); *supra* at n.7. At any rate, Khanna misconstrues the rule and the posture of the motions before the Court. It is true that a "plaintiff who moves for dismissal without prejudice under Rule 41(a)(2) must be given a reasonable opportunity to withdraw his motion in the event the district court grants the motion but only with prejudice." *Carter v. City of Alton*, 922 F.3d 824, 826 (7th Cir. 2019) (quoting *Marlow v. Winston & Strawn*, 19 F.3d 300, 305 (7th Cir. 1994)). This is not relevant. The Court is not granting Khanna's motion—it is denying it in full. (Dkt. 382). The Court is granting Banks' motion to dismiss under Rule 41(b). (Dkt. 385). A plaintiff facing a Rule 41(b) motion cannot use a competing Rule 41(a)(2) motion as an escape hatch to avoid a dismissal with prejudice. Nothing in *Marlow* changes that. *Marlow* guarantees a plaintiff the opportunity to withdraw his own motion for voluntary dismissal under Rule 41(a)(2) if the court grants it conditioned on dismissal with prejudice. 19 F.3d 300, 305 (7th Cir. 1994). At bottom, the argument Khanna presents here fares no better here than it did in *Marlow*, where the Court rejected it stating that if plaintiff's "motion is denied . . . he would be expected to comply promptly with the district court's trial calendar, or be subject to involuntary dismissal under Rule 41(b) for failure to prosecute." *Id.* at 306.

## IV. Sanctions

Banks asserts that Khanna "should be sanctioned for his pattern of abusive conduct, pursuant to 28 U.S.C. § 1927[.]" (Dkt. 385 at 1). She asserts that Khanna "abused the process and engaged in a costly campaign of legal harassment starting in 2021," and, after Khanna "failed to develop evidence to support his spurious claims," is now trying to "walk[] away" once he realized that he cannot "fool this Court." (*Id.*) Banks continues that, "after numerous adverse rulings, including a ruling barring Plaintiff's expert, Plaintiff seeks to dismiss the remainder of his baseless claims, pursuant to Rule 41(a)(2) to avoid adjudication on the merits favoring Katelynn Banks." (*Id.* at 2). Banks argues that Khanna's "abhorrent actions should have consequences in the form of sanctions and an award of costs and fees applicable from 2021 forward." (*Id.*)

Banks supports her request for sanctions by explaining that Khanna "repeatedly ignored this Court's admonishments to follow the rules" and "refused to stop filing frivolous motions despite warnings from Katelynn Banks' counsel during Rule 37 conferences." (*Id.* at 6). Banks notes that "[m]ost recently, after rulings from this Court and the close of discovery, Plaintiff aggressively filed a flurry of unnecessary motions in the last month that needlessly increased the cost of litigation." (*Id.* at 7). Banks states that these filings increased costs by forcing her "to research and argue" these "confusing and pointless" motions. (*Id.*) Moreover, Khanna's recent motions were "designed solely to harass and inflate defense costs by asking this court to relitigate issues that had clearly been resolved," Banks states. (*Id.*) Because of this, Banks asserts that "[t]he motions filed were vexatious, unreasonable, meant to intimidate and unfairly skyrocket defense costs." (*Id.* at 8-9); (*see also id*. at 3-5).

Khanna raises a litany of unsupported arguments in his Response. (Dkt. 387). He first contends that 28 U.S.C. § 1927 cannot apply to him, but only his prior counsel. (*Id.* at 3). He then lists reasons why his conduct was not vexatious. (*Id.* at 4-11). First, he contends that his discovery

motions were filed in good faith to obtain overdue discovery. (*Id.* at 4-5). He next claims that Banks also requested discovery after the cutoff date. (*Id.* at 5). He downplays any bad faith by noting that his filings "confronted the timelines issue." (*Id.* at 5-6) (emphasis removed). Any impact and costs, Khanna claims, are mitigated by the fact that Judge Holleb Hotaling heard all the motions in a "single consolidated" hearing, ordered no responses or replies, and did not impose sanctions against Khanna. (*Id.* at 6-7). He claims that the briefing over whether his expert should be barred and Judge Holleb Hotaling's subsequent ruling (where she found that Khanna lied) "did not multiply proceedings" and "caused no identifiable excess costs." (*Id.* at 7-9). He notes that he complied with Judge Holleb Hotaling's February 3, 2026, Order because he filed no additional discovery motions after it. (*Id.* at 9). Khanna then defends his Seven Frivolous Filings as "[s]ubstantive" and not vexatious. (*Id.* at 10-11). After all this, Khanna blames Banks by asserting that Banks "directly caused the very enforcement motions she now challenges." (*Id.* at 11-12). He then asserts that, even if his conduct is sanctionable, Banks' requests are overbroad. (*Id.* at 12-13). He next claims that Banks mischaracterizes the record. (*Id.* at 13-14). At last, Khanna concludes that there was no bad faith because he is *pro se* with a "background in technology policy and government affairs," not federal litigation. (*Id.* at 14-16).

The Court may "impose sanctions against a lawyer who 'multiplies the proceedings in any case unreasonably and vexatiously.'" *Matter of Lisse*, 921 F.3d 629, 641 (7th Cir. 2019) (quoting 28 U.S.C. § 1927). "A lawyer's subjective bad faith is a sufficient, but not necessary, condition for § 1927 sanctions; objective bad faith is enough." *Id.* (citing *Hunt v. Moore Bros., Inc.*, 861 F.3d 655, 659 (7th Cir. 2017)); *see also Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 1992) (the term "vexatious" in § 1927 means "either subjective or objective bad faith"). "Attorneys demonstrate objective bad faith when they pursue 'a path that a reasonably careful attorney would

have known, after appropriate inquiry, to be unsound.'" *Id.* (quoting *Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1082 (7th Cir. 2018)). "Because trial judges are best positioned to detect bad faith litigation conduct, they possess broad discretion in exercising the § 1927 power." *Id*. "The statute is applicable not only to lawyers who represent clients but also to a lawyer who represents himself[.]" *Carr v. Tillery*, 591 F.3d 909, 919 (7th Cir. 2010).

Khanna had five years, and countless opportunities, to complete the discovery he needed, file the motions he desired, and build his case. After shirking expert discovery and getting caught trying to lie his way out of punishment, Khanna went on a filing spree. *Supra* at 6-11 (discussing Seven Frivolous Filings). His positions lacked support. *Id.* He relitigated issues the Court already decided, based on positions Judge Holleb Hotaling expressly rejected. (*See, e.g.*, Dkt. 375 at 2) ("This is a pure discovery motion masquerading as a sanctions motion. And a far too late filed one at that."); *Barrett*, 457 F.2d at 123. Drowning his briefs with so many arguments, Khanna forced the Court (and presumably Banks) to expend considerable time reviewing all his specious grievances. While recycling discredited facts, denied requests, and settled questions, Khanna studiously omitted any mention of the prior orders that already resolved these issues. These filings were retaliatory and vexatious. In the same breath of publicly calling Banks a fraud, criminal, and accusing her of plotting to "firebomb" a company, he pasted pictures of her and her social media as exhibits. (*See, e.g.*, Dkt. 358 at 11, 17, 27) (accusing Banks of seeking to "firebomb" the company); Dkt. 359 at 32-33, 59 (screenshots of Banks and her social media); Dkt. 361 at 50, 52, 54, 60, 62 (same)).[9] Khanna has no active claims relevant to these positions, no non-retaliatory basis to include photos of Banks in his filings, and no good faith basis for seeking to his amend his Complaint after the close of discovery to include allegations that Banks is a "criminal" based

[9] To the extent Khanna first put these screenshots in his discovery requests does not change the outcome.

on evidence he has had for years. (*Id.* at 10-11, 16-17) ("Plaintiff also alleges conduct approaching criminality, including extortion/coercion, of corporate governance and oversight, and litigation misconduct including spoliation and false testimony."). Khanna has no good-faith basis to call Banks a fraud based on positions Judge Holleb Hotaling has already rejected. (*Compare* Dkt. 370 at 13 (Khanna asserting that "[d]iscovery also establishes that Banks defrauded Shimbly's accounting books") *with* Dkt. 337 (rejecting the "Discovery" that Khanna claims constitutes fraud and denying Khanna's motion to compel)).

This conduct smacks of vitriolic retaliation. The vitriol is crystallized as the Court is cognizant that Khanna and Banks were in "a romantic relationship" presumably up until Khanna filed a federal lawsuit against Banks accusing her of fraud, etc. (*See* Dkt. 1; Dkt. 234 at 1-2; Dkt. 235). The personal nature of this suit was certainly ratcheted up when Khanna sued Banks' parents, Cindy and Tony Banks. (Dkt. 186). To be sure, lawsuits between and involving family and romantic partners are not out of the ordinary; but considering Khanna's exceptionally weak claims, caustic language, and abusive filings, the conduct here does not comport with a run-of-the-mill shareholder suit, but harassment and retaliation. For example, in Khanna's motion for sanctions, he accuses both Cindy and Tony Banks of lying to the Court as justification for seeking the production of documents. (*See* Dkt. 361 at 16). Neither Cindy nor Tony are parties to this lawsuit. (Dkt. 339). Digging up irrelevant ESI disputes from 2023 just to drag non-parties through the mud is vexatious. 28 U.S.C. § 1927; *Matter of Lisse*, 921 F.3d at 641; *Bell*, 908 F.3d at 1082.

Indeed, the reason why Cindy and Tony Banks were ever brought into this case in the first place is simple: retaliation. Khanna sued Cindy and Tony Banks in his First Amended Complaint. (Dkt. 186). His claims against them were specious. The Court dismissed all with prejudice—each failing on basic elements. (Dkt. 240). With the full record on display, Khanna's conduct since his

First Amended Complaint has been vindictive, retaliatory, and abusive. It shows the will of a litigant with the means to choose between right and wrong, choosing the latter out of spite. With no good faith legal basis backing his claims, Khanna nevertheless pressed ahead with this lawsuit. Khanna's cycling of attorneys underscores that the motivating force behind continuing the litigation was not meritorious claims, but Khanna himself. (*See, e.g.*, Dkts. 87, 104, 259, 345); (*see also* Dkt. 278) (counsel withdrawing and representing that they "have good cause for withdrawal pursuant to LR 83.51.16(b)"). Despite voluminous allegations of all of Banks' apparent wrongdoing, "when the time came" to support his caustic allegations, the evidence was "nowhere to be found." *Ridge Chrysler*, 516 F.3d at 626.

The Court has considered each of Khanna's arguments against fees under 28 U.S.C. § 1927. (Dkt. 387). None succeed. All lack support. Few warrant explicit attention as many are repetitive, cumulative, and already addressed in this Opinion. Khanna's assertion that "Section 1927 sanctions cannot be imposed on Plaintiff for [his] counsel's conduct" is incorrect. (Dkt. 387 at 3) (capitalization and bold removed). "The statute is applicable not only to lawyers who represent clients but also to a lawyer who represents himself[.]" *Carr*, 591 F.3d at 919. Khanna's assertion that he cannot be held accountable for his conduct because he is *pro se*, inexperienced, and not a litigator likewise fails. "[C]lients must be held accountable for the acts and omissions of their attorneys." *Pioneer*, 507 U.S. at 396. With limited exceptions, the "rule is that *all* of the attorney's misconduct . . . becomes the problem of the client." *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009). "'Holding the client responsible for the lawyer's deeds ensures that both clients and lawyers take care to comply. If the lawyer's neglect protected the client from ill consequences, neglect would become all too common. It would be a free good—the neglect would protect the client, and because the client could not suffer the lawyer

would not suffer either.'" *United States v. 7108 W. Grand Ave., Chicago, Ill.*, 15 F.3d 632, 634 (7th Cir. 1994) (quoting *Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir. 1986)); *Jones v. Indiana Harbor Belt R. Co.*, 127 F. App'x 221, 222 (7th Cir. 2005).

Khanna's position that no fees should follow because Judge Holleb Hotaling managed to efficiently reel in his Seven Frivolous Filings and did not sanction him misses the point. (Dkt. 387 at 6). This position—along with all of his others claiming that none of his conduct raised costs, induced delays, or increased workloads—is wrong. Because Khanna refused to follow the rules, he forced Banks to prepare for and attend oral argument over each of his Seven Frivolous Filings. They were not short motions—but instead track Khanna's trend of raising as many issues as possible. He also disregards the ramifications of his conduct on the Court; it required the Court to review, research, and prepare rulings on each of his motions and all the issues raised therein. *Supra* at 6-11. There is no question that Khanna violated 28 U.S.C. § 1927.

Khanna also violated Rule 11. "The purpose of Federal Rule of Civil Procedure 11 sanctions is to deter baseless filings in the district court." *Eberhardt v. Walsh*, 122 F.4th 681, 686 (7th Cir. 2024); *Cooney v. Casady*, 735 F.3d 514, 523 (7th Cir. 2013). "As a result, Rule 11 imposes certain duties on attorneys and *pro se* parties." *Id.* Thus, that Khanna appeared *pro se* does not absolve him of his duties under Rule 11. *Id.*; *Jones v. Cmty. Home Physicians, LLC*, 2026 WL 1078277, at *2 (N.D. Ill. Apr. 20, 2026) ("*Pro se* status does not shelter plaintiffs from sanctions pursuant to Rule 11.") (quoting *Chinedu Obi v. Cook County, Ill. et al.*, 2026 WL 1001481, at *2 (N.D. Ill. Apr. 9, 2026)); *Allen*, 2026 WL 674309, at *9. A party may "not make filings 'for any improper purpose,' like harassment." *Eberhardt*, 122 F.4th at 686 (quoting Fed. R. Civ. P. 11). A party must make a reasonable inquiry under the circumstances and then "submit only 'claims' and 'legal contentions' that 'are warranted by existing law.'" *Id.* (quoting Fed. R. Civ. P. 11(b)(2)). "A

paper 'interposed for any improper purpose' is sanctionable whether or not it is supported by the facts and the law[.]" *Id.* (quoting *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 931-32 (7th Cir. 1989) (en banc)). "If a district court finds that a lawyer or party has breached either of those duties, it 'may impose an appropriate sanction.'" *Id.* (quoting Fed. R. Civ. P. 11(c)). Because violations of Rule 11 undermine the integrity of the judicial process, the Court may raise Rule 11 violations *sua sponte*. Fed. R. Civ. P. 11(c)(3).

The Court notes at the outset that Khanna's motion to dismiss without prejudice does not shield him from Rule 11. "[A] voluntary dismissal does not eliminate the Rule 11 violation." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990). Khanna's baseless filings put "the machinery of justice in motion" and burdened the Court and Defendants "with needless expense and delay." *Id.* "Therefore, a litigant who violates Rule 11 merits sanctions even after a dismissal." *Id.*

Khanna violated both duties under Rule 11. He filed motions for an improper purpose that were unsupported by fact and law. Fed. R. Civ. P. 11. The Court need not retread old ground. *See supra* at 13-18, 21-31 (discussing Khanna's rule violations and vexatious conduct). Khanna's Seven Frivolous Filings violated Rule 11 because Khanna filed them for an improper purpose (e.g., to harass Banks with baseless accusations alongside pictures of her) and they lacked factual and legal support (e.g., relitigating disputes by relying on rejected premises). (Dkts. 358, 359, 361, 363, 365, 370, 379); *supra* at 16-17, 35-36 (discussing retaliation).

Khanna lied to the Court. (Dkt. 372). But not just once. Khanna's recent representations illuminate a trail of falsehoods. For example, in Khanna's emergency motion, he repeatedly represents to the Court that his prior counsel suddenly "abandoned" him. (Dkt. 365 at 2-6, 9-10). Khanna's representations make him out to be the victim—that he had no idea what his attorney

was doing until it was too late. (*See, e.g.*, *id.* at 6, 9-10, 12-13) (claiming he took "prompt corrective action once he discovered the problem and assumed the case *pro se*").

This position is suspect. Khanna's last attorney, Ryan McLane, was admitted on January 2, 2025. (Dkt. 277). McLane represented Khanna during the waning phase of fact discovery while filing motions, attending court hearings, and providing status updates. (*See, e.g.*, Dkts. 282, 291, 306, 311, 318, 320, 331, 341). During that time, McLane filed an extensive motion to compel relying on the very positions Khanna used for his Seven Frivolous Filings (Dkt. 331) (asserting that Banks' strategy was to stall and ignore Khanna), which, as the Court has already noted, Judge Holleb Hotaling rejected. (Dkt. 337). He represented Khanna through expert discovery (Dkts. 341-345); and, when McLane moved to withdraw, he represented to the Court that his decision was "mutual" based on discussions he had with Khanna. (Dkt. 345); (Dkt. 354).

This means one of two things. First, Khanna knew what was occurring yet took no action, which would make his representations—that he suddenly discovered his attorney's abandonment after it was too late—false. (*See, e.g.*, Dkt. 365 at 2-6, 9-10). Khanna cannot credibly claim ignorance of his counsel's failures during expert discovery when Khanna was the one footing the bill—and was thus fully aware that he never retained an expert. (Dkt. 372). Despite being aware that he never paid for an expert, Khanna represented to the Court that he was "alarmed that his former counsel had made this mistake" when Khanna apparently discovered McLane's failures to abide by Rule 16. (Dkt. 350 at 4); (*see also* Dkt. 368, ¶ 8). Similarly contradictory are Khanna's representations concerning his request for leave to amend his Complaint, where he states that "[i]n November [2025] . . . Plaintiff spent substantial time evaluating the process and merits of petitioning the Delaware Court of Chancery" and "repeatedly urged urgent action" from McLane "to address the Motion to Dismiss." (Dkt. 358 at 3). Yet Khanna simultaneously represents that

from October 30, 2025, until December 31, 2025, his counsel "without notice" "ceased performing required litigation tasks[.]" (Dkt. 368, ¶ 4). Khanna further represents in his declaration that McLane "did not disclose to me that [he] had effectively stopped working." (*Id.*, ¶ 7). He further represents that he did not discover McLane's apparent abandonment until after December 23, 2025, after he read Banks' motion to bar. (*Id.*, ¶ 8). This sequence of events hardly adds up.

Second, if Khanna were truly unaware of his attorneys' failures until it was too late, that would make his representations that he was diligent, non-dilatory, and actively working on his case false. (*See, e.g.*, Dkt. 358 at 5-14) (asserting that "Plaintiff acted diligently" and providing a "Timeframe Overview Establishing Diligence") (capitalization removed); (Dkt. 359 at 8-10) (asserting that the record demonstrates timeliness and diligence); (Dkt. 361 at 19-22) (providing timeline of diligence); (Dkts. 387, 391). Indeed, as the basis for his motions seeking vast untimely relief, Khanna repeatedly represents to the Court just how diligent he was. (*Id.*) Yet how can all this be true if he was unaware of what was happening during his case for over two months? Blissful ignorance is hardly active diligence. *See, e.g.*, *Hassan v. Bondi*, 170 F.4th 599, 603 (7th Cir. 2026) ("Deliberate ignorance counts as a form of actual knowledge in the federal system."); *Jolicoeur-Vasseur v. Ass'n of Pro. Flight Attendants*, 405 F. App'x 66, 70 (7th Cir. 2010) ("As we have often repeated, parties cannot stick their heads in the sand and later claim ignorance") (quotes omitted); *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000).

Likely recognizing the depths of the hole he has dug for himself, Khanna repeatedly attempts to skirt blame by claiming incompetence. He asserts that he has "never engaged in substantive motion practice in federal court, never conducted federal discovery," "never taken a class in evidence or damage," and his "legal education does not translate to familiarity with the granular procedural requirements of federal litigation practice[.]" (Dkt. 387 at 14); (Dkt. 391 at 4-

5) ("Plaintiff is not a litigator and has no experience in practicing this type of law"). These admissions cut against Khanna no matter which way you look at them. If true, this raises significant Rule 11 issues with each of Khanna's filings and assertions because "[i]gnorance of the law, especially by a lawyer, is no defense to noncompliance with the rules of the court in which he appears." *Normand v. Orkin Exterminating Co.*, 193 F.3d 908, 911 (7th Cir. 1999); *Lambert v. People of the State of California*, 355 U.S. 225, 228 (1957) ("The rule that ignorance of the law will not excuse . . . is deep in our law.") (quotes omitted).

Khanna's own work product gives the lie to his claims of incompetence. It strains credulity to claim ignorance with federal practice while simultaneously churning out a complex motion every forty-eight hours. *Supra* at 6-11. So while Khanna asks this Court to view him as a novice completely lost in federal practice, his own docket entries—seven dense briefs in a mere fortnight—tell a remarkably different story of a lawyer who knew precisely what he was doing.[10] Even more troubling is the fact that Khanna is asking the Court to grant extreme, far-reaching relief based on motions and law he simultaneously *insists* he lacks the competence to write and comprehend. Ultimately, taken to its logical conclusion, Khanna's position disproves itself.

"As for the sanction," "the penalty must be proportionate to the wrong[.]" *Ridge Chrysler*, 516 F.3d at 626. Most litigants do not come out of the gate waiving a chequy flag they have been acting vexatiously. Courts come to that conclusion, rather, through their own depth of experience. After five years of litigation, the record here is clear. Khanna did not file this suit for a genuine

---

[10] While much of Khanna's writing reads like it was written by AI—which would explain his ability to generate so much content so quickly—that would not absolve Khanna of responsibility. *See, e.g.*, *Allen v. Casper*, 2026 WL 674309, at *10 (N.D. Ill. Mar. 10, 2026) (sanctioning *pro se* plaintiff for violating Rule 11 by misusing AI); *Obi v. Cook Cnty., Ill.*, 2026 WL 1001481, at *2 (N.D. Ill. Apr. 9, 2026) (same); *see also Jones v. Cmty. Home Physicians, LLC*, 2026 WL 1078277, at *2 (N.D. Ill. Apr. 20, 2026).

legal purpose. He filed it out of revenge. Using his resources and legal knowledge, he and his legal team lashed out against Banks, harassed her parents, and "behaved like a pack of weasels" before the Court. *Ridge Chrysler*, 516 F.3d at 627. The wrong here was massive. The penalty must be proportionate. The Court therefore sanctions Khanna as follows:

1. Khanna is ordered to show cause why he should not be sanctioned up to $75,000. Khanna shall file any objection not to exceed 15 pages within 14 days of this order. Banks shall have 7 days to respond, and Khanna shall have 7 days to reply. Neither Banks' response nor Khanna's reply shall exceed 7 pages;

2. Khanna is ordered to pay all of Banks' attorneys' fees, litigation costs, and associated expenses related to this lawsuit from December 19, 2023, until the present—including all costs associated with Banks' briefing over Khanna's rule to show cause ordered directly above as well as all time spent complying with this Order. Banks must file a detailed and line-itemed brief itemizing her fees from December 19, 2023, to the present. To the extent Banks believes that she is entitled to additional fees (e.g., from before December 19, 2023), the Court orders Banks to file a motion not to exceed 15 pages supporting her position with a detailed, itemized breakdown of the corresponding fees Banks seeks Khanna to pay within 14 days of this order; should Khanna seek to respond, he shall file a response not to exceed 7 pages within 7 days of Banks' filing;

3. Khanna is ordered to complete 50 CLE hours on legal ethics within two years of this order and shall submit a certified copy of proof that he has completed the full 50 hours to the Clerk of Court and State Bar of California;

4. The Clerk of Court is directed to provide a copy of this Order to the Office of Chief Trial Counsel of the State Bar of California within fourteen days of this order;

5. Khanna's case is dismissed with prejudice.

No party shall file any motion on the docket without express leave of Court. The Court further notes that it has considered lesser sanctions and finds none appropriate.

**CONCLUSION**

For all these reasons, the Court denies Khanna's motion (Dkt. 382), grants Banks' motion (Dkt. 385), and sanctions Khanna. The Court dismisses the case with prejudice.

Virginia M. Kendall
United States District Judge

Date: September 22, 2026