**DECLARATION OF DEREK KHANNA IN SUPPORT OF RESPONSE**

I, Derek Khanna, declare as follows:

1. I am the Plaintiff in this action. This declaration describes my own actions, observations, and purposes.

2. Any engagements, to the extent there were any, between Katelynn Banks and me ended approximately in October 2019, about two years before this action was filed. We were not in a romantic relationship when I filed the lawsuit.

3. Before the January 2026 filings, I reviewed earlier pleadings and discovery submissions filed by my counsel, including the Second Amended Complaint and the privilege-related motion. I relied on counsel for advice concerning the legal sufficiency of counsel-filed pleadings at that time. I considered the earlier allegations, source materials, and counsel's presentation when evaluating my own filings.

4. After McLane's filed withdrawal, I undertook preparation of the challenged January filings with the January 30 dispositive-motion deadline approaching. That left twenty-two days (after withdrawal's approval) until that deadline after withdrawal. After McLane's withdraw was granted, and before filing the Seven Motions in question, I evaluated the applicable case law, reviewed the local rules (as I understood them), and reviewed the relevant evidence. I believe that a reasonable and good faith inquiry was done as to the factual and legal claims made.

5. I participated in the January 14, 2026 conference with opposing counsel before submitting the initial January motions. Outstanding discovery requests were discussed, including requests raised by defense counsel. After receiving further information, I decided *not to file one contemplated motion* because I concluded that its factual basis was insufficient.

6. Before seeking post-cutoff relief, I reviewed the scheduling order and researched whether the Court could permit enforcement or schedule modification after the cutoff. I also considered the November 4 status report describing outstanding written-discovery issues and the correspondence later included at Dkt. 356-1. Together with the January conference, those materials informed my understanding that particular discovery issues remained unresolved. I sought out specific case law on this topic, in NDIL and the Seventh Circuit. I only filed when the authority I reviewed presented a strong

basis for filing. I would not have filed if there was applicable case law not to file. In fact, I considered this question to be a threshold question to get right. Based on the case law I reviewed, I believed the case law allowed me to request permission by identifying the reasons for relief and addressing the existing deadline. In retrospect, I should have changed my approach, and only considered filing a Motion for Leave to request late disposition by the Court.

8. My purpose in Dkt. 358 was to seek permission to plead the demand-refused theory after the October dismissal ruling and to present revised punitive-damages allegations and relief. I intended the descriptions of serious wrongdoing to explain the allegations in the pre-suit demand and the degree of culpability asserted for the requested remedy, not to represent that a crime had been adjudicated.

9. My purpose in Dkt. 365 was to respond to the January 22 untimeliness ruling by seeking court-approved schedule relief. I sought a limited reopening of fact discovery, modification of the partial stay based on the overlap I asserted, and additional time before the January 30 dispositive-motion deadline. On January 29, when defense counsel asked my position on a seven-day extension, I responded that I was “Partially Supportive, consistent with my Emergency Motion.” I supported additional time but continued to seek the broader relief described in my own motion. The later defense request was not information available when I submitted Dkt. 365 on January 23. My requests sought a ruling, not a unilateral change of the deadlines or stay.

10. My purpose in Dkt. 370 was to obtain proof concerning authority to act for Shimbly, address control of its privilege, and seek preservation of corporate property and records. Before filing, I reviewed the revised privilege log (submitted after the previous hearing and Order) and understood entries identifying Shimbly as the holder to make the corporate-authority question concrete as to those communications.

11. My purpose in Dkt. 379 was to obtain guidance or leave before filing contemplated spoliation relief and to seek a limited correction of the characterization of my intent. I accepted the expert-exclusion result for purposes of that motion while disputing intentional deception.

12. For Dkt. 359, I submitted the existing discovery requests with their incorporated exhibits so the Court could identify what the requests sought. The requests had been served through counsel. The

posts identified the statements and subjects to which particular requests referred, including the work associated with the software posts. I reviewed counsel's earlier social-media presentation before making my January filing decisions. I remained responsible for the scope and manner of my filing. The public social media postings were not, from my perspective, gratuitous, but were used in the original interrogatories and production requests to obtain specific responses from the Defendant. For example, one key Instagram post of Defendant's face refers her to active development of software. Defendant's other interrogatory answer appeared to have denied her development of software at the time. The use of this image was seen as directly relevant for the inquiry and the Motion to Compel.

13. For Dkt. 361, I offered the social-media examples to illustrate material that I believed was responsive but missing from the searches and productions discussed in that motion. I did not offer the images merely to display Banks's appearance. In particular, Instagram was a medium agreed to be searched, and the pictures contained the keywords agreed to be searched (but was not produced).

14. When considering the screenshots, I regarded the accompanying words, the person depicted, and the account or temporal context to the extent visible as components of the item being presented. My purpose in preserving that context was evidentiary, rather than to embarrass Banks. In retrospect I should have performed a detailed analysis of every public photo to assess what could have been further redacted.

16. Before the challenged public filings, I reviewed the Agreed Protective Order and understood its public-information provision to bear on whether publicly accessible material required confidential treatment. I sought Dkt. 363 because there was a dispute requiring clarification before the contemplated use of the material. I wanted judicial direction rather than to resolve that dispute unilaterally. This was not filed to harass, it was filed because I read the Protective Order as stating that in a disagreement you were required to bring it to the Court's attention for resolution.

18. I absolutely did not file the seven challenged motions for the purpose of retaliating against Banks for any former relationship or her earlier lawsuit, humiliating her or her relatives, or increasing litigation expense for its own sake. I filed them to seek the legal, procedural, and evidentiary relief

described in the filings. I recognize that the number and scope of the motions-imposed work and that my stated purpose does not by itself establish the objective sufficiency of a filing.

19. My discussion of CBT in Dkt. 361 concerned its earlier search-completeness dispute and the relationship I asserted to Banks's own production and potential participation in that statement as a partner or key participant of the entity. I believed the described participation in production and use of the same vendor warranted examining the searches and completeness representations relied upon for Banks. I included those matters for that compliance-related purpose, as described in the Motion (such as that Banks was a partner and likely had knowledge of the responsive materials) not merely because Cindy and Tony Banks were her parents.

20. I was present for Banks's October 9, 2025 deposition and considered her account of approval for Shimbly's earlier lawsuit before filing Dkt. 370. Her answers about oral consent and her inability to identify a written vote contributed to my concern about the basis for claimed corporate authorization. I should have attached and pinpoint-cited that testimony. I am identifying the information that informed my request.

21. I reviewed the January Motions to Compel. As part of my reasonable inquiry into the remaining counts, I was aware that bad faith could be an element or key context for Defamation or False Light. My research should that the alleged scheme alleged, and statements at issue that were part of it, could supply significant context when connected to the challenged statements by showing knowing falsity or reckless disregard for her alleged defamatory statements. Additionally, I was frankly confused, but believed that the October Order kept the remaining direct Breach of Contract claim, which specifically included multiple relevant provisions including a contractual provision for fiduciary duties. See Dkt. 339 at 12 ("The Court's prior ruling that Khanna has alleged a limited direct claim for breach of contract stands.").

22. Before submitting my January discovery motions, I reviewed earlier discovery and sanctions motions filed by my attorneys in this case, particularly Dkt. 331 (some contemporaneously and some in January). I used those papers as procedural models when preparing my own filing. I understood them to

describe efforts by counsel to resolve production disputes before seeking enforcement; I did not see a separate technical-conference requirement described in those models.

23. Another purpose of the neutral-governance and preservation relief in Dkt. 370 was to address the corporate-control problem associated with my effort in Dkt. 358 to restore derivative standing. I was concerned about who could act for Shimbly, how its interests would be represented, and whether its property and records would remain available while the Court considered the proposed derivative pleading and the authority dispute. Dkt. 370 discussed that derivative posture at pages 5 and 7–10. I sought a limited preservation mandate for the receiver, as described at pages 14–15, alongside the separate request for independent corporate representation. That relationship to the derivative-standing issue was part of my purpose in requesting the relief, not merely a reason to obtain additional documents.

24 Before filing Dkt. 370, I reviewed Dkt. 331 and Dkt. 337. Rather than ignore the previous Order, I asked for "reconsideration" of the previous ruling based on interviewing changes that had occurred. For example, the October log could not itself have been examined when the October 2 ruling issued – *because it did not exist*. It was my belief that the new log presented a different legal fact pattern for the questions at issue and supported a focused challenge to newly supplied information. However, I recognize that I could have more clearly articulated this (for example by citing from the October Deposition). I also read the original Dkt. 331 Motions and the Court's Order, and performed external case research, and based upon this reasonably inquiry had a good faith understanding (which appears to have been flawed) that the original order was not a final disposition on these questions (but rather awaiting a fuller log).

25. Dkt. 358 identified Dkt. 339, properly omitted demand futility, and sought leave under Rules 15 and 23.1 to plead wrongful refusal and revised punitive relief, with scheduling relief. It was filed for a proper purpose, after reasonable inquiry into the facts and case law and a belief that this addressed the concerns stated by the Court in the October Order. However, I should have more strongly considered whether it was simply time-barred and inappropriate to be filed at that time, even with leave.

26. I attempted to follow the conference-and-certification approach reflected in the Dkt. 331 filing by participating in the January conference and describing the earlier efforts and remaining dispute for the discovery related motions. I performed an inquiry before filing, including in reviewing local rules and Dkt. 331's certificate before filing. However, I recognize that I should have evaluated more closely the ESI requirements.

27. My purpose of using the language cited by the Court was not to embarrass the Defendant. Rather, my counsel's Second Amended Complaint used both examples, the text message with Defendant appearing to be discussing the actions at hand and the reference to criminality. At one point I also reviewed the Judge's October Order stating, "improper and perhaps even illegal" (in the context of the remaining counts). I used the phrase "conduct approaching criminality" in a punitive damages section, and then separately in a reference to a 2020 Board report (as an evidentiary statement about what the report stated). I apologize for the language, and recognize that I am responsible for my own statements, but none of these statements were meant to embarrass but were used for specific litigation purposes and based upon factual claims I believed the evidence sustained. In retrospect, citing the Court would have been a better way to have pled this Count and proposed remedy, and I should have noted that there had been no adjudication.

28. My 2025 tax return reflects an Adjusted Gross Income of $25,850.00. $12,396 was from unemployment compensation in 2025. I do not have a house or a car, and am currently unemployed without health insurance and residing in Washington, D.C. The current penalty imposed by the Court already will constitute a life-changing financial burden.

I declare under penalty of perjury that the foregoing is true and correct.

Form **8879** (Rev. January 2021) Department of the Treasury Internal Revenue Service

# IRS e-file Signature Authorization

▶ ERO must obtain and retain completed Form 8879.
▶ Go to www.irs.gov/Form8879 for the latest information.

OMB No. 1545-0074

Submission Identification Number (SID) ▶

Taxpayer's name: DEREK S. KHANNA — Social security number: [redacted]

Spouse's name — Spouse's social security number

**Part I — Tax Return Information - Tax Year Ending December 31,** 2025 (Enter year you are authorizing.)

Enter whole dollars only on lines 1 through 5.

**Note:** Form 1040-SS filers use line 4 only. Leave lines 1, 2, 3, and 5 blank.

| | | | |
|---|---|---|---|
| 1 | Adjusted gross income | 1 | 25,850. |
| 2 | Total tax | 2 | 2,789. |
| 3 | Federal income tax withheld from Form(s) W-2 and Form(s) 1099 | 3 | 1,236. |
| 4 | Amount you want refunded to you | 4 | |
| 5 | Amount you owe | 5 | 1,612. |

**Part II — Taxpayer Declaration and Signature Authorization (Be sure you get and keep a copy of your return)**

Under penalties of perjury, I declare that I have examined a copy of the income tax return (original or amended) I am now authorizing, and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts from the income tax return (original or amended) I am now authorizing. I consent to allow my intermediate service provider, transmitter, or electronic return originator (ERO) to send my return to the IRS and to receive from the IRS **(a)** an acknowledgement of receipt or reason for rejection of the transmission, **(b)** the reason for any delay in processing the return or refund, and **(c)** the date of any refund. If applicable, I authorize the U.S. Treasury and its designated Financial Agent to initiate an ACH electronic funds withdrawal (direct debit) entry to the financial institution account indicated in the tax preparation software for payment of my federal taxes owed on this return and/or a payment of estimated tax, and the financial institution to debit the entry to this account. This authorization is to remain in full force and effect until I notify the U.S. Treasury Financial Agent to terminate the authorization. To revoke (cancel) a payment, I must contact the U.S. Treasury Financial Agent at **1-888-353-4537**. Payment cancellation requests must be received no later than 2 business days prior to the payment (settlement) date. I also authorize the financial institutions involved in the processing of the electronic payment of taxes to receive confidential information necessary to answer inquiries and resolve issues related to the payment. I further acknowledge that the personal identification number (PIN) below is my signature for the income tax return (original or amended) I am now authorizing and, if applicable, my Electronic Funds Withdrawal Consent.

**Taxpayer's PIN: check one box only**

[X] I authorize FOCUS PARTNERS WEALTH, LLC (**ERO firm name**) to enter or generate my PIN [redacted] (**Enter five digits, but don't enter all zeros**) as my signature on the income tax return (original or amended) I am now authorizing.

[ ] I will enter my PIN as my signature on the income tax return (original or amended) I am now authorizing. Check this box **only** if you are entering your own PIN **and** your return is filed using the Practitioner PIN method. The ERO must complete Part III below.

Your signature ▶ ______ Date ▶ ______

**Spouse's PIN: check one box only**

[ ] I authorize ______ (**ERO firm name**) to enter or generate my PIN ☐☐☐☐☐ (**Enter five digits, but don't enter all zeros**) as my signature on the income tax return (original or amended) I am now authorizing.

[ ] will enter my PIN as my signature on the income tax return (original or amended) I am now authorizing. Check this box **only** if you are entering your own PIN **and** your return is filed using the Practitioner PIN method. The ERO must complete Part III below.

Spouse's signature ▶ ______ Date ▶ ______

**Practitioner PIN Method Returns Only - continue below**

**Part III — Certification and Authentication - Practitioner PIN Method Only**

**ERO's EFIN/PIN.** Enter your six-digit EFIN followed by your five-digit self-selected PIN. [redacted]

**Don't enter all zeros**

I certify that the above numeric entry is my PIN, which is my signature for the electronic individual income tax return (original or amended) I am now authorized to file for tax year indicated above for the taxpayer(s) indicated above. I confirm that I am submitting this return in accordance with the requirements of the Practitioner PIN method and **Pub. 1345,** Handbook for Authorized IRS *e-file* Providers of Individual Income Tax Returns.

ERO's signature ▶ FOCUS PARTNERS WEALTH, LLC Date ▶ 04/08/2026

519995 04-01-25

**ERO Must Retain This Form - See Instructions**
**Don't Submit This Form to the IRS Unless Requested To Do So**

LHA **For Paperwork Reduction Act Notice, see your tax return instructions.** Form **8879** (Rev. 01-2021)

Executed on: 10/6/2026

Signature: /s/ Derek Khanna

Derek Khanna